UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY FRIEDRICH ENTERPRISES, LLC, ET AL.,

Plaintiffs,

-against-

MARVEL ENTERPRISES, ET AL.,

Defendants.

08-CV-01533 (BSJ)(JCF)

**NOTICE OF MOTION TO
TRANSFER ACTION
PURSUANT 28 U.S.C. § 1404**

PLEASE TAKE NOTICE that upon the attached Affirmation of Leonard F. Lesser, Esq., the exhibits attached thereto, and the points and authorities set forth in the accompanying Memorandum of Law, plaintiffs Gary Friedrich Enterprises, LLC ("GFE") and Gary Friedrich ("Friedrich," collectively "Plaintiffs"), by and through their undersigned counsel, shall move this Court on May 28, 2008, or any such other date and time set by the Court, for an Order transferring this action to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. §1404(a) because the convenience of the parties and witnesses weighs in favor of this matter being transferred to the Eastern District of Missouri given the onerous burden to Plaintiffs in proceeding to litigate this action in this District, and in consideration of the material events, witnesses and convenience of each of the parties to the current action.  Plaintiffs also respectfully seek such other and further relief as this Court deems just and proper under the circumstances.

PLEASE TAKE FURTHER NOTICE that pursuant to Rule 6.1(b) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, answering papers, if any, shall be served within ten (10) business days after service

of this Notice of Motion along with the supporting papers, and reply papers, if any, shall

be served within five (5) business days after service of the answering papers, if any,

unless otherwise stipulated by the parties and endorsed by the Court.

Dated:  New York, New York
        May 2, 2008

                                    SIMON·LESSER PC


                                    By:  _____
                                         Leonard F. Lesser, Esq.
                                    420 Lexington Avenue
                                    New York, New York 10170
                                    T: 212.599.5455
                                    F: 212.599-5459

                                    ROTH, EVANS & LADING
                                    Thomas Long, Esq.
                                    Eric Evans, Esq.
                                    Dawn O'Leary, Esq.
                                    2421 Corporate Centre Drive
                                    Suite 200
                                    Granite City, IL 62040
                                    T: 618.931.5000
                                    F: 618.931.6474

                                    RIEZMAN BERGER, P.C.
                                    Charles S. Kramer, Esq.
                                    Joseph D. Schneider, Esq.
                                    7700 Bonhomme, 7th Floor
                                    St. Louis, Missouri  63105
                                    T: 314.727.0101
                                    F: 314.727.6458

                                    Attorneys for plaintiffs Gary Friedrich
                                    Enterprises, LLC and Gary Friedrich

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY FRIEDRICH ENTERPRISES, LLC, ET AL.,

                  Plaintiffs,

-against-

MARVEL ENTERPRISES, ET AL.,

                  Defendants.

08-CV-01533 (BSJ)(JCF)

**MOVING AFFIRMATION
OF LEONARD F. LESSER**

       Leonard F. Lesser, an attorney admitted to practice before the Courts of the State of New York and this Court, affirms the following to be true under penalties of perjury:

       1.      I am New York counsel to plaintiffs Gary Friedrich Enterprises, LLC ("GFE") and Gary Friedrich ("Friedrich," collectively "Plaintiffs").

       2.      In support of Plaintiffs' Motion to transfer this action to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. §1404(a), I submit the following Exhibits which are referenced in the accompanying Memorandum of Law:

       A.      Exhibit A is the Copyright Office Certificate of Registration.

       B.      Exhibit B is Defendants' Motion to Transfer the case from the Southern District of Illinois to the Southern District of New York.

       C.      Exhibit C is Defendants' Memorandum of Law in Support of their Motion to Transfer the case from the Southern District of Illinois to the Southern District of New York.

       D.      Exhibit D is the September 26, 2007 Memorandum and Order of Hon. William D. Stiehl.

E.     Exhibit E is the January 30, 2008 Memorandum and Order of Hon.

William D. Stiehl.

F.     Exhibit F is the Complaint filed in this Action.

G.     Exhibit G is the Affidavit of Gary Friedrich, sworn to on April 29, 2008.

H.     Exhibit H is the Affidavit of Jillian Piechocinski, sworn to on April 21,

2008.

I.     Exhibit I is the DVD cover for the "Ghostrider" film.

J.     Exhibit J is the Affidavit of Caroline Tice, sworn to on April 21, 2008.

K.     Exhibit K is the Affidavit of Charles Kramer, Sworn to on April 22, 2008.

L.     Exhibit L is Entry of Appearance for defendants' counsel.

Dated: New York, New York
       May 2, 2008

Leonard F. Lesser, Esq.

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form RE**
For Renewal of a Work
UNITED STATES COPYRIGHT OFFICE

RE 929-199

EFFECTIVE DATE OF RENEWAL REGISTRATION

| 2 | 26 | 07 |
|---|----|----|
| Month | Day | Year |

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET (FORM RE/CON).**

**RENEWAL CLAIMANT(S), ADDRESSES), AND STATEMENT OF CLAIM ▼** (See instructions)

**a**
Name: Gary E. Friedrich
Address: 5 Jeanette Drive, Arnold, Missouri 63010
Claiming as: Author
(Use appropriate statement from instructions)

**b**
Name:
Address:
Claiming as:

**c**
Name:
Address:
Claiming as:

**TITLE OF WORK IN WHICH RENEWAL IS CLAIMED ▼**

MARVEL SPOTLIGHT Volume 1 Number 5 GHOST RIDER

---

**RENEWABLE MATTER ▼** If any author is deceased, give the complete date of death (month, day, and year).

ENTIRE WORK

---

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or other composite work, give information about the collective work in which the contribution appeared. **Title of Collective Work ▼**

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼

**AUTHOR(S) OF RENEWABLE MATTER ▼** (If any author is deceased, give month, day, and year of death.)

Name:                                          Date of death:
Name: GARY E. FRIEDRICH                        Date of death:
Name:                                          Date of death:

**ORIGINAL REGISTRATION NUMBER ▼**    **ORIGINAL COPYRIGHT CLAIMANT ▼**

See Attached Addendum    Magazine Management Co., Inc. Marvel Comics Group

**ORIGINAL DATE OF COPYRIGHT**

If the original registration for this work was made in published form, give:
DATE OF PUBLICATION: April (Month) 30 (Day) 1972 (Year)
**OR**
If the original registration for this work was made in unpublished form, give:
DATE OF REGISTRATION: (Month) (Day) (Year)

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5–8) on the reverse side of this page.
• See detailed instructions. • Sign the form at space 7.

DO NOT WRITE HERE
Page 1 of 3 pages

RENEWAL APPLICATION RECEIVED

FEB 2 6 2007

CORRESPONDENCE ☐ YES

EXAMINED BY

CHECKED BY

FUNDS RECEIVED

FORM RE

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET (FORM RE/CON).**

**RENEWAL FOR GROUP OF WORKS BY SAME AUTHOR:** To make a single registration for a group of works by the same individual author published as contributions to periodicals (see instructions), give full information about each contribution. If more space is needed, request continuation sheet (Form RE/CON).

**a**
Title of Contribution: ..............................................................................................
Title of Periodical: ................................................. Vol: ............. No: ........... Issue Date:.........
Date of Publication: ...................................................... Registration Number: ▶ ..................
         (Month)    (Day)    (Year)

**b**
Title of Contribution: ..............................................................................................
Title of Periodical: ................................................. Vol: ............. No: ........... Issue Date:.........
Date of Publication: ...................................................... Registration Number: ▶ ..................
         (Month)    (Day)    (Year)

**c**
Title of Contribution: ..............................................................................................
Title of Periodical: ................................................. Vol: ............. No: ........... Issue Date:.........
Date of Publication: ...................................................... Registration Number: ▶ ..................
         (Month)    (Day)    (Year)

**d**
Title of Contribution: ..............................................................................................
Title of Periodical: ................................................. Vol: ............. No: ........... Issue Date:.........
Date of Publication: ...................................................... Registration Number: ▶ ..................
         (Month)    (Day)    (Year)

**DEPOSIT ACCOUNT:** If the registration fee is to be charged to a deposit account established in the Copyright Office, give name and number of account.

Name _____

Account Number _____

Area code and daytime telephone number ▶ **(314) 727-0101**

**CORRESPONDENCE:** Give name and address to which correspondence about this application should be sent.

Name **Riezman Berger, P.C.**

Address **7700 Bonhomme Ave., 7th Floor**      (Apt)

**St. Louis, MO  63105**
(City)                          (State)        (ZIP)

Fax number ▶ **(314) 727-6458** Email address ▶ **trademarks@riezmanberger.com**

**CERTIFICATION*** I, the undersigned, hereby certify that I am the: (Check one)
☐ renewal claimant    ☐ duly authorized agent of _____
                                    (Name of renewal claimant)
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼    **GARY E. FRIEDRICH**               Date ▶ **2/19/07**

Handwritten signature (X) ▼

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
**Riezman Berger, P.C.**
Number/Street/Apt ▼
**7700 Bonhomme Ave., 7th Floor**
City/State/Zip ▼
**St. Louis, MO  63105**

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 7

**SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE**
1. Application form
2. Nonrefundable filing fee in check or money order payable to *Register of Copyrights*

**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6000

*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form RE   Rev 07/2006   Print: 07/2006—xx,xxx   Printed on recycled paper

U.S. Government Printing Office: 2006-xx-xxx/xx,xxx

# ADDENDUM TO FORM RE



...ETED FOR ALL WORKS
...RY 1, 1964, AND
...RE NOT REGISTERED
...R TERM.



**Addendum to Form RE**
For Renewal
UNITED STATES COPYRIGHT OFFICE

RE 929-199

2/26/07

---

**DO NOT WRITE ABOVE THIS LINE.**

**1** TITLE OF WORK IN WHICH RENEWAL IS CLAIMED: ▼

MARVEL SPOTLIGHT Volume 1 Number 5 GHOST RIDER

**2** NAME OF THE AUTHOR(S): ▼

GARY E. FRIEDRICH

**3** CITIZENSHIP AND/OR DOMICILE OF THE AUTHOR(S) AT THE TIME THE WORK WAS FIRST PUBLISHED: ▼

U.S.

**4** DATE AND NATION OF FIRST PUBLICATION:

| Month ▼ | Day ▼ | Year ▼ | Nation ▼ |
|---------|-------|--------|----------|
| April | 30 | 1972 | U.S. |

**5** MANUFACTURE:

A. If this is a nondramatic literary work or a two-dimensional print or label, the country in which the work was manufactured: ▼

B. The processes by which the work was manufactured: ▼

**6** DEPOSIT: (Check one)

☑ A. One complete copy of this work as first published is deposited with this application.

☐ B. A complete copy of this work as first published cannot be deposited for the following reason: ▼

**7** A. VERIFICATION OF NOTICE:
I hereby aver that all copies of this work as first published bore the copyright notice as it appears in the accompanying deposit materials and said copyright notice appeared on all copies of the work published in the United States until December 31, 1977.

Signature of applicant: _____

B. DEPOSIT ACCOUNT:
If you maintain a Deposit Account in the Copyright Office, identify it in space 7B. Otherwise, leave the space blank and send the fee for Form RE and the fee for Form RE Addendum with your application and deposit.

**8** CERTIFICATION:
I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signature of applicant: _____

Date signed: 2/19/07

Daytime telephone number: (314) 727-0101

Fax number, if any: (314) 727-6458

Email address: trademarks@riezmanberger.com

DO NOT WRITE HERE
OFFICE USE ONLY

APPLICATION RECEIVED
FEB 26 2007

DEPOSIT RECEIVED
2/26/07

FUNDS RECEIVED
2/26/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

GARY FRIEDRICH ENTERPRISES, LLC, *et al.*   )
                                            )
                         Plaintiffs,        )        Case  No. 07-230 (WDS)
                                            )
            - against -                     )
                                            )
MARVEL ENTERPRISES, INC., *et al.,*         )
                                            )
                                            )
                         Defendants.        )
                                            )


        Defendants Marvel Entertainment, Inc. (formerly known and also sued herein as

Marvel Enterprises, Inc.), Marvel Studios, Inc., Marvel Characters, Inc. (collectively, "Marvel"),

Hasbro, Inc. ("Hasbro"), Take-Two Interactive Software, Inc. ("Take-Two"), Columbia Pictures

Industries, Inc. (also incorrectly sued herein as Columbia Tri-Star Motion Picture Group)

("Columbia"), Crystal Sky LLC ("Crystal"), Relativity Media, LLC ("Relativity"), Michael De

Luca Productions, Inc. ("De Luca"), Sony Pictures Entertainment Inc. ("SPE" and collectively

with the other defendants, "Defendants"), by and through their counsel, respectfully move this

Court for entry of an order dismissing the complaint of plaintiffs Gary Friedrich Enterprises,

LLC ("GFE") and Gary Friedrich ("Friedrich" and, together with GFE, "Plaintiffs") pursuant to

Rules 12(b)(3) and (6) of the Federal Rules of Civil Procedure or, alternatively, transferring this

action to the United States District Court for the Southern District of New York pursuant to 28

U.S.C. § 1404(a).

LEGAL_US_E # 75341200.1

As set forth more fully in Defendants' Memorandum of Law in support of this motion, Plaintiffs' Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(3) based on Plaintiffs' improper attempt to manufacture venue in this district.

Alternatively, also as set forth more fully in Defendants' Memorandum of Law in support of this motion, if the Court determines not to dismiss this action for improper venue, the action should be transferred to the United States District Court for the Southern District of New York, where the majority of the events giving rise to this dispute actually occurred, pursuant to 28 U.S.C. § 1404(a).

Also as set forth more fully in Defendants' Memorandum of Law in support of this motion, Plaintiffs' state laws claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for the following reasons:

1.  All Plaintiffs' state law claims are preempted by the Federal Copyright Act as the state law claims are duplicative of the rights within the scope of copyright; and

2.  Even if these claims were not preempted by the Federal Copyright Act, most of Plaintiffs' state law claims fail to state any legally cognizable claim whatsoever and should be dismissed for that reason as well.

Finally, also as set forth more fully in Defendants' Memorandum of Law in support of this motion, Plaintiffs' Lanham Act claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) as it a misapplication of the Lanham Act and does not state a viable Lanham Act claim.

WHEREFORE, as set forth more fully in the accompanying Memorandum of Law, Defendants respectfully request this Court to dismiss Plaintiffs' complaint in its entirety or,

- 2 -

in the alternative, transfer this action to the Southern District of New York or, in the alternative, dismiss Plaintiffs' state law and Lanham Act claims.

In compliance with the Local Rules and this Court's standing order, a proposed order will be submitted to chambers via e-mail transmission.

Dated: June 8, 2007                    Respectfully Submitted,

MARVEL ENTERTAINMENT, INC. MARVEL
STUDIOS, INC., MARVEL CHARACTERS, INC.,
HASBRO, INC., TAKE-TWO INTERACTIVE
SOFTWARE, INC., COLUMBIA PICTURES
INDUSTRIES, INC. CRYSTAL SKY LLC,
RELATIVITY MEDIA, LLC, MICHAEL DE LUCA
PRODUCTIONS, INC., SONY PICTURES
ENTERTAINMENT INC.


By:        /s/ Steven T. Catlett
           Steven T. Catlett
           One of Their Attorneys
           Email: stevecatlett@paulhastings.com
           PAUL, HASTINGS, JANOFSKY &
           WALKER LLP
           191 North Wacker Drive
           Chicago, IL 60606
           Telephone: (312) 499-6015
           *Attorneys for Defendants*

- 3 -

## CERTIFICATE OF SERVICE

I, Alastair Wood, hereby certify that on June 8, 2007, I caused to be served upon counsel

of record in this action, via ECF filing, a true and correct copy of the motion of defendants

Marvel Entertainment, Inc., Marvel Studios, Inc., Marvel Characters, Inc., Hasbro, Inc., Take-

Two Interactive Software, Inc., Columbia Pictures Industries, Inc., Crystal Sky LLC, Relativity

Media, LLC, Michael De Luca Productions, Inc., Sony Pictures Entertainment Inc. (collectively,

"Defendants"), dated June 8, 2007, to dismiss the complaint against them pursuant to Rules

12(b)(3) and (6) of the Federal Rules of Civil Procedure or, alternatively, to transfer this action to

the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §

1404(a).

_____/s/ Alastair Wood_____
Alastair Wood

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

GARY FRIEDRICH ENTERPRISES, LLC, *et al.*   )
                                             )
                        Plaintiffs,          )
                                             )
              - against -                    )     Case  No. 07-230 (WDS)
                                             )
MARVEL ENTERPRISES, INC., *et al.*,          )
                                             )
                                             )
                        Defendants.          )
                                             )


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(3) AND (6)
OR TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Defendants Marvel Entertainment, Inc. (formerly known and also sued herein as Marvel Enterprises, Inc.), Marvel Studios, Inc., Marvel Characters, Inc. (collectively, "Marvel"), Hasbro, Inc. ("Hasbro"), Take-Two Interactive Software, Inc. ("Take-Two"), Columbia Pictures Industries, Inc. (also incorrectly sued herein as Columbia Tri-Star Motion Picture Group) ("Columbia"), Crystal Sky LLC ("Crystal"), Relativity Media, LLC ("Relativity"), Michael De Luca Productions, Inc. ("De Luca"), and Sony Pictures Entertainment Inc. ("SPE" and collectively with the other defendants, "Defendants") submit this memorandum of law in support of their motion to dismiss the complaint pursuant to Rules 12(b)(3) and (6) of the Federal Rules of Civil Procedure or, alternatively, to transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).[1]

## PRELIMINARY STATEMENT[2]

As an initial matter, this action should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue because plaintiffs Gary Friedrich Enterprises, LLC ("GFE") and Gary Friedrich ("Friedrich" and, together with GFE, "Plaintiffs") have wrongfully attempted to manufacture venue in this district through an assignment of Friedrich's claims to GFE on the eve of litigation. Apart from the formation of GFE as an Illinois limited liability company with a supposed address in the Southern District of Illinois six days before commencing this action, there is no relationship between any party in this action and this district. Alternatively, this action should be transferred to the Southern District of New York pursuant to

---

[1] Simultaneously herewith, Relativity is also separately moving to dismiss the Complaint as against it for lack of personal jurisdiction over it pursuant to Fed. R. Civ. P. 12(b)(2) and is submitting a separate memorandum of law limited to the jurisdictional issue. Plaintiffs have filed a notice of dismissal as to defendant Sony Corporation of America pursuant to Fed. R. Civ. P. 41(a)(1)(i).

[2] A copy of the complaint in this action (the "Complaint") is annexed to the accompanying Declaration of Alastair Wood dated June 7, 2007 ("Wood Decl.") as Exhibit A.

- 1 -

28 U.S.C. § 1404(a) where the supposed infringement and other allegedly wrongful actions took place.

Even if venue in this district were proper, the majority of Plaintiffs' claims should be dismissed as a matter of law. The gravamen of the Complaint is alleged copyright infringement related to the Ghost Rider character, but Plaintiffs have bloated their Complaint with every conceivable state law claim found in the tort hornbook. An "everything and the kitchen sink" approach is not permissible under the Copyright Act, which preempts all of Plaintiffs' state laws claims as duplicative of the rights within the scope of copyright. As a matter of law, these duplicative state law claims should be dismissed. Moreover, even if these claims were not preempted by the Copyright Act, most fail to state any legally cognizable claim whatsoever and should be dismissed for that reason as well.

## BACKGROUND[3]

This action stems from allegations of copyright infringement related to the popular Marvel Super Hero "Ghost Rider," which has appeared in comic books in different incarnations since the 1950s. The most recent incarnation was created in the 1960s and has since appeared in comic titles and, most recently, in a major motion picture starring Nicolas Cage. In the Complaint, Friedrich claims to have conceived, created and authored "Ghost Rider," Ghost Rider's alter ego "Johnny Blaze" and various other background characters. Compl. ¶¶ 7, 40-43. Friedrich further claims that he created the "origin story" describing Johnny Blaze's sale of his soul to the devil, the event which brought about Johnny Blaze's transformation into the supernatural creature known as Ghost Rider (the "Origin Story"). *Id.* ¶ 5. Plaintiffs allege that

---

[3] For the purposes of the Fed. R. Civ. P. 12(b)(6) aspects of this motion, the facts are taken from the Complaint and assumed to be true, and from the documents annexed to the Wood Declaration.

they hold the copyright to these works and that Defendants have, without permission and in violation of "their" copyrights, utilized, among others, the Ghost Rider character, the Johnny Blaze character and the Origin Story. *Id.* ¶¶ 22-84. Finally, Friedrich alleges that he assigned the rights he purportedly held in the works to GFE, an Illinois limited liability company created by Friedrich before commencing this action. *Id.* ¶¶ 13-14. Although Defendants vigorously contest Plaintiffs' allegations of copyright infringement and intend to demonstrate that the copyrights for the Ghost Rider comic (which includes the copyrights for the Ghost Rider character, background characters and Origin Story) are owned by Marvel, this motion is not intended to address those issues. Instead, by this motion, Defendants seek to streamline and simplify Plaintiffs' distended, 61-page Complaint containing claims that are not only preempted by the Copyright Act, but in most cases legally defective.

## ARGUMENT

### I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE IMPROPERLY ATTEMPTED TO MANUFACTURE VENUE IN THIS DISTRICT

Defendants move to dismiss the complaint under Fed. R. Civ. P. 12(b)(3) for improper venue. The only connection between any of the parties and the Southern District of Illinois is the result of a purported assignment by Friedrich of his alleged rights in the Ghost Rider character to GFE, an Illinois limited liability company. Compl. ¶ 13. This connection, however, was one created by Friedrich solely for the purpose of manufacturing venue in this district. As GFE's public filing with the Illinois Secretary of State reveals, it was created on March 29, 2007, only *six days* before the Complaint was filed. Wood Decl., Exh. B. Furthermore, the address for GFE listed in its filing – 518 North Main Street, Columbia, IL – consists of a two-story house which has been converted to an office building occupied by an accounting firm named Schorb and Schmersahl. Declaration on Sean P. Dees dated June 4, 2007

- 3 -

("Dees Decl.") ¶ 3.[4]  It is clear that GFE's "address" is a sham proffered solely for venue purposes.  There are no signs on the building listing GFE as a tenant or in any way connecting GFE to the premises. Dees Decl. ¶¶ 3-4.  Simply stated, the formation of GFE and the assignment of rights by Friedrich was nothing more than a cynical maneuver to fabricate venue in the Southern District of Illinois.

Although no cases in the Seventh Circuit appear to address the legitimacy of creation of venue by assignment, at least one district court has considered the issue and refused to allow it.  *See National Distillers and Chemical Corp. v. Dep't of Energy*, 487 F. Supp. 34 (D.C. Del. 1980).  There, National Distillers, a Virginia corporation, amended the certificate of incorporation of an inactive, wholly-owned Delaware subsidiary, changing the subsidiary's name to National Hydrocarbons, Inc. ("Hydrocarbons").  Less than one week later, National Distillers assigned various distillery operations to Hydrocarbons.  Hydrocarbons and National Distillers then filed suit against the Department of Energy (the "DOE") in Delaware based on Hydrocarbons' status as a Delaware corporation.  The DOE moved to dismiss, arguing that Hydrocarbons' only interest in the case resulted from the recent transfer made solely for the purpose of creating venue in Delaware and that venue was, therefore, improper.  The court held that "venue is not properly founded if it has been obtained by means of a collusive addition of a party." *Id.* at 36.  The court reasoned that, while "Congress gave plaintiffs the right to chose between one of several specifically listed potential districts" under 28 U.S.C. § 1391(e), "[i]t is also clear, however, that Congress did not intend to give plaintiffs the right to bring such suits in any district they might choose." *Id.*; *see also Exxon Corp. v. FTC*, 588 F.2d 895, 899 (3d Cir. 1978) (court may dismiss claims to prevent parties from "circumvent[ing] venue requirements"

---

[4] A copy of the Dees Declaration is annexed to the Wood Declaration as Exhibit C.

- 4 -

by using "ploy" of joining a plaintiff to obtain venue). Friedrich's formation of GFE and purported assignment of his alleged rights is a transparent forum-shopping ploy, and the Complaint should be dismissed for that reason alone.

