UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -

GARY FRIEDRICH ENTERPRISES, LLC, ET AL.,

                    Plaintiffs,

       -against-

MARVEL ENTERPRISES, ET AL.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

08-CV-01533 (BSJ)(JCF)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF MISSOURI PURSUANT TO 28 U.S.C. § 1404

SIMON•LESSER PC
420 Lexington Avenue
New York, New York 10170
t.212.599.5455
f.212.599.5459

ROTH, EVANS & LADING
2421 Corporate Centre Drive
Suite 200
Granite City, IL 62040
t: 618.931.5000
f: 618.931.6474

RIEZMAN BERGER, P.C.
7700 Bonhomme, 7th Floor
St. Louis, Missouri  63105
t: 314.727.0101
f: 314.727.6458

Attorneys for plaintiffs Gary Friedrich
Enterprises, LLC and Gary Friedrich

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 1

A.    The Birth of Johnny Blaze and Ghost Rider ......................................................... 1

B.    Why this Case is Currently Before this Court ...................................................... 3

C.    Why this Case Should Be Transferred to the Eastern District of Missouri ........... 4

ARGUMENT ....................................................................................................................... 5

I.    Plaintiff's Motion to Transfer is Properly Before This Court;
      The Fact That This Matter Has Been Transferred To This Court
      From Another District Court Does Not Preclude This Court From
      A Separate Determination Of Whether Or Not This Case Should
      Be Transferred To Another District That Is A More Proper Forum ...................... 5

II.   This Action Should Be Transferred To the Eastern District Of
      Missouri Pursuant To the Factors of 28 U.S.C. §1404(a) ................................... 6

      A.    This Action Might Have Been
            Brought In the Eastern District of Missouri ............................................ 7

            1.    Personal Jurisdiction Over Each Defendant is
                  Proper Under the Missouri Long Arm Statute Because
                  the Defendants Have Each Committed Tortious
                  Acts and Conduct Business in the State of Missouri ................... 8

            2.    General Jurisdiction Exists Over the
                  Defendants in the Eastern District of Missouri ........................ 16

## TABLE OF CONTENTS
(continued)

Page

B.  The Convenience of the Parties and Witnesses
and the Interest of Justice Favor Transfer ................................................................. 18

1.  Convenience of the Witnesses .......................................................... 18

2.  The Locus of the Operative Facts .................................................... 22

3.  Location of Relevant Documents and Access to Sources of Proof .............. 23

4.  The Convenience of the Parties ....................................................... 23

5.  The Availability of Process to Compel
Attendance of Unwilling Witnesses ................................................. 24

6.  The Relative Means of the Parties ................................................... 25

7.  The Forums' Familiarity with the Governing law ......................... 26

8.  The Weight Accorded Plaintiffs' Choice of Forum ....................... 26

9.  Trial Efficiency in the Interest of Justice
Based on the Totality of the Circumstances ................................. 27

CONCLUSION .............................................................................................................. 27

## TABLE OF AUTHORITIES

**Case law**                                                                                  **Page(s)**

*Age Group v. Regal Logistics, Corp.*, 06 Civ. 4328,
2007 U.S. Dist. LEXIS 62476 (S.D.N.Y. 2007)........................................................7, 22

*Anheuser-Busch, Inc. v. City Merch.*, 176 F.Supp. 2d 951 (E.D. Mo. 2001) ........................8, 9, 14

*Arrow Electronics, Inc. v. Ducommun, Inc.*, 724 F.Supp. 264 (S.D.N.Y. 1989) ...........................25

*Auscope Int'l v. Nat'l Geographic Soc'y*, 461 F.Supp. 2d 174 (S.D.N.Y. 2006)..........................26

*Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610 (8th Cir. 1994) ...................6

*Beckerman v. Heiman*, 05 Civ. 5234, 2006 U.S. Dist. LEXIS 39685 (S.D.N.Y. 2006)...............18

*Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816 (8th Cir. 1994) ..................................9

*Biometics, LLC. v. New Womyn, Inc.*, 112 F.Supp. 2d 869 (E.D. Mo. 2000).........................13, 14

*Caddy Prods., Inc. v. Greystone Int'l., Inc.*, 05 CV 301,
2005 U.S. Dist. LEXIS 34467 (D. Minn. 2005) ......................................................13

*Cartier v. D&D Jewelry Imps.*, 510 F.Supp. 2d 344 (S.D.N.Y. 2007) ..................................7

*CAVU Releasing, LLC v. Fries*, 419 F.Supp. 2d 388 (S.D.N.Y. 2005) ................................7

*Citigroup Inc. v. City Holding Co.*, 97 F.Supp. 2d 549 (S.D.N.Y. 2000)...............................18

*Clune v. Alimak AB*, 233 F.3d 538 (8th Cir. 2000) ....................................................12

*Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070 (8th Cir. 2004).........................................9

*Dwyer v. General Motors Corp.*, 853 F.Supp. 690 (S.D.N.Y. 1994)....................................25

*Factors Etc. Inc. v. Pro Arts Inc.*, 579 F.2d 215 (2d. Cir. 1978).......................................19

*Filmline (Cross-Country) Productions, Inc. v. United Artists Corporation*,
865 F.2d 513 (2d Cir. 1989)............................................................................7

*Fru-Con Constr. Corp. v. Controlled Air, Inc.*,
07 CV 495, 2008 U.S. Dist. LEXIS 14528 (E.D. Mo. 2008) ..........................................16

# TABLE OF AUTHORITIES
(continued)

*GPA, Inc. v. Liggett Group, Inc.*, 94 Civ. 5375,
1994 U.S. Dist. LEXIS 14043 (S.D.N.Y. 1994)...................................................................23

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)...............................................................26

*Harry Rich Corp. v. Curtiss-Wright Corp.*, 308 F.Supp. 1114(S.D.N.Y. 1969)............6

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F.Supp.2d 395 (S.D.N.Y. 2005)...........5, 19

*In re Parmalat Sec. Litig.*, 479 F.Supp. 2d 332 (S.D.N.Y. 2007)..................................26

*Jones v. Weibrecht*, 901 F.2d 17 (2d Cir. 1990)..............................................................6

*Lakin v. Prudential Secs.*, 348 F.3d 704 (8th Cir. 2003)..................................................8

*Levitt v. Maryland Deposit Ins. Fund Corp.*, 643 F.Supp. 1485 (E.D.N.Y. 1986)...........4

*Mattel, Inc. v. Robarb's, Inc.*, 139 F.Supp. 2d 487 (S.D.N.Y. 2001)...............................7

*Maritz Inc. v. C/Base, Inc.*, No. 4:06-CV-761,
2007 U.S. Dist. LEXIS 8678 (E.D. Mo. 2007)....................................................................8

*New Era Cap Co. v. Prinz Enters., LLC,* 06 Civ. 3915,
2008 U.S. Dist. LEXIS 15281 (W.D.N.Y. 2008).................................................................25

