UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY FRIEDRICH ENTERPRISES, LLC and
GARY FRIEDRICH,

                      Plaintiffs,

    - against -

MARVEL ENTERPRISES, INC., MARVEL
ENTERTAINMENT, INC., MARVEL
STUDIOS, INC., MARVEL CHARACTERS,
INC., HASBRO, INC., TAKE-TWO
INTERACTIVE, COLUMBIA TRI-STAR
MOTION PICTURE GROUP, COLUMBIA
PICTURES INDUSTRIES, INC., CRYSTAL
SKY PICTURES, RELATIVITY MEDIA LLC,
MICHAEL DELUCA PRODUCTIONS, INC.,
SONY PICTURES ENTERTAINMENT, INC.
and SONY CORPORATION OF AMERICA,

                      Defendants.

08-CV-01533 (BSJ) (JCF)

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF MISSOURI PURSUANT TO 28 U.S.C. § 1404

PAUL, HASTINGS, JANOFSKY
& WALKER LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................3

ARGUMENT...............................................................................................................4

II.     THE "LAW OF THE CASE" DOCTRINE REQUIRES THIS COURT TO
        ACCEPT THE SOUTHERN DISTRICT OF ILLINOIS' ORDER TO
        TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK..............4

        A.     The "Law of the Case" Doctrine Applies to Transfer Decisions ...........................4

        B.     Since the Southern District of Illinois' Order to Transfer this Case to the
               Southern District of New York was Clearly Plausible, the Order Should
               Not be Reevaluated................................................................................................5

               1.     The Circumstances Do Not Warrant the Southern District of New
                      York's Divergence from the Law of the Case............................................7

               2.     Even if this Court Were to Find that Friedrich's Financial and Job
                      Status Constituted an "Impelling or Unusual Circumstance," These
                      Factors Were Already Considered by the Southern District of
                      Illinois.......................................................................................................8

               3.     This Court Should Avoid Playing "Jurisdictional Hopscotch" and
                      Should Not Evaluate the Merits of Litigating in New York Versus
                      Missouri ....................................................................................................9

III.    EVEN WERE THIS COURT TO RE-EVALUATE THE MERITS OF
        LITIGATING IN NEW YORK VERSUS MISSOURI, MISSOURI IS NOT A
        "SUBSTANTIALLY" MORE CONVENIENT FORUM THAN NEW YORK
        AND THIS ACTION SHOULD NOT BE RE-TRANSFERRED ...................................10

        A.     The Standard for Transfer, as Articulated by Plaintiffs in Their
               Submissions to the Illinois Court, is that the Proposed, New Forum Must
               be Clearly More Convenient than the Existing Forum...........................................10

        B.     Missouri is Not Clearly a More Convenient Forum than New York ....................11

               1.     Convenience of the Parties and Witnesses ...............................................11

               2.     The Locus of the Operative Facts............................................................13

               3.     Location of Relevant Documents and Access to Sources of Proof..........15

               4.     The Availability of Process to Compel the Attendance of
                      Unwilling Witnesses.................................................................................16

               5.     The Relative Means of the Parties............................................................17

               6.     A Forum's Familiarity with the Governing Law.......................................18

               7.     The Weight Accorded Plaintiffs' Choice of Forum ..................................19

**TABLE OF CONTENTS**
(continued)

8.  Trial Efficiency in the Interest of Justice Based on the Totality of the Circumstances ................................................................................... 20

IV.  EVEN IF THIS COURT DOES NOT FOLLOW THE LAW OF THE CASE AND DETERMINES THAT A TRANSFER IS APPROPRIATE, THIS ACTION IS MORE APPROPRIATELY TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA THAN TO MISSOURI ................................................. 21

CONCLUSION .......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*,
  326 F. Supp. 2d 525 (S.D.N.Y. 2004) ................................................................ 14

*American Steamship Owners Mut. Prot. and Indem. Ass'n v. LaFarge N. Am., Inc.*,
  474 F. Supp. 2d 474 (S.D.N.Y. 2007) ................................................................ 15

*Beckerman v. Heiman*,
  No. 05 Civ. 5234, 2006 WL 1663034 (S.D.N.Y. June 16, 2006) .................... 11, 16

*Berke v. Gilreath Indus., Inc.*,
  No. 88 Civ. 8350, 1989 WL 129481 (S.D.N.Y. Oct. 24, 1989) ........................... 17

*Bordiga v. Directors Guild of Am.*,
  159 F.R.D. 457 (S.D.N.Y. 1995) ....................................................................... 17

*Capitol Records, Inc. v. Kuang DYI Co. of RM*,
  No. 03 Civ. 0520, 2004 WL 405961 (S.D.N.Y. Mar. 4, 2004) ...................... 14, 20

*Cerussi v. Union Coll.*,
  144 F. Supp. 2d 265 (S.D.N.Y. 2001) ................................................................. 17

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988) ........................................................................................ 4, 5

*Citicorp Leasing, Inc. v. United Am. Funding, Inc.*,
  No. 03 Civ. 1586, 2004 WL 102761 (S.D.N.Y Jan. 21, 2004) ........................... 15

*Citigroup Inc. v. City Holding Co.*,
  97 F. Supp. 2d 549 (S.D.N.Y. 2000) ................................................................. 16

*Colour & Design v. U.S. Vinyl Mfg. Corp.*,
  No. 04 Civ. 8332, 2005 WL 1337864 (S.D.N.Y. June 3, 2005) ......................... 14

*Deep South Pepsi-Cola Bottling Co. v. Pepsico, Inc.*,
  No. 88 Civ. 6243, 1989 WL 48400 (S.D.N.Y. May 2, 1989) ............................... 9

*Hill Dermaceuticals, Inc. v. Galderma*,
  No. 03 Civ. 2509, 2003 WL 21146634 (S.D.N.Y. May 15, 2003) ..................... 5, 6

*Hummingbird USA, Inc. v. TX Guaranteed Student Loan Corp.*,
  No. 06 Civ. 7672, 2007 WL 163111 (S.D.N.Y. Jan. 22, 2007) ........................... 20

