```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
GARY FRIEDRICH ENTERPRISES, LLC.     :
and GARY FRIEDRICH,                   :
                                      :
              Plaintiffs,             : 08 Civ. 01533 (BSJ) (JCF)
                                      :
       -against-                      :            MEMORANDUM
                                      :            AND  ORDER
                                      :
MARVEL ENTERPRISES, INC., MARVEL      :
ENTERTAINMENT, INC., MARVEL           :
STUDIOS, INC., MARVEL CHARACTERS,     :
INC., HASBRO, INC., TAKE-TWO          :
INTERACTIVE, COLUMBIA TRI-STAR        :
MOTION PICTURE GROUP, COLUMBIA        :
PICTURES INDUSTRIES, INC., CRYSTAL    :
SKY PICTURES, RELATIVITY MEDIA LLC,   :
MICHAEL DELUCA PRODUCTIONS, INC.,     :
SONY PICTURES ENTERTAINMENT, INC.     :
and SONY CORPORATION OF AMERICA,      :
                                      :
              Defendants.             :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Plaintiffs Gary Friedrich Enterprises, LLC ("GFE") and its principal, Gary Friedrich, have moved pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Eastern District of Missouri. For the reasons set forth below, the motion is denied.

Background

The plaintiffs originally filed their Complaint on April 4, 2007, in the United States District Court for the Southern District of Illinois. The Complaint alleges, in substance, that the defendants infringed the plaintiffs' copyrights by making and

1

selling "Ghost Rider," a 2007 motion picture, and related merchandise.

Mr. Friedrich, a resident of Arnold, Missouri, purports to be the creator of the Ghost Rider story and characters. (Affidavit of Gary Friedrich dated April 29, 2008 ("Friedrich Aff."), attached as Exh. G to Affirmation of Leonard F. Lesser dated May 2, 2008 ("Lesser Aff."), ¶¶ 2, 7). Six days before commencing this action, Mr. Friedrich created GFE, an Illinois limited liability company, and assigned his alleged copyrights to the company. (Memorandum and Order of the Honorable William D. Stiehl, U.S.D.J., Southern District of Illinois, dated Jan. 30, 2008 (the "1/30/08 Order") at 1 & n.1, 6 n.4; Friedrich Aff., ¶ 12). GFE maintains its principal place of business in Columbia, Illinois. (1/30/08 Order at 6, ; Friedrich Aff., ¶¶ 13-14).

The plaintiffs name eleven defendants in their Complaint: (1) Marvel Entertainment, Inc., formerly known as (2) Marvel Enterprises, Inc., is a Delaware corporation, maintaining its principal place of business in New York; (3) Marvel Studios, Inc. and (4) Marvel Characters, Inc. are both wholly owned subsidiaries of Marvel Entertainment (collectively, "Marvel"), with principal places of business in California; (5) Hasbro, Inc. ("Hasbro") is a Rhode Island corporation, with its principal place of business in that state; (6) Take-Two Interactive, Inc. ("Take-Two") is a Delaware corporation, maintaining its principal place of business

2

in New York; (6) Columbia Pictures Industries, Inc. ("Columbia") is an indirect subsidiary of (7) Sony Pictures Entertainment, Inc. ("Sony"), a Delaware corporation, both of which have principal places of business in California; (8) Columbia Tri-Star Motion Picture Group is not a legal entity, has no place of incorporation, and maintains no principal place of business; (9) Crystal Sky Pictures ("Crystal Sky") is a limited liability company, maintaining its only office in California; (10) Relativity Media, LLC ("Relativity") is a California limited liability company, with its principal place of business there; and (11) Michael DeLuca Productions, Inc. ("MDP") is a California corporation, also maintaining its principal place of business in that state. (Declaration of Jodi A. Kleinick dated June 2, 2008 ("Kleinick Decl."), ¶ 2).

In June 2007, the defendants collectively moved to dismiss the Complaint for improper venue and failure to state a claim upon which relief could be granted or, alternatively, to transfer the action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). (Memorandum of Law in Support of Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) and (6) or to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Def. Ill. Memo."), attached as Exh. C to Lesser

Aff., at 1).[1]  On September 26, 2007, the Honorable William D. Stiehl, U.S.D.J., denied the defendants' motion to dismiss but found that transferring the action to the Southern District of New York best served the interests of justice.  (9/26/07 Order at 9-10).