## II.    IF THIS ACTION IS NOT DISMISSED FOR IMPROPER VENUE, IT SHOULD BE TRANSFERRED TO NEW YORK UNDER 28 U.S.C. § 1404(a)

If the Court determines not to dismiss this action as a result of Friedrich's procedural maneuvering, it should be transferred to the United States District Court for the Southern District of New York, where the majority of the events giving rise to this dispute actually occurred. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "In determining whether transfer is proper for the convenience of the parties and witnesses, the Court considers: (1) the plaintiffs' choice of forum; (2) the situs of material events; (3) the availability of evidence in each forum; and [sic] (4) the convenience to the witnesses of litigating in each forum; and (5) the convenience to the parties of litigating in each forum." *Deist v. Wash. Univ. Med. Ctr.*, 385 F. Supp. 2d 772, 773 (S.D. Ill. 2005) (J. Stiehl). While "the movant has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient," "[l]ess of a showing of inconvenience is needed for a § 1404(a) transfer than that for a forum non conveniens dismissal." *Edsall v. CSX Transportation Inc.*, No. 05-CV-903-WDS, 2006 WL 3302679, at *1 (S.D. Ill. Nov. 14, 2006) (J. Stiehl).

Although a plaintiff's choice of forum is generally given weight under § 1404(a), "[p]laintiff's choice of forum is given less weight where another forum bears a stronger relationship to the dispute." *Deist*, 385 F. Supp. 2d at 773. Here, none of the parties (save GFE) is organized in or maintains its principal place of business in the Southern District of Illinois.

- 5 -

Compl. ¶¶ 14-24. Friedrich resides in Missouri. Wood Decl. ¶ 5. The only connection between

any of the parties and the Southern District of Illinois is the result of the assignment by Friedrich

of his alleged rights in the Ghost Rider character to GFE on the eve of litigation. New York, in

contrast, has a much stronger connection to this action and will be a more convenient forum for

all parties. New York is: (1) where Ghost Rider was created; (2) where Marvel Entertainment,

Inc. maintains its headquarters and all its corporate documents reflecting its ownership of the

works; (3) where the alleged wrongdoing and infringement supposedly occurred; and (4) where

Friedrich supposedly pitched his property to Marvel's editor in chief at the time. Given the clear

connection of this action to New York, if the action is not dismissed it should be transferred to

the Southern District of New York.

### III.    PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED BECAUSE THEY ARE PREEMPTED BY THE COPYRIGHT ACT AND MANY FAIL TO STATE A VIABLE CLAIM

Section 301 of the Copyright Act of 1976, as amended (the "Copyright Act"), 17

U.S.C. § 301, preempts all state law claims that are "equivalent" to the exclusive rights protected

by federal copyright law. *Baltimore Orioles v. Maj. League Baseball Players Ass'n*, 805 F.2d

663, 677-78 n.26 (7th Cir. 1986). First, the work at issue must be fixed in a tangible medium and

come within the subject matter of copyright as specified in sections 102 and 103 of the Copyright

Act. Second, the right asserted must be equivalent to any of the rights specified in the Copyright

Act. *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996); *Baltimore Orioles,* 805

F.2d at 677.

The works at issue in this litigation, namely films, action figures, video games and

other products featuring the Johnny Blaze/Ghost Rider, Barton Blaze, Roxanne and Crash

Simpson characters (collectively the "Characters") and the Origin Story, are fixed in a tangible

medium, and fall within the subject matter of the Copyright Act. *See* 17 U.S.C. §§ 102(a),

- 6 -

103(a). Plaintiffs' state law claims are therefore preempted if the state law right Plaintiffs' assert

is "equivalent" to one granted under the Copyright Act. A right is "equivalent" to a copyright if:

(1) it is infringed by the mere act of reproduction, performance, distribution, or display; or (2) it

requires additional elements to make out a cause of action, but the additional elements do not

differ in kind from those necessary for copyright infringement. *Baltimore Orioles*, 805 F.2d at

677-78 n.26; *Stephen & Hayes Const. Inc. v. Meadowbrook Homes, Inc.*, 988 F. Supp. 1194,

1198 (N.D. Ill. 1998). Here, the state law rights Plaintiffs assert are all equivalent to rights under

the Copyright Act, and all these state law claims are therefore preempted.

       Additionally, even if these claims were not preempted by the Copyright Act, most

of Plaintiffs' state law claims simply fail to properly allege any legally cognizable cause of

action and must be dismissed for that reason as well.[5]

     A.    *Count II: Negligence (Marvel); Count IX Negligence (All Defendants)*

       Count II and Count IX allege that Defendants owed a duty to Plaintiffs to ensure

that unauthorized third parties did not "utilize the intellectual property rights of Plaintiff."

Compl. ¶¶ 97-101, 167-171. This assertion, though vague, can only refer to the allegedly

infringing products created by Defendants. Any supposed duties owed to protect Plaintiffs from

copyright infringement were, however, necessarily created under the Copyright Act. *See* 17

U.S.C. § 101, *et seq.*; *see also Watermark Publishers v. High Tech. Sys.*, No. 95-3839-IEG, 1997

---

[5] Analysis of state law claims in some cases involves a choice-of-law analysis. A federal court
deciding pendent state law claims or sitting in diversity applies the choice of law rules of the
state in which it sits. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). In
determining choice of law for tort actions, Illinois uses the "most significant relationship"
approach of the Restatement (Second) of Conflicts of Law. *Esser v. McIntyre*, 169 Ill.2d 292,
214 Ill.Dec. 693 (1996). In the Seventh Circuit, a "false conflict" as to the identity of substantive
law between competing jurisdictions renders it unnecessary to even address choice of law issues.
*See Barron v. Ford Motor Co.*, 965 F.2d 195, 197 (7th Cir.1992).

U.S. Dist. LEXIS 22512, at *15 (S.D. Cal. June 18, 1997) (negligence claim based on use of a copyrighted tourist map was preempted because "the only possible basis for a duty to protect another from copyright infringement – if such a duty can exist – is in copyright law; thus, the alleged existence of this duty is not an 'extra element.'").

Moreover, the assertion that these "duties" were "negligently" breached does not differentiate them from rights protected by copyright. Direct infringement under the Copyright Act is a strict liability violation. *Sony Corp. of America v. Univ. City Studios, Inc.*, 464 U.S. 417, 433 (1984). Ascribing a mental state of negligence to the underlying conduct does not change the cause of action so that it "differs in kind" from copyright infringement and thus does not remove it from the reach of preemption. *See, e.g., Dielsi v. Falk*, 916 F. Supp. 985, 992-93 (C.D.Cal.1996) (explaining that "recharacterization of the claim as one of 'negligence' does not add a legally cognizable additional element because a general claim for copyright infringement is fundamentally one founded on strict liability. The alteration of the required mental state does not add an 'additional element'"). Because Plaintiffs' "negligence" claims are nothing more than a recharacterization of their claims for copyright infringement with respect to conduct governed by the Copyright Act, they are preempted. *See Bridgeport Music, Inc. v. 11C Music*, 154 F. Supp. 2d 1330, 1334 -1335 (M.D. Tenn. 2001) (where "negligence claim...simply echoes the Copyright claims Plaintiffs asserted elsewhere" it was preempted); *Marvullo v. Gruner & Jahr AG & Co.*, No. 98 Civ. 5000(RLC), 2001 WL 40772, at *7 (S.D.N.Y. Jan. 17, 2001) (preempting a photographer's negligence claim simply restated his copyright infringement claim and was preempted). Counts II and IX should therefore be dismissed.

B.     *Count III: Accounting (Marvel); Count XXI: Accounting (All Defendants)*

Plaintiffs' state law accounting claims seek remuneration based on allegations that Defendants misappropriated Plaintiffs' work and licensed it to others to use. Of course, an

- 8 -

accounting is, in reality, just a remedy available if Plaintiffs are ultimately able to prevail on their claims. As such, accounting claims are preempted where, as here, they are based primarily on contentions of copyright infringement. *See, e.g., Montgomery v. eTreppid Technologies, LLC*, 2007 WL 879288, at \*1 (D.Nev. Mar. 20, 2007); *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 448 F. Supp. 2d 244, 257 (D.Mass. 2006) (copyright law displaced state law remedies of accounting arising out of allegations of copyright infringement); *Weber v. Geffen Records, Inc.*, 63 F.Supp.2d 458, 463 (S.D.N.Y. 1999) (accounting claim preempted by Copyright Act); *Arden v. Columbia Pictures Industries, Inc.*, 908 F. Supp. 1248, 1264 (S.D.N.Y. 1995) (accounting claim based on alleged misappropriation of copyrighted work preempted); *Motown Record Corp. v. George A. Hormel & Co.*, 657 F.Supp. 1236, 1241 (C.D. Cal.1987) (accounting claim rooted primarily upon contentions that defendants infringed upon Plaintiff's copyrighted works preempted). As such, Counts III and XXI must be dismissed.

        Even if Plaintiffs' claims for an accounting were not preempted, they also fail to state a viable claim. Under Illinois law, "[t]o state a claim for the equitable relief of an accounting, a plaintiff must allege the absence of an adequate remedy at law." *Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Syss.*, 428 F.3d 706, 715 (7th Cir. 2005). Here, an adequate remedy at law clearly exists under the Copyright Act. If Plaintiffs are ultimately able to prevail on their claims of copyright infringement or are found to jointly hold the copyright at issue, Section 504(b) of the Copyright Act permits recovery of profits and only requires that

Plaintiffs prove the gross revenues of the infringing parties. 17 U.S.C. § 504.[6] Counts III and

XXI should therefore be dismissed for this reason as well. *See Collier v. Murphy*, No. 02-2121,

2003 WL 1606637, at *4 (N.D. Ill. Mar. 26, 2003) (dismissing accounting claim as "surplusage"

and "merely [a] claim[] for relief based on his substantive counts").

> C.    *Count V: Tortious Interference With Prospective Business Expectancy (Marvel)*

Count V alleges that Marvel tortiously interfered with prospective business

advantage because Friedrich had a reasonable expectation of entering into future business

relationships with unnamed, unidentified, theoretical third parties to create derivative works and

other projects based on the Characters and Origin Story. Compl. ¶¶ 112-17. Claims of tortious

interference with prospective business expectancy are preempted where, as here, they are

"predicated on exactly the same conduct as that underlying the copyright counts." *FASA Corp.*

*v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1361 (N.D. Ill. 1994); *see also Balsamo/Olson*

*Group, Inc. v. Bradley Pl. Ltd. Partnership*, 950 F. Supp. 896, 899 (C.D. Ill. 1997) ("With

respect to both the state law tortious interference claim and the copyright infringement claim it is

the act of unauthorized publication which causes the violation."). Plaintiffs' tortious interference

claim simply restates a copyright infringement claim by suggesting that Plaintiffs would have,

---

[6] The infringing party has the burden to demonstrate what portion of gross revenues do not constitute profits from the copyrighted work:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work. 17 U.S.C. § 504.

- 10 -

and could have, used the rights upon which Defendants allegedly infringed. As such, Count V

must be dismissed.

> D.    Count VII: State Law Misappropriation of Characters and of Right to Control
>       Use of Same (Hasbro and Take Two); Count X: Misappropriation of Johnny
>       Blaze/Ghost Rider Personas and Related Characters and Origin Story and Right
>       to Control Use of Same (All Defendants); Count XVII: Civil Conspiracy (Hasbro,
>       SPE, Marvel, Crystal Sky, De Luca and Relativity)

In Counts VII and X, Plaintiffs allege that Defendants misappropriated the

Characters and the Origin Story in a manner not based on any copyright work, storyline, or

"other reduction to tangible form." Compl. ¶¶ 148, 182. Plaintiffs apparently attempt to couch

their allegations in this manner to distinguish the appropriation of copyrighted content from

appropriation of intangible uncopyrighted elements such as "ideas" and "originality" associated

with the copyrighted works. Compl. ¶¶ 145, 179. Such a distinction, however, does not salvage

Plaintiffs' misappropriation claims from the broad preemptive reach of the Copyright Act.

While "ideas-as opposed to their expression-are not eligible for copyright

protection," "the Copyright Act's preemptive reach encompasses state law claims concerning

uncopyrightable material." *Vaughn v. Kelly*, No. 06 C 6427, 2007 WL 804694, at *3 (N.D. Ill.

Mar. 13, 2007) (internal quotations and citations omitted). *See also National Basketball Assoc.

v. Motorola, Inc.*, 105 F.3d 841, 849 (2d Cir. 1997) ("Copyrightable material often contains

uncopyrightable elements within it, but Section 301 preemption bars state law misappropriation

claims with respect to uncopyrightable as well as copyrightable elements"); *U.S. ex. rel. Berge v.

Bd. of Trustees of the Univ. of Al.*, 104 F.3d 1453, 1463 (4th Cir.1997); *Panizza v. Mattel, Inc.*,

No. 02 CV 7722(GBD), 2003 WL 22251317, at *3 (S.D.N.Y. Sept. 30, 2003) (collecting cases

holding that for preemption purposes "the Copyright Act applies with equal force to ideas").

Plaintiffs' allegations that Defendants' misappropriated "ideas" and "originality" are therefore

clearly within the scope of protection of § 301 of the Copyright Act and these misappropriation

LEGAL_US_E # 75083952.13

claims are thus preempted. *Vaughn*, 2007 WL 804694, at *3. Counts VII and X must therefore be dismissed.

In Count XVII, Plaintiffs allege that certain Defendants conspired to commit the tort of misappropriation by "participating in a common scheme to use Spotlight Work, the Characters and/or the Origin Story and/or the originality contained therein for their own commercial advantage." Compl. ¶ 223. A "cause of action for civil conspiracy exists only if one of the parties to the agreement commits a tort in furtherance of the agreement." *Higher Gear Group, Inc. v. Rockenbach Chev. Sales, Inc.*, 223 F. Supp. 2d 953, 969 (N.D. Ill. 2002). However, where the tort allegedly committed in furtherance of the agreement is preempted by the Copyright Act, so too is the civil conspiracy claim. *Id.* at 969 (finding civil conspiracy claim is preempted by Copyright Act because the act in furtherance of the conspiracy – tortious interference – was preempted.) Here, the tort Defendants allegedly conspired to commit (the misappropriation of the Characters, personas and Origin story) is clearly preempted by the Copyright Act and, thus, so too is Count XVII. Count XVII must therefore be dismissed.

E.     *Count XIX: Unjust Enrichment (Marvel)*

Plaintiffs' unjust enrichment claim is likewise preempted because it simply seeks compensation for the alleged misappropriation. Plaintiffs essentially allege that they are entitled to the money Defendants earned through the reproduction, distribution, performance and display of the Characters and Origin Story. Compl. ¶ 233. "An unjust enrichment claim based on the alleged misappropriation of material within the scope of the Copyright Act is preempted." *Vaughn*, 2007 WL 804694, at *3. *See also Stephen & Hayes Const. Inc. v. Meadowbrook Homes, Inc.*, 988 F. Supp. 1194, 1200 (N.D. Ill. 1998) (plaintiffs' enrichment claim was qualitatively the same as a copyright infringement claim where it claimed that the defendant profited by reproducing and copying work subject to copyright protection). Moreover, because

- 12 -

Plaintiffs' unjust enrichment claim is "merely [a] claim[] for relief based on his substantive

counts" it is "surplusage and unnecessary as [a] separate count[]." As such, Count XIX must be

dismissed. *Collier*, 2003 WL 1606637, at *4 .

    F.    *Count XI: Unauthorized Use of Public Recognition and Publicity of the Characters (All Defendants); Count XX: Tortious Interference with Friedrich's Right to Publicity (All Defendants)*

    Plaintiffs assert two claims with regard to Friedrich's right to publicity as the

alleged creator of the Character and author of the Origin Story. In Count XI, Plaintiffs allege

that Defendants made unauthorized use of the Characters in a way that prevented the creation of

a publicly recognizable Friedrich persona. Compl. ¶¶ 186-91. However, allegations that

Defendants' alleged infringement somehow prevented Friedrich from becoming famous simply

do not constitute a recognized claim under the law of any state. In complete contradiction of the

allegations in Count XI that Defendants prevented Friedrich from creating a persona, Plaintiffs

allege in Count XX that Friedrich had "established identity and persona" as the creator of the

Ghost Rider Characters, Origin Story and Spotlight Work and that Defendants tortiously

interfered with Friedrich's right to publicity with respect to that persona by producing products

without "crediting or acknowledging Friedrich's association" and "without Plaintiff's

participation or approval." Compl. ¶¶ 237-43.

    Regardless of how Plaintiffs couch Friedrich's "right to publicity" claims, the

right to publicity is preempted where it occurs by acts of reproduction, performance, or display

of an allegedly copyrighted work. *Baltimore Orioles v. Major League Baseball Players Ass'n*,

805 F.2d 663, 674 (7th Cir. 1986). Although Plaintiffs seek to recover based on Friedrich's right

to publicity as an alleged author, these claims are both predicated on conduct that would

constitute copyright infringement. *Id.* at 677; *see also Ahn v. Midway*, 965 F. Supp. 1134, 1138

(N.D. Ill. 1997) (right to publicity is equivalent to one of the rights in section 106 of the

- 13 -

Copyright Act because it is infringed by the act of distributing, performing or preparing derivative works). Counts XI and XX must therefore be dismissed.

　　　　Even were these claims not preempted, Plaintiffs simply have no right of publicity in the Ghost Rider character, Origin Story or Spotlight Work. The right of publicity protects only an individual's identity. *See* Illinois Right of Publicity Act, 765 ILCS 1075/10 ("The right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity").[7] Here, Plaintiffs do not allege that Defendants in any way used Friedrich's identity. Instead, Plaintiffs allege that Defendants used the Ghost Rider character, and such character is allegedly linked in the public's mind to Friedrich. While courts have held that "[i]f the use of a fictional character also evokes the identity of the actor who played that character, he may challenge that use," "[c]ourts have generally been careful, however, to draw the line between the character's identity and the actor's, siding with plaintiffs only when it is shown that the two personalities are inseparable in the public's mind." *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 625 (6th Cir. 2000) (claim by actor against toy manufacturer and movie production company alleging violations of, *inter*

---

[7] Friedrich alleges to have assigned to GFE the rights to "Gary Friedrich's own name, persona and the public recognition of Johnny Blaze/Ghost Rider and the other characters Friedrich has created." Compl. ¶ 13. Because GFE is an Illinois resident alleging violations of its right to publicity in Friedrich, Illinois would have the "most significant relationship" and Illinois law would apply. However, the result would be the same under Missouri law (where Friedrich resides) or New York law (where the alleged violations occurred). *See C.B.C. Distribution and Marketing, Inc. v. Major League Baseball Adv. Media, L.P.*, 443 F. Supp. 2d 1077, 1084-85 (E.D. Mo. 2006) (under Missouri law, "the elements of a right of publicity action include: (1) That defendant used plaintiff's name as a symbol of his identity (2) without consent (3) and with the intent to obtain a commercial advantage."); N.Y. Civ. Rights Law § 51 (McKinney 2007) ("Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action . . . to prevent and restrain the use thereof; and may also sue and recover damages for any injuries. . . ).

*alia*, actor's state-law "right of publicity" by marketing without his permission an action figure

of the character he played in a movie).

Those cases in which courts have held that the personalities of the individual and

the fictional character are inseparable are clearly distinguishable from the claims asserted here.

Here, there are no allegations that the Ghost Rider character (a supernatural, motorcycle rider,

with only a flaming skull for a head) has somehow merged with the identity or personality of

Friedrich (the writer of comic books), nor are there any allegations that these "personalities" are

inseparable. *Cf., e.g., Wendt v. Host Int'l Inc.*, 125 F.3d 806 (9th Cir. 1997) (reversing summary

judgment against two actors from the TV series *Cheers* who challenged the use of animatronic

"Cliff" and "Norm" robots modeled after their characters in *Cheers*-themed airport bars);

*McFarland v. Miller*, 14 F.3d 912 (3d Cir. 1994) (reversing summary judgment against George

McFarland, who played "Spanky" in *Our Gang*, in suit against owner of the restaurant "Spanky

McFarland's"); *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir.1974)

(holding that slightly altered picture of well-known driver's race car was distinctive enough to

suggest the plaintiff's identity, although the driver could not be seen); *Ali v. Playgirl, Inc.*, 447 F.

Supp. 723, 727 (S.D.N.Y.1978) (finding drawing of a nude, black boxer identified as "The

Greatest" evocative of Muhammad Ali's identity, even though the face was not clearly his and

the figure was labeled "Mystery Man"); *Hirsch v. S.C. Johnson & Son, Inc.*, 90 Wis.2d 379, 280

N.W.2d 129, 137 (1979) (finding use of the name "Crazylegs" for female shaving gel violated

the right of publicity of a professional football player known by that appellation).

Additionally, "recognizing the serious First Amendment implications inherent in

regulating artistic and creative expression, the [Illinois Right of Publicity] Act specifically

- 15 -

excludes such endeavors from its reach." *Collier*, 2003 WL 1606637, at *2 . The Illinois Right

of Publicity Act provides:

> (b) This Act does not apply to the following:

> (1) use of an individual's identity in an attempt to portray, describe, or
> impersonate that individual in a live performance, a single and original work of
> fine art, play, book, article, musical work, film, radio, television, or other audio,
> visual, or audiovisual work, provided that the performance, work, play, book,
> article, or film does not constitute in and of itself a commercial advertisement for
> a product, merchandise, goods, or services.

> * * *

> (4) promotional materials, advertisements, or commercial announcements for a
> use described under paragraph (1) . . .of this subsection. 765 ILCS 1075/35(b)

As such, the Ghost Rider movie and any other artistic or creative endeavors which Friedrich

complain somehow violated his right of publicity in Ghost Rider are expressly exempted from

the Illinois Right of Publicity Act. *See Collier*, 2003 WL 1606637, at *2 (dismissing plaintiff's

allegations on basis that Illinois Right of Publicity Act exempts artistic works, including

television production, from its coverage). Accordingly, Counts XI and XX should be dismissed.

G.    *Count XII: Conversion (Marvel); Count XIII: Trespass to Chattels (Marvel)*

    Plaintiffs assert that Marvel converted and trespassed on their copyright in the

Spotlight Work, the Origin Story and Characters. Compl. ¶¶ 192-96; 197-201. The same

preemption analysis applies to these claims because these causes of action differ only with

respect to damages: "The defining element of conversion, the one that distinguishes it from a

trespass to chattels, is the extent of interference with the owner's property rights." *In re StarLink

Corn Prod. Liability Lit.*, 212 F. Supp. 2d 828, 844 (N.D.Ill. 2002).

    Section 301 of the Copyright Act preempts claims for conversion or trespass to

chattels "where the plaintiff alleges only the unlawful retention of its intellectual property rights

and not the unlawful retention of the tangible object embodying its work." Paul Goldstein,

Copyright, Patent, Trademark and Related Stated Doctrines 777 (3d ed. 1993). Here, Plaintiffs

only allege interference in the possession of intangible intellectual property rights, as opposed to

tangible items. The conversion and trespass claims are therefore preempted. *See Pritikin v.*

*Liberation Publications, Inc.*, 83 F. Supp. 2d 920, 922-23 (N.D. Ill. 1999); *accord United States*

*ex rel. Berge v. Bd. of Trustees of Univ. of Al.*, 104 F.3d 1453, 1463-64 (4th Cir. 1997)

(conversion claim preempted with respect to allegations that ideas in student thesis were stolen);

*Daboub v. Gibbons*, 42 F.3d 285 (5th Cir. 1995) (conversion claim preempted where members of

the rock and roll band claimed that the another band stole song); *c.f.*, *Natkin v. Winfrey*, 111 F.

Supp. 2d 1003, 1014 (N.D. Ill. 2000) (allegations that defendant converted plaintiff's property by

taking physical possession of photograph negatives not preempted). Counts XII and XIII must

therefore be dismissed.

      Moreover, Plaintiffs' claims for conversion and trespass to chattels fail due to the

very nature of a copyright, which in this case prevents Plaintiffs from alleging they were actually

deprived of the use of the Ghost Rider character. "The Supreme Court of Illinois has defined

conversion as any unauthorized act, which deprives a man of his property permanently or for an

indefinite time and has stated that the essence of conversion is the wrongful deprivation of one

who has a right to the immediate possession of the object unlawfully held." *DIRECTV, Inc. v.*

*Massey*, No. 03-492, 2004 WL 1194744, at *4 (N.D. Ill. May 27, 2004) (internal quotations

omitted); *Zurich Capital Markets, Inc. v. Coglianese*, 388 F. Supp. 2d 847, 869 (N.D. Ill. 2004)

("A conversion is any unauthorized act that deprives a person of his or her or its property

permanently or for an indefinite time."); *In re Thebus*, 108 Ill.2d 255, 91 Ill.Dec. 623, 625

- 17 -

(1985).[8] Similarly, "to state a claim for trespass to chattel, [plaintiff] must show that [defendant] intentionally dispossessed him of his chattel and that the dispossession resulted in damages." *Richmond ex rel. Liberty Institute Trust v. National Institute of Certified Estate Planners*, No. 06-1032, 2006 WL 2375454, at *6 (N.D. Ill. Aug. 15, 2006). Trespass to chattel differs from conversion only as to damages that are recoverable: "In trespass the plaintiff may recover for the diminished value of his chattel because of any damage to it, or for the damage to his interest in its possession or use. Usually, although not necessarily, such damages are less than the full value of the chattel itself. In conversion the measure of damages is the full value of the chattel, at the time and place of the tort." Restatement (Second) of Torts § 222A, comment c; *see also Antonelli v. Sherrow*, 2005 WL 2338813, at *10 -11 (N.D. Ill. Sept. 21, 2005) (internal citations omitted) ("The defining element of conversion, the one that distinguishes it from a trespass to chattels, is the extent of interference with the owner's property rights. If the damage is minor, in duration or severity, plaintiff may only recover for the diminished value.").