*North Am. Philips Corp. v. American Vending Sales, Inc.*,
35 F.3d 1576 (Fed. Cir. 1994) ...........................................................................................13

*Osteotech, Inc. v. GenSci Regeneration Sciences, Inc.*,
6 F.Supp. 2d 349 (D.N.J. 1998)..........................................................................................13

*POSVEN v. Liberty Mut. Ins. Co.,* 303 F.Supp. 2d 391 (S.D.N.Y. 2004) ......................18

*Raynes v. Davis*, 05 CV 6740, 2007 U.S. Dist LEXIS 85336 (C.D. Ca 2007) ..............26

*Renaissance Pen Co. v. Krone, L.L.C.*, 04 CV 557,
2006 U.S. Dist. LEXIS 21794 (E.D. Mo. 2006)..................................................................8

*Renaissance Learning, Inc. v. Metiri Group, LLC.*, 07-CV-0413,
2008 U.S. Dist. LEXIS 5766 (W.D. Mo. 2008) ..................................................................15

*Royal & Sunalliance v. British Airways*, 167 F.Supp. 2d 573 (S.D.N.Y. 2001) .............19

# TABLE OF AUTHORITIES
(continued)

*Roberts Brothers, Inc. v. Kurtz Bros. et al.*, 231 F.Supp. 163 (D.N.J. 1964) ................................... 6

*Schnabel v. Ramsey Quantitative Sys.*, 322 F.Supp. 2d 505 (S.D.N.Y. 2004) ........................ 23, 24

*Trehern v. OMI Corp.*, 98 Civ. 0242 (RWS),
1999 U.S. Dist. LEXIS 919 (S.D.N.Y. 1999) .................................................................................. 6

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ................................................................................ 5

*800-Flowers, Inc. v. Intercontinental Florists, Inc.*,
860 F.Supp. 128 (S.D.N.Y. 1992) ........................................................................................... 22, 25

**PRELIMINARY STATEMENT**

Plaintiffs Gary Friedrich Enterprises, LLC ("GFE") and Gary Friedrich ("Friedrich," hereinafter referred to collectively as "Plaintiffs"), submit the following Memorandum of Law in Support of their Motion to Transfer this action to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. §1404(a). As set forth in more detail below, the Eastern District of Missouri is a more appropriate venue for this matter, and accordingly, plaintiffs' request for transfer should be granted.

**FACTUAL BACKGROUND**

**A.    The Birth of Johnny Blaze and Ghost Rider**

This action involves certain characters and story lines created by Plaintiff Friedrich which have been published under the name "Ghost Rider." Friedrich's story and characters tell the fictional account of Johnny Blaze, a motorcycle riding stuntman by day, who as a result of a deal gone wrong with the devil, goes through a painful transformation into a demonesque motorcycle rider each night as the devil comes close to capturing his soul. Despite his misguided deal with the Devil, he is not fully vanquished due to the purity of the heart of his true love.

The fictional characters of Johnny Blaze and his diminished-soul, fire-headed, leather-clad, demonesque rider nighttime alter ego, were originally conceived, created and authored by Plaintiff Friedrich over a several-year period in the late 60's. Plaintiff Friedrich also conceived, created and authored the other principal characters involved with his two-sided hero during this time frame, including the Roxanne Simpson character, the Barton Blaze character, and the Crash Simpson character. (Hereinafter Johnny Blaze, his demonesque alter ego, and Roxanne Simpson, Barton Blaze, and Crash

1

Simpson are referred to as the "Characters"). Plaintiff Friedrich also conceived, created

and authored the unique story of how and why Johnny Blaze sold his soul to the devil and

became the fiery-skulled motorcycle riding anti-hero (the "Origin Story") during the

same time period.

A few years after Friedrich had completed his creation of the Characters and

Origin Story, he approached a now-defunct, non-party entity --- Magazine Management

Inc. --- and, at his instance and request, convinced the company to agree to print and

distribute a comic book incarnation of his Characters and Origin Story. The comics were

published beginning in or around 1972 under the "Marvel" logo, with Friedrich writing

the comic book version of his Origin Story and controlling the images that would

represent his Characters to ensure that they mirrored those he had previously conceived.

Although Magazine Management Inc. used the "Marvel" Logo, it was a distinct company

from, and is not related to, today's Marvel which is among the Defendants in this action.

Friedrich owned the common law rights to his Characters and Origin Story from

the date of their birth. With respect to the later 1972 incarnations of the Characters and

Origin Story, Magazine Management, Inc., held the copyright during the first copyright

term, which lasted twenty-eight (28) years. Under applicable copyright law, upon the

expiration of that original term, however, the copyright reverted to Plaintiff Friedrich as

author of the work. *See* 17 U.S.C. § 304, *et seq.; see also* Copyright Office Certificate of

Registration, Lesser Aff. Ex. A.[1] Thus as of January 1, 2001, Friedrich was the owner of

both the common law rights and the federal copyrights protecting the Characters and the

Origin Story. Plaintiff GFE is the company formed by Friedrich to market and promote

---

[1]    References designated "Lesser Aff. Ex. __" are to the Exhibits attached to the Moving
Affirmation of Leonard F. Lesser, dated May 2, 2008.

himself and his works, including those here in issue. Friedrich assigned his common law rights and federal copyrights to GFE on March 29, 2007.

**B.**    **Why this Case is Currently Before This Court**

Notwithstanding the federal copyright and state law rights enjoyed by the Plaintiffs, beginning sometime after December 31, 2000, several Defendants made and sold an unauthorized movie version of Friedrich's Characters and Origin Story, along with unauthorized toys, games, videos and other merchandise embodying and derived from the same. In so doing, the Defendants copied, utilized and otherwise exploited the common law protected Characters and Origin Story, along with the federally copyrighted images and verbiage from the comic book. The actions of the Defendants violated (and continue to violate) Plaintiffs' federal copyright and state law rights. Accordingly, Plaintiffs initiated this action in the Federal Court for the Southern District of Illinois to recover the damages suffered because of the Defendants actions.

Plaintiffs Friedrich and GFE brought the instant matter in the Southern District of Illinois because it is a location in which GFE was suffering injury, infringing products were and are sold there, and each of the Defendants could and can be found there. Nonetheless, the Defendants responded to the Plaintiffs' suit by, *inter alia*, collectively filing a Motion to Transfer Venue to this Court, in the Southern District of New York. In their motion, Defendants failed to identify any witness that resides in New York (or to provide any witness lists whatsoever), did not provide any affidavits that made a showing that jurisdiction and venue would be proper in New York over all Defendants, and failed to allege or establish other required elements for such a motion. (Lesser Aff. Exs. B and C).