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.,*
    419 F. Supp. 2d 395 (S.D.N.Y. 2005) .................................................................. 13

*Kolko v. Holiday Inns, Inc.,*
    672 F. Supp. 713 (S.D.N.Y. 1987) ................................................................. 17, 18

*Millennium L.P. v. Dakota Imaging, Inc.,*
    No. 03 Civ. 1838, 2003 WL 22940488 (S.D.N.Y. Dec. 15, 2003) ......................... 20

*Nieves v. American Airlines,*
    700 F. Supp. 769 (S.D.N.Y. 1988) ....................................................................... 19

*Rates Tech. Inc v. UTT Corp.,*
    No. 94 Civ. 0326, 1995 WL 16788 (S.D.N.Y. Jan. 18, 1995) ................................ 20

*Raynes v. Davis,*
    No. 05 Civ. 6740, 2007 WL 4145102 (C.D. Cal. Nov. 19, 2007).......................... 19

*Repp v. Webber,*
    142 F.R.D. 398 (S.D.N.Y. 1992)................................................................... 5, 8, 9

*Royal & Sunalliance v. British Airways,*
    167 F. Supp. 2d 573 (S.D.N.Y. 2001) ................................................................... 19

*Schnabel v. Ramsey Quantitative Sys., Inc.,*
    322 F. Supp. 2d 505 (S.D.N.Y. 2004) ................................................................... 10

*Simoiu v. U.S. Marshals Serv.,*
    No. 00 Civ. 7133, 2005 WL 292749 (S.D.N.Y. Feb. 8, 2005)............................... 4, 6

*U.S. ex rel. Smith v. New York Presbyterian Hosp.,*
    No. 06 Civ. 4056, 2007 WL 2142312 (S.D.N.Y. July 18, 2007) .............................. 6

*Vasquez v. Negron,*
    No. 06 Civ. 0619, 2006 WL 2053374 (S.D.N.Y. July 21, 2006) ............................ 14

## STATUTES

28 U.S.C. § 1404 ........................................................................................................ 1

Defendants Marvel Entertainment, Inc. (formerly known and also sued herein as Marvel Enterprises, Inc.), Marvel Studios, Inc. and Marvel Characters, Inc. (collectively, "Marvel"), Hasbro, Inc. ("Hasbro"), Take-Two Interactive, Inc. ("Take-Two"), Columbia Pictures Industries, Inc. (also incorrectly sued herein as Columbia Tri-Star Motion Picture Group ("Columbia")), Crystal Sky Pictures LLC ("Crystal Sky"), Relativity Media, LLC ("Relativity"), Michael DeLuca Productions, Inc. ("De Luca") and Sony Pictures Entertainment, Inc. ("Sony" and collectively with the other defendants, "Defendants") submit this memorandum of law in opposition to the motion by plaintiffs Gary Friedrich Enterprises, LLC ("GFE") and Gary Friedrich ("Friedrich" and together with GFE, "Plaintiffs") to re-transfer this action to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404.

## PRELIMINARY STATEMENT

Over a year has passed since this action was commenced, yet instead of seeking to litigate the merits of their claims, Plaintiffs are still arguing over venue. Plaintiffs' latest effort is to re-transfer this action to a district adjacent to the Southern District of Illinois. Indeed, the East St. Louis courthouse of the Southern District of Illinois from which the case originated is only minutes across the Mississippi from the St. Louis courthouse of the Eastern District Missouri to which the transfer is now sought. In so doing Plaintiffs ignore the original court's determination that it was not as appropriate or convenient a forum as this Court and make clear that they are more focused on shopping for what they perceive to be a "friendly" forum than they are on prosecuting their claims.

Plaintiffs' first move in what has proven to be a game of jurisdictional hopscotch was a transparent attempt to manufacture venue in the Southern District of Illinois by forming

GFE as an Illinois limited liability company with a supposed address in the Southern District of Illinois six days before commencing this action and then assigning Friedrich's supposed rights to the copyrighted Ghost Rider works at issue to GFE. There was absolutely *no* relationship whatsoever between any party to this action and the Southern District of Illinois; consequently, Defendants moved to transfer venue to this Court. After careful analysis, the Illinois court held that this action belongs in New York because the primary nexus to this dispute is in New York and overall New York is a more convenient venue for *all* of the parties and witnesses.

In their second move, Plaintiffs unsuccessfully tried to persuade the Southern District of Illinois to reconsider its decision and leave the case in Illinois or, alternatively, to transfer this action to the Eastern District of Missouri (a district Plaintiffs themselves conceded was only "minutes" away from Illinois).[1] The Illinois court denied Plaintiffs' motion for reconsideration, again addressing and rejecting Plaintiffs' arguments that the critical events occurred in the Midwest and holding that New York was the most convenient forum for all of the parties. Plaintiffs' attempt to persuade the Southern District of Illinois to transfer the action to the Eastern District of Missouri was unsuccessful as well.

Rather than finally turning their efforts to the merits of their case, Plaintiffs have audaciously made another move. They now seek a *third* bite at the apple by asking this Court to transfer the case to the Eastern District of Missouri, making the same twice-rejected arguments they made to the Southern District of Illinois. The United States Supreme Court has warned against the vicious cycles of litigation that result from the granting of multiple motions to transfer absent extenuating circumstances. There are no extenuating circumstances here. Both

---

[1] *See* Plaintiffs' Memorandum In Support of Motion for Reconsideration of the Court's September 26, 2007 Order at 3.

Plaintiffs and Defendants are in the identical positions they were in when this case was

transferred from Illinois to this Court and when Plaintiffs' motion for reconsideration was

denied. Plaintiffs should not be permitted to continue wasting the resources of the Court and the

parties. Their motion should be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

      This action stems from allegations of copyright infringement related to the

popular Marvel Super Hero "Ghost Rider," which has appeared in comic books published by

Marvel in different incarnations since the 1950s. The most recent incarnation was created in the

1970s for publication by Marvel and has since appeared in comic titles, interactive games, action

figures, on clothing and, most recently, a live action motion picture. In the Complaint, Friedrich

alleges that he conceived, created and authored "Ghost Rider," Ghost Rider's alter ego, "Johnny

Blaze," and various other background characters, and that he therefore owns the copyrights in

and to these works. Compl. ¶¶ 7, 40-43. Plaintiffs also allege that Friedrich created GFE and

assigned his alleged rights in the Ghost Rider character to GFE, and that Defendants have,

without permission and in violation of "their" copyrights, utilized, among others, the Ghost Rider

character, the Johnny Blaze character, and the "origin" story describing Ghost Rider's formation.