The plaintiffs subsequently moved for reconsideration of the transfer order, requesting in the alternative that the case be transferred to the United States District Court for the Eastern District of Missouri.  (1/30/08 Order at 1).  Judge Stiehl denied the motion for reconsideration on the merits and rejected the plaintiffs' application to certify the record for appeal.  (1/30/08 Order at 6-7).  Finally, because the plaintiffs first asked that the case be transferred to the Eastern District of Missouri in their motion for reconsideration, Judge Stiehl denied the request as untimely.  (1/30/08 Order at 6).  The case was then transferred to this Court.  The plaintiffs now seek to transfer the action to the Eastern District of Missouri.

Discussion

Pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

---

[1] Relativity simultaneously filed a separate motion to dismiss all claims asserted against it for lack of personal jurisdiction; that motion was denied.  (Memorandum and Order of Judge Stiehl dated Sept. 26, 2007 (the "9/26/07 Order") at 2).

where it might have been brought." Congress intended Section 1404(a) "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960)).

Motions to transfer "lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." In re Cuyahoga Equipment Corp., 980 F.2d 110, 117 (2d Cir. 1992); Berman v. Informix Corp., 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998); Linzer v. EMI Blackwood Music, Inc., 904 F. Supp. 207, 216 (S.D.N.Y. 1995) (citations omitted). However, this being the second transfer determination in this case, the defendants contend that the previous transfer order should be regarded as the law of the case.

A.  Law of the Case Doctrine

The "law of the case" doctrine posits that "when a court decides upon a rule of law, that decision should generally continue to govern the same issues in subsequent stages in the same case." Schwartz v. Chan, 142 F. Supp. 2d 325, 329 (E.D.N.Y. 2001) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). Developed as a means of encouraging the settlement of disputes "with reasonable dispatch," Skil Corp. v. Millers Falls Co., 541 F.2d 554, 559 (6th Cir. 1976), the doctrine motivates courts "generally to refuse to

reopen what has been decided," Devilla v. Schriver, 245 F.3d 192, 197 (2d Cir. 2001) (internal quotations and citations omitted). However, it is "at best, a discretionary doctrine which does not constitute a limitation on the court's power." Id. (quoting United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000)); accord Arizona, 460 U.S. at 618 ("Law of the case directs a court's discretion, it does not limit the tribunal's power.").

Transferee courts routinely apply the doctrine to the venue determinations of transferor courts. Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 816 (1988). Indeed, the Supreme Court has observed that "the policies supporting the doctrine apply with even greater force to transfer decisions than to decisions of substantive law," because "transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." Id.

Specifically, transferee courts apply the doctrine when a plaintiff moves to re-transfer the action back to the original district. See, e.g., Skil Corp., 541 F.2d at 558-59; Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 168-69 (3d Cir. 1982); Repp v. Webber, 142 F.R.D. 398, 400-01 (S.D.N.Y. 1992). Accordingly, the transferee court "should not re-transfer 'except under the most impelling and unusual circumstances' or if the transfer order is 'manifestly erroneous.'" In re Cragar Industries, 706 F.2d 503, 505

6

(5th Cir. 1983) (quoting <u>United States v. Koenig</u>, 290 F.2d 166, 173 n.11 (5th Cir. 1961).  However, the typical standard for evaluating a re-transfer application does not necessarily apply where, as here, the movant proposes transfer to a forum other than that from which the case was originally transferred.

In <u>Deep South Pepsi-Cola Bottling Co. v. Pepsico, Inc.</u>, No. 88 Civ. 6243, 1989 WL 48400 (S.D.N.Y. May 2, 1989), the court applied the law of the case doctrine to just such a transfer motion. There, the plaintiffs originally filed their complaint in the Western District of Pennsylvania.  Following a motion by the defendants, the court transferred the case to the Southern District of New York.  <u>Id.</u> at *1-2.  The plaintiffs then moved for a second transfer to the Southern District of Mississippi on the basis that one of the plaintiffs, Deep South Pepsi-Cola Bottling Co., Inc. ("Deep South"), had a pending bankruptcy case in that district. <u>Id.</u> at *2.  Denying the plaintiffs' motion on other grounds,[2] the Honorable Peter K. Leisure, U.S.D.J., noted in dicta that the law of the case doctrine would also have required denial of the motion. <u>Id.</u> at *4.  Judge Leisure explained:

> Section 1404(a) does not permit parties to hopscotch from one forum to another.  Here, the United States District Court for the Western District of Pennsylvania already has decided . . . that the convenience of the litigants

---

[2] The Court found that Deep South did not have standing and dismissed its claims.  <u>Id.</u> at *4.  Because the basis of the motion to transfer was Deep South's pending bankruptcy case, the Court accordingly denied the motion to transfer as well.  <u>Id.</u>

and witnesses, as well as the interests of justice, would
be best served by transfer to this District.