Here, the Complaint simply does not allege that Plaintiffs were deprived or dispossessed of the Ghost Rider character. While Marvel freely admits that, as the valid holder of the Ghost Rider copyright, it would defend its intellectual property rights though court action to prevent Plaintiffs from using the Ghost Rider character without Marvel's permission, there is nothing Marvel has done, or could do, to prevent Plaintiffs from using the Ghost Rider character outside of bringing an action seeking a court order. Plaintiffs are forced to concede this fact as their Complaint fails to allege that Plaintiffs were deprived or dispossessed of the Ghost Rider

---

[8] It appears that Illinois law will apply as the alleged owner of the copyright, GFE, was allegedly deprived of "its" property in Illinois. *See FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 302 (7th Cir. 1990). However, there does not appear to be any difference between substantive state law which would alter the analysis: "[t]he principles of what conduct constitutes conversion are universal." *P.M.F. Services, Inc. v. Grady*, 703 F. Supp. 742, 743 n.1 (N.D. Ill.1989).

character. The failure of the conversion and trespass to chattels claims are not surprising given the very nature of copyrights and intellectual property in general. As the Supreme Court explained in *Dowling v. United States*, 473 U.S. 207 (1985), "interference with copyright does not easily equate with theft, conversion, or fraud" because, though an "infringer invades a statutorily defined province guaranteed to the copyright holder alone," he does not assume physical control over the copyright; nor does he wholly deprive the owner of its use." *Id.* at 217 (discussing whether the statute prescribing criminal penalties for interstate transportation of goods "stolen, *converted* or taken by fraud," was applicable to copyright infringement) (emphasis added). *See also DirecTV, Inc. v. Vanderploeg*, No. 04 C 3883, 2005 WL 497797, at *3 (N.D. Ill. Mar. 2, 2005) (dismissing conversion claim based on allegations that defendants stole satellite TV signals because plaintiff "has not alleged that it was unable to access or control its signals, or that its transmissions to lawful subscribers were in any way affected by [defendant's] alleged wrongful interception"). The same is true here because Plaintiffs were not deprived of the use of the Ghost Rider character either in part (trespass to chattels) or in whole (conversion). As such, Counts XII and XIII should be dismissed for this reason as well.

     H.    *Count XIV: Illinois Uniform Deceptive Trade Practices Act and Unfair Competition Under Illinois Common Law (All Defendants); Count XV: Unfair Competition Under the Illinois Consumer Fraud and Deceptive Businesses Act (Hasbro, SPE, Marvel, "the Movie Defendants" and Take-Two)*

     Plaintiffs' claims of unfair competition under Illinois common law, the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFDBPA") allege that Defendants have caused "confusion and misunderstanding" regarding the ownership of Characters and Origin Story in trade, commerce and to the consumer public. Such claims are commonly termed a "reverse-passing off" claim, whereby plaintiff alleges that defendant passes off a plaintiff's work as his own.

- 19 -

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003). "Reverse

passing off" claims are preempted by Copyright Act where, as here, the state law claims

ultimately rest on the mere act of unauthorized copying. *FASA Corp. v. Playmates Toys, Inc.*,

869 F. Supp. 1334, 1363 (N. D. Ill. 1994); *Higher Gear Group, Inc. v. Rockenbach Chevrolet*

*Sales, Inc.*, 223 F. Supp. 2d 953, 959 (N.D. Ill. 2002) (computer software seller's common law

unfair competition claim against competitor was preempted where crux of plaintiff's reverse

passing off claim (that competitor copied plaintiff's software) was based on the same conduct

necessary to support copyright infringement claim).

Moreover, the same result applies regardless of whether these claims are styled

under common law, UDTPA or CFDBPA. *Tensor Group v. Global Web Syss., Inc.*, No.96

C4606, 1999 WL 617818 (N.D. Ill. Aug. 11, 1999) (dismissing plaintiff's claims of unfair

competition under common law, CFDBPA and UDTPA as preempted where plaintiff alleged

that defendant, by copying plaintiff's work, misrepresented ownership over the works); *Natkin v.*

*Winfrey*, 111 F. Supp. 2d 1003, 1014 (N.D. Ill. 2000) (dismissing as preempted deceptive

business practices claims under CFDBPA and UDTPA and Illinois common law unfair

competition claims alleging photographers expropriated photos belonging to plaintiff by using

photos in a book). Nor can Plaintiffs' allegation that Defendants "deceptively" caused confusion

(Compl. ¶ 204) save their UDTPA or CFDBPA claims from the scope of preemption. Courts

have routinely held that the inherent deception that accompanies copyright infringement is not

enough to prevent preemption under the Copyright Act. *Marobie-Fl, Inc. v. Nat'l Ass'n of Fire*

*Equip. Dists. and Northwest Nexus, Inc.*, 983 F. Supp. 1167, 1180 (N.D. Ill. 1997); *FASA Corp.*,

869 F. Supp. at 1363 ("In the case at bar, plaintiff has made no allegations suggesting that

[defendant] deceived the public or business partners in any other way than allegedly copying

- 20 -

characters and other elements, and selling, promoting or licensing them."); *LaCour v. Time Warner*, No. 99 C 7105, 2000 WL 688946, at *7-8 (N.D. Ill. May 24, 2000) (plaintiff's allegations under UDTPA and CFDBPA that defendants failed to credit plaintiff as author do not amount to the affirmative misrepresentations about the origin of the music, and represent nothing more than the inherent misrepresentations that accompanies unauthorized copying and reproduction of another's copyrighted work); *Goes Lithography Co. v. Banta Corp.*, 26 F. Supp. 2d 1042, 1046 (N.D. Ill. 1998) (plaintiff's allegations of unfair competition under UDTPA and common law unfair competition were preempted where defendant allegedly copied plaintiff's copyrighted border, because inherent misrepresentation that accompanies the unauthorized copying and reproduction of another's copyrighted work in a reverse passing off claim does not remove claims from Copyright Act). Counts XIV and XV must therefore be dismissed

Furthermore, Count XV should be dismissed because Plaintiffs lack standing to bring a claim under CFDBPA. To make a case under CFDBPA, "the plaintiff must prove that the defendant (1) engaged in a deceptive act or practice, (2) with the intent that a party (including the consumer) rely on the deception, (3) while engaged in trade or commerce." *Pritikin v. Liberation Publications, Inc.*, 83 F. Supp. 2d 920, 924 (N.D.Ill. 1999) (citing *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 970 (7th Cir.1999). In *Pritikin*, a professional photographer brought suit when his photograph was published in a magazine without attribution or permission. *Id.* Next to the photograph in the magazine was a solicitation to participate in online poll sponsored by the auto manufacturer SAAB. Plaintiff alleged "that the defendants (1) committed a deceptive act by concealing the source of the photograph and placing the poll and the Saab sponsorship adjacent to it to convey the false impression that the defendants had a right to the photograph, and (2) intended that consumers rely on this false impression." *Id.* The court

- 21 -

however held that the plaintiff lacked standing to bring the claim under the CFDBPA and, as such, dismissed the claim. The court reasoned that:

> It is hard to see how the injury Pritikin claims is traceable to the conduct as challenged under Consumer Fraud Act [CFDBPA]. If the injury is lost monies that would have been due him had authorization to reproduce the photograph been asked and given, how is that loss caused by consumers relying on a false impression that the defendants had a right to reproduce the photograph? Likewise with any reputational injury. If Pritikin were a famous photographer who had produced an identifiable image widely associated with him, like an Ansel Adams wilderness picture, then use of such a photograph might be a deceptive act, operating as a sort of phoney endorsement ("Pritikin wants you to buy Saab and participate in The Advocate's poll."). But while Pritikin may be "a professional photographer, nationally recognized for having captured on film some of the most important people and events in recent history," which I must assume to be true for the purposes of the motion, he does not allege that he has the appropriate sort of prominence or that the photograph is associated with him in the public mind. The requisite causal link is therefore lacking. Pritikin accordingly has no standing to bring the Consumer Fraud Act [CFDBPA] claim." *Id.*

The same is true here. The complaint does not allege, and cannot, that Friedrich is so associated with the Ghost Rider character in the public's mind that the mere use of the character implies that Friedrich has endorsed the movie, the video game or the various action figures associated with the character. As such, Friedrich's claim for violations of CFDBPA must be dismissed.

    *I.*    *Count IV: Waste (Marvel)*

        Count IV of the Complaint alleges that Defendants failed to properly utilize the Ghost Rider character and that, as a result, Friedrich has been harmed by the underutilization of his copyright, which constitutes "waste." This claim is frivolous. Defendants have not been able to locate a single case in which a court has recognized "waste of a copyright" as claim for which relief can be granted. Count IV should therefore be dismissed.

- 22 -

## IV.    PLAINTIFFS' LANHAM ACT CLAIM, COUNT XVI, IS LEGALLY DEFECTIVE

Plaintiffs' Lanham Act claim is simply a misapplication of the Lanham Act.  The Lanham Act, 15 U.S.C. 1125 § 43(a), prohibits persons from using false or misleading designations as to the origin of any goods.  However, the Supreme Court has explained that the phrase "origin of the goods" in the Lanham Act refers to the "producer of goods, not the author of any idea, concept, or communication in those goods."  *Dastar Corp v. Twentieth Cent. Fox Film Corp.*, 539 U.S. 23, 37 (2003).  Lanham Act liability only attaches for misrepresentations about who manufactured the physical product.  *Id.*  Here, Plaintiffs do not contest that Defendants themselves produced (or were the "origin" of) the products they sold, advertised and promoted; nor do they allege that Defendants bought some of the Plaintiffs' products and merely repackaged them as their own.  Compl. ¶ 217.  Instead, Plaintiffs seek relief under the Lanham Act because Defendants supposedly falsely claimed ownership over the "originality" and "ideas" embodied in products Defendants produced.  Compl. ¶ 218.  These are precisely the type of allegations that the Supreme Court held in *Dastar* did not state a viable Lanham Act claim.  Count XVI must therefore be dismissed.

Moreover, the Supreme Court has "caution[ed] against misuse or over-extension" of trademark and related protections into areas traditionally occupied by patent or copyright. *Dastar*, 539 U.S. at 34 (quoting *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001)).  The Lanham Act was not intended to create a "species of perpetual . . . copyright," (*Eldred v. Ashcroft*, 537 U.S. 186, 208 (2003)), and Section 43(a) does not have boundless application as a remedy for unfair trade practices."  *Dastar Corp v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) (quoting *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974)).  Thus, to the extent that Plaintiffs are attempting to secure a remedy for

- 23 -

infringement of copyrighted materials under the Lanham Act, the claim must be dismissed because the Copyright Act is the only avenue to bring such claims. Allowing a cause of action against Defendants for alleged misrepresentations that they originated the creative work conveyed by their products, packaging, or promotion of the characters "would create a species of mutant copyright law that limits the public's federal right to copy and to use expired copyrights." *Dastar*, 539 U.S. at 34 (citing *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 165 (1989)).

Furthermore, courts in the Seventh Circuit have found Lanham Act claims "redundant and unnecessary" where a copyrighted work is at issue, and have dismissed Lanham Act claims after a preemption-like analysis. See, e.g., *Tensor Group v. Global Web Syss., Inc.*, No.96 C 4606, 1999 WL 617818, at *3 (N.D. Ill. Aug. 11, 1999) ("while Tensor's Lanham Act claim is based in federal law and therefore not technically 'preempted,' . . . we agree . . . that relief under the Lanham Act claim is redundant and unnecessary when a product is allegedly copyrighted."); *LaCour v. Time Warner*, No. 99 C 7105, 2000 WL 688946, at *3-5 (N.D. Ill. May 24, 2000) (noting that the Copyright Act was interpreted by courts to limit plaintiff's right to redress for reverse-passing off under the Lanham Act, and finding plaintiff's Lanham Act claim preempted); *Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1014 (N.D. Il. 2000) (applying state law preemption analysis to Lanham Act claims where plaintiff alleged defendant expropriated photos for its book); *Mist-On Sys. Inc. v. Gilley's European Tan Spa*, 303 F. Supp. 974, 981 (W.D.Wis. 2002) (Lanham Act claim "preempted" where one salon accused another salon of copying their "Frequently Asked Questions" sheet because plaintiff cannot recover under the Lanham Act for the same alleged conduct upon which copyright infringement is based). For all of these reasons, Plaintiffs Lanham Act claims should be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion pursuant to

Fed. R. Civ. P. 12(b)(3) to dismiss Plaintiffs Complaint in its entirety or alternatively grant

Defendants motion to transfer pursuant to 28 U.S.C. § 1404(a). If the Court decides to retain the

action, the Court should dismiss Plaintiffs' state law claims as described above pursuant to Fed.

R. Civ. P. 12(b)(6).

Dated:  June 8, 2007                    Respectfully Submitted,

                                        MARVEL ENTERTAINMENT, INC. MARVEL
                                        STUDIOS, INC., MARVEL CHARACTERS, INC.,
                                        HASBRO, INC., TAKE-TWO INTERACTIVE
                                        SOFTWARE, INC., COLUMBIA PICTURES
                                        INDUSTRIES, INC. CRYSTAL SKY LLC,
                                        RELATIVITY MEDIA, LLC, MICHAEL DE LUCA
                                        PRODUCTIONS, INC., SONY PICTURES
                                        ENTERTAINMENT INC.


                                        By:     ___/s/ Steven T. Catlett_____
                                                Steven T. Catlett
                                                One of Their Attorneys
                                                Email: stevecatlett@paulhastings.com
                                                PAUL, HASTINGS, JANOFSKY &
                                                WALKER LLP
                                                191 North Wacker Drive
                                                Chicago, IL 60606
                                                Telephone: (312) 499-6015
                                                *Attorneys for Defendants*

- 25 -

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GARY FRIEDRICH ENTERPRISES, LLC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No. 07-CV-230-WDS |
| MARVEL ENTERPRISES, INC., et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant Relativity Media, LLC's (Relativity) motion to dismiss for lack of jurisdiction (Doc. 29), to which plaintiffs have filed a response (Doc. 57) and defendants a reply (Doc. 61). Also before the Court is defendants' motion to dismiss or to transfer venue (Doc. 31), to which plaintiffs have filed a response (Doc. 62) and defendants a reply (Doc. 70).

## BACKGROUND

Plaintiffs filed a 21-count complaint (Doc. 3) in this Court alleging, *inter alia*, that defendants, in making a 2007 feature length film entitled "Ghost Rider," infringed plaintiffs' copyrights to the Ghost Rider comic book character and that character's foundation story. Plaintiff Gary Friedrich Enterprises LLC (GFE) is an Illinois Limited Liability Company, with its principal place of business in the Southern District of Illinois.[1] Plaintiff Gary Friedrich resides in Arnold, Missouri. Four of the defendants maintain their principal places of business in

---

[1] Gary Friedrich created GFE and assigned his alleged rights in the Ghost Rider character to GFE. Shortly after Friedrich created GFE, they filed their complaint in this case.

New York, five in California, and one in Rhode Island.[2]

## ANALYSIS

### I.    Defendant Relativity's Motion to Dismiss

Relativity moves this Court to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(2) because it is not "conducting business" within this district and is, therefore, shielded from this Court's exercise of personal jurisdiction. Defendant Relativity claims that it had "no role in the creation, production, distribution, exhibition or licensing of the Picture and has no rights in the Picture." (Doc. 30). Plaintiffs argue that Relativity conducted business in this district by arranging financing on the project for Sony Pictures and by being compensated and given a presentation credit in return. In fact, the record shows that the movie is being presented "in association with" defendant Relativity, therefore persons within this district purchasing a Ghost Rider movie ticket or a DVD could readily see that defendant Relativity conducts business in this district. Therefore, the Court **FINDS** that defendant Relativity is conducting business in this district such that it (like its co-defendants in this case) is subject to personal jurisdiction in this district.

### II.    Defendants' Motion to Dismiss

Defendants claim that Friederich assigned his allege rights in the Ghost Rider character to GFE solely for the purpose of creating venue in this district. Defendants argue that plaintiff's attempt to establish venue "by assignment" warrants dismissing the case. Defendants do not

---

[2] New York: (1) Marvel Enterprises, Inc., (2) Marvel Entertainment, Inc., and (3) Take-Two Interactive Software, Inc., are Delaware corporations with their principal places of business in the state of New York. (4) Sony Corporation of America is a New York Corporation with its principal place of business in New York. California: (1) Marvel Studios, Inc. is a Delaware corporation with its principal place of business in California. (2) Sony Pictures Entertainment, Inc. and (3) Columbia Pictures Industries, Inc., are Delaware corporations with principal places of business in Culver City, California. (4) Crystal Sky, LLC, is a California corporation with its principal place of business in Los Angeles, California. (5) Relativity Media, LLC, is a California limited liability corporation with its principal place of business in West Hollywood, California. Rhode Island: Hasbro, Inc. is a Rhode Island corporation with its principal place of business in Pawtucket, Rhode Island.

cite, and the Court has not found, any controlling authority requiring the Court to follow these propositions. Therefore, the Court finds that plaintiffs' method of attempting to create venue was not invalid.

### III.    Defendants' Motion to Transfer

The defendants also seek transfer of venue pursuant to 28 U.S.C. § 1404(a), which provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Transfer is appropriate under § 1404(a) where the moving party demonstrates that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 n.3 (7th Cir. 1986); *Dulaney v. United States*, 472 F. Supp.2d 1085, 1086 (S.D. Ill. 2006).

### A.    Venue in Transferor District

Defendants have met the first element, venue in this district. Under 28 U.S.C. § 1391(a), venue is proper in: (1) a judicial district where any defendant resides, if all defendants reside in the same State. For purposes of venue, a defendant corporation is deemed to reside in any judicial district where it is amendable to personal jurisdiction. 28 U.S.C. § 1391(a); *Janmark v. Ready*, 132 F.3d 1200, 1203 (7th Cir. 1997). Under the Illinois long arm statute, 735 ILCS 5/2-209(c), jurisdiction extends to the limits of the Constitution and a non-resident can submit to jurisdiction through the acts of an agent. 735 ILCS 5/2-209(a). To be subject to jurisdiction, federal due process requires "certain minimum contacts with the forum state" such that "maintenance of the suit does not affect traditional notions of fair play and substantial justice."

3

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

In the present case, plaintiffs have established constitutionally sufficient minimum contacts in Illinois by showing that each defendant conducts business within this district. (Doc. 3). In deciding a motion to dismiss for want of improper venue, the Court must accept all well-pleaded facts as true, unless controverted by the defendants' affidavits, and resolve any factual disputes in favor of the plaintiffs. *See Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988); *Turncock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

Only defendant Relativity has challenged plaintiffs' assertion that defendants are subject to personal jurisdiction in this district. Therefore, the Court takes plaintiffs' well-pleaded facts, establishing that the remaining defendants are subject to personal jurisdiction in this district, as true. Although Relativity has challenged the Court's jurisdiction, the Court **FINDS** that Relativity is subject to personal jurisdiction in this district because it conducts business here.[3] Because it is subject to personal jurisdiction in this district, venue is also appropriate here.

**B.    Venue and Jurisdiction in Transferee District**

The defendants have also met the second element in this case. Defendants assert that New York is where four of the defendants are incorporated or maintain their principal places of business, where the alleged wrongdoing occurred, and where plaintiff Friedrich pitched his proposal for the comic book. Therefore, the record reflects that a substantial portion of the events or omissions giving rise to the claim occurred in the Southern District of New York, making venue appropriate under 28 U.S.C. § 1391(a)(2) and jurisdiction appropriate under the Due Process Clause. U.S. CONST AMEND V; *Intn'l Shoe*, 326 U.S. at 319; *World-Wide Volkswagen*

---

[3] *See infra* Sec. I.

4

*Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### C.     The Convenience of the Parties and Witnesses, and the Interests of Justice

The Court's inquiry must now focus on the third element. This Court has the broad discretion to determine whether a transfer is warranted, but a motion to transfer is not to be granted liberally. *Stewart Org. v. Ricoh, Inc.*, 487 U.S. 22, 29 (1988). The Seventh Circuit instructs that "the district judge must consider the statutory factors in light of all the circumstances of the case." *Coffey*, 796 F.2d at 219. In considering whether transfer serves the convenience of the parties and witnesses, the Court considers: "(1) the plaintiffs' choice of forum; (2) the situs of material events; (3) the availability of evidence in each forum; . . . (4) the convenience to the witnesses of litigating in each forum; and (5) the convenience to the parties of litigating in each forum." *Deist v. Wash. Univ. Med. Ctr.*, 385 F. Supp. 2d, 773 (S.D. Ill. 2005). Furthermore, "[t]he movant…has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219-20. However, "[l]ess of a showing of inconvenience is needed for a § 1404(a) transfer than that for a *forum non conveniens* dismissal." *Id.* at 220.

### 1.     Plaintiffs' Choice of Forum and Situs of Material Events

Defendants argue that the material events occurred in New York. For example, defendants assert that New York is where four of the defendants reside, where Friedrich pitched his proposal for a comic book, and where the alleged wrongdoing and infringement occurred.

Plaintiffs argue that Friedrich created the Ghost Rider character and original story in principal part in Missouri and California, not in New York. (Doc. 62). For example, plaintiffs claim that Friedrich wrote dialogue for the comic book in Missouri, and that he directed the

illustration for the comic book by phone from Missouri to be carried out by Mike Ploog in New Jersey. In addition, plaintiffs explain that Friedrich pitched his proposal and entered into an agreement for a comic book in New York, to be published by Magazine Management, Inc. (MMI), which is not a party to this action. Plaintiffs also argue that they suffered injury from defendants in this district.

While courts generally respect a plaintiff's choice of forum, the Seventh Circuit has held that a plaintiff's freedom to select its own forum "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff . . . ." *Chicago R.I. & R.P. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (quoting *Josephson v. McGuire*, 121 F. Supp. 83, 84 (D.C. Mass. 1954)).

Plaintiffs have established that GFE is headquartered in Columbia, Illinois, within this district. Plaintiffs have not, however, established that any of the material events relevant to this lawsuit occurred in this district. In fact, plaintiffs concede that Friedrich pitched his idea for the comic book in New York. Moreover, plaintiffs claim that Friedrich created Ghost Rider partially in California, Missouri, and New Jersey, but not in Illinois. Plaintiffs' argument that they suffered an alleged injury in this district is unavailing.[4] Because plaintiffs have not established that any of the "conduct complained of" actually occurred in this district, plaintiffs choice of forum holds "minimal value." *Id.* Therefore, the Court finds that this factor weighs in favor of transferring venue.

## 2. Availability of Evidence in Each Forum

---

[4] Plaintiffs claim that Fredrich suffered injury in this district from the torts plaintiffs claim defendants committed. Given that plaintiffs filed their complaint only six days after establishing residence in Illinois, the Court finds less compelling plaintiffs' claim that they suffered injury in the district during that very short period of time. At any rate, the Court FINDS that the conduct giving rise to plaintiffs' injury occurred in New York.

Defendant argues that most or all relevant documents that of the defendants remain in New York or California. The Court is satisfied, however, that either party can easily bring to either the transferor or the transferee district those documents that are not there already. *See Chem. Waste Mgmt. v. Sims*, 870 F. Supp. 870, 876 (N.D. Ill. 1994). Therefore, this factor weighs neither for nor against transfer.

### 3.    Convenience of the Parties

"[T]he logical starting point for analyzing convenience is to consider the parties' residences," *Robertson v. Kiamichi R.R. Co.*, 42 F. Supp.2d 651, 657 (E.D.TX 1999), but § 1404(a) does not provide for the convenience of counsel. *Henderson v. Am. Airlines, Inc.*, 91 F. Supp. 191, 193 (S.D.NY 1950). The Court should also consider the ability of each party to bear the expenses of litigating in a particular forum. *Hanley v. Omarc., Inc.*, 6 F. Supp.2d 770, 776 (1988).