Nonetheless, the Southern District of Illinois granted the motion to transfer the case to this Court --- apparently because it believed the case's connection with its own District was no stronger than the connection to several other Districts, but not because of a finding that there was a stronger reason to be in this Court. (Lesser Aff. Ex. D). Plaintiffs Friedrich and GFE then filed a Motion for Reconsideration requesting the Illinois District Court to reconsider its ruling or certify the ruling for appeal. This Motion for Reconsideration was denied, and certification was denied, resulting in an interlocutory but nonappealable Order. (Lesser Aff. Ex. E); *see Levitt v. Maryland Deposit Ins. Fund Corp.*, 643 F.Supp. 1485, 1492 (E.D.N.Y. 1986). The case was then transferred to this Court.

**C.    Why This Case Should be Transferred to the Eastern District of Missouri.**

Although this case is here on a transfer order, a second transfer from this Court to a more appropriate venue is proper under federal law. *See* Section I, infra.[2] For the reasons discussed in more detail below the Eastern District of Missouri is a more efficient, convenient, and economical forum for all parties and witnesses to this action. As set forth below, the Eastern District Missouri Court will have personal jurisdiction over the Defendants and the interest of justice and convenience weigh in favor of transfer for several reasons:  if this case will not proceed in the Southern District of Illinois, the Plaintiffs choice of forum is the Eastern District of Missouri, not this District; there is

---

[2]    In their Motion for Reconsideration before the Southern District of Illinois, Plaintiffs alternatively asked the Court to transfer this case to the Eastern District of Missouri rather than to this Court. Although that Court refused the request, it only did so because it believed that a request for an alternative transfer site raised for the first time in a motion for reconsideration was not the proper vehicle to evaluate such request. (Lesser Aff. Ex. E at 6). Again, as noted in the text above, that decision was nonappealable. However, in any event, the Court never evaluated the relative convenience of the Eastern District of Missouri *vis-a-vis* this Court, and the Motion now before this Court is the proper method of raising this issue.

little if any connection of this District to the case in issue; witnesses are located in the

Eastern District of Missouri and the non-Missouri witnesses are not located in New York;

the Plaintiffs have suffered and will suffer injury and damage from the wrong doing in

the Eastern District of Missouri but not in New York; the Eastern District of Missouri is

more convenient than this District for the litigants as a whole; and the relative financial

wherewithal of the Defendants compared to the struggling Plaintiffs favors the Missouri

venue over this District.  In short, as between this Court and the Eastern District of

Missouri, the Eastern District of Missouri is a more appropriate venue. Plaintiffs' request

for transfer is thus properly granted.

## ARGUMENT

**I.      Plaintiff's Motion to Transfer is Properly Before This Court;
The Fact That This Matter Has Been Transferred To This Court
From Another District Court Does Not Preclude This Court From
A Separate Determination Of Whether Or Not This Case Should
Be Transferred To Another District That Is A More Proper Forum**

Pursuant to 28 U.S.C. § 1404(a), a court has the discretion to transfer any civil

action to another District in which it might have been brought if it is shown that such a

transfer is proper "for the convenience of parties and witnesses" and the "interest of

justice." 28 U.S.C. § 1404(a).  The purpose of 1404(a) is "to prevent the waste of time,

energy and money and to protect litigants, witnesses, and the public against unnecessary

inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *Indian*

*Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F.Supp. 2d 395, 400 (S.D.N.Y. 2005).

Section 1404 provides that *any* party can request a transfer and does not limit

when its relief can be sought by any party to the litigation. 28 U.S.C. § 1404.  Where the

plaintiff is the party seeking the transfer and the plaintiff did not initially file suit in this

Court, § 1404(a) is applied the same as in any other case. *See Harry Rich Corp. v. Curtiss-Wright Corp.*, 308 F.Supp. 1114, 1118 (S.D.N.Y. 1969)(only where plaintiff initially chose to file the action in the Southern District of New York was he required to also show "a change in circumstance since the filing of suit."); *see also Trehern v. OMI Corp.*, 98 Civ. 0242 (RWS), 1999 U.S. Dist. LEXIS 919 * 6 (S.D.N.Y. 1999)("The threshold question when deciding a § 1404(a) motion by a plaintiff is whether a plaintiff has shown that a change in circumstance since the complaint was filed [in the forum he selected that] warrants a transfer.").

## II.    This Action Should Be Transferred To the Eastern District Of Missouri Pursuant To the Factors of 28 U.S.C. §1404(a)

In the instant case, given the fact that the parties have conducted no discovery nor pre-trial preparation, and there has not even been an initial scheduling conference held by any court, no party or witness would be prejudiced at this stage by a transfer to a more proper forum. *See, e.g., Roberts Brothers, Inc. v. Kurtz Bros. et al.*, 231 F.Supp. 163, 167 (D.N.J. 1964)(in denying plaintiffs motion to transfer, court considered the fact that parties had conducted multiple motions and complex pretrial proceedings). Moreover, application of § 1404 governing motions to transfer reveals that this matter is more properly litigated in the Eastern District of Missouri.

When a party seeks a transfer under § 1404(a), the propriety of such a transfer requires a broad-based balancing test that analyzes on an individualized, case-by-case consideration of fairness to the parties and witnesses. *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990). "The determination of whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the trial court."

*Filmline (Cross-Country) Productions, Inc. v. United Artists Corporation*, 865 F.2d 513, 520 (2d Cir. 1989).

In evaluating a request for a transfer of venue based on inconvenience, two separate prerequisites must be established: (1) "that 'the action to be transferred is one that might have been brought in the district to which the movant seeks to have it transferred', and (2) that the 'convenience of the parties and witnesses and the interest of justice favor transfer.'" *Age Group v. Regal Logistics, Corp.*, 06 Civ. 4328, 2007 U.S. Dist. LEXIS 62476 * 8 (S.D.N.Y. 2007). *See also*, *Cartier v. D&D Jewelry Imps.*, 510 F.Supp. 2d 344, 345-46 (S.D.N.Y. 2007)(same). Both prerequisites have been met in this matter, and the circumstances and facts support a transfer of this cause of action to the Eastern District of Missouri.

### A. This Action Might Have Been Brought in the Eastern District of Missouri

The preliminary inquiry in any 1404(a) request is "whether the action sought to be transferred is one that 'might have been brought' in the transferee court." *Mattel, Inc. v. Robarb's, Inc.*, 139 F.Supp. 2d 487, 490 (S.D.N.Y. 2001)(internal citations omitted); *see also Biometics, LLC. v. New Womyn, Inc.*, 112 F.Supp. 2d 869, 875 (E.D. Mo. 2000)(same). Because this dispute concerns copyright infringement pursuant to 28 U.S.C. § 1400(a), this is a matter within the federal question jurisdiction of the federal courts and venue is appropriate wherever a Defendant "resides" or "may be found." *CAVU Releasing, LLC v. Fries*, 419 F.Supp. 2d 388, 394 (S.D.N.Y. 2005).