*Id.* ¶¶ 22-84.

      Plaintiffs commenced this action in the Southern District of Illinois, asserting 21

separate claims. Apart from GFE (a sham entity which was formed only days before Plaintiffs

---

[2] For purposes of this motion, the facts are taken from plaintiffs' complaint filed on April 4, 2007 (the "Complaint" or "Compl."), and the accompanying declarations of Steven Paul dated May 28, 2008 (the "Crystal Sky Decl."), Aaron Michiel dated May 28, 2008 (the "Relativity Decl."), Carol Pinkus dated May 27, 2008 (the "Marvel Decl."), Eric Nyman dated May 28, 2008 (the "Hasbro Decl."), Michael DeLuca dated May 28, 2008 (the "DeLuca Decl."), Christina Recchio dated May 28, 2008 (the "Take-Two Decl."), Susan Deardorff dated May 29, 2008 (the "Sony/Columbia Decl.") and Jodi Kleinick dated June 2, 2008 (the "Kleinick Decl.").

commenced their action and Friedrich admitted does not have any employees other than

Friedrich himself), none of the parties had any connection whatsoever to Illinois. Because of the

strong connection this action has to New York and the fact that New York is the most

appropriate and convenient forum for all of the parties, Defendants timely moved to transfer this

action to the Southern District of New York. On September 26, 2007, the Southern District of

Illinois issued a thorough and reasoned memorandum and order (the "Order") granting

Defendants' motion to transfer venue, concluding that this action belonged in New York and not

in Illinois. On September 28, 2007, Plaintiffs moved for reconsideration of that decision or,

alternatively, to transfer venue instead to the Eastern District of Missouri in lieu of transfer to

this Court. Plaintiffs' motion for reconsideration was carefully considered by the District Court

and, in a memorandum and order dated January 30, 2008 (the "Reconsideration Order"), that

motion was denied, as was Plaintiffs' alternative request to transfer this action to the Eastern

District of Missouri. Having twice failed with the Illinois court, Plaintiffs now move this Court

to transfer this action to Missouri.

## ARGUMENT

I.    **THE "LAW OF THE CASE" DOCTRINE REQUIRES THIS COURT TO ACCEPT THE SOUTHERN DISTRICT OF ILLINOIS' ORDER TO TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK**

A.    **The "Law of the Case" Doctrine Applies to Transfer Decisions**

The "law of the case" doctrine "posits that when a court decides upon a rule of

law, that decision should continue to govern the same issues in subsequent stages in the same

case." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816 (1988) (citing *Arizona v.

California,* 460 U.S. 605, 618 (1983)). The doctrine applies to decisions of a coordinate court,

and federal courts routinely apply "law of the case" principles to transfer decisions. *Id. See also

Simoiu v. U.S. Marshals Serv.,* No. 00 Civ. 7133, 2005 WL 292749, at *3 (S.D.N.Y. Feb. 8,

2005); *Hill Dermaceuticals, Inc. v. Galderma,* No. 03 Civ. 2509, 2003 WL 21146634, at *1 (S.D.N.Y. May 15, 2003). Indeed, the Supreme Court has held that "the policies supporting the doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts [like the Southern District of New York, in this instance] that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Christianson,* 486 U.S. at 816.

**B.    Since the Southern District of Illinois' Order to Transfer this Case to the Southern District of New York was Clearly Plausible, the Order Should Not be Reevaluated**

To avoid a "perpetual game of jurisdictional ping-pong," the undermining of public confidence in the judiciary, and the squandering of private and public resources, the Supreme Court stated that, so long as a transferee court can find a transferor court's transfer decision "plausible," its "jurisdictional inquiry is at an end." *Id.* at 817 (stating that, as a rule, courts should be "loathe" to revisit prior decisions of a coordinate court in the absence of extraordinary circumstances).

This Court has adopted the rule articulated in *Christianson* that a transferee court should not engage in jurisdictional injuries absent extraordinary circumstances. The standard for re-transfer was enunciated by this Court in *Repp v. Webber,* 142 F.R.D. 398 (S.D.N.Y. 1992): "If a motion to transfer is granted and the case is transferred to another district, the transferee-district court should accept the ruling on the transfer as the law of the case and should not retransfer except under the most impelling and unusual circumstances or if the transfer is manifestly erroneous." *Id.* at 400, citing *In re Cragar Indus., Inc.,* 706 F. 2d 503, 505 (5th Cir. 1983). Impelling and unusual circumstances arise when "unanticipatable post-transfer events frustrate the original purposes of the transfer." *Repp,* 142 F.R.D. at 400-01. When a case has already been transferred from one district to another, the "law of the case" doctrine counsels against re-

evaluation of the transfer by the transferee court unless the governing law has been changed by

an intervening decision of a superior court, new evidence has become available, or a clear error

has been made. *U.S. ex rel. Smith v. New York Presbyterian Hosp.,* No. 06 Civ. 4056, 2007 WL

2142312, at *8 (S.D.N.Y. July 18, 2007). *See also Simou,* 2005 WL 292749, at *3; *Hill,* 2003

WL 21146634, at *1. Thus, this Court must accept the Southern District of Illinois' ruling to

transfer the case to New York unless Plaintiffs demonstrate "impelling and unusual

circumstances" or a "manifest error." Plaintiffs have not – and cannot – do so here.