Id.

I respectfully disagree with this analysis.  The law of the
case doctrine discourages a transferee court from reexamining the
determinations of the transferor court, but only to the extent that
the transferee court is presented with issues identical to those
previously addressed.  See Coca-Cola Bottling Co. v. Coca Cola Co.,
988 F.2d 414, 429 (3d Cir. 1993) (doctrine only applies to issues
actually decided).  That is the case where a party seeks to return
a case to a district from which it was previously transferred.  It
is not the situation, however, where the moving party requests
transfer to yet a third district, the relative convenience of which
has never been considered.  In Deep South, for example, the
transferor court had weighed the convenience of Pennsylvania as
compared to that of New York, not New York as compared to
Mississippi.  Thus, the law of the case doctrine was inapplicable.

Similarly, because the plaintiffs propose transfer to a new
forum in this case, my determination does not entail a
reexamination of the previous transfer decision.  While Judge
Stiehl weighed the convenience of New York as compared to Illinois,
he did not compare New York to Missouri.  (9/26/07 Order at 3-9).[3]

_____

[3] Judge Stiehl did rule on the plaintiffs' request for
transfer to Missouri, but he did so without reaching the merits,
denying the request solely on the basis that it was untimely.
(1/30/08 Order at 6).

Because the two analyses are distinct, the law of the case doctrine does not apply to the current transfer determination.

Nonetheless, the broader principles of judicial comity dictate that the previous court's conclusions receive a degree of deference. To the extent the two analyses are similar, this Court should avoid inconsistency. Accordingly, where the differences between the Illinois forum and the Missouri forum are negligible, I will defer to Judge Stiehl's conclusions. Only where the Missouri forum poses unique convenience considerations will I conduct a plenary analysis.

B. Transfer to the Eastern District of Missouri

The inquiry on a motion to transfer is two-fold. The court "must first determine whether the action sought to be transferred is one that might have been brought in the transferee court." In re Nematron Securities Litigation, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998) (internal quotation marks omitted). Second, the court must determine whether, considering "the convenience of parties and witnesses [and] in the interests of justice", a transfer is appropriate. Id. (internal quotation marks and citation omitted).

1. Venue in Transferee District

28 U.S.C. § 1391(b) provides that venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State . . . ." For purposes of venue, "a

9

defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Because Missouri law confers jurisdiction to the fullest extent allowed by due process, the defendants need only have minimum contacts with the Missouri forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Anheuser-Busch, Inc. v. City Merchandise, 176 F. Supp. 2d 951, 957 (E.D. Mo. 2001) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). This "minimum contacts" standard is satisfied if the defendants have purposefully directed their activities toward residents of the forum. Id. at 957.

Here, the defendants do not dispute that they have constitutionally sufficient minimum contacts with the Missouri forum. The plaintiffs have shown that the defendants intentionally caused the film and its related merchandise to be sold, rented, and marketed within Missouri. (Plaintiff's Memorandum of Law in Support of Their Motion to Transfer this Action to the Eastern District of Missouri Pursuant to 28 U.S.C. § 1404 ("Pl. Memo.") at 9-16). Thus, it is only the second inquiry that requires detailed examination here.

2. Convenience Factors

Courts generally consider several factors when determining

10

whether transfer is warranted for the convenience of the parties and witnesses and in the interests of justice.  These factors include: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the relative means of the parties; (8) the forum's familiarity with the governing law; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.  See Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001); Berman v. Informix Corp., 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998); Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998) (citation omitted); Constitution Reinusrance Corp. v. Stonewall Insurance Co., 872 F. Supp. 1247, 1250 (S.D.N.Y. 1995). Application of these factors reveals that the plaintiffs have not met their burden under § 1404(a).

  a. Convenience of the Witnesses and Parties

   The convenience of the parties and witnesses is "the most significant factor" when considering whether transfer should be granted.  Nematron, 30 F. Supp. 2d at 400; see, e.g., Frene v. Kmart Corp., No. 96 Civ. 9585, 1998 WL 427688, at *3 (S.D.N.Y. July 29, 1998); Cento Group, S.P.A. v. OroAmerica, Inc., 822 F.