Of the parties to this action, Friedrich lives in Arnold, Missouri, around twenty five miles from this Court. GFE is located in Columbia, Illinois, which is about fifteen miles from this Court. Of the defendants in this case, five reside in California, four reside in New York, and one resides in Rhode Island. Because a majority of the parties to this case reside in either California or New York, the residences of the parties weighs in favor of transferring the case either to the Southern District of New York or to the Central District of California.

The Court also considers, however, the financial burden that transferring the case would place on the parties. Plaintiffs argue that they will face financial burdens if the Court transfers the litigation to a distant forum. Plaintiffs allege that neither plaintiff Friedrich, who works a forty hour job as a nighttime express courier, nor plaintiff GFE, which has very limited means,

can afford the expense of litigating in a forum that would require travel. Although the Court is not unsympathetic to plaintiffs' financial condition, the Court notes that plaintiffs filed this complaint and it would be reasonable to expect the plaintiff to bear its own expenses in litigating this matter until it is resolved.

Transfer is inappropriate if it "merely transforms an inconvenience for one party into an inconvenience for the other party." *Chem. Waste Mgmt*, 870 F. Supp. at 876. If this action remains in this district, all of the defendants will require extensive travel arrangements to litigate this matter. On the other hand, if this matter is transferred to the Southern District of New York or to the Central District of California, only some of the defendants will need to make extensive travel arrangements. Of course, transfer would impose a new burden upon the plaintiffs.

Based on the respective residences of the parties involved, transferring this action out of this district would not "merely transform" the inconvenience for defendants into an inconvenience for the plaintiffs. Transferring this action would not shift the entire burden from defendants to plaintiffs, rather, it would lessen the burden on defendants and increase the inconvenience for plaintiffs. Therefore, the Court finds that this factor weighs neither for nor against transfer.

**4.    Convenience of Witnesses**

In these cases, "the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case." *Omarc, Inc.*, 6 F. Supp.2d at 775 (1998). Of course, "the court must...consider whether these witnesses will be subject to compulsory process...." *Id.* at 775.

Defendants argue that two of the key witnesses, Roy Thomas and Mike Ploog, live in

8

South Carolina and London, respectively. Neither of these witnesses would be subject to compulsory process in either this district, the Southern District of New York, or the Central District of California. Nothing in the record indicates, however, that these witnesses will not appear voluntarily. At any rate, both of these witnesses, and the parties seeking to call them, will suffer inconveniences no matter where the matter is litigated.

Stan Lee, another key witness, lives in California. Because Lee lives in California, he is subject to compulsory process in the Central District of California. He is not subject to compulsory process in this district. In total, none of the witnesses are subject to compulsory process in this district. Therefore, this factor weighs in favor of transferring this dispute.

### E.     Interest of Justice

Finally, the Court must consider the interests of justice in its analysis. The "interest of justice" component includes such considerations as (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the desirability of resolving controversies in their locale; and (4) the relation of the community to the occurrence at issue. *Omarc, Inc.*, 6 F. Supp.2d at 777. The administration of justice is served more efficiently when the action is litigated in the forum that is closer to the action. *Id.*

Transfer will promote the interests of justice in this case, because this district is not the forum with the most significant contacts to the litigation. Again, defendants and plaintiffs agree that Friedrich pitched a proposal for a comic book in New York. In addition, defendants contend that the alleged wrongdoing and infringement occurred in New York. Therefore, transferring this action to the Southern District of New York would serve the interests of resolving controversies in their locale and the interests of the community and forum closest to the action.

9

Therefore, even if venue is appropriate in this district under the other factors considered, the Court finds that transfer to the Southern District of New York best serves the interest of justice.

The Court has carefully considered the motions and the record before it. Simply put, although the defendants may "conduct business" in this district, there is absolutely nothing else that ties this action to this district such that this district is the appropriate venue for this action. Accordingly, the Court **DENIES** defendant Relativity's motion to dismiss for lack of jurisdiction, **DENIES** defendants motions to dismiss, and **GRANTS** defendants' motions to transfer venue. This matter is **TRANSFERRED** to the United States District Court for the Southern District of New York.

**IT IS SO ORDERED.**

**DATED:  September 26, 2007.**


s/ WILLIAM D.  STIEHL
                           **DISTRICT JUDGE**

10

## Julie N. Smailys

| | |
|---|---|
| **From:** | ilsd_nef@ilsd.uscourts.gov |
| **Sent:** | Wednesday, September 26, 2007 11:22 AM |
| **To:** | ilsd_nef@ilsd.uscourts.gov |
| **Subject:** | Activity in Case 3:07-cv-00230-WDS-CJP Gary Friedrich Enterprises, LLC. et al v. Marvel Enterprises, Inc. et al Order Transferring Case to Other District |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. District Court

### Southern District of Illinois

## Notice of Electronic Filing

The following transaction was entered on 9/26/2007 at 11:22 AM CDT and filed on 9/26/2007
**Case Name:**        Gary Friedrich Enterprises, LLC. et al v. Marvel Enterprises, Inc. et al
**Case Number:**      3:07-cv-230
**Filer:**
**WARNING: CASE CLOSED on 09/26/2007**
**Document Number:** 79

**Docket Text:**
ORDER TRANSFERRING CASE TO OTHER DISTRICT: Case transferred to Southern District of New York., DENYING [29] MOTION to Dismiss for Lack of Jurisdiction filed by Relativity Media LLC., DENYING [31] MOTION to Dismiss filed by Columbia Tri-Star Motion Picture Group, Take-Two Interactive, Columbia Pictures Industries, Inc., Relativity Media LLC., Marvel Entertainment, Inc., Marvel Characters, Inc., Hasbro, Inc., Michael De Luca Productions, Inc., Crystal Sky Pictures, Sony Pictures Entertainment, Inc., Marvel Enterprises, Inc., Marvel Studios, Inc. Signed by Judge William D. Stiehl on 9/26/07. (skp, )

**3:07-cv-230 Notice has been electronically mailed to:**

Steven T. Catlett    stevencatlett@paulhastings.com

Eric W. Evans    EWEvans@rothlaw.com

David Fleischer    davidfleischer@paulhastings.com

Jodi A. Kleinick    jodikleinick@paulhastings.com

Charles S. Kramer    ckramer@riezmanberger.com

J. Thomas Long    mrtomlong@aol.com

Nelson L. Mitten    mitten@riezmanberger.com

Dawn K. O'Leary    dkoleary@rothlaw.com

Joseph D. Schneider    schneider@riezmanberger.com

Alastair Wood    alastairwood@paulhastings.com

**3:07-cv-230 Notice has been delivered by other means to:**

Daniel N. Bloom
Riezman & Blitz
St. Louis County
7700 Bonhomme
7th Floor
Clayton, MO 63105

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1047403380 [Date=9/26/2007] [FileNumber=777006-0]
[5c3d62a5e524eb4e5c474a4a130af9358c82750fa17c338442b30d047e26a048ce5e
384d13361862423d0d3c373b52706d879ba5784219817f3fe31d095abe45]]

9/26/2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **GARY FRIEDRICH ENTERPRISES, LLC., et al.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **CAUSE NO. 07-CV-230-WDS** |
| | ) | |
| **MARVEL ENTERPRISES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM & ORDER</u>

**STIEHL, District Judge:**

Before the Court is plaintiffs' motion to reconsider pursuant to Fed. R. Civ. P. 54(b) (Doc. 83), to which defendants filed a response (Doc. 86), and plaintiffs a reply (Doc. 87). Plaintiffs ask the Court to reconsider its previous Memorandum and Order (Doc. 79) which transferred this case to the Southern District of New York.

The Court first notes that although plaintiffs invoke Rule 54(b), the Court cannot grant the relief they seek. Under the federal rules, parties have only two options by which they can seek reconsideration of the Court's prior order. *United States v. Deutsch*, 981 F.2d 299, 300 (7th Cir. 1992). The *Deutsch* court explained that if the motion for reconsideration "is served within ten days of the judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b)." *Id.* Plaintiffs filed their motion for reconsideration on September 28, 2007, within ten days of the Court's Order transferring this case to the Southern District of New York, therefore, plaintiffs motion is properly considered under Rule 59(e).

Under Rule 59(e), a litigant may move the Court to alter or amend a judgment on any of three bases: (1) newly discovered evidence; (2) an intervening change in the controlling law; or

(3) manifest error of law or fact. *See Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995); Fed. R. Civ. P. 59(e). Before considering plaintiffs' arguments, the Court notes that litigants may not use Rule 59(e) to raise legal arguments that could have been raised in their prior pleadings, before the Court's Order. *Id.*

First, plaintiffs argue that the Court erred because its Order "inadvertently overlooks the substantial actions and impacts that occurred in this District, misapplies *Chicago R.I.*, fails to hold Defendants to the burden of proof standard, and fails to accord proper deference to the forum chosen by the Plaintiffs." (Doc. 83). Plaintiffs also argue that the location of plaintiff GFE "was given no deference by the Court," and that the "choice of a forum by a Plaintiff should never be held *in favor* of transfer." (Doc. 87).

The Court first notes that it considered, in its ruling, the connections of this case to this District.[1] Not only did a majority of the material events occur outside of this district, the critical infringement allegedly occurred in New York.[2] Accordingly, the Court correctly applied

---

[1] The Court's previous Order recognized that plaintiff GFE is incorporated here and that plaintiff Friedrich lives in the Eastern District of, Missouri, some 25 miles from this courthouse and outside of the Southern District of Illinois. The Court also recognized that defendants are subject to personal jurisdiction and venue in this district because they appear to conduct business here. The Court further recognized that plaintiff GFE suffered alleged injuries in this district.

    The Court also recognized, however, that a majority of the material events in this litigation occurred outside this district. For example, none of the defendants and only the corporate plaintiff, Gary Friedrich Enterprises, LLC (GFE), is a resident in this district. Ghost Rider was allegedly created in either New York, California, or Missouri, but not in Illinois. ) Plaintiff Friedrich pitched a proposal for the comic book in New York. The Court further recognized that the illustrations and dialogue for the comic book were not created here. The Ghost Rider movie was filmed in Australia, not in Illinois. None of the witnesses named live in ths district.

[2] Using information originally found in the Sean O'Leary affidavit (Doc. 62, Ex. 1), plaintiffs continue to argue that, because distribution and merchandising of the alleged infringing product is occurring in this district, the "conduct complained of" is occurring here. Using that same argument, however, either plaintiffs or defendants could establish that the "conduct complained of" occurred anywhere a Ghost Rider DVD is sold. The Court first notes that plaintiffs' attempt to reassert previously denied arguments is unavailing on a motion to reconsider. *Walker v. Monsanto Co. Pension Plan*, 2007 LEXIS 63793, at *12-13 (S.D. Ill. August 29, 2007) (stating that "a district court's rulings are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure")(internal quotation marks and citations omitted). Even if the Court reconsidered plaintiffs' previously rejected arguments, nothing in plaintiffs motion changes our finding that New York is where Ghost Rider was created and where the alleged infringement occurred. (Doc. 70). As defendants asserted, Marvel, located in New

*Chicago R.I. & P.R. Co. v. Igoe* and accorded the proper "minimal" deference to the forum

chosen by the plaintiffs because none of the "conduct complained of" occurred in this district.

220 F.2d 229, 304 (7th Cir. 1955).  Therefore, the Court cannot grant plaintiffs the relief they

seek on this issue.

Second, plaintiffs argue that the Court erred because the "[m]ovants did not establish that

jurisdiction and venue over all defendants is proper in the Southern District of New York."

Contrary to plaintiffs' assertions, defendants established that venue would be appropriate in the

Southern District of New York, as the Court's previous Order discusses.  Moreover, 28 U.S.C.

§ 1404(a) does not require defendants to establish that "jurisdiction over *all defendants*" would

be proper in the transferee district. (Emphasis added).  Instead, § 1404(a) requires defendants to

establish that jurisdiction and venue would be proper in the transferee district. *See Vandeveld v.*

*Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995).  Plaintiffs clearly could have filed this

cause of action in the Southern District of New York because, as previously stated, the events

giving rise to the cause of action, the alleged infringement and wrongdoing, occurred in that

district.  In addition, four of the named defendants reside within the Southern District of New

York.[3]  Therefore, the Court rejects plaintiffs' argument that jurisdiction and venue is improper

in the transferee district.

Third, plaintiffs contend that the Court erred because of the "[m]ovants [sic] failure to

file affidavits listing witnesses and their locations should doom their motion from the outset."  In

---

York, employed people who created the comic book. *Id.*

[3] Plaintiffs concede that the California defendants would be subject to personal jurisdiction in the Southern District of New York because, under the copyright act, personal jurisdiction is appropriate over a defendant anywhere the infringement allegedly occurs.  Because Ghost Rider merchandise was sold throughout the United States, jurisdiction and venue is proper in New York.

3

support of its argument, plaintiffs cite *Champion Labs, Inc. v. Burch*, 2006 LEXIS 84892, 11

(S.D. Ill. 2006), a case in which the court refused to consider the "convenience of the witnesses"

factor in its transfer analysis because the defendant failed to make a generalized statement of

what the witness testimony would include. *Id.* at *12. Plaintiffs' assertion that defendants'

failure to provide a witness listing "dooms their motion from the outset" is overstated. Plaintiffs

do, however, alert the Court to an error in its previous Order. As *Champion Labs, Inc.* instructs,

the Court should not have considered the "convenience of the witnesses" factor in its previous

analysis because defendants failed to make a generalized statement of what the witnesses'

testimony would include. *Id.* at 11. The Court's previous Order stated that the "convenience of

the witnesses" factor weighed "in favor of transferring this dispute." Upon review of the record,

the Court finds that this factor weighs neither in favor of, nor against transfer.

Fourth, plaintiffs assert that the Court erred because transferring the action to New York

actually *increases* the burden on both the California defendants and the plaintiffs. As the

Court's previous Order explains, the "convenience of the witnesses" analysis takes into account

not only the financial burden transfer would impose upon the parties, but also the residences of

the parties. While plaintiffs correctly point out transferring this action increases the burden on

plaintiffs, it does not necessarily increase the burden on the California defendants, who will be

forced to litigate in a foreign jurisdiction whether in this district or in the Southern District of

New York. A transfer that increases the inconvenience to one of the parties is not necessarily

inappropriate, and does not end the Court's transfer analysis.

By transferring this litigation to the Southern District of New York, fewer parties to this

dispute are inconvenienced. Plaintiffs sued many defendants, the majority of whom reside in

New York and California. Only one party to this litigation resides in this district.[4] Ultimately, transferring this dispute does not simply "transform" the defendants' inconvenience into an inconvenience for the plaintiffs, it transfers what was otherwise an inconvenience for a majority of the parties to this lawsuit into an inconvenience for a minority.[5] Therefore, the Court cannot grant plaintiff the relief they seek on this issue.

Fifth, plaintiffs argue that the Court erred because its Order "incorrectly holds that a perceived lack of an ability of this District to compel witnesses to trial weighs in favor of transfer." Plaintiffs correctly argue that none of the named witnesses in this case reside in this district or in the Southern District of New York. Plaintiffs incorrectly argue, however, that it was error for this Court to determine that its inability to compel witnesses to testify here weighs in favor of transferring this dispute out of this district.

Finally, plaintiffs state that "the interests of justice weigh heavily in favor of denying transfer." At the outset, the Court notes that, if transfer is warranted in the interest of justice, the "convenience of the witnesses and parties" components of the transfer analysis becomes less significant. *Coffee v. Van Doran Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986). The Court's previous Order explains why, in the interests of justice, transfer to the Southern District of New York is warranted. Plaintiffs do not allege any change in controlling law, offer newly discovered evidence, or correct a misapprehension of the Court such that reconsidering its ruling on this issue is appropriate. Therefore, the Court rejects plaintiffs' argument that the interest of justice

---

[4] This lawsuit was filed six days after establishing the residence of the corporate defendant, GFE, in this district.

[5] Plaintiffs urge the Court to consider the fact that plaintiffs have insufficient means as part of the Court's analysis of the relative burdens that transfer will have on the parties. The Court is not unsympathetic to the plaintiffs' financial situation, but that fact, alone, is not determinate of the transfer issue.

weigh heavily in favor of denying transfer.

Accordingly, the Court **DENIES** plaintiffs motion to reconsider.

The plaintiffs submit that, in the alternative, the Eastern District of Missouri is a more convenient forum. Defendants correctly explain that plaintiffs failed to ask the Court to transfer this case to the Eastern District of Missouri before doing so in their current motion. Plaintiffs attempt to raise this argument for the first time on a motion for reconsideration is unavailing. *See Russell*, 51 F.3d at 749. Litigants may not use Rule 59(e) to raise arguments that could have been raised prior to the Court's Order. *Id.* Plaintiffs had the opportunity to request transfer to the Eastern District of Missouri when it opposed defendants' motion for transfer to the Southern District of New York and failed to do so. Accordingly, the Court **DENIES** plaintiffs' request that this case be transferred to the Eastern District of Missouri.

Finally, plaintiffs ask this Court to certify the Court's previous Order for appeal. Plaintiffs argue that appeal is appropriate to address a "controlling question of law on which there is a substantial ground for difference of opinion and that an immediate appeal of the Order may advance the ultimate termination of the litigation." As the Seventh Circuit explained in *Ahrenholz v. Board of Trustees*, 219 F.3d 674, 675 (7th Cir. 2000), a district court cannot grant an interlocutory appeal unless all four criterion are satisfied, namely, that: (1) there exists a question of law; (2) it is controlling; (3) it is contestable; and (4) its resolution promises to speed up the litigation. Plaintiffs' motion fails for several reasons. First, plaintiffs do not identify a "question of law" from which they intend to appeal. Second, they have not provided the Court with any explanation or reasoning as to why that supposed question of law is controlling, contestable, and promises to speed up the litigation if resolved.

The Court notes a further deficiency in plaintiffs' request. *Ahrenholz* teaches that

"question of law" refers to an "abstract issue" or one that the court of appeals can decide quickly and cleanly without having to study the record. 219 F.3d at 676-77. The transfer analysis necessarily requires a thorough factual inquiry and, as such, is trusted to the sound discretion of the trial court. *Coffey*, 796 F.2d at 219 ("The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge."). Simply appealing from a grant of a motion to transfer, does not, in and of itself, present such a question of law. Plaintiffs have not established that this issue, whatever it may be, is suitable for determination by an appellate court without a trial record. Simply put, plaintiffs have not presented an abstract legal issue and to hold otherwise would merely waste the time of the court of appeals and further delay litigation at the district court level. Accordingly, the Court **DENIES** plaintiffs' request to certify the record for appeal.

Finally, the Court **DENIES** plaintiffs motion requesting oral argument on the grounds that the briefs of both parties provided a sufficient basis for making a fair determination on plaintiffs' motion for reconsideration.

**IT IS SO ORDERED.**

**DATED:  January 30, 2008.**


**s/ WILLIAM D.  STIEHL**
**DISTRICT JUDGE**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

GARY FRIEDRICH ENTERPRISES,          )
LLC,                                 )
An Illinois Limited Liability Company, )
                                     )      Cause No.   ᴑ7-ᴐ30-ᴡᴅꜱ
GARY FRIEDRICH, an individual,       )
                                     )
               PLAINTIFFS,           )
vs.                                  )
                                     )      **Jury Trial Demanded**
MARVEL ENTERPRISES, INC.,            )
A Delaware Corporation               )
MARVEL ENTERTAINMENT, INC.,          )
A Delaware Corporation               )
MARVEL STUDIOS, INC.,                )
A Delaware Corporation               )
MARVEL CHARACTERS, INC.,             )
A Delaware Corporation               )
HASBRO, INC.,                        )
A Rhode Island Corporation           )
TAKE-TWO INTERACTIVE                 )
A Delaware Corporation               )
COLUMBIA TRI-STAR MOTION             )
PICTURE GROUP,                       )
A Joint Venture                      )
COLUMBIA PICTURES INDUSTRIES, )
INC.,                                )
A Delaware Corporation               )
CRYSTAL SKY PICTURES,                )
A California Corporation             )
RELATIVITY MEDIA LLC,                )
A California Corporation             )
MICHAEL DE LUCA PRODUCTIONS, )
INC.,                                )
A California Corporation             )
SONY PICTURES ENTERTAINMENT, )
INC.,                                )
A Delaware Corporation               )
and                                  )
SONY CORPORATION OF AMERICA. )
A New York Corporation               )
                                     )
               DEFENDANTS.           )

272459                        Page 1 of 61

# COMPLAINT

Plaintiff, Gary Friedrich Enterprises, LLC and Gary Friedrich (hereafter together referred to as "Friedrich" or "Plaintiffs"), hereby assert this Complaint against the above-named Defendants for violations of the Federal Copyright Act, Federal Lanham Act and various state laws and for an accounting and states as follows:

## JOHNNY BLAZE/GHOST RIDER

1.      Johnny Blaze is a motorcycle riding stunt man.  By day, taciturn and reserved with an outwardly tough demeanor, he hides the loss felt from the death of his father, Barton Blaze, at an early age,  the affection he feels for Roxanne, the love of his life, his guilt over his inability to save the life of Crash Simpson, the only father he'd ever known, and a heart of unparalleled concern for those around him.

2.      Each evening, in a painful transmutation, Johnny Blaze transforms into the Ghost Rider, a violent creature with a flaming skull, dressed in black leather, fire surrounding him and hurling from his fingertips. The Ghost Rider is propelled by evil to roam the earth by motorcycle bringing fire and fear to the world, yet somehow is able to bend the curse that transforms him and to use his evil-sourced powers to battle evil and to defend good while in his fiery state.

## THE ORIGIN STORY

3.      Johnny Blaze (hereafter sometimes referred to as "Blaze" or "Johnny Blaze/Ghost Rider") originally was a man by both day and night.  Then, however, he promised the devil his soul in exchange for a promise to cure Crash Simpson, his adoptive father, from an incurable illness.  The devil kept his word and cured the man,

but then caused Crash to die in another fashion before attempting to claim Blaze's soul as agreed.

4.     Since that time, betrayed and anguished, Blaze fights off the devil's efforts to claim his soul, his resistance finding strength in Blaze's altruistic motive in seeking the devil's bargain in the first instance, the love and purity in Blaze's heart and his noble spirit.

5.     The strength of Johnny Blaze's soul allows him to continue his life as before, by day.  At night, however when evil's power rises, he finds himself transformed into the fiery Ghost Rider and forced towards evil as the devil's hold on his soul increases.

6.     Yet even at night, Blaze's purity of purpose and love in his soul is soon able to fight against the devil's influence that transforms and drives him.  Drawing on this inner, instinctive strength, the Ghost Rider learns to bend the curse and to use his fiery skulled night time persona to defend good and fight evil.

### The Theft of Ghost Rider

7.     Johnny Blaze/Ghost Rider is a fictional character originally conceived, created and authored by Plaintiff Gary Friedrich more than 35 years ago.

8.     Plaintiff Gary Friedrich also conceived, created and authored the unique story of how and why Blaze sells his soul to the devil and becomes the tormented fiery-skulled motorcycle riding anti-hero with superpowers, and the surrounding background (hereafter referred to as the "Origin Story") and conceived the other principal characters of the Origin Story,  Barton Blaze and Roxanne and Crash Simpson, more than 35 years ago.

272459                              Page 3 of 61

9.    There is no dispute that Plaintiff Gary Friedrich created Johnny Blaze/Ghost Rider and the Origin Story and its characters.

10.    Yet, recently, encouraged, spearheaded and joined by the Marvel companies, a group of major entertainment industry players including Defendants Sony and Hasbro, have joined together to take the Plaintiffs' Characters and Origin Story from them without any authorization or compensation. They have begun selling, promoting, and marketing a full length feature film, action figures, video games, and various products based on, featuring, copying, and utilizing the Ghost Rider and related characters and the Origin Story, all without any authorization of Plaintiffs.

11.    In so doing, the Defendants, in concert with each other and others, have converted and improperly profited from Plaintiffs' property rights, have infringed and improperly profited from Plaintiffs' copyrights, have violated other laws and rights of the Plaintiffs, and have damaged Plaintiffs as more fully described below.

### Parties, Jurisdiction, and Venue

12.    Johnny Blaze/Ghost Rider is a superhero of a type otherwise unknown -- an antihero who is able to fight off the evil which seeks to claim him and to use his evil-sourced abilities to perform heroic deeds for mankind during nighttimes of personal torment.