Under Section 1400(a), a defendant "'may be found' wherever that person is amenable to personal jurisdiction." *Id.* The Eastern District of Missouri is a district in which the Defendants "reside" or "may be found" and in which they may be sued under

copyright law, so long as they are amenable to personal jurisdiction in Missouri. Personal jurisdiction in Missouri may be established by a showing of "general jurisdiction" arising from systemic and continuous contacts with the forum, or by a showing of "specific jurisdiction" pursuant to Missouri's long-arm statute. *Lakin v. Prudential Secs.*, 348 F.3d 704 (8th Cir. 2003)

1.    **Personal Jurisdiction Over Each Defendant is Proper Under the Missouri Long Arm Statute Because the Defendants Have Each Committed Tortious <u>Acts and Conduct Business in the State of Missouri</u>**

Although most or all of the Defendants are actually subject to general jurisdiction in Missouri (and thus the Eastern District of Missouri) as set forth in Subsection 2 below, since their actions relative to the specific claims here involved bring them within the long-arm statute of Missouri, it is not necessary to reach the broader jurisdiction question.

The Missouri long-arm statute, section 506.500 RSMo, provides that an individual or company submits to personal jurisdiction of the courts of the State of Missouri for any cause of action arising from, *inter alia*, the "(1) transaction of any business within the state, (2) the making of any contract within the state; (3) commission of a tortious act within the state. . ." Mo. Rev. Stat. § 506.500 (2000); *Maritz Inc. v. C/Base, Inc.*, No. 4:06-CV-761, 2007 U.S. Dist. LEXIS 8678, *5 (E.D. Mo. 2007). The transaction of any business is "construed very broadly," and "may consist of a single transaction." *Renaissance Learning, Inc. v. Metiri Group, LLC.*, 07-CV-0413, 2008 U.S. Dist. LEXIS 5766, * 10 (W.D. Mo. 2008). Further, despite the enumeration of certain bases for jurisdiction, the Missouri long-arm statute confers jurisdiction to the fullest extent permitted by the Due Process Clause. *Anheuser-Busch, Inc. v. City Merch.*, 176 F.Supp. 2d 951, 955 (E.D. Mo. 2001). So as long as a party's acts and the resulting

8

assertion of jurisdiction comport with federal due process standards, a party has submitted to the personal jurisdiction of the Missouri Courts, and the jurisdictional inquiry collapses into the single question of whether the exercise of personal jurisdiction comports with due process. *Id.*, 176 F.Supp.2d at 955 (*citing State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984) (en banc); *see also Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994)(same). Thus, any review for personal jurisdiction essentially requires a determination that there are "'minimum contacts' between [a] non-resident defendant and the forum state," and that such contacts do not offend due process. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004)(*quoting Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)).

In this case, each of the respective Defendants has committed tortious acts in the State of Missouri and, in any event, their contacts with Missouri greatly exceed the "minimum contacts" necessary for due process. Each Defendant intentionally took actions intended to cause infringing products to be sold, rented, and marketed within Missouri and the Eastern District of Missouri.

Marvel Enterprises, Inc., Marvel Entertainment, Inc., Marvel Studios, Inc. Marvel Characters, Inc., Columbia Tri-Star Motion Picture Group, Columbia Pictures Industries, Inc., Crystal Sky Pictures, Relativity Media, LLC, Michael DeLuca Productions, Inc., Sony Pictures Entertainment, Inc., and Sony Corporation of America (the "Movie Defendants")[3] intentionally created the unauthorized feature film with the intent that it be

---

[3]     For purposes of this Memorandum, the above-noted "Movie Defendants" shall collectively refer to those entities with a role in the production, financing, development, association with, promotion and/or distribution of the major motion picture entitled "Ghost Rider."

presented in Missouri to Missouri residents, both in theaters and on DVD and Blue Ray discs, and the film was in fact presented to Missouri residents through those media. *See* Friedrich Aff. ¶¶ 17-18 (Lesser Aff. Ex. G); *see also* Piechocinski Aff. ¶¶ 9-13 (Lesser Aff. Ex. H).[4] While exact numbers of viewers are currently unknown, it is undeniable that the movie was presented in theaters to Missouri residents within Missouri. *Id.*

In addition to sales of tickets and videos, the movie was distributed and sold by the Movie Defendants to Missouri residents through rental outlets. *See* Piechocinski Aff. ¶ 9 (Lesser Aff. Ex. H). Several websites were also created (including www.ghostrider-movie.com; www.ghostriderwashere.com) to actively promote the movie and related merchandise to Missouri residents. *See* Piechocinski Aff. ¶ 4 (Lesser Aff. Ex. H). Each film presentation, along with each rental, sale or purchase of the film within Missouri, contained statements describing the various Defendants' role in presenting the film, and Defendants attempted to, and in fact did seek and receive the benefits of their actions and sales in the Missouri forum. *See* DVD Cover, Lesser Aff. Ex. I.

The Film itself and the trailers and posters marketing the movie also proclaimed the same to Missouri movie viewers. Thus, on the cover of each DVD sold or rented within Missouri, Defendants proclaimed to Missouri residents that Defendants Columbia Pictures, Crystal Sky Pictures and Relativity Media "presented" the film and ensured that Missouri Residents knew that the film was a Marvel Studios and Michael DeLuca "production." *Id.*; *see also* Friedrich Aff. ¶¶ 17 (Lesser Aff. Ex. G).[5] Each of these

---

[4]     When considering personal jurisdiction under the Missouri long-arm statute, matters outside the pleadings can be considered. *Renaissance Learning, Inc. v. Metiri Group, LLC.*, 07 CV 0413, 2008 U.S. Dist. LEXIS 5766, * 9 (W.D. Mo 2008).

[5]     The actual verbiage was that Columbia pictures "presented" the film "in association with" Crystal Sky Pictures and Relativity Media.

Defendants sought and obtained the right to have their name promoted to Missourians and plastered over billboards, advertisements, commercials, movie previews, and the discs themselves. Defendants Sony Pictures (and Sony Corporation of America) controlled the distribution and promotion of the movie throughout the State of Missouri. (Lesser Aff. Ex. I). The websites for the film are operated and controlled by Sony Pictures. The cover for the DVD discs sold within Missouri indicated clearly that the movie was distributed by and associated with Sony Pictures Home Entertainment. *Id.* In addition, sale and rental outlets in Missouri showcased the infringing movie. *See* Friedrich Aff. ¶¶ 17-18 (Lesser Aff. Ex. G); *see also* Piechocinski Aff. ¶¶ 9-13 (Lesser Aff. Ex. H).