In considering Defendants' transfer motion, the Southern District of Illinois

properly concluded that the conduct supposedly giving rise to Plaintiffs' injury occurred in New

York, where Friedrich allegedly pitched his proposal to Marvel, and where Marvel conducted its

business and licensed the rights to utilize the Ghost Rider works to the other defendants and the

critical alleged infringement occurred (Order at 6, n. 4), that the residences of the parties

weighed in favor of transferring the case either to the Southern District of New York or the

Central District of California (*id.* at 7), that it was reasonable to expect Friedrich to bear his own

expenses in litigating this matter in New York until it was resolved (*id.* at 8), and that

transferring this action to the Southern District of New York "would serve the interests of

resolving controversies in their locale and the interests of the community and forum closest to

the action." *Id.* at 9. For those reasons and others, the Illinois court granted Defendants' motion

to transfer venue to New York. *Id.* at 10.

In denying Plaintiffs' motion for reconsideration or, alternatively to transfer the

action to Missouri instead of to this Court, the Illinois court again reasoned that New York is

where Friedrich pitched his proposal to Marvel and where the alleged "critical infringement"

occurred (Reconsideration Order at 2), and determined that "fewer parties to this dispute are

inconvenienced by transferring this action to New York" and that relocating this action to New

York transferred "what was otherwise an inconvenience for a majority of the parties to this

lawsuit into an inconvenience for a minority." *Id.* at 5. Finally, the Illinois court stated that

"[a]lthough the Court is not unsympathetic to plaintiffs' financial condition, the Court notes that

plaintiffs filed this complaint and it would be reasonable to expect the plaintiff to bear its own

expenses in litigating this matter until it is resolved." Order at 8. Based on all of these findings,

the court denied the motion to reconsider and also denied Plaintiffs' request that this case be

transferred to Missouri. Given that the transfer to New York was, to say the least, "plausible,"

this Court's "jurisdictional inquiry" should be at an end.

### 1.    The Circumstances Do Not Warrant the Southern District of New York's Divergence from the Law of the Case

Plaintiffs do not even attempt to meet the "impelling and unusual circumstances"

standard required by the Supreme Court to warrant this Court's re-evaluation of the transfer

decision. Plaintiffs do not argue that any change in governing law has occurred, and Defendants

are unaware of any change in law that would affect the rights of any of the parties to this lawsuit.

Plaintiffs do not argue that they have uncovered new evidence not available to them at the time

they first brought this action that would somehow affect the venue analysis, and Defendants are

similarly unaware of new evidence. Finally, Plaintiffs have not come close to arguing any clear

error on the part of the Southern District of Illinois. Considering that Plaintiffs have not even

attempted to establish any of the elements that would warrant this Court to diverge from the law

of the case doctrine, their motion should be denied on that basis alone.

2.    **Even if this Court Were to Find that Friedrich's Financial and Job Status Constituted an "Impelling or Unusual Circumstance," These Factors Were Already Considered by the Southern District of Illinois**

In their Memorandum in support of the instant motion, Plaintiffs argue that Friedrich, their primary witness, cannot easily travel far distances due to his financial situation and his current employment as a night courier. Plaintiffs' Moving Brief at 20. Plaintiffs further argue that requiring Friedrich to litigate in New York would be financially devastating and would have negative consequences for his family and his occupation. *Id.* at 24. Defendants do not make light of Friedrich's financial situation. However, even if Friedrich's financial and job circumstances could be considered "impelling" or "unusual," Friedrich made these very same arguments to the Southern District of Illinois, which addressed his assertions and nevertheless held: "Although the Court is not unsympathetic to plaintiffs' financial condition, the Court notes that plaintiffs filed this complaint and it would be reasonable to expect the plaintiff to bear its own expenses in litigating this matter until it is resolved." Order at 8; *see also* Reconsideration Order at 5, n.5.[3]

In similar circumstances, this Court has held that it should not reconsider the transfer decision. *See Repp,* 142 F.R.D. at 399. In *Repp*, the plaintiff brought a copyright infringement action in the Illinois District Court and the defendants moved to transfer the action to the Southern District of New York. The Illinois court granted the defendants' transfer motion on the grounds that the convenience to the parties and the witnesses outweighed the plaintiff's claims that it was more economically feasible for him to maintain the action in Chicago. *Id.* The plaintiff then moved before this Court to have the action transferred back to the Illinois court,

---

[3] At the risk of stating the obvious, despite his alleged limited resources, Friedrich has had no trouble assembling a multi-state team of experienced counsel in this case.

again arguing that he was indigent and that he would be unable to successfully finance and prosecute this action if it remained in New York. *Id.* at 400. This Court refused to reconsider these factors, holding that although plaintiff's indigence might appear to be both "impelling" and "unusual," the argument had already been considered by the Illinois District Court. *Id.* at 402. For this same reason, this Court should not reconsider the transfer decision based on the alleged financial burden that litigating in New York would place on Friedrich.

      **3.**    **This Court Should Avoid Playing "Jurisdictional Hopscotch" and Should Not Evaluate the Merits of Litigating in New York Versus Missouri**

This Court should not countenance Plaintiffs' attempt to play jurisdictional hopscotch, and should not evaluate the merits of litigating in New York versus litigating in Missouri. *Deep South Pepsi-Cola Bottling Co. v. Pepsico, Inc.,* No. 88 Civ. 6243, 1989 WL 48400 (S.D.N.Y. May 2, 1989) is particularly instructive here. There, the plaintiffs sued in the Western District of Pennsylvania, the defendants moved to transfer venue to this Court pursuant to Section 1404(a) and the Pennsylvania court granted the motion. *Id.* at *1. The plaintiffs then moved before this Court to re-transfer the action to the Southern District of Mississippi on the ground that one of the plaintiffs was placed in Chapter 11 proceedings pending in the Bankruptcy Court for the Southern District of Mississippi. *Id.* at *2. In a well-reasoned opinion, Judge Leisure held:

> Section 1404(a) does not permit parties to hopscotch from one forum to another. Here, the United States District Court for the Western District of Pennsylvania already has decided …that the convenience of the litigants and witnesses, as well as the interests of justice, would be best served by transfer to this District. *Id.* at *4.