Supp. 1058, 1060 (S.D.N.Y. 1993).  The plaintiffs claim that one party witness and one non-party witness reside in the Eastern District of Missouri, further noting that other probable witnesses do not live in New York.  (Pl. Memo. at 19-20).  In response, the defendants assert that five party witnesses are located in New York, and that New York would be a more convenient forum for all but two of the remaining witnesses.  (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Transfer this Action to the Eastern District of Missouri Pursuant to 28 U.S.C. § 1404 ("Def. N.Y. Memo.") at 12-13).

### i.   Convenience of the Parties

The plaintiffs claim that Mr. Friedrich resides in the Eastern District of Missouri and that GFE is located "only minutes" away, in Illinois.  (Friedrich Aff., ¶¶ 2, 14).  However, as the defendants note, Mr. Friedrich will be the only party witness for both plaintiffs, and his residence should not count twice for purposes of this analysis.  (Def. N.Y. Memo. at 11).

By contrast, the defendants anticipate calling eleven party witnesses, five of whom are located in New York.  (Kleinick Decl., ¶ 2).[4]  Five others are located in California,[5] and one is located

---

[4] While Marvel and its subsidiaries are Delaware corporations, Marvel's licensing, accounting, and business records offices are located in New York. Accordingly, the three Marvel party witnesses will be New York-based employees.  (Declaration of Carol Pinkus dated May 28, 2008 ("Marvel Decl."), ¶¶ 2, 3).  Take-Two, also a Delaware corporation, likewise anticipates calling two party witnesses from its principal place of business in New York.

in Rhode Island.[6]  (Kleinick Decl., ¶ 2).  The California and Rhode Island defendants have indicated that they prefer to litigate in this District, as each regularly travels to New York.  (Relativity Decl., ¶ 4; Crystal Sky Decl., ¶ 4; Hasbro Decl., ¶ 4; MDP Decl., ¶ 4; Sony Decl., ¶ 4).  None of the defendants maintain offices in Missouri.  (Kleinick Decl., ¶ 2).

The plaintiffs argue that because Missouri is approximately halfway between California and New York, the Missouri forum would serve as a geographic compromise for all parties.  (Pl. Memo. at 24).  However, Judge Stiehl previously considered the Southern District of Illinois, a comparable and nearby Midwestern forum, and determined that it was not a satisfactory middle ground.  Noting that the California defendants would be forced to travel to a foreign district in any event (1/30/08 Order at 4), Judge Stiehl acknowledged that litigation of this action in Illinois would require all of the defendants to make extensive travel

---

(Declaration of Christina Recchio dated May 28, 2008 ("Take-Two Decl."), ¶ 2).

[5] Crystal Sky, MDP, and Relativity anticipate calling one California-based party witness each.  (Declaration of Steven Paul dated May 28, 2008 ("Crystal Sky Decl."), ¶ 3; Declaration of Michael DeLuca dated May 28, 2008 ("MDP Decl."), ¶ 3; Declaration of Aaron Michiel dated May 28, 2008 ("Relativity Decl."), ¶ 3). Two additional California-based party witnesses will testify on behalf of Sony and Columbia.  (Declaration of Susan Deardorff dated May 29, 2008 ("Sony Decl."), ¶ 3).

[6] Hasbro anticipates calling one party witness from its Rhode Island offices.  (Declaration of Eric Nyman dated May 28, 2008 ("Hasbro Decl."), ¶ 3).

arrangements, whereas only some of the defendants would need to travel if the action were transferred to New York. (1/30/08 Order at 4-5; 9/26/07 Order at 8).

The plaintiffs have not shown that the Missouri forum is more convenient than the Illinois forum for the parties. In fact, the courthouse in the Eastern District of Missouri is less than four miles from the courthouse in the Southern District of Illinois. The proposed Missouri forum would be equally as inconvenient for a majority of the parties as was the original Illinois forum. Therefore, New York is a more convenient forum for the parties overall.[7] Accordingly, this factor weighs against transfer.