13.    Plaintiff Gary Friedrich Enterprises LLC is an Illinois Limited Liability Company authorized to do business in Illinois, doing business in Illinois and with its principal place of business in the Southern District of Illinois. Gary Friedrich Enterprises LLC was formed by Plaintiff Gary Friedrich for the purposes of marketing, promoting, capitalizing on and otherwise exploiting his copyrights and other state law intellectual

272459                          Page 4 of 61

property, including the intellectual property rights here in issue. Plaintiff Gary Friedrich Enterprises LLC received by assignment from Plaintiff Gary Friedrich and now has the exclusive right to own and control, *inter alia*, all claims asserted herein, and all, right, title and authority to market, sell, license, assign control and capitalize the copyrights referenced herein, Gary Friedrich's own name and persona and the public recognition, attendant thereto, the name, persona, and public recognition of Johnny Blaze/Ghost Rider and the other characters Friedrich has created, and Friedrich's other statutory and common law rights, within the Southern District of Illinois and elsewhere in the world.

14.    Plaintiff Gary Friedrich is an individual, who created Johnny Blaze/Ghost Rider, the Origin Story, and other related characters. Gary Friedrich acknowledges the assignment of the claims asserted herein and of all of his rights in such characters, Origin Story and Spotlight Work copyright discussed more fully below to Gary Friedrich Enterprises, L.L.C., and joins in this action individually solely to preserve any rights that may for some reason be found to be outside of that assignment or that he may be found to have if such assignment is found for any reason to be ineffective or void.

15.    Upon information and belief, Marvel Enterprises, Inc., (hereinafter "Marvel Enterprises") is a Delaware corporation with its principal place of business in the state of New York, which transacts and conducts business within the state of Illinois and the Southern District of Illinois, and which took the actions hereinafter described which had effect within the Southern District of Illinois with the intent that they have such effect.

16.    Upon information and belief, Marvel Entertainment, Inc., (hereinafter "Marvel Entertainment") is a Delaware corporation with its principal place of business in

the state of New York, which transacts and conducts business within the state of Illinois

and the Southern District of Illinois and which took the actions hereinafter described

which had effect within the Southern District of Illinois with the intent that they have

such effect.

17.    Upon information and belief, Marvel Characters, Inc., (hereinafter

"Marvel Characters") is a Delaware corporation that is wholly owned by Marvel

Entertainment, has its principal place of business in the state of New York, and transacts

and conducts business within the state of Illinois and the Southern District of Illinois and

which took the actions hereinafter described which had effect within the Southern District

of Illinois with the intent that they have such effect.

18.    Upon information and belief, Marvel Studios, Inc. (hereinafter "Marvel

Studios"), is a Delaware corporation that is wholly owned by Marvel Entertainment, has

its principal place of business in the state of California, and transacts and conducts

business within the state of Illinois and the Southern District of Illinois and which took

the actions hereinafter described which had effect within the Southern District of Illinois

with the intent that they have such effect.

19.    Upon information and belief, Marvel Entertainment, Marvel Enterprises,

Marvel Characters and Marvel Studios are instrumentalities, agents and representatives of

each other and act to further the joint interests of each other. The actions of Marvel

Enterprises, Marvel Entertainment, Marvel Characters, and Marvel Studios relevant to

this action were taken by each of such entities on behalf of themselves and each other and

as agents and/or instrumentalities of each other and pursuant to a joint venture and

common design.

272459                          Page 6 of 61

20.     Hereinafter, Marvel Entertainment, Marvel Enterprises, Marvel Characters and Marvel Studios shall be jointly and collectively referred to as "Marvel" or the "Marvel Defendants."

21.     Upon information and belief, Hasbro, Inc., (hereinafter, "Hasbro") is a Rhode Island corporation with its principal place of business in Pawtucket, Rhode Island, has a registered agent in the State of Illinois, transacts and conducts business within the state of Illinois and the Southern District of Illinois, and took the actions hereinafter described which had effect within the Southern District of Illinois with the intent that they have such effect.

22.     Upon information and belief, Take-Two Interactive Software, Inc., (hereinafter "Take-Two"), is a Delaware corporation with its principal place of business in New York, and transacts or otherwise conducts business within the state of Illinois and the Southern District of Illinois and took the actions hereinafter described which had effect within the Southern District of Illinois with the intent that they have such effect.

23.     Upon information and belief, Sony Corporation of America, (hereinafter referred to as "Sony Corporation") is a New York corporation with its principal place of business in New York, and which transacts and conducts business within Illinois and the Southern District of Illinois and which took the actions hereinafter described which had effect within the Southern District of Illinois with the intent that they have such effect.

24.     Upon information and belief, Sony Pictures Entertainment, Inc., (hereinafter referred to as "Sony Pictures") is owned by Sony Corp, is a Delaware corporation with its principal place of business in Culver City, California, has a registered agent in the State of Illinois, transacts and conducts business within the state of Illinois

and the Southern District of Illinois and took the actions hereinafter described which had effect within the Southern District of Illinois with the intent that they have such effect.

      25.     Upon information and belief, Columbia Tri-Star Motion Picture Group (hereafter referred to as "Columbia Tri-Star") is managed, controlled or otherwise owned by Sony Pictures, and owns, manages or controls or is otherwise a parent company of Columbia Pictures Industries, Inc., and took the actions hereinafter described which had effect within the Southern District of Illinois with the intent that they have such effect.

      26.     Upon information and belief, Columbia Pictures Industries, Inc., (hereafter referred to as "Columbia Pictures") is owned by Sony Corporation and/or Sony Pictures, is a Delaware corporation with its principal place of business in Culver City, California, has a registered agent in the State of Illinois, and transacts and conducts business within Illinois and the Southern District of Illinois and took the actions hereinafter described which had effect within the Southern District of Illinois with the intent that they have such effect.

      27.     Upon information and belief, Sony Pictures, Columbia Tri-Star and Columbia Pictures are instrumentalities, agents and representatives of Sony Corporation and/or each other and the actions and inactions of each of Sony Corporation, Sony Pictures, Columbia Tri-Star and Columbia Pictures relevant to this action were taken by each such entity on behalf of themselves and on behalf of each and as agents, instrumentalities of each other and pursuant to a joint venture and common design.

      28.     Hereinafter, Sony Corporation, Sony Pictures, Columbia Tri-Star and Columbia Pictures shall be referred to jointly and collectively as "Sony."

29.    Upon information and belief, Crystal Sky, LLC, (hereinafter "Crystal Sky"), is a California corporation with its principal place of business in Los Angeles, California, and transacts and conducts business within the state of Illinois and the Southern District of Illinois and took the actions hereinafter described which had effect within the Southern District of Illinois with the intent that they have such effect.

30.    Upon information and belief, Michael De Luca Productions, Inc., (hereinafter "De Luca"), is a California corporation with its principal place of business in Beverly Hills, California, and does transact or conduct business within the state of Illinois and the Southern District of Illinois and which took the actions hereinafter described which had effect within the Southern District of Illinois with the intent that they have such effect.

31.    Upon information and belief, Relativity Media, LLC., (hereinafter "Relativity Media,") is a California limited liability corporation with its principal place of business in West Hollywood, California, and transacts or otherwise conducts business within the state of Illinois and the Southern District of Illinois and took the actions hereinafter described which had effect within the Southern District of Illinois with the intent that they have such effect.

32.    Upon information and belief, Crystal Sky, De Luca, and Relative Media, along with Sony, took such actions on behalf of one or another or in conjunction with one another, along with actions by each on behalf of themselves and on behalf of each and as agents, instrumentalities of each other and pursuant to a joint venture and common design.

33.    Hereinafter, Sony,  Marvel, Crystal Sky, De Luca and Relativity Media shall be jointly and collectively referred to as the "Movie Defendants."

34.    This Court has federal jurisdiction under 28 U.S.C. § 1331 for the claims arising under the Copyright Act, 17 U.S.C. §§ 101, et seq., for claims arising under the Lanham Act, 15 U.S.C. §§ 1125, and under 28 U.S.C. § 1338(a) and (b).

35.    This Court has jurisdiction over the state law actions asserted herein pursuant to 28 U.S.C. § 1332 in that this action is between citizens of different states to which an amount in controversy exceeds $75,000.  Further this Court has jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

36.    This Court has personal jurisdiction over each of the several Defendants in that each is transacting or otherwise conducting business throughout the State of Illinois, and specifically, in the Southern District of Illinois, that each of the torts and wrongful acts were taken in or had their effect felt in the Southern District of Illinois and because they can be found here.  By further reason, each of the Defendant's unlawful acts alleged herein were taken with the knowledge and intent that said acts would have an effect on the Plaintiffs and the public in the State of Illinois and within the Southern District of Illinois

37.    The Movie Defendants have promoted, advertised, solicited business, and, in fact, conducted and transacted business and sales in the State of Illinois by causing a motion picture to be licensed, promoted, sold, transferred, and displayed throughout the Southern District of Illinois.

38.     Defendants Hasbro and Take-Two and Marvel have promoted, advertised, and sold merchandise, goods and products in the State of Illinois and throughout the Southern District of Illinois, including action figures, collectibles and video games.

39.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a), (b), and (c) and 28 U.S.C. § 1400(a).

## FRIEDRICH'S CREATION AND OWNERSHIP OF THE CHARACTERS

40.     Plaintiff Gary Friedrich conceived, developed, created, articulated, particularized, authored and brought to life Johnny Blaze/Ghost Rider out of his own creativity and endeavor and at his own instance and expense.

41.     Plaintiff Gary Friedrich also conceived, developed, created, articulated, particularized, and authored and brought to life the Origin Story out of his own creativity, endeavor, and at his own instance and expense.

42.     Plaintiff Gary Friedrich also conceived, developed, created, articulated, particularized, and authored and brought to life  the Roxanne Simpson Character, the Barton Blaze Character, and the Crash Simpson Character (hereafter, along with Johnny Blaze/Ghost Rider referred to together as the "Friedrich Characters" or "Characters") out of his own creativity, endeavor, and at his own instance and expense.

43.     Plaintiff Gary Friedrich created and authored the Blaze persona and the Origin Story as a commercial, profit-making endeavor, intending to use the same for his own commercial and economic gain.

44.     Plaintiff Gary Friedrich made his intent to utilize the Characters, their personas and Origin Story for economic and commercial gain known throughout the creation process and at least as early as 1968.

45.    Plaintiff Gary Friedrich also set out to engender public recognition of the Johnny Blaze/Ghost Rider character and the related Characters and personas and of himself as the creator of the Characters and Origin story and as a comic book industry figure.

46.    Under the express language of the statutory scheme, federal copyright law does not extend to protect a fictional character in the abstract, outside of any particular storyline or work, since the character was and is an idea and concept and federal copyright law specifically does not extend to, cover, or preempt laws dealing with the protection of ideas and concepts.  Characters are thus protected under state law as a form of intangible property, if they are sufficiently novel, concrete, and detailed.

47.    Recently, however, notwithstanding the express language of the copyright statute to the contrary, in an effort to protect authors of characters, several federal courts have extended copyright protection to cover the characters contained within a copyrighted work so that a copyright over a work prevents the copying or use of the characters from it in completely different works, as well as in true copies.

48.    As set forth below, Plaintiff Gary Friedrich is the author and Gary Friedrich Enterprises is the owner and holder of the copyright over the Spotlight Work, the work which first introduced his Johnny Blaze/Ghost Rider character and related Characters, and of the copyrights covering several following comic books featuring such Characters, and thus enjoys any and all copyright protection that may exist for such Characters.

49.    However, the Blaze/Ghost Rider character and persona and the related Characters created by Gary Friedrich for the Origin Story were each, novel, original, and

concrete characters and each of such Characters were fully defined, detailed, articulated, particularized, existing and complete prior to the thought of the creation of the Spotlight Work or his authorship of the Spotlight Work.

50.    Plaintiff Gary Friedrich Enterprises, as assignee from Gary Friedrich, thus also owns such Characters as protectible property interests under state law property rights and property law for all purposes, if the same are not copyrightable, and for any reasons, purposes and uses not addressed by copyright law and/or to the extent copyright law does not apply.

51.    The Origin Story was also original, novel and concrete and contained defined, articulated, particularized and detailed plot points, characters, events, occurrences, motivation.

52.    Gary Friedrich Enterprises thus also owns the Origin Story line as protectible property interests under state law property rights and property law for all purposes, if the same are not copyrightable, and for any reasons, purposes and uses not addressed by copyright law and/or to the extent copyright law does not apply.

53.    Friedrich is and has been the owner of all right and title to the Johnny Blaze/Ghost Rider character under state law since Gary Friedrich created it.

54.    Friedrich is and has also been the owner of all right and title to the other Characters under state law since Gary Friedrich created them.

55.    Friedrich is and has been the owner of the storyline expressed in the Origin Story under state law since Gary Friedrich created it.

56.    As noted below, Friedrich also owns and holds any and all copyrights covering such Characters.

## CREATING A COPYRIGHTED WORK STARRING BLAZE/GHOST RIDER

57.    In 1971, as part of his efforts to yield monetary and economic gain from, and to engender public recognition of the Characters, personas, and Origin Story he had created and to increase and profit from his own public recognition, Plaintiff Gary Friedrich set out at his own instance to create, author and cause a comic book to be published and distributed featuring Johnny Blaze/Ghost Rider and the related Characters and story which he had conceived, authored and created in full and complete form.

58.    To do so, in a meeting specifically initiated and requested by Gary Friedrich and arranged for the purpose of discussing the possible publication of a comic book character and storyline previously developed by Gary Friedrich, Gary Friedrich outlined to the people who ran the comic book section of a company called Magazine Management, in confidence, the details of his previously created Characters and personas and the details of the Origin Story that he had previously developed, and proposed that Gary Friedrich author a comic book featuring those Characters and telling the Origin Story, which Magazine Management would print and distribute.

59.    Magazine Management, through Stan Lee, agreed to the terms of his offer.

60.    Thereafter, Plaintiff Gary Friedrich authored the proposed comic book. Gary Friedrich utilized his existing Origin Story plot line and his existing Johnny Blaze/Ghost Rider character and the other Characters he had previously developed, writing the dialogue to convert the Origin Story into comic book format, and directing and specifying and approving how the Ghost Rider and other Characters he had previously developed would be drawn by the illustrator to ensure that they did not vary from his previously created and designed Characters.

61.    Magazine Management published the comic book work Gary Friedrich authored in 1972, as "Marvel Spotlight" Volume No 5, (the "Spotlight Work").

62.    Gary Friedrich was the motivating force behind the Spotlight Work and was the "author" of the Spotlight Work for copyright purposes and, to the degree copyrightable, was the author of all characters set forth therein for copyright purposes as well[1].

63.    Magazine Management, however, was the proprietor and holder of the copyright on the Spotlight Work for the first copyright term and it was thus published bearing the Magazine Management copyright notice. A copy of the Spotlight Work is attached hereto and incorporated herein by reference as Exhibit 1.

64.    The character of Johnny Blaze/Ghost Rider and other principal characters in the Spotlight Work were not changed or modified from Gary Friedrich's preexisting Characters or from the preexisting Origin Story.

65.    Other than being adapted to comic book format, the Characters in the Spotlight Work were and are identical to the Johnny Blaze/Ghost Rider persona and other Characters which were originally authored and created by Gary Friedrich at his own instance and expense years before approaching Magazine Management, the illustrations reflected the Characters look and design previously created by Gary Friedrich and the storyline told through Gary Friedrich's dialogue for the Spotlight Work is the Origin Story that had been previously created by Friedrich.

---

[1] Friedrich does not believe that the contributions of the illustrator rise to the level of co-authorship under copyright law and that Friedrich thus remains the sole author of the Spotlight Work. However, if for any reason those or other contributions were to be found to create co-authorship, Friedrich would still be, at a minimum, a joint owner of the entire Spotlight Work.

66.    In total or large part, the description and revelation of the Johnny Blaze/Ghost Rider character was the essence of the Spotlight Work and the eleven comic books authored by Gary Friedrich which followed.

67.    The Spotlight Work is the first publication that contained Johnny Blaze/Ghost Rider.

68.    The Spotlight Work is the first publication that contained the Origin Story.

69.    Plaintiff Gary Friedrich thereafter authored several additional comic books continuing the adventures of the Johnny Blaze/Ghost Rider and related Characters and personas he had created, which were also published by Magazine Management.  Each of these works was a derivative of and based on the Spotlight Work and the characters in the Spotlight and continued the Origin Story.

70.    As a matter of law, the original term for the Copyright for the Spotlight Work lasted 28 years; it thus commenced on or about April 1972 and expired on December 31, 2000.

71.    Although Magazine Management held the copyright on the Spotlight Work for that initial copyright term it never registered the same with the Copyright Office.

72.    Further, as a result of the enactment of the Copyright Act of 1976, as a matter of law, at the expiration of the then subsisting 28-year copyright term the Copyright for the Spotlight Work and for all the characters contained therein reverted to the author of the work, Plaintiff Gary Friedrich.

73.    Accordingly, by operation of law, as of January 1, 2001, Gary Friedrich was  the owner of the copyright on the Spotlight Work and, to the degree copyrightable,

all of the characters set forth therein, as well as being the owner of the rights to the characters and story line under state law.

74.    Similarly, although Magazine Management held the copyrights for the subsequent works that Friedrich authored and that carried on the Origin Story, upon the expiration of the initial terms of those additional works, they also renewed in the name of, and ownership transferred by operation of law to Plaintiff Gary Friedrich.

75.    Nonetheless, without any compensation to and without any agreement, consent, or participation of Plaintiff Gary Friedrich, in late 2006 or early 2007, the Defendants herein wrongfully embarked upon a high profile campaign, arrangement, joint venture and conspiracy to exploit, profit from, and utilize Plaintiffs' copyrights, the Johnny Blaze character and persona, the Origin Story, and the related characters and personas created by Plaintiff, in various endeavors, including but not limited to, the use of the same in movie theater presentations and promotions, commercials, action figure toys, video games, clothing and novels.

## COUNT I -- COPYRIGHT INFRINGEMENT UNDER 17 USC § 106, et seq.

### AGAINST MARVEL DEFENDANTS

Plaintiffs, for their Claim of Copyright Infringement under 17 U.S.C. 106, et seq. against the Marvel Defendants, state as follows:

76.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77.    As a result of the renewal of the copyright in Gary Friedrich's name and his resulting status as the copyright holder of the Spotlight Work, Gary Friedrich enjoyed as of the year 2001 the exclusive rights and privileges in and to the copyright covering

the Spotlight Work and all the protected material contained therein, including, but not limited to, the Origin Story, all storylines and plots, all script, and all characters, including Johnny Blaze/Ghost Rider.

78.    In February 2007, Plaintiff Gary Friedrich, as the holder of the renewal in the Copyright on the Spotlight Work, applied to the United States Copyright Office to register said copyright.

79.    After analyzing and reviewing the application, the United States Copyright Office confirmed Friedrich as the author of the Spotlight Work and as the holder of the Copyright covering the entire Spotlight Work and registered such Copyright in his name. See Certificate of Registration, attached hereto and incorporated herein as Exhibit 2.

80.    The Spotlight Work constitutes a registered work pursuant to the terms of the United States Copyright Act, with Registration Number RE 929-199.

81.    Plaintiff Friedrich is the sole author and Plaintiff Gary Friedrich Enterprises LLC is the current proprietor of all rights, title, and interest in and to the copyright for the work contained therein including, but not limited to, all storylines and plots, all script, and all images and depictions of all characters, including Johnny Blaze/Ghost Rider, and the other Characters introduced and contained in the Spotlight Work.

82.    Nonetheless, beginning at least as early as 2006, the Marvel Defendants have directly, vicariously and contributorily infringed Plaintiffs' copyrights and have induced the other Defendants into infringing Plaintiffs' copyrights in such work.

83.    Notwithstanding the rights of Plaintiff Gary Friedrich, and without any authorization or permission, upon information and belief, Marvel has prepared derivative

works and/or copied all or constituent elements of the Spotlight Work that are original

and protected by copyright and/or induced, aided, assisted and cooperated with others

who have done so.

      84.    Upon information and belief, Marvel has violated Plaintiffs' rights under

the Copyright Act by, among other things,

    a.   approaching others, including the other Defendants named herein, and

        contending that Marvel owned the rights to Spotlight Work and/or the

        characters and/or Origin Story contained therein;

    b.   approaching others, including the other Defendants named herein, and

        contending that Marvel had the right or authority to allow or license others

        to utilize or copy the Spotlight Work and/or the Origin Story or characters

        contained therein;

    c.   suggesting that the characters and story contained within the Spotlight

        Work would be suitable for copying into a feature film, action figures,

        video games and other projects;

    d.   convincing such other Defendants and others to create such derivative

        works and copies of and utilizing the Spotlight Work, the characters or

        Origin Story contained therein or copies thereof;

    e.   agreeing to indemnify and/or hold such Defendants and others harmless

        from liability if they were to produce works utilizing the Spotlight Work,

        any characters or Origin Story set forth therein, or any copies thereof;

    f.   working with the other Defendants and others on such projects;

    g.   claiming the ability and authority to license or exploit Plaintiffs'

copyrights to them; and /or

    h.   falsely affixing or instructing others to affix a copyright notice to various

products, works, advertisements, promotions and publications claiming

Marvel enjoyed copyright ownership of Plaintiffs' characters including

Johnny Blaze/Ghost Rider and/or the Spotlight Work.

    85.   Marvel had access to the Spotlight Work and each of the works and

products which Marvel purported to authorize, license, contribute to, assist in, and/or

allow other Defendants to produce, market and sell each bear substantial similarity to

works protected under the copyright for the Spotlight Work.

    86.   The actions and inactions of Marvel set forth in this Complaint are

violations of the exclusive rights of the Plaintiffs to license, use, reproduce copies and/or

derivative works, and  the purported licensing, use, distribution, performance and display

of elements of the copyrighted work to the commercial advantage of Marvel as set forth

herein is in violation of the Copyright Act, 17 U.S.C. 106, et seq.

    87.   Plaintiffs have complied in all respects with the Copyright Act and with all

of the laws of the United States governing copyright.

    88.   Marvel Defendants have directly infringed Plaintiffs' copyrighted work in

violation of 17 U.S.C. § 106, et seq.

    89.   The Marvel Defendants are each liable as contributory infringers for, and

for inducing, the acts of the direct, vicarious, and contributory infringement of

Defendants Sony, Hasbro, Take-Two, the Movie Defendants and others who Marvel has

encouraged, induced or purported to license to use Plaintiffs' copyrighted material, as set

out herein, in that Marvel with knowledge of the infringing activity, induced, caused, or materially contributed to such aforementioned infringing conduct.

90.     Defendant Marvel is liable as a contributory infringer for, and for inducing the acts of infringement of all other persons they encouraged or purported to license to use the Spotlight Work, the Johnny Blaze/Ghost Rider character, the Friedrich Characters, and/or the Origin Story and any purported licensees thereof, some known and some possibly unknown, who or which copied constituent elements of the Spotlight Work and/or characters that are original and protected by copyright and which created works which bear substantial similarity to works protected under the copyright for the Spotlight Work, in that Marvel with knowledge of the aforesaid infringing activity, induced, caused, or materially contributed to the aforementioned infringing conduct.

91.     The direct, contributory, and vicarious infringement by Marvel of Plaintiffs' copyrights and Marvel's inducement of others to infringe Plaintiffs' copyrights has been willful and intentional.

92.     Marvel knowingly and willingly purported to license, reproduce, display, distribute and utilize for purposes of trade and promotion unauthorized copies or derivative versions of the Spotlight Work and its copyrighted elements.

93.     Marvel has received substantial profits and benefits attributable to and in connection with the unauthorized licensing, reproduction, display, distribution, and utilization for purposes of trade and promotion of derivative versions of the Spotlight Work and the copyrighted elements therein, and all benefits should be disgorged by the Defendant Marvel and paid to the Plaintiffs.

94.     All of the acts complained of herein were done without Plaintiffs permission, license, authorization or consent.

95.     As a result acts of Marvel alleged herein, Plaintiffs have suffered and are suffering substantial damages, including damages to goodwill and reputation, diversion of trade, loss of profits, and a dilution of the value of the Plaintiffs' rights, all of which are not yet fully ascertainable.

96.     The Marvel Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, Plaintiff's respectfully requests the Court enter judgment in their favor and against the Marvel Defendants, determine that none of the Marvel Defendants had any right, title or authority to use or purport to authorize or license others to use the Spotlight Work copyright, enjoining the Marvel Defendants and all those acting in concert with them from taking any further actions to purport to use or license the copyright covering the Spotlight Work or any characters contained therein, and awarding Friedrich :

    a.   actual damages as proven at trial for copyright infringement pursuant to 17 USC § 504 (a) (1) and (b).

    b.   an amount equal to all profits, income, receipts, or other benefit derived by the Marvel Defendants (including but not limited to all license fees, royalties or other amounts) and/or by any and all persons or entities for whose infringement Marvel is vicariously or contributorily responsible or

which Marvel induced into infringing activity, which were derived from

the performance, reproduction, copying, display, promotion, distribution

or sale of products and services, or other media, either now known or

hereinafter devised, that improperly or unlawfully infringe Plaintiffs'

copyright  pursuant to 17 USC § 504 (a)(1) and (b).

c.    for punitive damages in an amount sufficient to punish and deter this

defendant and others from the indicated and similar conduct in the future.

d.    attorneys' fees as available under the Copyright Act, 17 USC §§ 505.

e.    for costs and interest pursuant to the Copyright Act, 17 USC § 505.

f.    for other and further relief as this Court deems just and proper.