The "Toy Defendants"[6] (Hasbro, Inc., Marvel Enterprises, Inc., Marvel Entertainment, Inc., Marvel Studios, Inc., and Marvel Characters, Inc.) and the "Game Defendants"[7] (Take-Two Interactive, Inc., Marvel Enterprises, Inc., Marvel Entertainment, Inc., Marvel Studios, Inc., and Marvel Characters, Inc.) also intentionally directed infringing products into Missouri. *See* Friedrich Aff. ¶ 18 (Lesser Aff. Ex. G); *see also* Piechocinski Aff. ¶¶ 5-6 (Lesser Aff. Ex. H). Take-two Interactive also promoted and sold Ghost Rider video games in a variety of video game formats intending that they be marketed and sold within the State of Missouri, and they were. *See* Piechocinski Aff. ¶¶ 11-13 (Lesser Aff. Ex. H). Marvel Enterprises, Inc., Marvel

---

[6]    At this point in time, Plaintiffs believe that only the Marvel Defendants are involved with the toy merchandise through licensing and other arrangements, but to the extent discovery would reveal that Sony or other Movie Defendants are also involved then this analysis would include them as well.

[7]    At this point in time, Plaintiffs believe that only the Marvel Defendants are involved with the game merchandise through licensing and other arrangements, but to the extent discovery would reveal that Sony or other Movie Defendants are also involved then this analysis would include them as well.

Entertainment, Inc., Marvel Studios, Inc. Marvel Characters, Inc., (the foregoing are also referred to herein as the "Marvel Defendants) were, as noted above, part of the Movie Defendants and were involved in the presentation of the Movie within Missouri. They were also involved in the creation and presentation of the toys and video games within Missouri and purposefully intended that those items be sold in Missouri to Missouri residences and licensed Hasbro and Take-Two, at least in part, for that purpose.

In addition, however, the Marvel Defendants also infringed the ownership interests and rights of publicity of Friedrich, a Missouri resident, in Missouri, through their claims of ownership over the Characters and Origin Story and the 1972 copyright, and through their purported licensing and direct sales and marketing activities through the promotion and distribution of Ghost Rider related merchandise, including the showing of the film in theaters, toys, video games and home movies. The Marvel Defendants allegedly licensed rights to Ghost Rider that they did not own at the time and because of that purported license, many items were sold in Missouri under the licensing marks associated with the Marvel Defendants. The Marvel Defendants further showcased the profitability of Ghost Rider to investors in Missouri, in addition to using Ghost Rider as a springboard to the release of other Marvel movies directed at the residents of Missouri.

The actions of the Defendants in manufacturing, advertising, distributing, and selling infringing products are sufficient to establish specific jurisdiction. Each marketed their respective product with the intent that it be sold in Missouri, and in fact, each product was sold in Missouri. *See, e.g., Clune v. Alimak AB*, 233 F.3d 538, 542 (8th Cir. 2000) (utilizing sales distributors throughout United States is sufficient for personal jurisdiction if a corporation expects that its products will be purchased by consumers in

the forum state); *see also Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610 (8th Cir. 1994)(holding that a seller satisfies due process where it sells its products into the "stream of commerce" with the expectations that such products will be purchased in the forum state).

Moreover, the general rule is that when a defendant infringer is shown to have sold an allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over the defendant. *See Caddy Prods., Inc. v. Greystone Int'l., Inc.*, 05 CV 301, 2005 U.S. Dist. LEXIS 34467, *5-6 (D. Minn. 2005) (applying patent infringement);  *see also North Am. Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994); *see also Osteotech, Inc. v. GenSci Regeneration Sciences, Inc.*, 6 F.Supp. 2d 349, 354 (D.N.J. 1998) ("The law is clear that, where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over the defendant."); *see also Biometics, LLC v. New Womyn, Inc.*, 112 F.Supp. 2d 869, 872-73 (E.D. Mo. 2000)("The evidence submitted by plaintiff, when viewed in the light most favorable to plaintiff, establishes that defendants sold at least two accused products in Missouri, were aware the final destination for these products was Missouri, shipped a product directly to Missouri in one instance and requested shipping to Missouri purchasers in the other two instances, and directly billed the two Missouri resident purchasers for the purchase price of the products. This evidence is sufficient to establish that defendants purposefully directed their activities to Missouri residents.").

"The rationale underlying this rule is not only that such a defendant clearly had a 'fair warning' that it could be haled into court in the forum state but also that the forum in which an allegedly infringing product is sold clearly has an interest in prohibiting the

importation of infringing articles into its territory." *Caddy Prods., Inc.*, 2005 U.S. Dist. LEXIS 34467 at *5-6.

In *Biometics v. New Womyn*, for example, the Eastern District of Missouri, in a comparable case (but arising under patent law), held that a defendants' infringing sales to Missouri residents was sufficient to trigger the tortious act provision of the Missouri long-arm statute, "and automatically establish that defendants purposefully directed their activities at Missouri residents." 112 F.Supp. 2d at 872-873 (*citing North Am. Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994), *3 D Systems*, 160 F.3d 1373 (Fed. Cir. 1998), and *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994)). The court also found, that the defendants sold at least two accused products in Missouri and were fully aware that Missouri was the final destination of the products. *Id.* It has been established that the infringing objects were sold in Missouri and that those items were intended to be sold in Missouri.

Similarly, in *Anheuser-Busch v. City Merchandise*, 176 F. Supp. 2d 951 (E.D. Mo. 2001), the Eastern District of Missouri determined that the shipping and sale of 200 postcards was sufficient to confer personal jurisdiction. *Id.* at 958. In that case, contrary to the facts at hand, the quantity of contacts with Missouri were few, and involved only 200 postcards. *Id.* In finding personal jurisdiction, the court held that the defendant intentionally distributed the postcards in Missouri, the contacts from the sales were related to the infringement claims, and Missouri had a strong interest in providing a forum for a Missouri corporation to protect its intellectual property. *Id.* The defendant postcard company intentionally distributed the postcards to Missouri, thus it was "certainly foreseeable that the postcards could be purchased by consumers in Missouri." *Id.* In so

14

doing, the intent to harm the defendant could be easily "interpreted as aiming its actions at the state in which [the defendant] has its principal place of business." *Id.* at 959.

Here, plaintiff Friedrich was a resident of Missouri at the time that each Defendant intended its infringing products to enter into Missouri and be purchased by Missouri residents. The toys, DVDs, theatrical presentation, and the like each were intentionally distributed into Missouri to be purchased by Missouri residents, with the effect to be felt by Mr. Friedrich in Missouri.

Finally, damages caused by the Defendants actions have occurred in Missouri, as suffered by both Mr. Friedrich and GFE. "The damages from copyright infringement occur where the owner of the copyright suffers damage." *Renaissance Pen Co. v. Krone, L.L.C.*, 04 CV 557, 2006 U.S. Dist. LEXIS 21794 * 9 (E.D. Mo. 2006)(*citing Salton, Inc. v. Philips Domestic Appliances & Personal Care B.V.*, 391 F.3d 871, 877 (7th Cir. 2004)). Thus, the interference with and damages to Friedrich's right of publicity also occurred where he resides. Thus, for the period that Friedrich owned the copyright and pursued his own rights of publicity, the damage occurred in Missouri. Furthermore, the damage to GFE's ability to market Mr. Friedrich's rights of publicity, and Mr. Friedrich's rightful Ghost Rider related products in Missouri is still occurring there. In addition, although GFE is located in Southern Illinois, it is located only minutes from the federal courthouse for the Eastern District of Missouri and a large portion of its natural customer base is located in Missouri. *See* Friedrich Aff. ¶ 14 (Lesser Aff. Ex. G).