Without weighing the benefits of litigating in New York versus litigating in Mississippi, this Court denied the plaintiffs' motion to transfer to Mississippi. *Id.* The same result is warranted here. Were this Court to grant Plaintiffs' motion, there would be nothing to prevent Defendants

from moving before the Missouri court to transfer the action to California, to Rhode Island or even back to New York. Section 1404(a) was not intended to allow parties to make successive transfer motions, re-litigating the same issues.

## II.   EVEN WERE THIS COURT TO RE-EVALUATE THE MERITS OF LITIGATING IN NEW YORK VERSUS MISSOURI, MISSOURI IS NOT A "SUBSTANTIALLY" MORE CONVENIENT FORUM THAN NEW YORK AND THIS ACTION SHOULD NOT BE RE-TRANSFERRED

### A.   The Standard for Transfer, as Articulated by Plaintiffs in Their Submissions to the Illinois Court, is that the Proposed, New Forum Must be Clearly More Convenient than the Existing Forum

In their memoranda submitted to the Illinois court in opposition to Defendants' transfer motion and in support of their own motion to reconsider, Plaintiffs were quick to point out that the proposed, new forum must be *substantially* more convenient than the existing forum to justify a section 1404(a) transfer. Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss or to Transfer Venue at 9; Plaintiffs' Memorandum In Support of Motion for Reconsideration of the Court's September 26, 2007 Order at 3. According to Plaintiffs:

> In reviewing a motion to transfer, a mere, slight, possible tip of a balance in favor of a different forum is NOT enough to support transfer even if movants can establish such a minimal tip, because the new forum must be CLEARLY more convenient than the chosen forum to support transfer. The movant has the burden to establish such clearly superior convenience, and the balance must tip STRONGLY in favor of the asserted new forum.

Plaintiffs' Memorandum In Support of Motion for Reconsideration of the Court's September 26, 2007 Order at 3 (citing *Coffey v. Van Dorn Iron Works,* 796 F. 2d 217, 219-220 (7th Cir. 1986)). This Court has similarly held that the movant "must satisfy the 'heavy' burden of demonstrating that a weighing of the appropriate factors dictates that the case be transferred." *Schnabel v. Ramsey Quantitative Sys., Inc.,* 322 F. Supp. 2d 505, 515 (S.D.N.Y. 2004), citing *Coker v. Bank of Am.,* 984 F. Supp. 757, 764 (S.D.N.Y. 1997). Plaintiffs have utterly failed to meet this high

burden. They cannot establish the clear superior convenience of litigating in Missouri over New York, or that the balance tips strongly in favor of Missouri.

**B.    Missouri is Not Clearly a More Convenient Forum than New York**

The moving party may meet its "heavy" burden by applying the following established factors to guide the Court's discretion: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the place where the operative facts occurred; (4) the relative ease of access of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the plaintiff's choice of forum; and (9) trial efficiency in the interest of justice, based on the totality of the circumstances. *Beckerman v. Heiman,* No. 05 Civ. 5234, 2006 WL 1663034, at *4 (S.D.N.Y. June 16, 2006).

**1.    Convenience of the Parties and Witnesses**

To determine whether New York or Missouri would be, on balance, a more convenient jurisdiction, it is necessary to consider the residences of Plaintiffs' and Defendants' proposed witnesses.

Party Witnesses: In their brief, Plaintiffs argue that Missouri is more convenient for both Friedrich and GFE because Friedrich, the "primary witness" for both Plaintiffs, resides in Missouri. *See* Plaintiffs' Moving Brief at 19. As a preliminary matter, Plaintiffs concede that Friedrich is GFE's sole shareholder and that GFE has no employees other than Friedrich, and it is clear from the parties' submissions to the Illinois court that GFE is, for all intents and purposes, the alter-ego of Friedrich. Affidavit of G. Friedrich dated July 17, 2007 ¶ 14; Affidavit of G. Friedrich dated April 29, 2008 ¶ 15. They should not be counted as "two" parties for the purpose of this analysis, nor should Friedrich's residence be counted twice for this analysis. Accordingly, there is only one party witness in Missouri.

Defendants, on the other hand, will have at least 11 party witnesses. *See* Kleinick Decl. ¶ 2; Hasbro Decl. ¶ 3; Marvel Decl. ¶ 3; Take-Two Decl. ¶ 3; Sony/Columbia Decl. ¶ 3; Crystal Sky Decl. ¶ 3; Relativity Decl. ¶ 3 and DeLuca Decl. ¶ 3. All of Defendants' party witnesses are located either in New York (five witnesses), California (five witnesses) or Rhode Island (one witness),[4] and all believe that litigating this action in New York is more convenient than litigating this action in Missouri. Were this action to be transferred to Missouri, all ten defendants would be required to travel to a jurisdiction in which they have no other business or connection, solely for the convenience of one individual, Friedrich. In addition to the fact that the witnesses who reside outside of New York believe that New York is a more convenient forum for them, the comparison of flight availability from the various locations where the witnesses reside to either New York or Missouri confirms that New York is a more convenient forum for the party witnesses. Kleinick Decl. ¶¶ 4-5.

A transfer of this action to Missouri would shift the burden of inconvenience from the one individual who should be expected to bear the cost of this litigation – Friedrich – to the majority of the parties. In transferring this action from Illinois to New York, the Illinois District Court found that "[u]ltimately, transferring this dispute does not simply 'transform' the defendants' inconvenience into an inconvenience for the plaintiffs, it transfers what was otherwise an inconvenience for a majority of the parties to this lawsuit into an inconvenience for a minority." Order at 4. Notably, the Illinois court held that "[b]y transferring this litigation to the Southern District of New York, fewer parties to this dispute are inconvenienced." Order at 4.

---

[4] Two of the Defendants maintain their principal places of business in New York, and four others maintain offices in New York. None of the Defendants maintain their principal place of business or maintain any offices in Missouri. Kleinick Decl. ¶ 2; Marvel Decl. ¶ 2; Sony/Columbia Decl. ¶ 2; Take-Two Decl. ¶ 2; Hasbro Decl. ¶ 2; Relativity Decl. ¶ 2; DeLuca Decl. ¶ 2; Crystal Sky Decl. ¶ 2.