### ii. Convenience of the Witnesses

In addition to the eleven party witnesses discussed above, the defendants also anticipate calling four non-party witnesses. (Kleinick Decl., ¶ 3). Mike Ploog, a resident of London, England, Roy Thomas, a resident of North Carolina, and Stan Lee, a resident of California, will each provide testimony regarding the creation of the works at issue and their respective contributions to those

---

[7] Initially, Judge Stiehl found this factor to be neutral. (9/26/07 Order at 8). He acknowledged that while transferring the action to New York would decrease the inconvenience for the defendants, it would also increase the inconvenience for the plaintiffs. (9/26/07 Order at 8). Upon reconsideration, however, Judge Stiehl ultimately determined that transfer did not simply shift the inconvenience from one party to the other; it converted "what was otherwise an inconvenience for a majority of the parties to this lawsuit into an inconvenience for a minority." (1/30/08 Order at 5).

works.  (Kleinick Decl., ¶ 3).  Mr. Lee will further testify, along with James Shooter, a resident of New York, to Marvel's arrangements with creative contributors regarding the ownership of the copyrights to materials created for publication by Marvel. (Kleinick Decl., ¶ 3).

The plaintiffs identify three additional non-party witnesses but neglect to indicate on whose behalf they will be testifying. (Affidavit of Charles Kramer dated April 22, 2008 ("Kramer Aff."), attached as Exh. K to Lesser Aff., ¶ 3).  The plaintiffs predict that both Nicholas Cage, the star of the Ghost Rider movie, and Mark Steven Johnson, the producer of the film, will testify "as to information concerning the Ghost Rider movie, including the Ghost Rider origin story and characters contained therein."  (Kramer Aff., ¶ 3).[8]  Mr. Cage and Mr. Johnson are presumably both residents of California.  (Kramer Aff., ¶ 3).[9]  The plaintiffs further anticipate that Paul Schade, a resident of Missouri, will provide testimony to refute the defense's assertions that Mr.

---

[8] The defendants argue that the plaintiffs identified Mr. Cage and Mr. Johnson "[i]n can effort to create the misimpression that there are additional California witnesses who might find it more convenient to travel to Missouri than to New York . . . ."  (Def. N.Y. Memo. at 13 n.5).  The defendants maintain that these two witnesses would provide "no relevant testimony" and thus should be discounted for purposes of the convenience analysis. (Def. N.Y. Memo. at 13 n.5).

[9] The plaintiffs note that there is "conflicting information" regarding the place of residence of these putative witnesses. (Kramer Aff., ¶ 3).

Friedrich was not the sole creator of the Ghost Rider story. (Kramer Aff., ¶ 3; Pl. Memo. at 20 n.8).

"Assessing the degree to which a transfer would inconvenience witnesses entails not merely counting the parties' prospective witnesses, but considering which are likely to provide important testimony." Morgan Guaranty Trust Co. v. Tisdale, No. 95 Civ. 8023, 1996 WL 544240, at *5 (S.D.N.Y. Sept. 25, 1996); see also Westwood Ventures, Ltd. v. Forum Financial Group, No. 97 Civ. 514, 1997 WL 266970, at *4 (S.D.N.Y. May 19, 1997) ("The relevant inquiry is, of course, whether the majority of the material witnesses reside in New York or Maine."); Barge v. Daily Journal Corp, No. 96 Civ. 2361, 1996 WL 434561, at *2 (S.D.N.Y. Aug. 2, 1996) (favoring forum of "witnesses whose testimony would most illuminate the events described in the complaint").

The heart of this lawsuit concerns the defendants' alleged violations of the plaintiffs' copyrights. Appropriately, the key issues in dispute in the case will relate to the creation of the Ghost Rider story and characters, the ownership of the copyrights at issue, and any licensing agreements regarding the works. The plaintiffs' assert that Mr. Friedrich initially pitched a proposal for the Ghost Rider comic book in the early 1970s to Stan Lee at Magazine Management Co., Inc. ("MMC") in New York. (Complaint, ¶¶ 57-59; Friedrich Aff., ¶¶ 7-9). MMC soon began publishing Ghost Rider comics under the "Marvel Spotlight" logo and held the

16

copyright to the works for the next twenty-eight years. (Complaint, ¶¶ 61, 63). Although the plaintiffs contend that MMC is now defunct and is not related to the Marvel defendants in the current action (Pl. Memo. at 2), the defendants maintain that "MMC is Marvel's predecessor in interest that all of MMC's rights pertaining to the Ghost Rider property were legally assigned to Marvel." (Marvel Decl., ¶¶ 5-7).