## COUNT II – NEGLIGENCE (MARVEL DEFENDANTS)

Plaintiffs for their claim of negligence against the Marvel Defendants, state as

follows:

97.    Plaintiffs' reallege and incorporate by reference paragraphs 1 through 96

of this Complaint as if fully set forth herein.

98.    The Marvel Defendants are in the business of, *inter alia*, capitalizing on,

licensing, and authorizing others to utilize intellectual property, the rights to which one or

more of the Marvel Defendants received from others.

99.    As such, the Marvel Defendants owed a duty to the holders, authors, and

owners of intellectual property, including copyright holders, character owners and work

creators such as and including Plaintiff Gary Friedrich, to exercise reasonable care in

determining whether or not the Marvel Defendants had or have the lawful right to authorize others to utilize the intellectual property of such holders, authors and owners.

100.    The Marvel Defendants failed to exercise such reasonable care prior to asserting to the other Defendants and other third parties that they purportedly had the right, authority and ability to authorize such Defendants and others to utilize the intellectual property rights of Plaintiff Gary Friedrich and prior to purporting to authorize them to do so.

101.    As a result of the Marvel Defendants violations of this duty of care, Plaintiffs have suffered damages in that their intellectual property rights have been utilized by others under an apparent claim of right when no such right existed, the value of such intellectual property rights has been diminished, Plaintiffs have failed to receive a reasonable royalty for the use of intellectual property, and in other matters and respects which shall be proven at trial.

WHEREFORE, Plaintiff's requests the Court enter judgment in their favor and against the Marvel Defendants, jointly and severally, and award Plaintiffs actual damages as determined at trial, together with the costs and attorney's fees incurred in connection herewith, and such other and further relief as justice may require.

## COUNT III -- ACCOUNTING (MARVEL DEFENDANTS)

Plaintiffs for their Demand for an accounting against the Marvel Defendants, state as follows:

102.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 93 of this Complaint as if fully set forth herein.

272459                          Page 24 of 61

103.    The Marvel Defendants, upon information and belief, have purported to have authority to license or otherwise authorize others to utilize, copy or otherwise profit from the Johnny Blaze/Ghost Rider character and the other "Friedrich Characters," the Origin Story and/or the Spotlight Work, in exchange for the payment to one or more of the Marvel Defendants of payments or other benefits.

104.    The Marvel Defendants had no right to authorize others to utilize, copy or otherwise profit from the Friedrich Characters, the Origin Story or the Spotlight Work, or to receive payments or benefits in exchange therefore.

105.    Plaintiffs have no ability to determine the complete list of parties to whom the Marvel Defendants have purported to grant such authorization or the amounts which Marvel Defendants have or will receive in conjunction therewith absent a full accounting.

106.    Plaintiff Friedrich Enterprises is the sole owner of the Spotlight Work copyright.  However, in the alternative, should any of the Marvel Defendants claim and somehow establish themselves as joint owners, and were somehow able to claim and establish a right to license others to use the copyright without Plaintiffs' permission, Plaintiffs would still be entitled to an accounting of half the monies received by the Marvel Defendants from such activity and to all the monies received from any purported licensing not based on the copyrighted work.

WHEREFORE, Plaintiffs request the Court to enter judgment in their favor and against all Marvel Defendants and to order each of the Marvel Defendants to provide a full accounting of any and all monies received or to be received from or in connection with the Origin Story, the Spotlight Work, and/or the Friedrich Characters, to determine

Plaintiffs' fair share thereof, and to award such amount to the Plaintiffs, along with their

costs and attorneys fees and such other relief as justice may require.

## COUNT IV – WASTE (MARVEL DEFENDANTS)

Plaintiffs for their claim for waste against the Marvel Defendants, states as follows:

107.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 106

of this Complaint as if fully set forth herein.

108.    The Marvel Defendants have failed to properly utilize and capitalize on

the Spotlight Work, the Origin Story, and the Characters contained therein.

109.    In its attempt to capitalize on the Spotlight Work, the Marvel Defendants

have damaged the worth and value of the Work and the Copyright covering it, and failed

to take reasonable steps to promote, protect, and achieve greater benefits, fees, and

results, and has accepted less than a reasonable royalty under the circumstances from

persons to whom the Marvel Defendants purported to license that copyright.

110.    As a result, Friedrich has been harmed in the underutilization and

improper use of his property interests and the failure to gain greater fees and royalties

from its use, and in that he will be unable to earn as much from the same in the future.

111.    The Marvel Defendants have willfully engaged in, and are willfully

engaging in, the acts complained of with oppression, fraud, actual malice and with such

gross negligence as to indicate a wanton and conscious disregard of the rights of the

Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against

the  Marvel Defendants for all harm incurred as a result of the waste of their property

rights and interests in the Spotlight Work and their property rights contained therein,

including, without limitation, all sales, income and profit earned by Defendants thereon,

all pre and post judgment interest obtained therein, all costs incurred as a result of this

action, for punitive damages in an amount sufficient to punish and deter this defendant

and others from the indicated and similar conduct in the future, economic harm and

damages in failing to properly utilize the works, and all other remedies this Court deems

just and proper.

## COUNT V -- TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS EXPECTANCY (MARVEL DEFENDANTS)

Plaintiffs, for their claim for tortious interference with prospective business

expectancy against the Marvel Defendants, state as follows:

112.    Plaintiffs realleges and incorporates by reference paragraphs 1 through

111 of this Complaint as if fully set forth herein.

113.    Friedrich, as the author, creator, and owner of the Origin Story, the

Friedrich Characters, the Spotlight Work copyright, and/or all elements in the Spotlight

Work, and as author and scripter for the first twelve issues featuring Johnny Blaze/Ghost

Rider and the copyrights thereon, had a reasonable expectancy of entering into valid

business relationships with third parties to obtain business, goodwill, and other pecuniary

interests associated with the use of his property interests and the Spotlight Work.

114.    The Marvel  Defendants knew or had reason to know that Friedrich would

be entitled to and would have received substantial financial payment and business

relationships from third parties on account of their ownership of the Characters and story

of Johnny Blaze/Ghost Rider.

115.   The Marvel Defendants purposefully and intentionally interfered with Plaintiffs' business and economic expectancy from ripening into a valid business relationship by taking the wrongful actions and inactions set forth above.

116.   Plaintiffs have been harmed through the loss of business, including the loss of reasonable royalties, profits, revenues, and creative control over derivative works and other projects, resulting from the purposeful and intentional acts of the Defendants.

117.   The Marvel Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against the Marvel Defendants for all harm incurred as a result of the wrongful interference with the business expectancy of the Plaintiffs, including, without limitation, all sales, income and profit earned by the Defendants thereon, for punitive damages in an amount sufficient to punish and deter this Marvel Defendants and others from the indicated and similar conduct in the future, all pre and post judgment interest obtained therein, all costs incurred as a result of this action and all other remedies that this Court deems just and proper.

**COUNT VI -- COPYRIGHT INFRINGEMENT UNDER 17 USC § 106, et seq. ARISING FROM UNAUTHORIZED CREATION AND PROFITTING FROM THE GHOST RIDER FILM (SONY, MOVIE DEFENDANTS AND MARVEL DEFENDANTS)**

Plaintiffs for their claims of Copyright Infringement under 17 U.S.C. 106, et seq.

against Defendants Sony, Movie Defendants and Marvel Defendants, state as follows:

118.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 117

of this Complaint as if fully set forth herein.

119.    Notwithstanding the rights of Plaintiffs and without any authorization or

permission, Defendants Marvel, Sony, Crystal Sky, De Luca and Relativity Media have

copied constituent elements of the Spotlight Work that are original and protected by

copyright by creating, producing, distributing and marketing a feature length film

containing such elements and the Johnny Blaze/Ghost Rider, Roxanne and Crash

Simpson characters.  Defendants Marvel, Sony, Crystal Sky, De Luca and Relativity

Media had access to the Spotlight Work and each Defendant's works and products as set

forth below bear substantial similarity to works protected under the copyright for the

Spotlight Work.

120.    The Movie Defendants, individually and in concert with one another,

produced and published a movie entitled Ghost Rider (the "Ghost Rider Movie") which

was released and distributed nationally and internationally on or after February 16, 2007

and which, upon information and belief, has been or shall be released to pay per view

television, cable and/or satellite television networks, and on DVD and other home

viewable medium.

121.    The Ghost Rider Movie incorporates and copies substantial and legally

protectible elements of the Spotlight Work, the characters from the Spotlight Work

including Johnny Blaze/Ghost Rider, Roxanne and Crash Simpson, and the Origin Story.

122.    The illegal copying by Defendants Marvel, Sony, and the Movie Defendants as set out in this Count are violations of the exclusive rights of Plaintiffs as the sole copyright holder and the use of elements of the copyrighted work to the commercial advantage of Defendants Marvel, Sony, and the Movie Defendants as set out herein is in violation of the Copyright Act, 17 U.S.C. 106, et seq.

123.    Plaintiffs have complied in all respects with the Copyright Act and with all of the laws of the United States governing copyright.

124.    The Marvel Defendants, Sony, and the Movie Defendants have directly infringed Plaintiff's copyrighted work in violation of 17 USC § 106 et seq.

125.    Defendant Sony is vicariously liable under the doctrine of respondeat superior for the acts of infringement of their agents, contractors and employees who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work, including but not limited to certain actors, producers, directors, screenwriters, and agents, contractors or employees who prepared, designed, performed or staged special effects scenery, acting, make up, set designs, computer or animated scenery, motorcycle or machinery, costumes or other infringing components incorporated into the Ghost Rider Movie.

126.    Defendant Sony is vicariously liable for the acts of infringement of its agents, contractors and employees who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work, including but not limited to certain actors, producers, directors, screenwriters, and agents, contractors

or employees who prepared, designed, performed or staged special effects scenery, acting, make up, set designs, computer or animated scenery, motorcycle or machinery, costumes or other infringing components incorporated into the Ghost Rider Movie. Defendant Sony possessed the right and ability to supervise the aforesaid infringing conduct and Defendant Sony had an obvious and direct financial interest in the exploitation of the copyrighted materials.

127.    Defendant Sony is liable as a contributory infringer for the acts of infringement of its agents, contractors and employees, who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work and/or is liable for the acts of infringement of others who Sony induced to undertake such acts and who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work, including but not limited to certain actors, producers, directors, screenwriters, and agents, contractors or employees who prepared, designed, performed or staged special effects scenery, acting, make up, set designs, computer or animated scenery, motorcycle or machinery, costumes or other infringing components incorporated into the Ghost Rider Movie, and/or advertising agencies or promoters, promotions of the Ghost Rider Movie and/or companies engaged in cross marketing or promotions in conjunction with the release of the Ghost Rider Movie.

128.    Defendant Sony with knowledge of the infringing activity, induced, caused, or materially contributed to the aforementioned infringing conduct.

129.    The Movie Defendants are vicariously liable under the doctrine of respondeat superior for the acts of infringement of their agents, contractors and employees who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work, including but not limited to certain actors, producers, directors, screenwriters, and agents, contractors or employees who prepared, designed, performed or staged special effects scenery, acting, make up, set designs, computer or animated scenery, motorcycle or machinery, costumes or other infringing components incorporated into the Ghost Rider Movie.

130.    The Movie Defendants are vicariously liable for the acts of infringement of their agents, contractors and employees who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work, including but not limited to certain actors, producers, directors, screenwriters, and agents, contractors or employees who prepared, designed, performed or staged special effects scenery, acting, make up, set designs, computer or animated scenery, motorcycle or machinery, costumes or other infringing components incorporated into the Ghost Rider Movie.  The Movie Defendants possessed the right and ability to supervise the aforesaid infringing conduct and the Movie Defendants had an obvious and direct financial interest in the exploitation of the copyrighted materials.

131.    The Movie Defendants are liable as contributory infringers for the acts of infringement of their agents, contractors and employees, who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which

bear substantial similarity to works protected under the copyright for the Spotlight Work

and/or is liable for the acts of infringement of others who Sony induced to undertake such

acts and who or which copied constituent elements of the Spotlight Work that are original

and protected by copyright and which bear substantial similarity to works protected under

the copyright for the Spotlight Work, including but not limited to certain actors,

producers, directors, screenwriters, and agents, contractors or employees who prepared,

designed, performed or staged special effects scenery, acting, make up, set designs,

computer or animated scenery, motorcycle or machinery, costumes or other infringing

components incorporated into the Ghost Rider Movie, and/or advertising agencies or

promoters, promotions of the Ghost Rider Movie and/or companies engaged in cross

marketing or promotions in conjunction with the release of the Ghost Rider Movie.

132.    The Movie Defendants acted with knowledge of the infringing activity and

induced, caused, or materially contributed to the aforementioned infringing conduct.

133.    The infringements of Defendants Marvel, Sony, and the Movie

Defendants of Plaintiffs' copyrights were undertaken in concert and as part of a joint

venture or otherwise on behalf of one another so that each Defendant is jointly and

severally responsible for the acts of each other.

134.    The infringements of Defendants Marvel, Sony, Crystal Sky, De Luca and

Relative Media have been willful, intentional and in total disregard of and with

indifference to Plaintiffs' rights by knowingly and willingly licensing, reproducing,

displaying, distributing and utilizing for purposes of trade and promotion unauthorized

copies or derivative versions of the Spotlight Work and its copyrighted elements.

135.    Defendants Marvel, Sony, Crystal Sky, De Luca and Relativity Media have received substantial profits and benefits attributable to and in connection with the unauthorized licensing, reproduction, display, distribution, and utilization for purposes of trade and promotion of derivative versions of the Spotlight Work and the copyrighted elements therein, and all benefits should be disgorged by said Defendants and paid to the Plaintiffs.

136.    All of the acts complained of herein were done without Plaintiffs' permission, license, authorization or consent.

137.    As a result of the acts of Defendants Marvel, Sony, and the Movie Defendants alleged herein, Plaintiffs have suffered and are suffering substantial damages, including damages to their goodwill and reputation, diversion of trade, loss of profits, and a dilution of the value of the Plaintiffs' rights, all of which are not yet fully ascertainable.

138.    Each of the Defendants Marvel, Sony, and the Movie Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment in their favor and against Defendants Marvel, Sony, Crystal Sky, De Luca and Relativity Media, jointly and severally, and award Plaintiffs

      a.   actual damages as proven at trial for copyright infringement pursuant to 17 USC § 504 (a) (1) and (b);

      b.   an amount equal to all profits, income, receipts, or other benefit derived by each Defendant (including but not limited to all license fees, royalties or

other amounts) and/or any and all persons or entities for whose

infringement each Defendant is vicariously or contributorily responsible or

which said Defendant induced into infringing activity, which were derived

from the performance, reproduction, copying, display, promotion,

distribution or sale of products and services, or other media, either now

known or hereinafter devised, that improperly or unlawfully infringe

Plaintiffs' copyright pursuant to 17 USC § 504 (a)(1) and (b).

   c.  for punitive damages in an amount sufficient to deter this defendant from

the indicated and similar conduct in the future;

   d.  attorneys' fees as available under the Copyright Act, 17 USC §§ 505;

   e.  for costs and interest pursuant to the Copyright Act, 17 USC § 505;

   f.  for other and further relief as this Court deems just and proper.

## COUNT VII –STATE LAW MISAPPROPRIATION OF CHARACTERS AND OF RIGHT TO CONTROL USE OF SAME (HASBRO and TAKE TWO)

Plaintiffs for their claim for misappropriation of the Johnny Blaze/Ghost Rider

persona and related Characters directed at Defendants Hasbro and Take Two, state as

follows:

139.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 93 of

this Complaint as if fully set forth herein.

140.   As stated previously, Plaintiff Friedrich created and has owned the

Friedrich Characters and the rights to control the use of the same, under state law

141.    The idea of such personae for fictional characters was not free and available to all, but rather was kept with Friedrich as he outlined and developed the ideas on his own over a period of years.

142.    Whenever Friedrich discussed or disclosed the Friedrich Characters, he did so in trust and confidence and with the understanding that he was not abandoning his claims to ownership of the same or contributing the same to the public, but was rather developing the same and intending to use the same for his own commercial and proprietary purposes.

143.    Ultimately, when Friedrich disclosed the Friedrich Characters for the purposes of creating a work that would be distributed to the pubic, he still disclosed the same under confidence, in a fiduciary and/or confidential relationship with Magazine Management and did so for the limited purpose of creating the Spotlight Work and subsequent comics continuing the Origin Story.

144.    The disclosure of Johnny Blaze/Ghost Rider was done by Friedrich on his own fruition and done under no obligation or compulsion to.

145.    At all times relevant hereto, Defendants Hasbro and Take-Two were aware that the ideas and originality of the Characters were not in the public domain and that Friedrich had disclosed the Characters and Origin Story to Magazine Management in a manner intended to preserve such Characters and Origin Story and to prevent it from going into the public domain.

146.    At no time were any of the Defendants herein granted the right by Friedrich to utilize the Characters for any purpose.

272459                    Page 36 of 61

147.    At all times relevant to this Complaint, the Characters were specific, novel, original and unique in absolute terms, and constituted a property interest pursuant to state law.

148.    Defendants Hasbro and Take Two have, without right, authority or permission, each created, marketed, sold and profited from various products that utilize, capitalize, copy, promote, and benefit from the Characters, and which are not based, on, copied from, or derivative from any copyrighted work or storyline.

149.    By taking the actions set forth in this Complaint, the Hasbro and Take Two Defendants have improperly appropriated the benefits of the Friedrich Characters, the originality contained within such Characters, and Plaintiffs' right to control the use thereof to themselves, without the consent or authority of the Plaintiffs.

150.    Such Defendants wrongful misappropriation has caused Defendants to each improperly profit and caused the Plaintiffs' harm

151.    Defendants Hasbro and Take-Two have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs' demand judgment against Defendants Hasbro and Take-Two for all harm incurred as a result of each Defendant's wrongful misappropriation of the originality of the Plaintiffs' property interests in the Friedrich Characters, including the failure to receive a reasonable royalty for the use of the same, together with pre and post judgment interest, for punitive damages in an amount sufficient to punish and deter this defendant and others from the indicated and

similar conduct in the future, attorneys fees, all costs incurred as a result of this action

and all other relief this Court deems just and proper.

## COUNT VIII – COPYRIGHT INFRINGEMENT UNDER 17 USC § 106, et seq.

## AGAINST DEFENDANTS HASBRO AND TAKE-TWO

Plaintiffs for their claim of Copyright Infringement under 17 U.S.C. 106, et seq.

against Defendants Hasbro and Take-Two, state as follows:

152.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 138

of this Complaint as if fully set forth herein.

153.    As the copyright holder of the Spotlight Work, Plaintiffs have the

exclusive rights and privileges in and to the copyright covering the Spotlight Work,

including to the extent the same are copyrightable, the characters and story introduced,

and all the protected material contained therein.

154.    Plaintiff Friedrich is the sole author and Plaintiff Gary Friedrich

Enterprises LLC is the current proprietor of all rights, title, and interest in and to the

copyright for the work contained therein including, but not limited to, all storylines and

plots, all script, and all images and depictions of all characters, including Johnny

Blaze/Ghost Rider, and the other characters introduced and contained in the Spotlight

Work.

155.    Notwithstanding the rights of Plaintiffs, and without any authorization or

permission, Defendants Hasbro and Take-Two have copied constituent elements of the

Spotlight Work that are original and protected by copyright.  Defendants Hasbro and

Take-Two had access to the Spotlight Work and each of said Defendants' works and

products as set out below bear substantial similarity to works protected under the copyright for the Spotlight Work.

156.    Defendant Hasbro has sold and distributed toys and other products beginning in early 2007 which incorporate and copy substantial and legally protectible elements of the Spotlight Work.

157.    Defendant Take-Two has sold and distributed video games and other products beginning in February 2007 which incorporate and copy substantial and legally protectible elements of the Spotlight Work.

158.    The illegal copying by Defendants Hasbro and Take-Two as set out in this Count are violations of the exclusive rights of Friedrich as the sole copyright holder and the use of elements of the copyrighted work to the commercial advantage of Defendants Hasbro and Take-Two as set out herein is in violation of the Copyright Act, 17 U.S.C. 106.

159.    With respect to the Spotlight Work, Plaintiffs have complied in all respects with the Copyright Act and with all of the laws of the United States governing copyright.

160.    Defendants have directly infringed Plaintiffs' copyrighted work in violation of 17 USC § 106, et seq.

161.    Defendants Hasbro and Take-Two are liable as contributory infringers for the acts of infringement of their respective other licensees and sub-licensees, who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work in that each of these Defendants with knowledge of the aforesaid

infringing activity, induced, caused, or materially contributed to the aforementioned infringing conduct.

162.    The infringement by Defendants Hasbro and Take-Two of Plaintiffs' copyright has been willful, intentional and in total disregard of and with indifference to Plaintiffs' rights by knowingly and willingly licensing, reproducing, displaying, distributing and utilizing for purposes of trade and promotion unauthorized copies or derivative versions of the Spotlight Work and its copyrighted elements.

163.    Defendants Hasbro and Take-Two have received substantial profits and benefits attributable to and in connection with the unauthorized licensing, reproduction, display, distribution, and utilization for purposes of trade and promotion of derivative versions of the Spotlight Work and the copyrighted elements therein, and all benefits should be disgorged by the Defendants and paid to the Plaintiffs.

164.    All of the acts complained of herein were done without Plaintiffs' permission, license, authorization or consent.

165.    As a result of the acts of Defendants Hasbro and Take-Two alleged herein, Plaintiffs have suffered and are suffering substantial damages to Plaintiffs' goodwill and reputation, diversion of trade, loss of profits, and a dilution of the value of the Plaintiffs' rights, all of which are not yet fully ascertainable.

166.    On information and belief, Defendants Hasbro and Take-Two have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with gross negligence as to indicate a wanton disregard of the rights of the Plaintiffs.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment in their favor and against Defendants Hasbro and Take-Two, enjoin such Defendants and all acting in concert with them from continuing their infringing activities, and award Plaintiffs:

    a. actual damages as proven at trial for copyright infringement pursuant to 17 USC § 504 (a) (1) and (b);

    b. an amount equal to all profits, income, receipts, or other benefit derived by Defendants Hasbro and Take-Two (including but not limited to all license fees, royalties or other amounts) and/or any and all persons or entities for whose infringement Defendants Hasbro or Take-Two is vicariously or contributorily responsible or which Defendants Hasbro or Take-Two induced into infringing activity, which were derived from the performance, reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereinafter devised, that improperly or unlawfully infringes Plaintiffs' copyright pursuant to 17 USC § 504 (a)(1) and (b);

    c. for punitive damages in an amount sufficient to deter this defendant and others from the indicated and similar conduct in the future;

    d. attorneys' fees as available under the Copyright Act, 17 USC §§ 505;

    e. for costs and interest pursuant to the Copyright Act, 17 USC § 505;

    f. for other and further relief as this Court deems just and proper.

## <u>COUNT IX – NEGLIGENCE (ALL DEFENDANTS)</u>

Plaintiffs, for their claim of negligence against all Defendants, states as follows:

167.    The allegations of Paragraphs 1 through Paragraph 167 are incorporated herein by reference the same as if fully set forth herein.

168.    Defendants are each in the business of creating products or offering services based in whole or in part on the creative innovations, creations and works of others, including copyrights, state law property rights and other intellectual property of others.

169.    In conjunction with such business, each of such Defendants owes the true creators and owners of such rights and intellectual property a duty to reasonably investigate any claim of a third person purporting to offer the rights to exploit any such items or intellectual property to insure that such third person actually has the authority to license, transfer or assign the rights involved.

170.    In the instant case, each Defendant violated and breached such duty by failure to take reasonable steps to determine whether or not the Marvel Defendants actually had the right, ability and authority to authorize such Defendants to exploit, utilize, copy and profit from the characters, origins, story, and Spotlight Work of Plaintiffs.

171.    As a result of Defendants violations and breach of their duties to Friedrich, Friedrich has been damaged in that their intellectual property rights have been utilized by others under an apparent claim of right when no such right existed, the value of such intellectual property rights have been diminished, Plaintiffs have failed to receive a

272459                              Page 42 of 61

reasonable royalty for the use of their intellectual property, and in other matters and respects which shall be proven at trial.