The degree to which the Defendants individually and collectively interjected their products into Missouri is more than minimal and in fact is widespread. Further, each Defendant purposely availed itself of the benefits of the Missouri forum and each has

profited from the distribution of the film (by contract, percentage, or otherwise) and the sale of movie tickets, DVDs, Blue Rays, video games, toys and merchandise. Jurisdiction is established over each Defendant pursuant to the Missouri long-arm statute and is proper under Due Process. The instant claim could have and might have been brought in the Eastern District of Missouri.

### 2. General Jurisdiction Exists Over the Defendants in the Eastern District of Missouri

Although jurisdiction under the long arm statute in the Eastern District is proper and thus establishes that the case might have been brought in that District for purposes of this transfer analysis, the case could also have been brought in the Eastern District due to the existence of "general jurisdiction" over several of the Defendants. Thus, even if the Court were to believe that the above-noted contacts are insufficient for any reason, the result would not change.

General jurisdiction exists where the defendant has continuous and systematic general business contacts with the forum state. *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 07 CV 495, 2008 U.S. Dist. LEXIS 14528 * 5 (E.D. Mo. 2008)(*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). The Defendants named in this action have intentionally established such ongoing, continuous and systematic contacts with the state of Missouri and the Eastern District of Missouri that they would be subject to general jurisdiction in any event. The Movie Defendants have been creating and presenting films in theaters and on pre-recorded media such as VHS tapes, DVD's, and Blue Ray discs on a systematic and continuous basis for a lengthy period prior to Ghost Rider, and have continued since. The Toy Defendants and Video Game Defendants have also been selling toys and video

games within Missouri on a nonstop, systematic and continuous basis within Missouri for years. Numerous films created, produced and presented by several of the Movie Defendants have been in theaters and for sale or rent within Missouri on a non-stop, systematic and continuous basis for years, with their presence and sales overlapping, lining up end to end, and never abating. *See* Tice Aff. ¶¶ 3-7 (Lesser Aff. Ex. J). The same is true for toys sold by the Toy Defendants and video games sold by the Video Game Defendants. *See* Tice Aff. ¶ 8 (Lesser Aff. Ex. J). There has been no time during, at a minimum, the two years prior to the sale of the Ghost Rider film, merchandise, toys and video games in Missouri, that there were not films, products, toys and video games sold by the Defendants in Missouri. *See* Tice Aff. ¶¶ 3-7 (Lesser Aff. Ex. J); *see also* Piechocinski Aff. ¶¶ 9-13 (Lesser Aff. Ex. H). Such purposeful aim of the products to Missouri had the direct intent of enticing and luring Missouri residents to purchase their products, which Missouri residents have done and will continue to do.

Accordingly Jurisdiction is proper under both the Missouri long arm statute and principles of general jurisdiction. Missouri has a strong interest in protecting its consumers from infringing materials and the bad acts of out-of-state entities in perpetuating the sale of infringing materials on the residents of Missouri, including Plaintiff Friedrich. To be haled into Court in Missouri can come as no surprise to any of the Defendants, and as such, personal jurisdiction exists over each of the several Defendants as a result of their actions as related to the Ghost Rider film or as a result of their contacts generally with Missouri.

Thus, the first requirement for transfer to the Eastern District of Missouri under 28 U.S.C. § 1404(a) is met.

**B.    The Convenience of the Parties and Witnesses
and the Interest of Justice Favor Transfer**

In balancing the convenience and fairness involved in any transfer, Courts in the

Second Circuit, and specifically Courts in the Southern District of New York are guided

by the following factors:

1.  The convenience of witnesses;
2.  The location of relevant documents and the relative ease of access to sources of proof;
3.  The convenience of the parties;
4.  The locus of the operative facts;
5.  The availability of process to compel attendance of unwilling witnesses;
6.  The relative means of the parties;
7.  A forum's familiarity with the governing law;
8.  The weight accorded Plaintiff's choice of forum; and
9.  Trial efficiency in the interest of justice, based upon the totality of the circumstances.

*POSVEN v. Liberty Mut. Ins. Co.,* 303 F.Supp. 2d 391, 404 (S.D.N.Y. 2004); *see also In* 

*re Nematron Corp. Securities Litigation*, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998)(same).

Applying these factors to the case at bar, reveals that transfer to the Eastern

District is appropriate. "There is no rigid formula for balancing these factors and no

single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F.Supp. 2d

549, 561 (S.D.N.Y. 2000).  "Instead, weighing the balance 'is essentially an equitable

task' left to the Court's discretion." *Id.*

1.    **Convenience of the Witnesses**

The most important criterion in reviewing a motion to transfer venue is the

convenience of the parties and witnesses.  *See Beckerman v. Heiman*, 05 Civ 5234, 2006

U.S. Dist. LEXIS 39685 * 11 (S.D.N.Y. 2006)("The convenience of parties and

witnesses is considered the essential criteri[on] under the venue statute.").  In considering

this factor. the Court should evaluate the witnesses and then provide substantial weight to

the material witnesses in the balancing calculus. *See Indian Harbor v. Factory Mutual Ins. Co.,* 419 F.Supp. 2d 395, 400 (S.D.N.Y. 2005)("To determine whether transfer is appropriate, the Court looks to the 'center of gravity of the litigation,' as judged primarily by the convenience of witnesses."). "The convenience of non-party witnesses is accorded more weight than that of party witnesses." *Royal & Sunalliance v. British Airways*, 167 F.Supp. 2d 573, 577 (S.D.N.Y. 2001).

The District Court for the Southern District of Illinois moved this case to this Court despite the Defendants failure to identify any witnesses, as required. In connection with this motion to now transfer to the Eastern District of Missouri, however, Plaintiffs have identified several witnesses that will be material witnesses in this litigation, including at least two who reside within the Eastern District of Missouri, as well as the identification of what information their testimony will cover. *See* Kramer Aff. ¶ 3 (Lesser Aff. Ex. K); *see also Factors Etc. Inc. v. Pro Arts Inc.*, 579 F.2d 215, 218 (2d. Cir. 1978)("A party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.").

The primary witness will be Plaintiff Friedrich. Mr. Friedrich is located and resides in Missouri. He will testify about his creation of the Characters and Origin Story, his later authorship of the comic book incarnations of those Characters and Origin Story, the reversion of the Copyright to him, damages he has suffered and the negative impact on his personal rights of publicity caused by the Defendants conduct. *See* Kramer Aff. ¶ 2 (Lesser Aff. Ex. K). In addition, as the president and sole owner of Plaintiff GFE, he will be the primary witness as it relates to business issues with GFE and its damages. *Id.* Plaintiff

Friedrich has stated by Affidavit his inability to easily travel far distances, both as a result of financial inability and because of his current employment. *See* Friedrich Aff. ¶¶ 3-6 (Lesser Aff. Ex. G). Plaintiff Friedrich's position as a night courier would not allow him to travel to New York for court proceedings, and this Court would be a crippling forum in the event of a lengthy trial. *Id.* As a key witness in this litigation, Mr. Friedrich's financial disparity with the corporate Defendants should be given substantial deference in any calculus.