That analysis does not change simply because Plaintiffs now seek transfer to an equally inconvenient district located minutes away from where they originally brought their action.

    <u>Non-Party Witnesses:</u>    Plaintiffs and Defendants have identified a total of five non-party witnesses, only one of whom (Paul Schade) resides in Missouri.   The remaining non-party witnesses reside in New York (James Shooter), London (Mike Ploog), North Carolina (Roy Thomas), and California (Stan Lee).[5]   Contrary to Plaintiffs' unsupported assertions, it is easier and more convenient to fly from any of these states to New York than it is to fly to Missouri. Kleinick Decl. ¶¶ 4-5.  Surely, the Court should not transfer an action involving ten defendants, nine of which have principal places of business in New York or California, to Missouri because one non-party witness resides there, particularly where one non-party witness also resides in New York and it would be more convenient for the other non-party witnesses to travel to New York than Missouri.

### 2.    The Locus of the Operative Facts

    Plaintiffs argue that Missouri is the locus of operative facts for this action, as Missouri is one of the places where Friedrich allegedly created the concepts and ideas for the Ghost Rider character and where Friedrich resides and therefore has felt the effects of infringement.  Even assuming these facts are true, they provide an insufficient basis upon which this Court can conclude that Missouri is the locus of operative facts because, as the Illinois court properly concluded, most of the major events relative to Plaintiffs' claims occurred in New York.

---

[5] In an effort to create the misimpression that there are additional California witnesses who might find it more convenient to travel to Missouri than to New York, Plaintiffs identified Nicolas Cage, the star of the Ghost Rider movie, and Steven Michael Douglas, the producer of the movie, as potential witnesses. These "witnesses" would have no relevant testimony, and plaintiffs' attempt to count them for purposes of this analysis is dubious at best. *See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.,* 419 F. Supp. 2d 395, 404 (S.D.N.Y. 2005) (stating that "only material witnesses are afforded substantial weight in the balancing calculus").

To determine whether New York has a connection to the locus of operative facts in copyright actions, this Court has paid particular attention to where the alleged infringement took place. In *Vasquez v. Negron*, for example, the court found that the "genesis" of copyright infringement occurred where the alleged infringement initially took place even though the "composition and commercial release" of the works may have occurred elsewhere. No. 06 Civ. 0619, 2006 WL 2053374, at *3 (S.D.N.Y. July 21, 2006). *See also AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 530 (S.D.N.Y. 2004) (finding that "[t]he operative facts in infringement cases usually relate to the design, development and production of an infringing product"); *Capitol Records, Inc. v. Kuang DYI Co. of RM*, No. 03 Civ. 0520, 2004 WL 405961, at *4 (S.D.N.Y. Mar. 4, 2004) (determining that New York has a significant connection with the copyright dispute since the allegedly infringing product was sold in the Southern District and the infringement occurred when the infringer contracted with New York entities and distributors); *Colour & Design v. U.S. Vinyl Mfg. Corp.*, No. 04 Civ. 8332, 2005 WL 1337864, at *4 (S.D.N.Y. June 3, 2005) (finding that, in a copyright action, New York has a "sufficient connection to the locus of operative events" where defendant offered to ship samples of the allegedly infringing design to New York and defendant designated New York sales representatives as witnesses).

As the Illinois court found, New York is where Marvel licensed the rights to utilize the Ghost Rider works to the other defendants, and where the critical infringement allegedly occurred. Order at 2, n. 2; Marvel Decl. ¶ 4. In addition to the alleged infringement – the most critical factor in determining the locus for copyright infringement cases – other important events took place in New York as well. Friedrich allegedly pitched his idea for Ghost Rider in New York to Magazine Management Company, Inc., Marvel's predecessor-in-interest.

*See* Compl. ¶ 58;  Marvel Decl. ¶ 5.  Marvel, a New-York based company, "employed all of the people who created the comic book" and has published comic books featuring the character from its New York offices for over 35 years.  Order at 2, n.2.

In contrast to New York's strong connections to this action, the only connection Missouri has with this action is that it is Friedrich's residence and he allegedly created the ideas for the comic book there (and in California and Illinois).  Plaintiffs' argument that the locus of operative facts is in Missouri is unavailing.  New York has more than a sufficient connection to the material events in this dispute.  Thus, this factor weighs in favor of keeping this action in New York.

### 3.    Location of Relevant Documents and Access to Sources of Proof

As this Court has recognized, the location of documents "is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *American Steamship Owners Mut. Prot. and Indem. Ass'n v. LaFarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007).  In the days of modern technology, the fact that documents are located in several jurisdictions does not weigh in favor of transfer. *See Citicorp Leasing, Inc. v. United Am. Funding, Inc.*, No. 03 Civ. 1586, 2004 WL 102761, at *5 (S.D.N.Y Jan. 21, 2004) (finding that documents located in both the transferor and transferee district as well as another state renders this factor neutral).

Plaintiffs nevertheless argue that this factor weighs in favor of transfer to Missouri because Plaintiffs have documents located in Missouri and Illinois, and certain defendants maintain their documents in California or Rhode Island.  As a preliminary matter, Plaintiffs have not even attempted to show that it would be difficult for them to transport any documents "they" may have, which in all likelihood would not even fill half of one bankers' box, to New York.  More importantly, Plaintiffs studiously ignore the realities of where the majority

of the Defendants' documents are located.  Both Marvel, which will likely have the greatest

volume of relevant documents (including its copyright files, its licensing files and its accounting

records relating to Ghost Rider going back for years), and Take-Two maintain their principal

places of business in New York and all of their corporate documents are maintained here.

Marvel Decl. ¶ 3; Take-Two Decl. ¶ 3.  Plaintiffs' assertions regarding the California and Rhode

Island location of the remaining defendants are irrelevant to this analysis.  Those defendants who

maintain their documents outside of New York will be required to transport their documents to a

different jurisdiction regardless of whether this action is litigated in New York or Missouri.