Because the terms of any agreement between MMC and Mr. Friedrich and the assignment of MMC's rights to Marvel are ultimately at issue, the key witnesses are likely to be those who can testify to events that occurred long before the making of the Ghost Rider movie. Mr. Lee, a California resident, and Mr. Friedrich will presumably testify to the initial agreement. Mr. Ploog, Mr. Thomas, Mr. Shooter, and Mr. Schade, residents of England, North Carolina, New York, and Missouri, respectively, will potentially provide relevant testimony; however, their respective individual involvement is less clear.[10] Marvel's licensing representative and record custodian, both New York-based employees, are also likely to be informative on these issues. The remaining witnesses, including those testifying on behalf of Hasbro, Take-Two, Crystal Sky, MDP, Relativity, Columbia, and Sony, on the other hand, are more likely to testify about their respective agreements

---

[10] The plaintiffs identify Mr. Ploog as the illustrator of the original comic books. (Kramer Aff., ¶ 3). However, the roles of Mr. Thomas, Mr. Shooter, and Mr. Schade remain unspecified.

17

with Marvel concerning the Ghost Rider movie.

As Judge Stiehl previously recognized, several witnesses "will suffer inconveniences no matter where the matter is litigated." (9/26/07 Order at 9). The potentially material witnesses are scattered throughout the country and overseas, and there is no clear concentration in any one location.[11] Thus, this factor weighs neither in favor of nor against transfer.[12]

   b.   Location of Relevant Documents and Access to Proof

The plaintiffs assert that the documents they will be required to produce are located in Missouri and Illinois. (Pl. Memo. at 23). Because MMC is "long defunct," the plaintiffs presume that the documents pertaining to the initial comic book agreement, which were previously maintained in New York, no longer exist. (Pl. Memo. at 23). They further argue that any relevant documents located in New York or California will be easily transported. (Pl. Memo. at 23). In response, the defendants argue that the plaintiffs' documents are likely to consist of less than "half of

---

[11] Specifically, two of the eight potentially material witnesses are located in Missouri, three are located in New York, one is located in England, one is located in North Carolina, and one is located in California.

[12] Initially, Judge Stiehl determined that this factor weighed in favor of transfer to New York. (9/26/07 Order at 9). However, he later acknowledged that he should not have considered the convenience of the witnesses, as the defendants had failed to provide statements regarding the anticipated testimony of each witness. (1/30/08 Order at 4). Accordingly, he found that this factor weighed neither for, nor against transfer. (1/30/08 Order at 4).

one bankers' box," whereas the majority of the relevant documents, including Marvel's copyright and licensing files, are maintained in New York. (Def. N.Y. Memo. at 15-16).

Judge Stiehl previously reasoned that "either party can easily bring to either the transferor or the transferee district those documents that are not there already." (9/26/07 Order at 7). Because the relevant documents are no more accessible in the Missouri forum than in Illinois, deference to Judge Stiehl's conclusion on this factor is warranted. Therefore, this factor remains neutral.

### c.  The Locus of Operative Facts

"Courts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district." Nematron, 30 F. Supp. 2d at 404 (citing Viacom International v. Melvin Simon Productions, 774 F. Supp. 858, 867 (S.D.N.Y. 1991)); see 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y. 1994).

The plaintiffs argue that the operative facts giving rise to this action occurred in Missouri. (Pl. Memo. at 22). They claim that Missouri was Mr. Friedrich's primary place of residence when the Ghost Rider story was created and that the injury is now "being felt in Missouri." (Pl. Memo. at 22). However, Judge Stiehl previously considered this factor and, noting that Mr. Friedrich pitched the comic book proposal in New York, found that "the

19

conduct giving rise to [P]lantiffs' injury occurred in New York."
(9/26/07 Order at 6 & n.4).  Judge Stiehl also determined that the
Ghost Rider comic series was created in New York.  (1/30/08 Order
at 2 n.2).  These conclusions were sound, and this factor therefore
weighs against transfer.

      e.   The Availability of Process

     In order for this factor to have any relevance, the parties
must demonstrate that their proposed non-party witnesses would be
unwilling to testify in the distant forum.  See Schwartz v.
Marriott Hotel Services, Inc., 186 F. Supp. 2d 245, 250 (E.D.N.Y.