WHEREFORE, Plaintiffs request the Court enter judgment in their favor and against the Defendants, jointly and severally, and award Plaintiffs actual damages as determined at trial, together with the costs and attorney's fees incurred in connection herewith, and such other and further relief as justice may require.

## COUNT X – MISAPPROPRIATION OF JOHNNY BLAZE/GHOST RIDER PERSONAS AND RELATED CHARACTERS AND ORIGIN STORY AND RIGHT TO CONTROL USE OF SAME

Plaintiffs, for their claim for misappropriation of the Johnny Blaze/Ghost Rider persona and related characters and the Origin Story directed at all Defendants, state as follows:

172.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 93 of this Complaint as if fully set forth herein.

173.    As stated previously, Gary Friedrich created and Plaintiffs or one of them have owned the Friedrich Characters and the rights to control the use of the same, under state law

174.    The idea of such personas for fictional characters was not free and available to all, but rather was kept with Friedrich as he outlined and developed the ideas on his own over a period of years.

175.    Whenever Friedrich discussed or disclosed the Characters, he did so in trust and confidence and with the understanding that Plaintiffs were not abandoning his claims to ownership of the same or contributing the same to the public, but was rather

272459                           Page 43 of 61

developing the same and intending to use the same for his own commercial and proprietary purposes.

176.     Friedrich also created and Plaintiffs or one of them have owned the rights to the Origin Story since Friedrich created the same, and kept said rights as he outlined and developed the idea as his own and did not make any part free or available to all, and only discussed the same with others in trust and confidence and with the understanding that Plaintiffs were not abandoning his claim of ownership or contributing the same to the public but was rather developing the same for use for commercial and proprietary purposes.

177.     Ultimately, when Friedrich disclosed the Characters and Origin Story for the purposes of creating a work that would be distributed to the pubic, he still disclosed the same under confidence, in a fiduciary and/or confidential relationship with Magazine Management and did so for the limited purpose of creating the Spotlight Work and subsequent comic books.

178.     The disclosure of Johnny Blaze/Ghost Rider was done by Friedrich on his own fruition and done under no obligation or compulsion.

179.     At all times relevant hereto, Defendants were aware that the ideas and originality of the Characters were not in the public domain and that Friedrich had disclosed the Characters and Origin Story to Magazine Management in a manner intended to preserve such Characters and Origin Story and to prevent it from going into the public domain.

180.     At no time were any of the Defendants herein granted the right by either Plaintiff to utilize the Characters or Origin Story for any purpose.

181.    At all times relevant to this Complaint, the Characters and the Origin Story were specific, novel, original and unique in absolute terms, and were never commercially available and constituted a property interest pursuant to state law.

182.    The Defendants herein have wrongfully and without permission utilized the idea and originality of the Friedrich Characters in manners and ways that are not based on any copyrighted depiction of them and which exist outside of any storyline or other reduction to tangible form.

183.    By taking the actions set forth in this Complaint, the Defendants have improperly appropriated the benefits of the Friedrich Characters and Origin Story, the originality contained within such Characters and Origin Story and Plaintiffs right to control the use thereof to themselves, without the consent or authority of Plaintiffs.

184.    Defendants' wrongful misappropriation has caused Defendants to each improperly profit and has caused the Plaintiffs harm.

185.    Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, the Plaintiffs demand judgment against Defendants for all harm incurred as a result of such Defendant's wrongful misappropriation of the originality of the Plaintiffs property interests in the characters of the Origin Story and Friedrich Characters and the disgorgement of the amounts received by the Marvel Defendants from any and all sales, income and profit earned in conjunction with any use of the Origin Story or Characters including any licensing fees obtained by Defendants Marvel, together with pre and post judgment interest, for punitive damages in

an amount sufficient to deter these Defendants and others from the indicated and similar

conduct in the future, attorneys fees, all costs incurred as a result of this action and all

other relief this Court deems just and proper

## COUNT XI -- UNAUTHORIZED USE OF PUBLIC

## RECOGNITION/PUBLICITY OF THE JOHNNY BLAZE/GHOST

## RIDER AND RELATED CHARACTERS PERSONAS

Plaintiffs for their claim of unauthorized use of public recognition and publicity of

the Johnny Blaze/Ghost Rider and related Characters against all Defendants, states as

follows:

186.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through

Paragraph 186 as if fully stated herein.

187.    The Defendants have used the personas and identities of the Friedrich

Characters and the public's recognition of them.

188.    Such use was without consent.

189.    Such use was made with intent to obtain a commercial advantage.

190.    Defendants' actions have caused Plaintiffs to lose the benefits of

Friedrich's work in creating a publicly recognizable persona and have resulted in

pecuniary loss to Plaintiffs and in an unjust pecuniary gain to Defendants.

191.    The Defendants acted knowingly, willfully and with evil motive or

reckless disregard in the acts complained of with oppression, fraud, actual malice and

with such gross negligence as to indicate a wanton and conscious disregard of the rights

of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request the Court to enter judgment in their favor and award damages against all Defendants, jointly and severally, award punitive damages in an amount sufficient to deter these Defendants and others from the indicated and similar conduct in the future and such other relief as the Court deems just and proper.

## COUNT XII -- CONVERSION

Plaintiffs, and for their claim for conversion against the Marvel Defendants, states as follows:

192.    Friedrich realleges and incorporates by reference paragraphs 1 through 192 of this Complaint as if fully set forth herein.

193.    At all times relevant to this Complaint, the Plaintiffs were, have been, and are the rightful owner of the copyright on the Spotlight Work, and of the Origin Story and the Friedrich Characters.

194.    The Marvel Defendants wrongfully, intentionally, and improperly exercised dominion and control over the originality and novelty of Friedrich's property interests (and the Spotlight Work, and the property interest contained therein), and has converted the same for its own benefit, promotion, use, sale, and profit.

195.    Demand was and is hereby made that the Marvel Defendants cease the exercise of such dominion and control, but such Demand was useless and ignored.

196.    The Marvel Defendants took the aforementioned actions and inactions with evil motive and/or reckless indifference to the rights of the Plaintiffs, and willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud,

actual malice and with such gross negligence as to indicate a wanton and conscious
disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against the
Marvel Defendants for all harm incurred as a result of the conversion of the originality of
the Plaintiffs' Spotlight Work, the Origin Story and the Friedrich Characters, the
disgorgement of all sales, income and profit earned by the Defendants, costs, and
attorneys fees, punitive damages sufficient to punish and deter these Defendants and
others from similar conduct, pre and post judgment interest obtained therein and all other
remedies that this Court deems just and proper.

## COUNT XIII -- TRESPASS TO CHATTELS

Plaintiffs, for their claim for trespass to chattels against the Marvel Defendants,
state as follows:

197. Plaintiffs reallege and incorporate by reference paragraphs 1 through 197
of this Complaint as if fully set forth herein.

198. Marvel intentionally invaded the exclusive possession of Friedrich in
using or interfering with the possession of the property rights and interests of Friedrich,
including the Spotlight Work, the Origin Story and the Friedrich Characters.

199. Plaintiffs have protectible interests in the possession of their property
rights and interests.

200. Plaintiffs have been damaged and caused harm as a result.

201. The Marvel Defendants took the aforementioned actions and inactions
with evil motive and/or reckless indifference to the rights of others and willfully engaged
in, and are willfully engaging in, the acts complained of with oppression, fraud, actual

272459                          Page 48 of 61

malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against Defendant Marvel for all damages incurred as a result of the trespass to Plaintiffs property interests, including the Spotlight Work, the Origin Story and the Friedrich Characters, including the disgorgement of all sales, income and profit earned by the Defendants, costs, and attorneys fees, punitive damages sufficient to punish and defer these Defendants from similar conduct and pre and post judgment interest obtained therein and all other remedies that this Court deems just and proper.

## COUNT XIV -- VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT / ILLINOIS COMMON LAW UNFAIR COMPETITION

Plaintiffs for their claims of Violations of the Illinois Uniform Deceptive Trade Practices Act against all Defendants, state as follows:

202.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 202 of this Complaint as if fully set forth herein.

203.    The actions by the Movie Defendants in trade and commerce in portraying, promoting, or otherwise disseminating the Ghost Rider Movie based on the Spotlight Work has caused confusion or misunderstanding as to whether or not Friedrich is the source of, or has otherwise sponsored or approved of the use of his characters and story therein, and thus each has made misleading or untruthful statements for the purpose of commercial advertising or promoting a party's goods, services or commercial activities and misrepresented the nature and origin of Johnny Blaze/Ghost Rider.

204.     The actions by the Defendant Marvel, Hasbro and Take-Two in trade and commerce in portraying, promoting, or otherwise disseminating products and goods based on the Spotlight Work has caused confusion or misunderstanding as to whether or not Friedrich is the source of, or has otherwise sponsored or approved of the use of his characters and story therein and thus each has made misleading or untruthful statements for the purpose of commercial advertising or promoting a party's goods, services or commercial activities and misrepresented the nature and origin of Johnny Blaze/Ghost Rider.

205.     Defendants' actions constitute unfair competition and deceptive trade practices proscribed by the laws of the State of Illinois, specifically § 815 ILCS 510/ et seq.

206.     The deceptive conduct by the Defendants has caused and will continue to cause a likelihood of confusion or misunderstanding as to the affiliation or association of Friedrich and disparage the business and goodwill of the Plaintiffs by providing consumers with false and misleading information.

207.     As a result of Defendants' acts of unfair competition as alleged above, Plaintiffs will suffer and has suffered a loss of business, profits, goodwill, and reputation in amounts that are yet unascertained, and Defendants are liable to Plaintiffs for costs and attorney fees, in addition to all injunctive relief pursuant to law.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against Defendants Hasbro and the Movie Defendants as a result of their deceptive practices and relief for all harm incurred as a result of the wrongful misappropriation and use of the

Plaintiffs' Spotlight Work and property interests, and demand costs and attorneys fees, and any other relief this Court deems just and proper.

## COUNT XV -- VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 et seq.

Plaintiffs for their claims of violations of the Illinois Consumer Fraud and Deceptive Business Practices Act against Defendants Hasbro, Sony, Marvel, the Movie Defendants and Take-Two, state as follows:

208.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 208 of this Complaint as if fully set forth herein.

209.    The acts and conduct of the Defendants as alleged in this Complaint constitute unfair competition as defined by 815 ILCS 505/, et seq.

210.    The acts, practices, and conduct of the Defendants as stated herein, constitute unfair and deceptive business practices and consumer fraud in violation of 815 ILCS 505/1 et seq., in that said acts and practices were committed in the course of trade and commerce and led the public to conclude based upon the portrayal, advertisements, offerings, distribution, marketing, promotions, and dissemination of the copyrighted elements of the Spotlight Work, that said acts were sponsored, authorized, or otherwise consented to by Friedrich, to the damage and harm of the Plaintiffs.

211.    In portraying, releasing, advertising, and promoting the Ghost Rider Movie and associated merchandise and goods, the Defendants deceived the public into believing that it owned the story and characters to Friedrich's work. Defendants intentionally and falsely represented that they owned the rights, title and interest to the

Spotlight Work and all elements contained therein, all to the detriment and shock of the Plaintiff Gary Friedrich.

212.    Marvel and the other Defendants misrepresented, concealed, and omitted material facts to the public as to the actual creator and owner of the Spotlight Work and whether or not Friedrich tacitly approved or otherwise consented to the movie version of his story and characters.

213.    As a proximate result of the acts, practices, and conduct of the Defendants, Friedrich has been and will likely continue to be damaged and harmed by a loss to his business expectancy, goodwill, and reputation, whereas the Defendants have obtained an illegal gain of profits.

214.    Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, the Plaintiffs demand judgment against Defendants Hasbro, Sony, Marvel, the Movie Defendants, and Take-Two for all harm incurred as a result of the deceptive practices and wrongful misappropriation of the originality and novelty of the property interest of the Plaintiff, including, without limitation, all sales, income and profit earned by the Defendants thereon, all pre and post judgment interest obtained therein, punitive damages in an amount to punish and deter Defendants and others from similar conduct, all costs incurred as a result of this action and all other relief this Court deems just and proper.

## COUNT XVI -- VIOLATIONS OF THE LANHAM ACT, 15 U.S.C. 1125,

## FOR FALSE ADVERTISING, FALSE ENDORSEMENT AND/OR

## UNFAIR COMPETITION AGAINST SONY, HASBRO, TAKE-

## TWO AND MARVEL

Plaintiffs, for their claims of violations of the Lanham Act under 15 U.S.C. 1125

against Defendants Sony, Hasbro, Take-Two and Marvel, state as follows:

215.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 215

of this Complaint as if fully set forth herein.

216.    In pertinent part, 15 U.S.C. 1125 §43(a) provides as follows:

(a)(1) Any person who, on or in connection with any goods or services, or any
container for goods, uses in commerce any word, term, name, symbol, or device,
or any combination thereof, or any false designation of origin, false or misleading
description of fact, or false or misleading representation of fact, which—

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the
affiliation, connection, or association of such person with another person, or as to
the origin, sponsorship, or approval of his or her goods, services, or commercial
activities by another person, or

    (B) in commercial advertising or promotion, misrepresents the nature,
characteristics, qualities, or geographic origin of his or her or another person's
goods, services, or commercial activities, shall be liable in a civil action by any
person who believes that he or she is or is likely to be damaged by such act.  See
15 U.S.C. § 1125, §43.

217.    Defendants Sony, Hasbro, Take-Two and Marvel intentionally, wilfully,

knowingly and wrongfully, are using, advertising and selling the originality of their

products by claiming their products were and are produced solely by themselves and

those listed on their products or packaging materials and/or are based on the "Marvel

Comics" and by thus falsely designating the originality as their own and the products as

solely their own.

218.    By so doing, such Defendants are causing mistake, confusion and deception as to the true origin of such products and the originality of such products, and have falsely and deceptively advertised and promoted such products.

219.    Such Defendants have also intentionally, willfully, knowingly and wrongfully advertised, distributed and promoted elements and characters of the Origin Story, Spotlight Work, and the Characters including without limitation the ideas, concepts, themes, text and plot contained therein, and derivatives thereof, without the consent, express or implied, permission, or authorization of the Plaintiffs and as such, have misrepresented the nature, characteristics and qualities of Friedrich's activities, goods and commercial activities.

220.    On information and belief, consumers have been confused as to the origins of the Defendants' products which have been falsely attributed to be solely the works of Defendants.

221.    Plaintiffs have been and will continue to be injured as a result of the false advertisements made by said Defendants, and their agents and representatives, in the loss of sales, profits, royalties, lost expectancies, and revenues they were and are otherwise entitled to, and by the loss of goodwill that is associated with his property interests.

WHEREFORE, Plaintiffs request the Court enter judgment in their favor and against the Defendants and make an award to Plaintiffs:

    a.    For actual damages pursuant to 15 U.S.C. 1117 (a) (2).

    b.    For an accounting of all profits, income, receipts, or other benefit derived by Defendants pursuant to 15 U.S.C. 1117 (a) (1).

    c.    For a reasonable royalty,

   d. Treble damages and an amount to be determined by this Court to be just
under 15 U.S.C. 1117 (a) (3).

   e. Attorneys' fees as available under 15 U.S.C. 1117 (a) (3).

   f. For costs as available under 15 U.S.C. 1117 (a) (3).

   g. For other and further relief as this Court deems just and proper.

## COUNT XVII -- CIVIL CONSPIRACY

Plaintiffs for their claim for civil conspiracy directed at Defendants Hasbro, the
Movie Defendants, and Take-Two, state as follows:

222.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 222
of this Complaint as if fully set forth herein.

223.    Each of the Defendants, on its own motive, knowingly and voluntarily
participated in a common scheme to use the Spotlight Work, the Friedrich Characters
and/or the Origin Story and/or the originality contained therein, to which each knew was
owned by Friedrich, for their own commercial advantage by engaging in the wrongdoing
noted above and in timing their improper activities in such a manner as to cross market
and benefit from the similar wrongdoings of the other Defendants.

224.    Each performed overt acts in furtherance of said agreement to illegally
utilize, sell, and unlawfully distribute and transfer various products and merchandise
which contained copyrightable elements of the Spotlight Work and infringed upon the
state rights property rights in the Friedrich Characters and Origin Story.

225.    That said unlawful activity has caused monetary and economic harm to
Friedrich.

226.   Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, the Plaintiffs request the Court enter judgment in their favor and against Defendants Hasbro, Sony, Marvel, the Movie Defendants and Take-Two, jointly and severally, and award Plaintiffs their actual damages, including a reasonable lost royalty, for such loss and/or an amount equal to the profits, revenues and sales wrongfully earned by defendants, pre and post judgment interest costs incurred as a result of this action, punitive damages, attorneys fees, and everything else this Court deems just and proper.

## COUNT XVIII -- IMPOSITION OF A CONSTRUCTIVE TRUST

Plaintiffs for their demand for the imposition of a constructive trust against Defendants Hasbro, Sony, Marvel, the Movie Defendants and Take-Two, state as follows:

227.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 227 of this Complaint as if fully set forth herein.

228.   Defendants, by reason of the allegations stated herein, have engaged in deceptive, fraudulent, and illegal conduct whereby Defendants are retaining profits from the sales of items based on the copyrighted materials in the Spotlight Work and/or the state law protected Friedrich Characters and Origin Story.

229.   Defendants had no authority to undertake the action that lead to such profits and Plaintiffs were the sole persons entitled to earn such profits.

230.   By virtue of their acts, Defendants hold illegal profits as constructive trustees for the benefit of the Plaintiffs.

231.   Plaintiffs are not currently aware of where the Defendants are depositing said illegal profits obtained from the Defendants wrongful acts against the Plaintiffs and the public.

232.   Friedrich is entitled to the immediate possession of said illegal profits.

WHEREFORE, for the foregoing reasons, the Plaintiffs demands judgment against Defendant Hasbro, Sony, Marvel, Crystal Sky, De Luca, Relativity Media and Take-Two for all harm incurred as a result of the infringement and wrongful misappropriation of the originality of the Plaintiffs Spotlight Work including, without limitation, all sales, income and profit earned by the Defendants thereon, all pre and post judgment interest obtained therein, all costs incurred as a result of this action, and all other remedies this Court deems just and proper.

## COUNT XIX – UNJUST ENRICHMENT

Plaintiffs, and for their claim for unjust enrichment against Marvel Defendants, state as follows:

233.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 923 of this Complaint as if fully set forth herein.

234.   As a result of the foregoing actions and inactions of the Marvel Defendants, Marvel Defendants has been improperly benefited and Plaintiffs have suffered detriment.

235.    Under the circumstances it would be unjust for Marvel Defendants to retain the benefits of their illegal, improper and unauthorized use of the property rights of Plaintiffs.

236.    Defendants have unjustly received financial payments, and the benefits of goodwill, notoriety and publicity associated with the property rights of the Plaintiff to the detriment of the Plaintiffs.

WHEREFORE, for the foregoing reasons, the Plaintiffs demand judgment against Defendant Marvel for all harm incurred as a result of the wrongful misappropriation of the originality and novelty of the property interest of the Plaintiff, and the benefit conferred to the Defendant Marvel to the detriment of the Plaintiff, including, without limitation, all sales, income and profit earned by Defendant Marvel thereon, all pre and post judgment interest obtained therein, all costs incurred as a result of this action and all other remedies this Court deems just and proper.

## COUNT XX – TORTIOUS INTERFERENCE WITH RIGHT OF PUBLICITY

Plaintiffs, for their claim of Tortious Interference with Right of Publicity against all Defendants, state as follows:

237.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 237 of this Complaint as if fully set forth herein.

238.    All Defendants herein knew or should have known that, as the creator of Johnny Blaze/Ghost Rider and other comic characters and the writer of many other comic book series, Plaintiff Friedrich has an established identity and persona with a commercial and pecuniary value in demand in comics books circles, and elsewhere.

Case 1:08-cv-01533-BSJ-JCF    Document 4-9    Filed 05/02/2008    Page 20 of 22

Case 3:07-cv-0023( /DS-CJP    Document 3    Filed 04/    2007    Page 29 of 31

239.    Defendants knew that promotion and advertisement of Plaintiff Friedrich's creation of Ghost Rider in conjunction with the products, film, and other ventures of Defendants, and utilizing and capitalizing on the Friedrich Characters, the Origin Story and/or the Spotlight Work, would significantly the value of Friedrich's endorsements and the pecuniary value of his persona and identity for commercial purposes.

240.    Defendants nonetheless intentionally and wrongfully took the above noted wrongful and unauthorized acts, made products without Plaintiffs' participation or approval, failed and refused to credit or acknowledge Friedrich's association with Ghost Rider and took efforts to distance Plaintiffs from Ghost Rider products in the minds of the public.

241.    Defendants did so with the intent and/or foreseeable effect of interfering with Plaintiffs' reasonable expectations that the value of the public recognition of Friedrich and his right of publicity would increase as the result of the release of a theatrical film based on the Spotlight Work and/or the creation of other products based on the Spotlight Work or the Friedrich Characters or Origin Story, and that Friedrich's worth as a speaker, author, and endorser would have dramatically increased

242.    As a result of the Defendants actions and inactions, Plaintiffs have been harmed, including damages to Friedrich's goodwill and reputation, diversion of trade, loss of profits, and a dilution of the value of the Plaintiffs' rights.

243.    Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against all Defendants for all harm incurred as a result of the tortious interference with the right of publicity of the Plaintiffs, including, without limitation, all sales, income and profit earned by the Defendants thereon, all pre and post judgment interest obtained therein, damages for the loss of revenues to the Plaintiffs, punitive damages in an amount to punish and deter Defendants and others from similar conduct, all costs incurred as a result of this action and all other remedies that this Court deems just and proper.

## COUNT XXI -- ACCOUNTING (ALL DEFENDANTS)

Plaintiffs, for their Demand for an accounting against the Defendants, state as follows:

244.    Plaintiffs' reallege and incorporate by reference paragraphs 1 through 244 of this Complaint as if fully set forth herein.

245.    The Defendants, upon information and belief, have purported to have a right to utilize, copy or otherwise profit from the Johnny Blaze/Ghost Rider character and the other "Friedrich Characters," the Origin Story and/or the Spotlight Work.

246.    Each Defendant had no right to utilize, copy or otherwise profit from the Friedrich Characters, the Origin Story or the Spotlight Work, or to receive payments or benefits in exchange therefore.

247.    Plaintiff Friedrich Enterprises, LLC, has no ability to determine what amounts have been received or will be received in conjunction therewith absent a full accounting.

WHEREFORE, Plaintiffs request the Court to enter judgment in their favor and against all Defendants and to order each of the said Defendants to provide a full

272459                        Page 60 of 61

accounting of any and all monies received or to be received from or in connection with the Origin Story, the Spotlight Work, and/or the Friedrich Characters, to determine Plaintiffs fair share thereof, and to award such amount to the Plaintiffs, along with their costs and attorneys fees and such other relief as justice may require.

## DEMAND FOR A TRIAL BY JURY.

Plaintiffs hereby respectfully request a trial by jury for all claims and issues raised in his Complaint that may be entitled to a jury trial.

RIEZMAN BERGER, P.C.

Nelson L. Mitten

Charles S Kramer  **(Lead Counsel)**
(to request admission pro hac vice)
Daniel Bloom
(to request admission pro hac vice)
Frederick Berger
(to request admission pro hac vice)
7700 Bonhomme Avenue
Seventh Floor
St. Louis, Missouri 63105
(314) 727-0101 (phone)
(314) 727-6458 (fax)

272459                     Page 61 of 61

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY FRIEDRICH ENTERPRISES, LLC, ET AL.,

                         Plaintiffs,

      -against-

MARVEL ENTERPRISES, ET AL.,

                         Defendants.

08-CV-01533 (BSJ)(JEH)

**AFFIDAVIT OF GARY FRIEDRICH IN SUPPORT OF PLAINTIFFS MOTION TO TRANSFER PURSUANT TO § 1404**

## AFFIDAVIT OF GARY FRIEDRICH

    1.      My name is Gary Friedrich and I am one of the Plaintiffs in the above styled lawsuit.

    2.      I am a resident of Arnold, Missouri, which is located in the Eastern District of Missouri. I have been a resident of Missouri, living within the Federal Eastern District of Missouri for 18 years, along with my wife and family.

    3.      My current counsel is located in Illinois and Missouri and to require me to obtain additional counsel in New York would further burden my ability to properly litigate and pursue this litigation.

    4.      My current occupation is as a full-time night time courier, which is a low paying and demanding job. My age and experience limit my ability to find other higher paying employment. I believe that I will be terminated from my current position if I am required to take off for a significant period of time.