Another witness known to Plaintiff is Paul Schade, also a resident of the Eastern District of Missouri, who will testify as to the origin of the Characters and Origin Story by Friedrich and Plaintiff Friedrich's development of the images and look of the Characters and their final completion prior to the later comic book incarnations of them[8]. Mr. Schade will be called as a witness to discuss the original concepts and development years before the eventual publishing. *See* Kramer Aff. ¶ 3(a)(Lesser Aff. Ex. K).

The other probable witnesses known to Friedrich live outside of Missouri. Importantly, however, they do not live in New York. *See* Kramer Aff. ¶ 3(b-f)(Lesser Aff. Ex. K). Of note, because the various witnesses are spread out nationally, the location of the Eastern District of Missouri would be closer to nearly all of them than New York. Upon information and belief, Stan Lee is currently a resident of California, Roy Thomas is a resident of North Carolina, Mike Ploog is located in England, and there are other witnesses believed to reside in California and/or Nevada. *Id.*

---

[8]    Based on review of published materials circulated by some or all Defendants which attempt to wrongfully diminish Plaintiff's creation of and control over the Characters and Origin Story, Plaintiffs believe that Defendants may attempt to inaccurately claim that other persons contributed to or caused the creation of one or more of the Characters at the time of the comic incarnations. Schade will put this inaccuracy to rest.

The Defendants are national and international entities with significant means and with the presumed ability to litigate anywhere their products are sold. Several of the Defendants are based in California.[9] Only a few of the Defendants are based in New York, and even with respect to those Defendants, it appears that their New York offices were not involved in any aspect of this case. Notably, when seeking to transfer this case to this Court from the Southern District of Illinois, the Defendants were unable to identify any witnesses that they claimed reside in New York, whether employees of their own or non-party witnesses. *See* Lesser Aff. Ex. C at 6. This is not surprising. The infringing film was produced and shot in California and Australia, and there is no indication that the toys or video games were created in New York.

Indeed, the only connection this case has to New York is the happenstance fact that the comic book incarnation of Friedrich's Characters and Origin Story was printed in and distributed from New York back in 1972. However, that was done by a non-party company that is now out of existence and which was not involved in the infringement or other violations. Notably, the individual witnesses to the printing efforts no longer reside or work in New York or even the surrounding states. Moreover, the printing and distribution of the comic book is of minimal importance to this case, which concerns infringement occurring over 39 years later. The convenience of the various witnesses to this case weighs in favor of transfer to Missouri.

---

[9] Marvel Studios, Inc., Sony Pictures Entertainment, Inc., Columbia Tri-Star Motion Picture Group, and Columbia Pictures Industries, Inc., Michael DeLuca Productions, Inc., and Relativity Media, LLC are all believed to have their principal place of business in the State of California. *See* Complaint, Lesser Aff. Ex. F at pgs. 6-9.

### 2.    <u>The Locus of the Operative Facts</u>

The locus of operative facts is an "important factor to be considered in deciding where a case should be tried." *800-Flowers, Inc. v. Intercontinental Florists, Inc.*, 860 F.Supp. 128, 134 (S.D.N.Y. 1992). Courts routinely transfer cases when the principal events occurred in another district and the principal witnesses are located there. *Age Group Ltd. v. Regal Logistics Corp.*, 06 Civ. 4328, 2007 U.S. Dist. LEXIS 62476, *8 (S.D.N.Y. 2007). In determining where the locus of operative facts lies, Courts will look to the site of events from which the claim arises. *Id*. The locus for an infringement case is where the injury is felt. *See supra*, Section II.

In the instant case, the operative facts from which the claims arise are in Missouri. Friedrich originally created and authored the concepts and ideas for the Characters and Origin Story, almost entirely in Missouri. He also created and directed much of the creation and printing of the comic book incarnations of his Characters and Origin Story from Missouri. The operative facts concerning the creation of the Characters and Origin Story took place in Missouri in the late 60's and early 70's prior to the presentation of his ideas for the comic book versions to Magazine Management Inc. At the time the copyright registration renewed pursuant to the Copyright Act of 1976 in Friedrich's name, he was a resident of Missouri. All the acts of infringement have taken place while Friedrich was a resident of Missouri. The injuries from the acts of the Defendants are being felt in Missouri. *See supra*, II. As noted, the only facts that occurred in this District involve the printing and distribution of the comic book incarnation back in 1972, but the company that was involved is defunct, there are no files, documents, or offices

from that time period in existence, and the individuals who were involved back then no longer live in New York or in any surrounding area.

As such, this factor weighs in favor of transfer as well.

### 3.    Location of Relevant Documents and Access to Sources of Proof

The location of documents is not a particularly persuasive factor in the analysis absent a showing that the documents are somehow especially difficult to transport. *GPA, Inc. v. Liggett Group, Inc.*, 94 Civ. 5375, 1994 U.S. Dist. LEXIS 14043 * 3 (S.D.N.Y. 1994). Here, Plaintiffs do not anticipate many documents still exist as it relates to the creation of the comic book incarnation in 1971-72 in New York since the company involved is long defunct. As it relates to the accounting for the monies improperly earned by the Defendants indicating such improper revenues are believed to be in California but, in any event, can be obtained by counsel through relatively easy means even if in New York. Discovery can be tailored to achieve those needs without exhaustive production. In any event, such documents are easily transportable. Further, and more importantly, documents will also be produced by companies in Rhode Island and California, and the Plaintiffs will be required to produce documents located in Missouri and Illinois. Again, this factor weighs in favor of transfer

### 4.    The Convenience of the Parties

Undoubtedly, the burden of travel and litigation in a distant forum is more onerous on Plaintiff Friedrich and his struggling company compared to that of the national and international companies in this lawsuit. While the convenience of the parties on transfer is neutral if it merely shifts the burden of inconvenience to the other party, *Schnabel v. Ramsey Quantitative Sys.*, 322 F.Supp. 2d 505, 516 (S.D.N.Y. 2004), here,

the burden and inconvenience in keeping this matter in New York does not merely make the burden neutral, but greatly increases the burden on the Plaintiffs and presumably on the Defendants based in California as well.