Here, the majority of documents will likely be found in New York and, if anything, this factor

weighs in favor of retaining this action in New York.

> **4.     The Availability of Process to Compel the Attendance of Unwilling
> Witnesses**

Plaintiffs assert that this factor weighs in favor of transfer to the Eastern District

of Missouri "since the Eastern District of Missouri is more centrally located as an ideal location

for the various witnesses to appear at trial and will alleviate any necessary travel burdens for

trial." Plaintiffs' Moving Brief at 24.  Plaintiffs' assertion in this regard is clearly erroneous,

because it is more convenient for the overwhelming majority of the witnesses, both party and

non-party, to appear in New York for trial.  *See* Kleinick Decl. ¶¶ 5-6 and underlying Defendant

declarations referred to therein.  Notwithstanding that fact, this Court need not engage in a

determination of which jurisdiction, Missouri or New York, would be more suited to compel the

attendance of unwilling witnesses.  Because Plaintiffs have not presented any evidence that any

of the non-party witnesses would be unavailable to testify or unwilling to travel to New York,

this factor weighs against transfer to Missouri. *Beckerman,* 2006 WL 1663034, at *7. *See also*

*Citigroup Inc. v. City Holding Co.,* 97 F. Supp. 2d 549, 561-2 (S.D.N.Y. 2000) (stating "the

unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists").

### 5.    The Relative Means of the Parties

While it is certainly true that there is a financial disparity between Friedrich/GFE, on the one hand, and the Defendants, on the other, it is well-settled that "[t]he relative economic ability of the parties to proceed with a case has rarely been a dispositive reason to grant or deny a venue change." *Kolko v. Holiday Inns, Inc.*, 672 F. Supp. 713, 716 (S.D.N.Y. 1987); *see also Bordiga v. Directors Guild of Am.*, 159 F.R.D. 457, 463 (S.D.N.Y. 1995) (granting union's motion to transfer venue and finding "the economic situation of the parties does not weigh heavily on this Court's decision"); *Berke v. Gilreath Indus., Inc.,* No. 88 Civ. 8350, 1989 WL 129481, at *2 (S.D.N.Y. Oct. 24, 1989) (granting corporation's motion to transfer venue and holding that "the relative economic ability of the parties to proceed with a case is rarely dispositive of a motion to transfer"); *Cerussi v. Union Coll.*, 144 F. Supp. 2d 265, 270 (S.D.N.Y. 2001) (granting college's motion to transfer and finding "although this factor favors plaintiff's choice of forum, its weight is limited").

In *Kolko*, for example, there was a significant financial disparity between the plaintiff, a student, and the defendant, a hotel corporation. 672 F. Supp. at 716. Although this Court was sympathetic to the plaintiff, it nevertheless found that the "defendant would bear a far greater financial burden in transferring and lodging several witnesses in New York if [its] motion were denied." *Id.* The plaintiff "unconvincingly" argued that the defendant should bear a greater burden in transporting witnesses than the plaintiff due to defendant's corporate status, and this Court rejected that argument and granted the motion to transfer, holding that the parties' respective abilities "to bear the costs of a venue change is but one of several factors for the court to consider." *Id.* Here, Plaintiffs have only one party witness who will be called to testify. In

contrast, there are ten defendants, all of whom have different representatives who will be required to testify as to issues relevant to the claims and defenses, and none of whom reside anywhere near Missouri. As in *Kolko*, the Defendants face a far "greater financial burden in transferring and lodging several witnesses" were this action transferred to Missouri than Plaintiffs face in keeping this action in New York. As noted above, the Illinois court weighed this factor and, while appreciating Plaintiffs' financial issues, nevertheless concluded that the appropriate venue for this action is New York given the locations of the numerous Defendants. Order at 8. This factor weighs against transfer to Missouri.

### 6. A Forum's Familiarity with the Governing Law

Plaintiffs make a bald assertion that the Eastern District of Missouri is better-suited to try this case than this Court because the Missouri court is supposedly more familiar with Illinois law, which Plaintiffs contend apply to their state law claims, than this Court. Plaintiffs' Moving Brief at 26. Even assuming that Illinois law applies to Plaintiffs' state law claims, and that those claims are not all either pre-empted or fail to state any viable claim,[6] Plaintiffs' assertions about the relative familiarity of both courts with Illinois law are simply not true. In fact, over the past ten years, the Southern District of New York has applied Illinois law in its reported decisions over four times more often than has the Eastern District of Missouri. Kleinick Decl. ¶ 7 and Ex. A. Because the Southern District of New York has had more

---

[6] In connection with Defendants' motion to transfer venue to this Court, Defendants sought in the alternative to dismiss the majority of Plaintiffs' state law claims based on the fact that those claims are preempted by the federal copyright laws, and moved to dismiss the remaining state law claims on Rule 12(b)(6) grounds. That aspect of Defendants' motion was not decided by the Illinois court and Defendants intend to renew their motion once venue is finally determined. If Defendants' motion to dismiss is granted, the only remaining cause of action would be for copyright infringement and there would be no need for this Court to apply Illinois law at all.

experience applying Illinois law than the Eastern District of Missouri over the past ten years, this

prong weighs against transfer.

### 7.    The Weight Accorded Plaintiffs' Choice of Forum

Here, Plaintiffs' choice of forum should be given no weight whatsoever.

Plaintiffs had their opportunity to bring this action in the forum of their choice, and they chose to

create a sham entity to manufacture venue in Illinois.  While there is ample case law in this

District holding that a plaintiff's first choice of forum should be given deference in deciding a

motion to transfer, Defendants have not been able to locate a single case in which this Court has

held that any deference should be given to a plaintiff's second choice of forum, particularly

under the circumstances presented here.[7]

Moreover, even assuming that Plaintiffs' second choice of forum were entitled to

any deference, as the Illinois court recognized it is well settled that while a plaintiff's choice of

forum is generally accorded substantial weight in proceedings under section 1404(a) that weight

is significantly diminished where the operative facts have little connection to the chosen district.