2002); Brozoski v. Pfizer, Inc., No. 00 Civ. 4215, 2001 WL 618981,
at *4 (S.D.N.Y. June 6, 2001); Soto v. Bey Transportation Co., Nos.
95 Civ. 9329, 96 Civ. 3142, 97 Civ. 1446, 97 Civ. 1177, 1997 WL
407247, at *4 (S.D.N.Y. July 21, 1997) (when moving party did not
present evidence that non-party witnesses would be unwilling to
testify, this factor did not enter into the court's analysis);
Westwood Ventures, 1997 WL 266970, at *5.

     As discussed above, Paul Schade is the only potential non-
party witness residing in Missouri, and James Shooter is the only
potential non-party witness residing in New York.  Neither party
has provided any evidence indicating that these potential non-party
witnesses would be unwilling to testify at a distant forum.  Absent
such a showing, this "factor weighs neutrally in the transfer
analysis."   Morgan, 1996 WL 544240, at *7 (citing S-fer

International, Inc. v. Paladion Partners, Ltd., 906 F. Supp. 211, 215 (S.D.N.Y. 1995)); Soto, 1997 WL 407247, at *4.

      f.   Plaintiff's Choice of Forum

The plaintiffs' "choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in the favor of the defendant[s]." Nematron, 30 F. Supp. 2d at 405; Adair v. Microfield Graphics, Inc., No. 00 Civ. 0629, 2000 WL 1716340, at *3 (S.D.N.Y. Nov. 16, 2000); see Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002) ("courts have typically accorded substantial weight to . . . plaintiff's choice of forum"). However, the plaintiff's choice "is accorded less weight to the degree that the case's operative facts have little or no connection with the [chosen] forum." Morgan, 1996 WL 544240, at *8 (citing Totonelly v. Cardiology Associates of Corpus Cristi, Inc., No. 96 Civ. 1720, 1996 WL 459423, at *2 (S.D.N.Y. July 31, 1996)); Westwood Ventures, 1997 WL 266970, at *2 (citation omitted).

Here, the proposed forum is the plaintiffs' second choice. The defendants argue that therefore the plaintiffs' choice of forum should not weigh in this analysis. (Def. Memo. at 19). Regardless of whether the plaintiffs' fall-back choice is entitled to any deference, the operative facts bear little connection with Missouri, as discussed above. Moreover, six witnesses, including five party witnesses and one non-party witness, reside in New York.

Accordingly, the deference normally given to the plaintiffs' choice of forum is diluted here.  See <u>Nematron</u>, 30 F. Supp. 2d at 405 (where the facts giving rise to case had little connection to New York, many witnesses were residents of Michigan, and defendants were located in Michigan, court accorded minimal deference to plaintiff's choice of New York as appropriate forum).  This factor therefore tips only slightly in favor of transfer.

g.    <u>Relative Means of the Parties</u>

The plaintiffs argue that the defendants have the means to litigate anywhere, while Mr. Friedrich is financially incapable of traveling to New York.  (Pl. Memo. at 20-21; Friedrich Aff., ¶¶ 4-6).  Judge Stiehl, however, previously considered the plaintiffs' financial hardship and nonetheless determined that "it would be reasonable to expect the plaintiff to bear its own expenses in litigating this matter until it is resolved." (9/26/07 Order at 7-8).  Because the plaintiffs have not shown that litigation in Missouri would be any more financially manageable than litigation in Illinois, Judge Stiehl's conclusion is fully applicable to the current motion.  Accordingly, this factor weighs neither in favor of nor against transfer.

h.    <u>Familiarity with the Governing Law</u>

The plaintiffs asserted both federal and state law claims in their twenty-one count complaint.  It is assumed that federal courts in this district and the Eastern District of Missouri are

equally familiar with the applicable federal law.  <u>Nematron</u>, 30 F. Supp. 2d at 405 (assuming that Southern District of New York and Eastern District of Michigan were equally familiar with federal securities laws).  The state law claims, however, will be governed by Illinois state law.  <u>See</u> <u>Van Dusen</u>, 376 U.S. at 639 (holding that the transferee court shall apply the substantive law of the transferor court).

The plaintiffs presume that the Eastern District of Missouri is more familiar with Illinois state law, simply by reason of proximity.  (Pl. Memo. at 26).  However, the plaintiffs have provided no evidence supporting this assertion.[13]  Because the plaintiffs have failed to demonstrate that the proposed forum is more familiar with the governing law, this factor bears no weight in the transfer analysis.