    5.      I have very limited financial resources and significant debts.

6.    It would be financially devastating to require me to travel significant distances from my home or business in order to litigate this matter. I have neither the means nor the ability to travel to New York in relation to this litigation.

7.    I conceived of the Ghost Rider character, Johnny Blaze, and the other related characters that are a part of the original story, as well as the development of the original story, over time between 1953 and 1970, however, much of the characters and story line were conceived while I was a resident of Missouri. Other aspects were conceived when I was in California.

8.    After I had fully created the characters and the origin story line, I approached a company known as Magazine Management, Inc., which is not a party to this suit and which has been out of business for a long time, about publishing and distributing a comic book series as one method of selling the story and characters to the general public. Thereafter, I personally wrote the text and directed the illustration of the initial issues of that comic book series. I did so either entirely or for the most part from Missouri. The person who drew the artwork pursuant to my direction did so in New Jersey, but now lives in England.

9.    My first comic book incarnation of the characters and story I had previously created was published in 1972 as Marvel Spotlight, Vol. V.

10.    In early 2007, a few years after the initial copyright period had expired, I applied, as author, to the United States Copyright Office for the copyright registration for the renewal term of the copyright.

11.    The Copyright Office conducted a significant investigation, requested substantial information, and engaged in a thorough review of my application, and then

approved my registration and issued me a copyright registration, as sole author of the work, for the renewal term of Marvel Spotlight Volume V. The application was approved by the United States Copyright Office on or about March 12, 2007 and a certificate issued to me shortly thereafter.

12.     Shortly after receiving notice of the registration of my copyright, I formed Gary Friedrich Enterprises, LLC ("GFE") to assist me in handling my personal bookings, the marketing of me personally (and of my voice, likeness and persona), the licensing of my rights in and to the conceptual characters and original story line in issue in this case, and the licensing of my copyright and intellectual property rights concerning Ghost Rider. I assigned certain rights to GFE pursuant to an Assignment Agreement to achieve these goals.

13.     Although GFE is an Illinois limited liability company, many of the appearances that GFE has scheduled for me, and which I have made, have occurred in the Eastern District of Missouri, and GFE is otherwise conducting business on and for my behalf in the Eastern District of Missouri.

14.     In addition, while GFE's office is physically in Illinois, it is located there because of the opportunity to enjoy free rent and it is in close proximity to my Missouri residence and is only minutes from the Eastern District of Missouri Courthouse.

15.     At this time, I am the sole member of GFE although I have actively sought investors since the company was officially formed.

16.     GFE is a startup company and still does not have any significant assets other than its ownership of various intellectual property rights it has received through the

assignment from me.  GFE does not have the financial or physical resources to travel or litigate in a forum that is not close to its offices.

17.     As a resident of Missouri, I have reviewed several statements, interviews, video presentations, books and publications issued by, licensed by or otherwise attributed to the Defendants which were published, marketed, sold, distributed or otherwise made available to readers and viewers in Missouri, in which they misrepresent the facts about who created the Ghost Rider characters and story line and when they were created.  The Defendants have specifically excluded me and attempted to minimize or deny my creation of the Characters and Story Lines through their marketing efforts.

18.     While a resident of Missouri, I have seen significant advertising and marketing surrounding the "Ghost Rider" movie within Missouri, as well as heavy advertising for the movie related merchandise, including DVD's and toys, within Missouri.

19.     I viewed the film presentation of "Ghost Rider" in St. Louis County, Missouri.

Further affiant sayeth not.

_____
Gary Friedrich


IN WITNESS WHEREOF, the undersigned has executed this Affidavit this _21_ day of April, 2008.


STATE OF MISSOURI          )
                           ) SS.
COUNTY OF SAINT LOUIS)

Before me, a Notary Public in and for said State, personally appeared Gary Friedrich, to me known to be the person described herein, and acknowledged that such person executed the same as such person's free act and deed in the capacity so indicated.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, effective as of the day and year first above written.

_Carole Eyestone_
Notary Public

My Commission Expires: 12|26|10

CAROL R. EYESTONE
My Commission Expires
December 26, 2010
St. Louis County
Commission #06392031

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY FRIEDRICH ENTERPRISES, LLC, ET AL.,

                       Plaintiffs,

      -against-

MARVEL ENTERPRISES, ET AL.,

                   Defendants.

08-CV-01533 (BSJ)

**AFFIDAVIT OF JILLIAN
PIECHOCINSKI IN SUPPORT OF
PLAINTIFFS MOTION TO TRANSFER
PURSUANT TO § 1404**

## A F F I D A V I T

I, Jillian Piechocinski, on my oath, depose and swear as follows:

1.    I am an adult over the age of twenty-one (21).

2.    I am a resident of the State of Missouri and regularly make purchases and shop in St. Louis County, Missouri.

3.    The theatrical presentation of the movie "Ghost Rider" is available for rent at Blockbuster Video in St. Louis County Missouri.

4.    I viewed www.ghostrider-movie.com and www.ghostriderwashere.com which promoted the movie and marketed purchases of the DVD, Blue-ray and PSP discs.

5.    While making purchases at stores, I have seen "Ghost Rider" toys based on characters claimed in associated packaging to be characters owned by and/or licensed under the rights of Marvel and manufactured by Hasbro for sale in stores located in St. Louis, Missouri.

6.    I have purchased "Ghost Rider" toys marketed and sold by Hasbro and Marvel in St. Louis County, Missouri.  (See Exhibit A).

7.     I have seen and continue to see various Marvel comics for sale at stores and comic book outlets in St. Louis County, Missouri.

8.     I have purchased Marvel comics at the Comic Store in St. Louis County, Missouri.  (See Exhibit B).

9.     I have seen the "Ghost Rider" DVD and Blue-Ray disc, which is claimed on associated packaging materials to be produced and presented by Marvel, Crystal Sky, Sony Pictures, Relativity Media, and Michael DeLuca Productions, for sale in retail stores located in St. Louis County, Missouri.

10.     I have purchased a copy of the "Ghost Rider" DVD at Best Buy in St. Louis County, Missouri.  (See Exhibit C).

11.     I have seen "Ghost Rider" video game, which is claimed in its associated packaging materials to be a Marvel and Take-Two interactive software game, in video game stores located in St. Louis County, Missouri.

12.     I have purchased a copy of the "Ghost Rider" video game at GameStop in St. Louis County, Missouri.  (See Exhibit D).

13.     While visiting video game stores in St. Louis County, Missouri, I saw other Take-Two Interactive games for sale including Bully, All Pro Football 2K8, Bioshock, Fantastic Four: Rise of the Silver Surfer, The Darkness, and MLB 2K8, and NBA 2K8.

Further affiant sayeth not.

Jillian Piechocinski

IN WITNESS WHEREOF, the undersigned has executed this Affidavit this 21ˢᵗ day of _April_, 2008.

STATE OF MISSOURI         )
                                  ) SS.
COUNTY OF SAINT LOUIS    )

      Before me, a Notary Public in and for said State, personally appeared Jillian Piechocinski, to me known to be the person described herein, and acknowledged that such person executed the same as such person's free act and deed in the capacity so indicated.

      IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, effective as of the day and year first above written.

                              Notary Public

My Commission Expires:

TERRY D. BLEVINS
Notary Public - Notary Seal
State of Missouri
St. Charles County
My Commission Expires Oct. 8, 2009
Commission # 05504969

3



SAVE ALL RECEIPTS
(636) 532-6034
Chesterfield, MO 63017

A DATED RECEIPT IS REQUIRED FOR ALL RETURNS & EXCHANGE
PLEASE GIVE GIFT.RECEIPTS

9515/10   T-2038:8   C-03849                    SALE

MARVEL RIDER SHOWDOWN #1              14.99 T1
  035112728610

SHOWDOWN    BATTLE PK 1               7.99 T1
  086892728239

SUBTOTAL                             22.98
T1 7.075% TAX                         1.63
TOTAL                                24.61
**VISA**                             24.61
XXXXXXX━━━━━━ /   00023456
JILLIAN PIECHOCINSKI
CHANGE DUE                            0.00
ITEM COUNT 2

        Your friendly cashier was,
                                RACHEL

55951510203870 1005

Thank You for Shopping At Toys 'R' Us
WWW.TOYSRUS.COM
Get FREE product safety & recall info @www.recalls.gov
FOR JOB OPPORTUNITIES, APPLY ONLINE @ WWW.RUSCAREERS.COM

RECEIPT EXPIRES 90 DAYS FROM DATE BELOW

01/10/07    08:17 PM



EXHIBIT
A

# WAL★MART

ALWAYS LOW PRICES.



WE SELL FOR LESS
ALWAYS
MANAGER DAPHNE SESSION
( 636 ) 536 - 4601
CHESTERFIELD,MO 63005
ST# 2600 OP# 00002192 TE# 14 TR# 07184
GR SCREAM FL 065356919403      19.76 X
GR   FLAME C 065356918918      14.88 X
GR RAGING FI 065356918902       7.97 X
GR FLAME FIS 065356918909       7.97 X
GR CHAIN ATT 065356918906       7.97 X
GR SCARECROW 065356918908       7.97 X
GR RC JOHNNY 065356918911       9.96 X
GR FLAME CYC 065356918910       9.96 X
                     SUBTOTAL   86.44
         TAX 1  3.100 %          2.68
         TAX 3  4.350 %          3.76
                     TOTAL      92.88
                 VISA TEND      92.88

ACCOUNT ▉▉▉
APPROVAL #04396B
TRANS ID -0167011055065447
VALIDATION -QGQB
PAYMENT SERVICE - E
                 CHANGE DUE      0.00

# # ITEMS SOLD 8

TC# 6537 5199 5095 0151 6772

Get 300+ generic scripts at $4 each,
up to a 30 day supply. Select states.
   01/10/07    19:32:04

***CUSTOMER COPY***

```
                  Comic Relief Again
              15425 Manchester Rd SE
                  Ballwin, MO 1?01?
                     314-527-0028
              www.comicbookrelief.com
         Visit our St  Charles & Nashville Stores
         2224 N 3rd St or 1155 Nashville Pway SE

                 APRIL 7, 2008   10:57
              SALE #001-17038    CYR-STAFF

         2 99-82.99 COMIC
                     4.00 @ 2.90TR        40.00
         1 99-83.99 COMIC
                     1.00 @ 7.00TR         7.00
                     %   ***
                         SUBTOTAL         71.22
                         TAX             X.XX

                         TOTAL SALE      X7.40
                         PAID VISA        X7.40

         CARD XXX
         REF: 0004 APPROVAL: 00549
         I AGREE TO PAY THE TOTAL AMOUNT ABOVE
         ACCORDING TO THE CARD ISSUER AGREEMENT


         _____
         JILLIAN  EYECHOSTMONT SIGNATURE

         _____
                       THANK YOU
                 PLEASE SWING BY AGAIN
```

EXHIBIT

B

# BORDERS.

BORDERS
BOOKS AND MUSIC
15335-A MANCHESTER RD.
BALLWIN, MO 63011
314-527-0961

STORE: 0213    REG: 01/36    TRAN#: 5879
SALE          04/07/2008   EMP: 00010

GHOST RIDER-02
        8943346      QP T        13.99
GHOST RIDER-04
        9355609      QP T        14.99
GHOST RIDER-01 VICIOUS CYCL
        8796492      QP T        13.99

                Subtotal        42.97
BR: 8367117333

                Subtotal        42.97
                MISSOURI 7.075%  3.04
      3 Items   Total           46.01
                VISA            46.01
ACCT # /S XXXXXXXXXXXX
                    AUTH:   04477B
NAME: PIECHOCINSKI/JILLIAN

## CUSTOMER COPY

        04/07/2008 07:01PM
TRANS BARCODE: 02130158790001004078



Check our store inventory online
            ........com



WELCOME TO BEST BUY #143
CHESTERFIELD, MO 63005
(636)536-2303

Keep your receipt!



Val #: 0541-9447-4034-6696

0143 003 3081 04/07/08      18:16 0459398

8589164   DVD                    49.99
  ACTION/AC - GHOST RIDER EXT W/PREM
5426693   RZ CARD                 0.00
  REWARD ZONE CARD
  SERIAL # 0767297521
                            ----------
              SUBTOTAL          49.99
        SALES TAX 7.45 %         3.72
                            ==========
                 TOTAL          53.71

                    VISA        53.71
xxxxxxxxxx
JILLIAN  PIECHOCINSKI
APPROVAL 08068B


JILLIAN,
THANKS FOR SHOPPING AT BEST BUY TODAY!
YOUR REWARD ZONE BALANCES AS OF 03/10/08
POSTED  POINTS 1245
GO TO WWW.MYREWARDZONE.COM FOR MORE INFO




Be ready for the Analog to Digital TV
Transition on Feb. 17, 2009. Learn more @
www.BestBuy.com/DTV or www.DTV2009.gov.

YOUR CUSTOMER SERVICE PIN IS:
    0143 003 3081 040708



-------------------------------------
  BEST BUY VALUES YOUR FEEDBACK!!
TAKE OUR SURVEY AND ENTER FOR A CHANCE TO
WIN A $5,000 BEST BUY SHOPPING SPREE!!

  Visit http://www.bestbuycares.com
  Cuestionario en Espanol tambien

   & enter the followins codes:

    Group A:   194539

    Group B:   0239

    Group C:   310885


NO  PURCHASE  NECESSARY.  Must be legal
resident of 50 US/DC/PR, 18 or older.  2
Drawing Periods: 3/2-5/31/08 & 6/1-8/30/08
   Limit 3 entries per Drawing Period.
   For free entry & other details, see
   Official Rules at website or store.
       Void where prohibited.

EXHIBIT

C

Game Stop
Chesterfield Commons
42 THF Blvd.
Chesterfield, MO  63005
(636) 536-6926

04/07/08 18:30        00998/02 - 015
SALE      149983 stephen

NBA 2K8                          19.99
  281763 028/000
Ghost Rider                      19.99
  281637 028/000
              SUBTOTAL           39.98
   Taxable Total   39.98
      7.075% State               2.83
              TOTAL             42.81
                                42.81
VIS: XXXXXXXXX
              CHANGE             0.00

Tell us how we did!
ENTER FOR A CHANCE TO
WIN A PS3 AND A Wii!

Enter to win by completing a brief
survey about your store visit at:
www.TellGameStop.com

Entrants must be 18 or older to enter.
See complete rules on website.
No purchase necessary.
-------------------------------------
Receipt required for returns/exchanges.
Unopened new items can be returned/
exchanged w/in 30 days.  Opened new
video games, new PC games & new systems
can be exchanged for the identical item
w/in 7 days.  Opened accessories & all
used items can be returned/exchanged
w/in 7 days.

We buy used games!

Feedback Number: 46HJB-3NDXB


EXHIBIT
D





## AT NIGHT, IN THE PRESENCE OF EVIL, THE RIDER TAKES OVER.

ISBN 1-4248-6280-9

0  43396  19664  3

PROOF-OF-PURCHASE

Johnny Blaze (Nicolas Cage) was only a teenaged stunt biker when he sold his soul to the devil (Peter Fonda)—a misguided attempt to save his father's life that destroyed his own. Years later, Johnny is a world-renowned daredevil by day, but at night, he becomes the Ghost Rider of Marvel Comics legend. The devil's bounty hunter, he is charged with finding evil souls on earth and bringing them to hell. But when a twist of fate brings Johnny's long-lost love (Eva Mendes) back into his life, Johnny realizes he just might have a second chance at happiness—if he can beat the devil and win back his soul. To do so he'll have to defeat Blackheart (Wes Bentley), the devil's nemesis and wayward son, whose plot to take over his father's realm will bring hell on earth—unless Ghost Rider can stop him.

## SPECIAL FEATURES

**Disc One:**
- Never-Before-Seen Footage
- Commentary with Producer Gary Foster
- Commentary with Writer/Director Mark Steven Johnson and Visual Effects Supervisor Kevin Mack

**Disc Two:**
- 3 Making of Documentaries: Spirit of Vengeance, Spirit of Adventure, Spirit of Execution
- Sin & Salvation: Featurettes Chronicling 40 Years of Ghost Rider Comic Book History
- Animatics

| LANGUAGES | ENGLISH 5.1 (Dolby Digital), ENGLISH, FRENCH 5.1 (Dolby Digital) | |
| --- | --- | --- |
| SUBTITLES | ENGLISH, FRENCH, SPANISH | |
| | Mastered in High Definition | CC | | Approx. 123 Minutes | COLOR |

www.SonyPictures.com

NOT RATED     COLUMBIA PICTURES     Printed in USA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY FRIEDRICH ENTERPRISES, LLC, ET AL.,

                              Plaintiffs,

                -against-

MARVEL ENTERPRISES, ET AL.,

                              Defendants.

08-CV-01533 (BSJ)

**AFFIDAVIT OF CAROLINE TICE IN
SUPPORT OF PLAINTIFFS MOTION
TO TRANSFER PURSUANT TO § 1404**


# A F F I D A V I T

I, Caroline Tice, on my oath, depose and swear as follows:

1.      I am an adult over the age of twenty-one (21).

2.      I am a resident of the State of Missouri and regularly view movies and review what movies are playing in St. Louis County, Missouri.

3.      The following movies produced, licensed, promoted, or released by Sony Pictures have been shown in theatres and/or have been available for purchase on home video in the St. Louis, Missouri metropolitan area recently, including Vantage Point, The Other Boleyn Girl, Spider-Man 2, Casino Royale and Spider-Man 3.

4.      The following movies produced, licensed, promoted or released by Marvel Characters/Marvel Studios/Marvel Enterprises/Marvel Entertainment have been shown in theaters and/or have been available for purchase on home video in the St. Louis, Missouri metropolitan area recently including: Fantastic 4: Rise of the Silver Surfer, Spider-Man 2, Spider-Man 3, Blade: Trinity, Elektra, and Daredevil.

5.      The following movies produced, licensed, promoted or released by Relativity Media, LLC have been shown in theaters and/or have been available for

purchase on home video in the St. Louis, Missouri metropolitan area recently including Vantage Point, The Other Boleyn Girl, Charlie Wilson's War, American Gangster, I Now Pronounce you Chuck & Larry, Evan Almighty, and The Pursuit of Happiness.

6.     The following movies produced, licensed, promoted or released by Columbia Pictures and/or Columbia Tri-Star Motion Picture Group have been shown in theaters and/or have been available for purchase on home video in the St. Louis, Missouri metropolitan area recently including Vantage Point, The Other Boleyn Girl, The Da Vinci Code, Spider-Man 2, The Grudge, Hitch, and The Longest Yard.

7.     The following movies produced, licensed, promoted or released by Michael DeLuca have been shown in theaters and/or have been available for purchase on home video in the St. Louis, Missouri metropolitan area recently, including 21, Zathura, and John Q.

8.     In addition, I have seen Hasbro toys for sale throughout the St. Louis area on a continuous basis for the last several years.


Further affiant sayeth not.

_Caroline Tice_
Caroline Tice


IN WITNESS WHEREOF, the undersigned has executed this Affidavit this _21_ day of April_____, 2008.

STATE OF MISSOURI          )
                           ) SS.
COUNTY OF SAINT LOUIS)

Before me, a Notary Public in and for said State, personally appeared -
_____, to me known to be the person described herein, and acknowledged that
such person executed the same as such person's free act and deed in the capacity so
indicated.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my
official seal in the County and State aforesaid, effective as of the day and year first above
written.

_Nicola Stevenson_
Notary Public

My Commission Expires: 5/9/2011

NICOLE STEVENSON
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: May 9, 2011
Commission # 07047041

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY FRIEDRICH ENTERPRISES, LLC, ET AL.,

Plaintiffs,

-against-

MARVEL ENTERPRISES, ET AL.,

Defendants.

08-CV-01533 (BSJ)

**AFFIDAVIT OF CHARLES KRAMER
IN SUPPORT OF PLAINTIFFS
MOTION
TO TRANSFER PURSUANT TO § 1404**

## AFFIDAVIT OF CHARLES KRAMER

1.      My name is Charles Kramer.  I am an attorney for Plaintiffs in the lawsuit styled Gary Friedrich Enterprises, LLC, et al. v. Marvel Enterprises, Inc., et al., Case No. 08-CV-01533-BSJ.

2.      As counsel in this matter, I am familiar with the witness that we presently believe will be called to testify at trial in this case.  The only specific party witness which we currently believe will testify is Gary Friedrich, who is a resident of the Eastern District of Missouri, and who will testify to matters concerning the creation and development of his characters and origin story.  It is believed he will testify, *inter alia*, as to his creation of characters, origin story, comic books, initial agreement with Magazine Management, LLC, renewal of copyright, damages, impact of Defendants' actions on him and the creation for purposes of Gary Friedrich Enterprises, LLC.

3.      Of the fact witnesses which we presently believe will be called to testify at trial in this case, we believe the following will testify:

a)      Paul Schade, St. Louis, Missouri.  He will testify, *inter alia*, as to the creation by Friedrich of the characters and/or original story of Ghost Rider.

287445                          Page 1 of 3

b)      Michael Ploog, London, England.  Mr. Ploog will testify, *inter alia,* as to his role as illustrator of the original comic books.

c)      Roy Thomas, North Carolina.  Mr. Thomas will testify, *inter alia,* as to Friedrich's creation of characters, origin story, comic books and the initial agreement with Magazine Management.

d)      Stan Lee, Arizona or California (conflicting information).  Mr. Lee will testify, *inter alia*, as to matters relating to Friedrich's initial arrangement and agreement with Magazine Management, Inc.

e)      Nicolas Cage, California (conflicting information).  Mr. Cage will testify, *inter alia*, as to information concerning the Ghost Rider movie, including the Ghost Rider origin story and characters contained therein.

f)      Mark Steven Johnson, California (conflicting information).  Mr. Johnson will testify, *inter alia*, as to information concerning the Ghost Rider movie, including the Ghost Rider origin story and characters contained therein.

4.      This affidavit is in further support of Plaintiff's Motion to Transfer Venue to the Eastern District of Missouri.  While the list of witnesses set forth above is not exhaustive, it is several of the key witnesses that I believe will be pertinent to the matters and issues raised in this case.

5.      At this point in time, I am unaware of any witnesses that will testify in this matter that are currently residents of the State of New York.

_____
Charles S. Kramer

IN WITNESS WHEREOF, the undersigned has executed this Affidavit this 22 day of April , 2008.

STATE OF MISSOURI       )
                              ) SS.
COUNTY OF SAINT LOUIS)

      Before me, a Notary Public in and for said State, personally appeared Charles S. Kramer, to me known to be the person described herein, and acknowledged that such person executed the same as such person's free act and deed in the capacity so indicated.

      IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, effective as of the day and year first above written.

Notary Public

My Commission Expires: 5/9/2011

NICOLE STEVENSON
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: May 9, 2011
Commission # 07047041

287445                         Page 3 of 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

GARY FRIEDRICH ENTERPRISES, LLC, *et al.*    )
                                                     )
                                      Plaintiffs,    )      Case No. 07-230-WDS
                                                     )
v.                                                    )
                                                     )
MARVEL ENTERTAINMENT, INC., *et al.*,    )
                                                     )
                                                   )
                             Defendants.    )

ENTRY OF APPEARANCE

To the Clerk of this Court and all parties of record:

         I, Steven T. Catlett, hereby enter my Appearance as counsel in this case for

defendants Marvel Entertainment, Inc. (formerly known and also sued herein as Marvel

Enterprises, Inc.), Marvel Studios, Inc., Marvel Characters, Inc., Hasbro, Inc., Take-Two

Interactive Software, Inc., Columbia Pictures Industries, Inc. (also incorrectly sued herein as

Columbia Tri-Star Motion Picture Group), Crystal Sky LLC, Relativity Media, LLC, Michael De

Luca Productions, Inc., Sony Pictures Entertainment Inc.

Dated:  June 8, 2007

                             s/Steven T. Catlett
                             One of Their Attorneys
                             Steven T. Catlett
                             Paul, Hastings, Janofsky & Walker LLP
                             191 North Wacker Drive
                             30th Floor
                             Chicago, IL  60606
                             (312) 499-6000
                             stevencatlett@paulhastings.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2007 I electronically filed the foregoing Appearance of Steven T. Catlett with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Nelson L. Mitten
Riezman Berger, P.C.
7700 Bonhomme Avenue
7th Floor
St. Louis, MO 63105
mitten@riezmanberger.com

Eric W. Evans
J. Thomas Long
Roth & Evans
2421 Corporate Centre Drive
Suite 200
Granite City, IL 62040
EWEvans@rothlaw.com
mrtomlong@aol.com

s/ Steven T. Catlett
Steven T. Catlett