The burden of litigating in Missouri is minor on multi-national corporations, especially given that Missouri is a compromising central location for the various Defendants. Even Defendants' counsel maintains offices throughout the country and even has a fully functioning office as close to the Eastern District of Missouri as Chicago, Illinois. The Eastern District of Missouri is centrally located to the various Defendants, and is centrally located for the witnesses to this case. Missouri is further supported by the location of non-party witness Mr. Schade, who is a resident of Missouri. Friedrich, as supported by Affidavit, has very little means and entirely incapable of litigation half a country away. *See* Friedrich Aff. ¶¶ 3-6 (Lesser Aff. Ex. G). It is not merely inconvenient for him to go forward in New York, but is devastating to him financially, and will have negative consequences for his family and his occupation. His hardships are delineated in his affidavit, which include the fact that he works as a nighttime courier and would be unable to retain his job if forced to leave for substantial periods of time for depositions and/or even for the trial itself.

This factor weighs in favor of transfer.

### 5.    The Availability of Process to Compel Attendance of Unwilling Witnesses

This factor also weighs in favor of transfer to the Eastern District of Missouri since the Eastern District of Missouri is more centrally located as an ideal location for the various witnesses to appear at trial and will alleviate any necessary travel burdens for trial. The availability of process to compel the testimony of important witnesses is an

important consideration in transfer motions. *Arrow Electronics, Inc. v. Ducommun, Inc.*, 724 F.Supp. 264, 266 (S.D.N.Y. 1989). Here, Plaintiffs have identified one Party witness as well as a non-party witness that reside in Missouri. *See* Kramer Aff. ¶¶ 2-3 (Lesser Aff. Ex. K). While Plaintiffs acknowledge that other likely non-party witnesses are not located in Missouri, they are also not located in New York. This factor weighs in favor of transfer because the location of Missouri provides a compromise for the witnesses that are spread throughout the country. Since most of the film-related items were done in California, the presumption is that a substantial number of witnesses, including Nicolas Cage and Mark Steven Jackson, will be called. All of these witnesses reside in California. While no state is perfect for this matter, Missouri is more proper than New York for the convenience of the witnesses and to ease the burden on not only the witnesses, but also the party witnesses as well. This factor weighs in favor of transfer to Missouri.

### 6.   The Relative Means of the Parties

It is unquestionable that Plaintiff Friedrich does not have the ability to litigate a half of a country away when compared to the combined Defendants, or even any Defendant individually. "Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 135 (S.D.N.Y. 1995); *see also Dwyer v. General Motors Corp.*, 853 F.Supp. 690, 693-94 (S.D.N.Y. 1994)(same). As stated above, Plaintiff Friedrich is a man of limited means and will be crushed by the expensive costs of attempting to litigate in such a distant forum as New York is. *See*

Friedrich Aff. ¶¶ 3-6 (Lesser Aff. Ex. G). Plaintiffs do not have the ability to bear the costs and expense of litigating in a distant forum. *See New Era Cap Co. v. Prinz Enters., LLC,* 06 Civ. 3915, 2008 U.S. Dist. LEXIS 15281 *6 (W.D.N.Y. 2008) (court weighed the disparity in the relative means between a large corporation and an individual and his sole proprietorship in favoring transfer). Where as here the disparity is great, this factor weighs in favor of transfer to Missouri.

### 7.    A Forum's Familiarity with the Governing Law

The governing law applied to this case includes not only federal claims but state law claims. As it relates to the federal claims, District Courts are assumed to know the law and each will apply its own interpretation of federal law. *See e.g.*, *In re Parmalat Sec. Litig.*, 479 F.Supp. 2d 332 (S.D.N.Y. 2007). As the original transfer state, Illinois state law will be applied to the state law claims arising in this case. *See Auscope Int'l v. Nat'l Geographic Soc'y*, 461 F.Supp. 2d 174, 182 (S.D.N.Y. 2006)("If a case is transferred pursuant to 28 U.S.C. § 1404(a), however, the law of the transferor court applies."). However, this case also involves state law claims, which will be governed by either Missouri or Illinois law. The Eastern District of Missouri is presumably more familiar with the application of the law of its neighboring state than that of a distant forum, such as the Southern District of New York. It makes sense to have a trial "in a forum that is at home with the state law that must govern the case." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). This factor weighs in favor of transfer.

### 8.    The Weight Accorded a Plaintiff's Choice of Forum

While it is undeniable that Plaintiffs originally chose the Southern District of Illinois, once that Court declined to hear the matter, the Plaintiffs choice of forum was,

and is the Eastern District of Missouri. Weight is properly given to the Plaintiffs preference for the Eastern District of Missouri *vis a vis* this Court. *See Raynes v. Davis*, 05 CV 6740, 2007 U.S. Dist LEXIS 85336 * 7-8 (C.D. Ca 2007)(the court, on reviewing a plaintiffs motion to transfer, refused to give the plaintiff's current choice of forum any less weight simply because her initial choice of forum differed.)  Here, Friedrich has been a resident of Missouri for eighteen (18) years and his wife and family reside there. *See* Friedrich Aff. ¶ 2 (Lesser Aff. Ex. G). The damages, costs, and expenses of litigation for Friedrich are being felt in Missouri and will continue to be felt there. Plaintiff GFE, although in the Southern District of Illinois, is literally only minutes from the Federal Courthouse for the Eastern District of Missouri in St Louis and also prefers that venue as compared to this Court. Therefore, this factor also weighs in favor of transfer.

### 9.    Trial Efficiency in the Interest of Justice <u>Based on the Totality of Circumstances</u>

The efficiency of justice weighs in favor of transfer to Missouri because of the factors as outlined above. Missouri has a strong interest in protecting its residents in matters that affect their rights and given its proximity to the Southern District of Illinois, the burden on GFE would be greatly reduced. Along with the lack of a connection between the Southern District of New York and this matter, Missouri has much more experience in applying the laws of Missouri and Illinois. Based upon the status of the Plaintiff and the various Defendants, the totality of circumstances weighs in favor of Plaintiffs Motion to have this case transferred to the Eastern District of Missouri.

## CONCLUSION

Wherefore, plaintiffs Gary Friedrich and Gary Friedrich Enterprises respectfully submit that this Motion be granted at this case transferred to the Eastern District of Missouri for adjudication on the merits, in addition to such other and further relief this Court deems just and proper.

Dated:  New York, New York
         May 2, 2008

SIMON•LESSER PC

By: _____
     Leonard F. Lesser, Esq.
     420 Lexington Avenue
     New York, New York 10170
     T: 212.599.5455
     F: 212.599.5459

ROTH, EVANS & LADING
Thomas Long, Esq.
Eric Evans, Esq.
Dawn O'Leary, Esq.
2421 Corporate Centre Drive
Suite 200
Granite City, IL 62040
T: 618.931.5000
F: 618.931.6474

RIEZMAN BERGER, P.C.
Charles S. Kramer, Esq.
Joseph D. Schneider, Esq.
7700 Bonhomme, 7th Floor
St. Louis, Missouri  63105
T: 314.727.0101
F: 314.727.6458

Attorneys for plaintiffs Gary Friedrich
Enterprises, LLC and Gary Friedrich