*Royal & Sunalliance v. British Airways,* 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001).  *See also*

*Nieves v. American Airlines,* 700 F. Supp. 769, 772 (S.D.N.Y. 1988) (holding that the plaintiff's

choice of forum is given reduced emphasis where the operative facts upon which the litigation is

brought bear little material connection to the chosen forum).  As the Southern District of Illinois

---

[7] *Raynes v. Davis,* No. 05 Civ. 6740, 2007 WL 4145102 (C.D. Cal. Nov. 19, 2007), the only case cited by Plaintiffs where a court transferred a case to a plaintiff's second choice of forum, is distinguishable.  There, the plaintiff filed an action in the Central District of California against fourteen individual and corporate defendants, ten of whom were residents of California.  *Id.* at *1.  The plaintiff settled with all of the California defendants and then moved to transfer the case to this Court for the convenience of the remaining parties, all of whom were residents of the East Coast, and the motion was granted.  *Id.*  Here, circumstances have not changed since Plaintiffs filed their complaint in Illinois, and there is no justification similar to that in *Raynes* for giving Plaintiffs another opportunity to select a forum.

properly held, while Friedrich claims to have conceived of Ghost Rider while living in Missouri, Friedrich allegedly pitched his idea in New York to Marvel and the critical conduct allegedly giving rise to Plaintiffs' injury occurred in New York – not Illinois or Missouri. Order at 6, n.4. Plaintiffs' belated selection of Missouri is entitled to no weight, not only because a second choice is not entitled to any such deference, but because the operative facts upon which Plaintiffs' claims are premised bear little, if any, connection to Missouri.

### 8.    Trial Efficiency in the Interest of Justice Based on the Totality of the Circumstances

In examining the totality of the circumstances, it is clear that the interests of justice and trial efficiency dictate that Plaintiffs' motion to transfer venue should be denied. "The burden of demonstrating the desirability of transfer lies with the moving party, and the burden is a heavy one." *Rates Tech. Inc v. UTT Corp.*, No. 94 Civ. 0326, 1995 WL 16788, at *6 (S.D.N.Y. Jan. 18, 1995). Plaintiffs have fallen far short of meeting this heavy burden.

Courts "should legitimately encourage trial of controversies in the localities in which they arise." *Millennium L.P. v. Dakota Imaging, Inc.*, No. 03 Civ. 1838, 2003 WL 22940488, at *8 (S.D.N.Y. Dec. 15, 2003). Given New York's material connections to this case, it has a greater interest in the outcome of this litigation than does Missouri. Defendants have demonstrated that this Court is a more convenient forum for both party and non-party witnesses than the Eastern District of Missouri. Defendants have also demonstrated that, contrary to Plaintiffs' assertions, this Court is fully capable of applying Illinois law (to the extent that it applies) to any viable state law claims. Finally, the main claim Plaintiffs assert is copyright infringement and "courts of either forum are presumed to be equally familiar with the governing law." *Capitol Records*, 2004 WL 405961, at *4. Moreover, since this action is in the early stages, there is no compelling reason to transfer." *See Hummingbird USA, Inc. v. TX*

*Guaranteed Student Loan Corp.*, No. 06 Civ. 7672, 2007 WL 163111, at *4 (S.D.N.Y. Jan. 22, 2007) (noting that the fact that the case was in its early stages weighed in favor of denying motion to transfer venue). Simply put, in examining the totality of circumstances and the interests of justice, there is no trial efficiency gained by transferring this action to the Eastern District of Missouri.

### III. EVEN IF THIS COURT DOES NOT FOLLOW THE LAW OF THE CASE AND DETERMINES THAT A TRANSFER IS APPROPRIATE, THIS ACTION IS MORE APPROPRIATELY TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA THAN TO MISSOURI

Were this Court to determine that deviation from the law of the case doctrine is somehow justified and that this action should be transferred from this district, the Central District of California would be a more appropriate district than the Eastern District of Missouri. The Illinois court recognized that California would be a more convenient venue than Missouri for this action: "[b]ecause a majority of the parties to this case reside in either California or New York, the residences of the parties weighs in favor of transferring the case either to the Southern District of New York or to the Central District of California." Order at 7. Indeed, only one party resides in Missouri, whereas six Defendants have their principal place of business in California. Hasbro Decl. ¶ 2; Sony/Columbia Decl. ¶ 2; Marvel Decl. ¶ 2; Crystal Sky Decl. ¶ 2; Relativity Decl. ¶ 2; DeLuca Decl. ¶ 2. Of the non-party witnesses, one (Stan Lee) resides in California,[8] one (Paul Schade) resides in Missouri, and it would be more convenient for the remaining non-party witnesses to travel to Los Angeles than to St. Louis. Kleinick Decl. ¶ 6. California's ties to the events underlying the litigation are equal to, if not more significant than, Missouri's as

---

[8] This does not include Nicolas Cage or Mark Steven Johnson, who also reside in California. *See* n.5, *supra*.

well. Not only does Friedrich claim to have partially created Ghost Rider in California (Order at 6), but certain of the alleged infringement occurred there, including Relativity's provision of financing to Sony and the production of software games featuring Ghost Rider by Take-Two's subsidiary. Relativity Decl. ¶ 3; Take-Two Decl. ¶ 3. Defendants have their principal place of business in California. In weighing the convenience of the Eastern District of Missouri and the Central District of California as potential forums, it is clear that trial efficiency and the interests of justice dictate that California is the better option.

In sum, Plaintiffs have not presented any impelling or unusual circumstances that would warrant transferring this action from this Court. This action belongs in New York. The next most appropriate and convenient forum is the Central District of California, with Missouri being a far-distant, third best choice.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion to transfer this action in its entirety.

Dated: June 2, 2008                           Respectfully Submitted,
      New York, New York

                              *Jodi Kleinick*

                              PAUL, HASTINGS, JANOFSKY
                                   &WALKER LLP
                              David Fleischer
                              Jodi Kleinick
                              Laura Keller Isenberg
                              75 East 55th Street
                              New York, New York 10022
                              (212) 318-6000

                              *Attorneys for Defendants*