i.  <u>Trial Efficiency and the Interests of Justice</u>

Lastly, courts must consider "whether a transfer is in the interest of justice, 'a concern which relates primarily to issues

---

[13] In response to the plaintiffs' argument, the defendants provided Westlaw search results indicating that over the past ten years, the Southern District of New York has applied Illinois state law approximately four times more often than has the Eastern District of Missouri.  (Def. Memo. at 18; Kleinick Decl., Exh. A).  Nevertheless maintaining  that the Eastern District of Missouri applies Illinois state law "on a daily basis," the plaintiffs emphasize that the defendants' search results are not necessarily indicative of the forum's actual familiarity with the laws of its neighboring state.  (Plaintiffs' Reply Memorandum of Law in Further Support of Their Motion to Transfer this Action to the Eastern District of Missouri Pursuant to 28 U.S.C. § 1404 at 6-7).  Still, the plaintiffs' assumptions remain unsupported.

of judicial economy.'" <u>Royal & Sunalliance</u>, 167 F. Supp. 2d at 578
(citing <u>Dostana Enterprises LLC v. Federal Express Corp.</u>, No. 00
Civ. 0747, 2000 WL 1170134, at *7 (S.D.N.Y. Aug. 16, 2000)).

Clearly, the Eastern District of Missouri's dockets are much
less congested than those of the Southern District of New York.
<u>See</u> http://www.uscourts.gov/cgi-bin/cmsd2007.pl. However, Judge
Stiehl previously considered this factor as it related to the
Southern District of Illinois, which has docket congestion
comparable to that of the Eastern District of Missouri, and
nevertheless found that transferring this action to the Southern
District of New York best served the interest of justice. (9/26/07
Order at 9-10). Judge Stiehl further explained that because the
alleged infringement occurred in New York, transfer to New York
promoted "the interests of resolving controversies in their locale
and the interests of the community and forum closest to the
action." (9/26/07 Order at 9).

This factor weighs all the more heavily against the plaintiffs
in the current analysis. As the defendants emphasize, over a year
has passed since the plaintiffs filed this action, and the
plaintiffs have yet to begin litigating the merits of their claims.
(Def. N.Y. Memo. at 1). Even after the Judge Stiehl's original
transfer determination and his subsequent denial of the plaintiffs'
motion for reconsideration, the venue dispute continues in this
Court. Transferring this action a second time would prolong this

collateral controversy and further delay the reaching of the

merits. Cf. Skil Corp., 541 F.2d at 559 (noting that Congress did

not intend Section 1404(a) to serve as a vehicle to shuttle cases

back and forth between districts, thus delaying adjudication on the

merits); Gulf Research & Development Co. v. Schlumberger Well

Surveying Corp., 98 F. Supp. 198, 201 (D. Del. 1951) (deeming "the

orderly functioning of the judicial process" most important

consideration and warning of risks of allowing cases to "shuttle

back and forth interminably"). Therefore, transfer to the Eastern

District of Missouri is not in the interest of justice.

## Conclusion

Since the balance of convenience clearly favors adjudication

in this district rather than in the Eastern District of Missouri,

the plaintiffs' motion to transfer venue pursuant to 28 U.S.C. §

1404(a) is denied.


SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          September 4, 2008

25

Copies mailed this date to:

Charles S. Kramer, Esq.
R. Kunstadt, P.C.
875 6th Avenue, Suite 1800
New York, New York 10001

Daniel N. Bloom, Esq.
Riezman & Blitz
7700 Bonhomme Avenue, 7th Floor
St. Louis, Missouri 63105

Dawn K. O'Leary, Esq.
Eric W. Evans, Esq.
J. Thomas Long, Esq.
Joseph D. Schneider, Esq.
Roth Evans P.C.
2421 Corporate Centre Drive, Suite 101
Granite City, Illinois 62040

Nelson L. Mitten, Esq.
Riezman Berger, P.C.
7700 Bonhomme, 7th Floor
St. Louis, Missouri 63105

Leonard Frederick Lesser, Esq.
Goodwin Proctor, LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018

Steven T. Catlett, Esq.
Paul, Hastings, Janofsky & Walker LLP
191 North Wacker Drive, 30th Floor
Chicago, Illinois 60606

David Fleischer, Esq.
Jodi Aileen Kleinick, Esq.
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, New York 10022