UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
GARY FRIEDRICH ENTERPRISES, LLC    :
and GARY FRIEDRICH,                :
                                   :
                  Plaintiffs,      : 08 Civ. 01533 (BSJ) (JCF)
                                   :
     -against-                     :       REPORT AND
                                   :     <u>RECOMMENDATION</u>
                                   :
MARVEL ENTERPRISES, INC., MARVEL   :
ENTERTAINMENT, INC., MARVEL        :
STUDIOS, INC., MARVEL CHARACTERS,  :
INC., HASBRO, INC., TAKE-TWO       :
INTERACTIVE SOFTWARE, INC.,        :
COLUMBIA TRI-STAR MOTION PICTURE   :
GROUP, COLUMBIA PICTURES           :
INDUSTRIES, INC., CRYSTAL SKY      :
PICTURES, RELATIVITY MEDIA LLC,    :
MICHAEL DELUCA PRODUCTIONS, INC.,  :
SONY PICTURES ENTERTAINMENT, INC.  :
and SONY CORPORATION OF AMERICA,   :
                                   :
                  Defendants.      :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE BARBARA S. JONES, U.S.D.J.:

     Plaintiffs Gary Friedrich Enterprises, LLC ("GFE") and its
principal, Gary Friedrich, brought this action against defendant
Marvel Entertainment, Inc. ("Marvel") and ten other co-defendants
alleging unlawful use of the plaintiffs' "Ghost Rider" characters
and story.  The defendants move to dismiss the plaintiffs' state
law and Lanham Act claims on the grounds that they fail to state a
cause of action, are preempted by the Copyright Act, or both.  For
the reasons set forth below, I recommend that the state law and
Lanham Act claims be dismissed.

Background

    A. Factual Background

Mr. Friedrich, a resident of Arnold, Missouri, purports to be the creator of the Ghost Rider story and characters. (Affidavit of Gary Friedrich dated April 29, 2008 ("Friedrich Aff."), attached as Exh. G to Affirmation of Leonard F. Lesser dated May 2, 2008 ("Lesser Aff."), ¶¶ 2, 7). The ideas for the Ghost Rider story and characters, according to Mr. Friedrich, were originally conceived by him in the 1960's. (Compl., ¶¶ 40-45). In 1971, he pitched his idea for a Ghost Rider comic book, in confidence, to Magazine Management, the predecessor to Marvel. (Compl., ¶¶ 57-58, 142-43). Mr. Friedrich contends that when he met with Magazine Management, he disclosed the ideas for the characters and story solely for the purposes of developing a publishable comic book, retaining the intellectual property rights for himself. (Compl., ¶¶ 142—143, 179). Magazine Management subsequently agreed to publish and distribute a comic book authored by Mr. Friedrich featuring the Ghost Rider story. (Compl., ¶¶ 58—59).

Mr. Friedrich wrote the first Ghost Rider comic in 1972, and Magazine Management published it as "Marvel Spotlight" Volume Number 5 (the "Spotlight Work"). (Compl., ¶ 61; Friedrich Aff., ¶ 9). Although Mr. Friedrich was the author of the work, Magazine Management retained the copyright by agreement. (Compl., ¶ 63). Mr. Friedrich went on to publish several additional Ghost Rider

comics that were also published by Magazine Management.  (Compl., ¶ 69).

Nearly thirty years later, the seeds of the relationship between Marvel and Mr. Friedrich began to sprout into controversy. According to Mr. Friedrich, the copyright on the Spotlight Work ran its twenty-eight year term and expired on December 31, 2000. (Compl. ¶ 70).  At this time, according to Mr. Friedrich, the rights to the Spotlight Work and all of the characters therein reverted to him, making him the rightful owner of the copyright and related intellectual property as of January 1, 2001.  (Compl., ¶ 73).  Mr. Friedrich also claims that the copyrights for the subsequent Ghost Rider works he wrote likewise transferred to him "by operation of law" on a rolling basis.  (Compl., ¶ 74).

A few years later, around 2006 or 2007, Marvel licensed the rights to Ghost Rider to several entities with the aim of producing a major feature film and related merchandise.  (Compl., ¶ 75).  On February 16, 2007, Sony released a film entitled "Ghost Rider," starring Nicolas Cage. (Compl., ¶ 120).  Capitalizing on the timing of the film release, Hasbro, Inc. and Take-Two Interactive produced and sold Ghost Rider merchandise in early 2007.  (Compl., ¶¶ 156—157).  The film and related merchandise credited Marvel as the author of the Ghost Rider characters and story, not Mr. Friedrich. (Compl., ¶¶ 204, 211, 217).

In February 2007, Mr. Friedrich applied to the United States

3

Copyright Office to register his copyright.  (Compl., ¶ 78).  The
Office confirmed him as the author of the Spotlight Work and holder
of its copyright, and registered the copyright in Mr. Friedrich's
name. (Compl., ¶ 79).  Six days before commencing this action, Mr.
Friedrich created GFE, an Illinois limited liability company, and
assigned his alleged copyrights to the company.  (Memorandum and
Order of the Honorable William D. Stiehl, U.S.D.J., Southern
District of Illinois, dated Sept. 26, 2007 (the "9/26/07 Order") at
1, n.1 & 6 n.4; Friedrich Aff., ¶¶ 12, 13).  GFE maintains its
principal place of business in Columbia, Illinois.  (9/26/07 Order
at 6; Friedrich Aff., ¶¶ 13—14).

    B. Procedural History

    The plaintiffs originally filed their Complaint on April 4,
2007, in the United States District Court for the Southern District
of Illinois.  The complaint names eleven defendants: (1) Marvel
Entertainment, Inc., formerly known as (2) Marvel Enterprises,
Inc., a Delaware corporation that maintains its principal place of
business in New York; (3) Marvel Studios, Inc. and (4) Marvel
Characters, Inc., wholly owned subsidiaries of Marvel Entertainment
(collectively, "Marvel"), with principal places of business in
California; (5) Hasbro, Inc. ("Hasbro"), a Rhode Island corporation
with its principal place of business in that state; (6) Take-Two
Interactive Software, Inc. ("Take-Two"), a Delaware corporation,
that maintains its principal place of business in New York; (6)

4

Columbia Pictures Industries, Inc. ("Columbia"), an indirect subsidiary of (7) Sony Pictures Entertainment, Inc. ("Sony"), a Delaware corporation, both of which have principal places of business in California; (8) Columbia Tri-Star Motion Picture Group, which is not a legal entity, has no place of incorporation, and maintains no principal place of business; (9) Crystal Sky Pictures ("Crystal Sky"), a limited liability company that maintains its sole office in California; (10) Relativity Media, LLC ("Relativity"), a California limited liability company, with its principal place of business there; and (11) Michael DeLuca Productions, Inc. ("MDP"), a California corporation that also maintains its principal place of business in that state. (Declaration of Jodi A. Kleinick dated June 2, 2008, ¶ 2).

In June 2007, the defendants collectively moved to dismiss the Complaint for improper venue and failure to state a claim upon which relief could be granted or, alternatively, to transfer the action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). (Memorandum of Law in Support of Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) and (6) or to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Def. Ill. Memo."), attached as Exh. C to Lesser Aff., at 1).[1]  On September 26, 2007, the Honorable William D.

---

[1] Relativity simultaneously filed a separate motion to dismiss all claims asserted against it for lack of personal jurisdiction; that motion was denied.  (9/26/07 Order at 2).

Stiehl, U.S.D.J., found that transferring the action to the Southern District of New York best served the interests of justice. (9/26/07 Order at 9—10).

The plaintiffs subsequently moved for reconsideration of the transfer order and requested that the case be transferred instead to the United States District Court for the Eastern District of Missouri. (Memorandum and Order of the Honorable William D. Stiehl, U.S.D.J. dated Jan. 30, 2008 ("1/30/08 Order") at 1). Judge Stiehl denied the motion for reconsideration on the merits and then rejected the plaintiffs' application to certify the record for appeal. (1/30/08 Order at 6—7). Finally, Judge Stiehl denied the request that the case be transferred to the Eastern District of Missouri because the plaintiffs improperly sought this relief for the first time in their motion for reconsideration. (1/30/08 Order at 6).

Following the transfer to this Court, the plaintiffs again moved to relocate the action to the Eastern District of Missouri. (Plaintiff's Memorandum of Law in Support of Their Motion to Transfer this Action to the Eastern District of Missouri Pursuant to 28 U.S.C. § 1404 at 1). This motion was also denied. (Memorandum and Order dated Sept. 4, 2008 at 25).

At this juncture, the defendants do not challenge the plaintiffs' federal copyright claims. However, they have moved to dismiss the plaintiffs' state law and Lanham Act claims pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure.   The defendants contend that these claims should be dismissed because they fail to state a claim, are preempted by the Copyright Act, or both.

Discussion

    A. <u>Motion to Dismiss under Rule 12(b)(6)</u>

    The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Under this liberal standard, a complaint may not be dismissed for failure to state a cause of action if it provides the defendants "fair notice of what the [] claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).   Indeed, the "issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence to support the claims." <u>Villager Pond, Inc. v. Town of Darien</u>, 56 F.3d 375, 378 (2d Cir. 1995).   Therefore, dismissal is warranted only when a plaintiff fails to "nudge[] [his] claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570; <u>see also</u> <u>Ashcroft v. Iqbal</u>, ___U.S.___, 129 S. Ct. 1937, 1949 (2009) (explaining that "plausibility is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully.").

    "[A] ruling on a motion for dismissal pursuant to Rule

12(b)(6) is not an occasion for the court to make findings of fact." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). Accordingly, the court must accept as true all factual allegations in the complaint, draw all reasonable inferences in favor of the plaintiff, and generally construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Roth, 489 F.3d at 510. Moreover, courts are typically expected to "look only to the allegations on the face of the complaint," rather than to extrinsic sources. Roth, 489 F.3d at 509. As a general rule, if, in support of a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court," the court should treat the motion as one for summary judgment pursuant to Rule 56 and allow an opportunity for the parties "to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); see also Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir. 2000) (finding it erroneous for court to rely on factual allegations outside of complaint in ruling on Rule 12(b)(6) motion).

   B. Preemption

      1. The 1976 Copyright Act Applies

   At the outset, the parties dispute which federal copyright law controls the preemption question. The plaintiffs argue that because the copyrighted material and related ideas were created prior to the enactment of the 1976 Copyright Act, the 1909

Copyright Act applies.  (Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss or To Transfer Venue ("Pl. Opp. Memo.") at 21).  Defendants claim, to the contrary, that the 1976 Act governs all disputes arising after its effective date, regardless of when the materials were created.  (Reply Memorandum of Law in Further Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(3) and (6), or To Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Def. Reply Memo.") at 6—7).

Section 301 of the 1976 Copyright Act defines the scope of preemption:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title.  Thereafter, no person is entitled to any such right or equivalent right in any other such work under the common law or statutes of any State.

17 U.S.C. §301(a).  In <u>Roth v. Pritkin</u>, 710 F.2d 934 (2d Cir. 1983), the Second Circuit examined whether the 1976 Act has preemptive authority over pre-1978 materials.  There, the court held that the new act did not "purport to determine who holds a copyright for works created before January 1978," but "merely clarifies the rights of individuals owning copyrights on that date." <u>Id.</u> at 938.  <u>Roth</u>'s holding relied on the Congressional intent of the preemption provision, which the court interpreted as an effort to "replace the labyrinth of statutory and common law authority . . . ." <u>Id</u>.

9

Roth's conclusion that the 1976 Act controls copyright-related controversies arising after January 1, 1978, was reiterated in DeCarlo v. Archie Comic Publications, 127 F. Supp. 2d 497 (S.D.N.Y. 2001). There, the court held that unpublished comic book characters, created prior to 1978, were nonetheless subject to the preemption clause in the 1976 Act. Id. at 504. The court followed Pritkin's reasoning, asserting that "any common law rights in these characters by virtue of [the plaintiff's] long unpublished original drawings . . . were transformed by the 1976 Act into federally protected copyrights." Id. Furthermore, other circuits have applied the 1976 Act to controversies involving pre-1978 material. See Hays v. Sony Corp. of America, 847 F.2d 412, 415 (7th Cir. 1988); Mention v. Gessell, 714 F.2d 87, 90 (9th Cir. 1983). Thus, although the instant case involves copyrighted material and noncopyrightable intellectual property created during the late 1960s and early 1970s (Compl., ¶¶ 44, 57), the 1976 Act controls.

2. Preemption Requirements

The Copyright Act preemption clause will apply if two requirements are met: (1) "the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act . . ." and (2) "the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law . . . ." Briarpatch Limited, L.P. v. Phoenix Pictures, Inc., 373 F.3d 296,

10

305 (2d Cir. 2004).   The first prong is known as the "subject
matter requirement," the second as the "general scope requirement."
Id.  Each element will be analyzed in turn.

> a. Subject Matter Requirement

The plaintiffs have argued that their state law claims are not
subject to copyright preemption because the claims flow from
noncopyrightable material.  (Pl. Opp. Memo. at 26).  Specifically,
the plaintiffs contend that the Ghost Rider characters and story
are ideas, and because ideas alone cannot be copyrighted the
subject matter requirement is not met.  (Pl. Opp. Memo. at 26).

While the plaintiffs are correct that the Copyright Act does
not protect intangible ideas, "[s]cope and protection are not
synonyms.   Moreover, the shadow actually cast by the Act's
preemption is notably broader than the wing of its protection."
Berge v. Board of Trustees of the University of Alabama, 104 F.3d
1453, 1463 (4th Cir. 1997).  Indeed, courts in this circuit have
drawn a distinction between the scope of a copyright's protection
and its preemptive reach.   See, e.g.,   National Basketball
Association v. Motorola, Inc., 105 F.3d 841, 849 (2d Cir.
1997)("Copyrightable material often contains noncopyrightable
elements within it, but Section 301 preemption bars state law
misappropriation claims with respect to noncopyrightable as well as
copyrightable elements."); Katz Dochrermann & Epstein, Inc. v. Home
Box Office, No. 97 Civ. 7763, 1999 WL 179603, at *3 (S.D.N.Y. March

31, 1999)(finding unfair competition claim preempted where alleged misappropriation of "idea" for advertising campaign could not "meaningfully be separated from its tangible expression"); <u>Boyle v. Stephens, Inc.</u>, No. 97 Civ. 1351, 1998 WL 690816, at *5 (S.D.N.Y. Sept. 29, 1998)("[T]he preemptive reach of the Copyright Act extends beyond those copyrightable, and therefore protected, elements of an eligible work, encompassing as well its noncopyrightable elements."), <u>aff'd</u>, 21 Fed. Appx. 76 (2d Cir. 2001).

Here, the plaintiffs seek to circumvent copyright preemption by extracting noncopyrightable ideas from copyrighted work in order to preserve their state law claims.  The preceding authority, however, establishes that state law claims cannot avoid federal copyright preemption merely because they contain subsumed, noncopyrightable elements.  Therefore, the subject matter requirement for preemption is met.

b. <u>General Scope Requirement</u>

Under the second prong of the analysis, a state law claim is preempted under the Copyright Act if it protects "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a).  Those "exclusive rights" include the rights to reproduce, perform, distribute, display, or prepare derivative works based on copyrighted material.  17 U.S.C. §§ 106, 301(a).  However, a state

12

law claim concerning these exclusive rights is not preempted if it requires proof of an extra element beyond what is required for a federal copyright claim.  See <u>Samara Brothers, Inc. v. Wal-Mart Stores, Inc.</u>, 165 F.3d 120, 131 (2d Cir. 1998); <u>Kregos v. Associated Press</u>, 3 F.3d 656, 666 (2d Cir. 1993); <u>Harper & Row Publishers, Inc. v. Nation Enterprises</u>, 723 F.2d 195, 201 (2d Cir. 1983)(suggesting that conversion claims would not be preempted because extra element of actual possession of chattel is required), <u>rev'd on other grounds</u>, 471 U.S. 539 (1985). The extent to which each individual claim meets the general scope preemption requirement will be examined below.

    C. <u>State Law Claims</u>

        1. <u>Negligence</u>

The plaintiffs allege that Marvel breached a duty not to infringe upon the plaintiffs' intellectual property rights in the characters and story. (Compl., ¶ 97—101).  Similarly, the plaintiffs charge that the other co-defendants breached a duty to investigate whether Marvel had a legal right to license the intellectual property before entering into agreements with it. (Compl., ¶ 167—171).

As an initial matter, examining the negligence claim requires a choice-of-law analysis.  In determining which state law will apply, a federal court utilizes the conflict of law rules from the states in which it sits. <u>Klaxon Co. v. Stentor Electric</u>

Manufacturing Co., 313 U.S. 487, 496 (1941). Under New York choice-of-law analysis, the first step is to determine whether there exists an actual conflict between the relevant laws of the jurisdictions at issue. Schwartz v. Liberty Mutual Insurance Co., 539 F.3d 135, 157 (2d Cir. 2008) (citing In re Allstate Insurance Co. & Stolarz, 597 N.Y.S.2d 904, 905, 81 N.Y.2d 219, 223 (1993)). In this case, both Illinois and New York law require plaintiffs asserting negligence to establish that "the defendant owed a duty of due care to the plaintiff, that the defendant breached that duty, and that the breach proximately caused injury to the plaintiff." Katersky v. American Airlines, Inc., 314 F. Supp. 2d 275, 277 (S.D.N.Y. 2004). Thus, New York and Illinois negligence law produce the same outcome.

The negligence claim here is based on a duty not to infringe upon the intellectual property rights of the plaintiffs. Just such a theory was rejected in Marvulla v. Gruner & Jahr AG & Co., No. 98 Civ. 5000, 2001 WL 40772, at *7 (S.D.N.Y. Jan. 17, 2001). There, the plaintiff alleged negligence when licensees used the plaintiff's photographs in a manner that exceeded the licensing agreement. Id. The court found that the negligence claim merely restated the plaintiff's copyright infringement claim. Id. In other words, it did not contain the "extra element" necessary to escape preemption.

Here, the plaintiffs advance the same basic claim: that the

14

defendants owed a duty not to infringe on the plaintiffs'
intellectual property. Because it fails to assert an "extra
element" beyond the rights protected by federal copyright, the
negligence claim is preempted.

### 2. Tortious Interference with Business Expectancy

This claim stems from the plaintiffs' belief that they had a
reasonable expectation of entering into business relationships
which would utilize their characters and story ideas and that
Marvel interfered by wrongfully taking and utilizing those ideas
itself. (Compl., ¶¶ 113—117).

Under New York law, the elements of a claim for tortious
interference with business relations are: (1) a plaintiff's
business relationship with a third party; (2) the defendant's
interference with that business relationship; (3) a showing that
the defendant acted with the sole purpose of harming the plaintiff
or used dishonest, unfair, or improper means; and (4) injury to the
relationship. Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d
209, 214 (2d Cir. 2002); Purgess v. Sharrock, 33 F.3d 134, 141 (2d
Cir. 1994); Burba v. Rochester Gas & Electric Corp., 139 A.D.2d
939, 528 N.Y.S.2d 241, 242 (4th Dep't 1988). Under Illinois law,
the plaintiff must show "(1) a reasonable expectancy of entering
into a valid business relationship, (2) the defendant's knowledge
of the expectancy, (3) an intentional and unjustified interference
by the defendant that induced or caused a breach or termination of

the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." Evans v. City of Chicago, 434 F.3d 916, 929 (7th Cir. 2006)(quoting Anderson v. Vanden Dorpel, 172 Ill.2d 399, 406, 667 N.E.2d 1296, 1299 (Ill. 1996)). Although the specific elements for stating a claim for tortious interference vary slightly between New York and Illinois law, the essence of the claim here is interference by unauthorized copying. Therefore, there is no material conflict of law that will affect the preemption analysis.

Because this claim is solely grounded on unauthorized copying, it does not offer an "extra element" apart from the rights protected by federal copyright law. See, e.g., American Movie Classics Co. v. Turner Entertainment Co., 922 F. Supp. 926, 932 (S.D.N.Y. 1996)(preempting tortious interference claim based on an unauthorized publication).[2] As a result, the tortious interference claim is preempted. _____

3. Misappropriation and Civil Conspiracy

The misappropriation claim is grounded on the theory that the defendants wrongfully appropriated the idea for Ghost Rider. (Compl., ¶¶ 140—151, 173—185). In connection with this claim, the plaintiffs charge that the defendants engaged in a conspiracy to

_____

[2] That a tortious interference claim has an element of intent is immaterial. See Harper & Row Publishers, 723 F.2d at 201 ("[A]dditional elements of awareness and intentional interference . . . [do] not establish . . . a fundamental nonequivalence between the state and federal rights implicated.").

misappropriate these ideas.  (Compl., ¶¶ 223—226).

New York recognizes the tort of misappropriation of ideas when the plaintiff establishes that (1) the ideas are "novel" and "concrete"; and (2) there existed a "legal relationship" between the parties.  Broughel v. Battery Conservancy, No. 07 Civ. 7755, 2009 WL 928280, at *10 (S.D.N.Y. March 30, 2009) (citation and quotation marks omitted).   Illinois also recognizes the tort, though it has been litigated sparingly.  See Parks v. International Harvester Co., No. 81 C 2391, 1982 WL  52195, at *2 (N.D. Ill. 1982).  Because there is no apparent conflict between the New York and Illinois law, further choice-of-law analysis is unnecessary.

Misappropriation claims are preempted when "the facts alleged in the complaint make it impossible to separate a claim of misappropriation of [the] idea from a claim of misappropriation of the copyrightable literary work through which the idea was expressed."  See Katz Dochrermann & Epstein, Inc., 1999 WL 179603, at *4; Flaherty v. Filardi, No. 03 Civ. 2167, 2007 WL 2734633, at *6, n.4 (preempting misappropriation claim because claim arose from ideas embodied in previously copyrighted screenplay).  These claims, however, may withstand preemption if the idea at issue was not yet expressed in a copyrighted work.  See Maurizio v. Goldsmith, 84 F. Supp. 2d 455, 468—469 (S.D.N.Y. 2000)(declining to preempt misappropriation claim stemming from contribution of ideas to  outline for novel).

17

Here, the ideas that gave rise to the misappropriation claim were fully expressed in the Ghost Rider comics, first copyrighted in 1972. Unlike the plaintiff in Maurizio, the plaintiffs here cannot assert that the ideas were free-floating and not yet committed to a copyrighted work. In fact, the plaintiffs do not raise any allegations of misappropriation of ideas prior to their alleged ownership of the Ghost Rider copyrights. This further evinces that the misappropriation claim arises from unauthorized use of ideas embodied in a copyrighted work. As such, this claim is preempted.

As for the conspiracy claim, because "the nature of the misconduct that conspiracy law seeks to redress is not qualitatively different" from the underlying claim, it too is preempted. See Irwin v. ZDF Enterprises GmbH, No. 04 Civ. 8027, 2006 WL 374960, at *4 (S.D.N.Y. Feb. 16, 2006).

### 4. Unjust Enrichment

The unjust enrichment claim is premised on the theory that the defendants owe the plaintiffs profits earned through the unjust use of the plaintiffs' intellectual property. (Compl. ¶ 233). Under New York law, a claim for unjust enrichment requires that (1) the defendants were enriched; (2) at the plaintiff's expense; and (3) "equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Limited, 373 F.3d at 306. Both New York and Illinois unjust

enrichment law require the same elements, so there is no choice of law issue.  <u>Riverside Marketing, LLC v. Signaturecard, Inc.</u>, 425 F. Supp. 2d 523, 533-34 (S.D.N.Y. 2006).

Although the plaintiffs may have asserted a valid claim for unjust enrichment, it does not pass the "extra element" test for the general scope preemption.  The Second Circuit has held that "[w]hile enrichment is not required for copyright infringement, we do not believe that it goes far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim."  <u>Briarpatch Limited</u>, 373 F.3d at 306.  Thus, because the unjust enrichment claim goes to the core of a copyright infringement claim, it too is preempted.

     5. <u>Right to Publicity</u>

Mr. Friedrich asserts a right to publicity claim, alleging that the defendants engaged in an unauthorized use of the public image of the Ghost Rider characters.  (Compl., ¶¶ 187—190).

Under New York's choice-of-law principles, right of publicity claims are "governed by the substantive law of the plaintiff's domicile . . . ."  <u>Rogers v. Grimaldi</u>, 875 F.2d 994, 1002 (2d Cir. 1989)(citing <u>Southeast Bank, N.A. v. Lawrence</u>, 498 N.Y.S.2d 775, 66 N.Y.2d 910 (1985)).  Here, GFE is domiciled in Illinois and Mr. Friedrich is domiciled in Missouri.  (Friedrich Aff., ¶¶ 2, 13 ).  In Illinois, the right to publicity protects only an individual's identity.  <u>See</u> Recognition of Right of Publicity Act, 765 Ill.

Comp. Stat. Ann. 1075/10.  In Missouri, a right to publicity action requires the use of the plaintiff's name as a symbol of his identity.  <u>C.B.C. Distribution and Marketing, Inc. v. Major League Baseball Advanced Media, L.P.</u>, 505 F.3d 818, 822 (8th Cir. 2007)(quoting <u>Doe v. TCI Cablevision</u>, 110 S.W.3d 363, 369 (Mo. 2003)).  Thus, as a general matter, right to publicity actions under these laws cover individuals only.  Although courts have recognized a right to publicity claim where the identities of a character and actor merge so that the two are "inseparable in the public's mind," this has occured only in extraordinary cases.  <u>See Landham v. Lewis Galoob Toys, Inc.</u>, 227 F.3d 619, 625 (6th Cir. 2000); <u>Wendt v. Host International Inc.</u>, 125 F.3d 806 (9th Cir. 1997)(reversing summary judgment against two actors from the TV series "Cheers" who challenged the use of robots modeled after their "Cliff" and "Norm" characters).

Here, the complaint fails to allege that the defendants used Mr. Friedrich's name without his consent.  Nor does it assert a merger between Ghost Rider characters and the persona of Mr. Friedrich.  As a result, the plaintiffs have not stated a cause of action for right to publicity.

### 6. <u>Conversion and Trespass to Chattels</u>

The plaintiffs bring an action for conversion, asserting that Marvel wrongfully took possession of Mr. Friedrich's ideas for the characters and story.  (Compl., ¶¶ 193—194).  On the same theory,

the plaintiffs also bring a claim for trespass to chattels. (Compl. ¶¶ 198—199).

Conversion under Illinois law is defined as "the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." Republic Tobacco, L.P. v. North Atlantic Trading Co., 254 F. Supp. 2d 985, 1006 (N.D. Ill. 2002) (quoting Fonda v. General Casualty Co., 279 Ill. App. 3d 894, 899, 665 N.E.2d 439, 442 (Ill. App. Ct. 1996)). Similarly, New York law defines conversion as "any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 249 (2d Cir. 1987)(quoting Meese v. Miller, 79 A.D.2d 237, 242, 436 N.Y.S.2d 496, 500 (4th Dep't 1981)). Because there is no material difference between New York and Illinois conversion law, there is no conflict of law issue on that claim.

Under Illinois law, trespass to chattels differs from conversion because trespass to chattels does not require "substantial interference" with the right to possession. Sotelo v. DirectRevenue, LLC, 384 F. Supp. 2d 1219, 1229—30 (N.D. Ill. 2005). Under New York law, a trespass to chattels is defined as an intentional use or "intermeddling with a chattel in the possession of another" where "the chattel is impaired as to its condition,

21

quality, or value." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004)(quoting Restatement (Second) of Torts §§ 217(b), 218(b) (1965)). Again, this does not differ significantly from Illinois law, which also requires a diminution in value for a trespass to chattels claim. See In re StarLink Corn Products Liability Litigation, 212 F. Supp. 2d 828, 844 (N.D. Ill. 2002). Thus, there is no conflict of law on the trespass to chattels claim.

As an initial matter, the plaintiffs have failed to state a claim for conversion or trespass to chattels because the defendants never assumed "physical control" over the intellectual property. Dowling v. United States, 473 U.S. 207, 217 (1985). Nor could the defendants "wholly deprive the owner of its use." Id.; See also In re Jetblue Airways Corp. Privacy Litigation, 379 F. Supp. 2d 299, 329 (E.D.N.Y. 2005)(requiring actual possession for a trespass to chattels claim). Therefore, the plaintiffs' conversion and trespass to chattels claims are defective.

Even if the claims were properly stated, previous courts have found actions for conversion and trespass to chattels to be preempted by a federal copyright law. See, e.g., Miller v. Holtzbrinck Publishers, LLC, No. 08 Civ 3508, 2008 WL 4891212, at *3 (S.D.N.Y. Nov. 11, 2008)(finding preemption ofconversion claim alleging ideas stolen from manuscript); C.A., Inc. v. Rocket Software, Inc., 579 F. Supp. 2d 355, 368 (E.D.N.Y. 2008)(preempting

trespass to chattels claim because rights protecting intangible property were equivalent to rights covered by Copyright Act); <u>A Slice of Pie Productions, LLC v. Wayans Brothers Entertainment</u>, 392 F. Supp. 2d 297, 317 (D. Conn. 2005)("[E]ven a viable conversion claim would be preempted by the Copyright Act since it is based solely on copying, i.e. wrongful use, not wrongful possession."). The instant case similarly involves claims rooted in allegations of copying ideas, so it too cannot pass muster under the "extra element" test.  Thus, these claims fail to state a cause of action and, in any event, are preempted.

     7. <u>Unfair Competition</u>

The plaintiffs bring unfair competition claims under the common law and the Illinois Consumer Fraud and Deceptive Business Practices Act (CFDBPA) and Uniform Deceptive Trade Practices Act (UDTPA).  (Compl., ¶¶ 209—214, 203—207).  These causes of action allege that the defendants have caused "confusion or misunderstanding" regarding the true ownership of the Ghost Rider characters and story, misleading the consumer public.  (Compl., ¶¶ 203, 211).  The crux of these claims is the allegation of "reverse passing off," the notion that defendants have "passed off" the Ghost Rider ideas as their own. <u>See</u> <u>Dastar Corp. v. 20th Century Fox Film Corp.</u>, 539 U.S. 23, 28 n.1 (2003).

To establish unfair competition, New York law requires that (1) the plaintiff possesses a "valid, protectable mark"; and (2)

the defendant's use of the mark resulted in "a likelihood of confusion between the marks of the alleged infringer and the charging party." <u>ESPN, Inc. v. Quiksilver, Inc.</u>, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008) (citations and quotation marks omitted). Illinois law requires the same basic elements. <u>See</u> <u>Henry v. O'Keefe</u>, No. 01 C 8698, 2002 WL 31324049, at *8 (N.D. Ill. Oct. 18, 2002); <u>see also</u> <u>Midwest Canvas Corp. v. Commonwealth Canvas, Inc.</u>, No. 07 C 0085, 2008 WL 162757, at *5 n.2 (N.D. Ill. Jan. 16, 2008)(finding analysis of common law unfair competition claim in New York and Illinois to be "substantially the same"). Consequently, there is no conflict of law issue for this claim.

Analysis of common law claims for unfair competition "mirror[s] the Lanham Act." <u>See</u> <u>ESPN</u>, at 230; <u>Henry</u>, at *8. The Lanham Act specifies that a protectable mark must be a "word, name, symbol, device, or any combination thereof . . . ." 15 U.S.C. § 1127. Here, the alleged use of the Ghost Rider ideas clearly do not qualify as protectable marks under this definition. As a result, the plaintiffs fail to state a claim for unfair competition.

Even if the allegations in the complaint could be shoe-horned into an unfair competition action, the claim would falter on preemption grounds. Unfair competition claims grounded on the copying of protected expression does not pass the "extra element" test. <u>See</u> <u>Computer Associates International, Inc. v Altai, Inc.</u>,

24

982 F.2d 693, 717 (2d Cir. 1992); see also Silverstein v. Penquin
Putnam, Inc., 522 F. Supp. 2d 579, 608 (S.D.N.Y. 2007)("It is well-
settled that a claim for reverse passing off predicated on the
theory that defendant's product replicates plaintiff's expressions
contains no extra element and is therefore preempted."). The fact
that the plaintiffs focus on underlying ideas will not shield the
claim from preemption because the Ghost Rider ideas cannot
"meaningfully be separated from [their] tangible expression." See
Katz Dochrermann & Epstein, Inc., 1999 WL 179603, at *3.
Therefore, the common law unfair competition claim is preempted.

As to the statutory claims, making a case under the CFDBPA
requires the plaintiff to prove that the defendant "(1) engaged in
a deceptive act or practice, (2) with the intent that a party
(including the consumer) rely on the deception, (3) while engaged
in trade or commerce." Pritikin v. Liberation Publications, Inc.,
83 F. Supp. 2d 920, 924 (N.D. Ill. 1999). In Pritikin, the court
ultimately dismissed the CFDBPA claim for lack of standing.[3] Id.
As in this case, the injury alleged was lost monies that would have
been due to the plaintiff in return for authorization to use the

---

[3]   Standing in the Second Circuit requires that "(1) the
plaintiff must have suffered an injury-in-fact; (2) there must be
a causal connection between the injury and the conduct at issue;
and (3) the injury must be likely to be redressed by a favorable
decision." Kendall v. Employees Retirement Plan of Avon Products,
561 F.3d 112, 118 (2d Cir. 2009). The same test is used in the
Seventh Circuit. See Rawoof v. Texor Petroleum Co., Inc., 521 F.3d
750, 756 (7th Cir. 2008).

plaintiff's intellectual property.  Id.  However, because the plaintiff had relatively little public "prominence," the court could not find a "causal link" between the injury and any belief by any deceived consumer that the defendants had a right to use the intellectual property.  Id.  Similarly, the plaintiffs here fail to allege that Mr. Friedrich had any substantial public recognition. As a result, they lack standing to assert the CFDBPA claim.

In addition, both the CFDBPA and UDTPA claims cannot avoid preemption.  In general, CFDBPA and UDTPA claims alleging the copying of intellectual property fail the "extra element" test and are preempted.  See Natkin v. Winfrey, 111 F. Supp. 2d 1003, 1014 (N.D. Ill. 2000).  Moreover, claims alleging misrepresentations of the ownership or origin of an idea do not differ from the "inherent misrepresentations that accompany unauthorized copying and reproduction of another's copyrighted work."  See LaCour v. Time Warner, Inc., No. 99 C 7105, 2000 WL 688946, at *7-8 (N.D. Ill. May 24, 2000).  Here, the core of the plaintiffs' statutory claims relate to the defendants' alleged misuse of the plaintiffs' property by misrepresentation of ownership or authorship.  As a result, these claims are preempted.

8. Waste

The plaintiffs' waste claim asserts that the defendants did not properly utilize the Ghost Rider characters and story, resulting in a diminution of value of the plaintiffs' intellectual

property rights in those ideas.  (Compl., ¶¶ 108—110).

New York recognizes claims for waste, but such actions are "relegated to cases where the holder of real property causes a deterioration of the property, impairment of a mortgage, or a loss of assets or value of a corporation by its fiduciaries." Rehman v. State University of New York at Stony Brook, 596 F. Supp. 2d 643, 660 (E.D.N.Y. 2009) (citing Fellner v. Morimoto, 52 A.D.3d 352, 862 N.Y.S.2d 349 (1st Dep't 2008)(corporate waste), Sutton Investing Corp. v. City of Syracuse, 48 A.D.3d 1141, 853 N.Y.S.2d 233 (4th Dep't 2008)(waste to real estate), and Band Realty Co. v. North Brewster, Inc., 59 A.D.2d 770, 398 N.Y.S.2d 724 (2d Dep't 1977)(waste by mortgagee)).  Similarly, under Illinois law, waste occurs when a person lawfully possessing real property "destroys it, misuses it, alters it or neglects it so that the interest of persons having a subsequent right to possession is prejudiced in some way or there is a diminution in the value of the land being wasted." Serfecz v. Jewel Food Stores, Inc., No. 92 C 4171, 1997 WL 158322, at *3 (N.D. Ill. March 31, 1997) (quoting Pasulka v. Koob, 170 Ill. App. 3d 191, 209, 524 N.E.2d 1227, 1239 (Ill. App. Ct. 1988)).  In examining waste claims, Illinois courts have been reluctant to expand liability beyond the context of real property. See Mavigliano v. McDowell, No. 93 C 7216, 1995 WL 270565, at *4 (N.D. Ill. May 5, 1995).

In the present case, the plaintiffs urge the Court to extend

liability to intellectual property disputes. Because neither Illinois nor New York have recognized such a claim, the plaintiffs fail to state a cause of action.

    9. Accounting

The plaintiffs bring this claim on the theory that they have a right to an accounting of defendants' profits stemming from the alleged unauthorized use of the plaintiffs' copyrightable and noncopyrightable intellectual property. (Compl. ¶¶ 103-106, 245-247). Accounting under New York law is an equitable remedy that requires "the existence of a fiduciary relationship between [the plaintiff] and the defendant, or the existence of a joint venture or other special circumstances warranting equitable relief." Rodgers v. Roulette Records, Inc., 677 F. Supp. 731, 738 (S.D.N.Y. 1988). As a form of equitable relief, accounting requires the absence of an adequate remedy at law. See SCM Corp. v. Xerox Corp., 507 F.2d 358, 363 (2d Cir. 1974). Although accounting has some different requirements under Illinois law, the absence of an adequate remedy at law is again a prerequisite. See Cole-Hadden, Ltd. v. Drew Phillips Corp., 454 F. Supp. 2d 772, 778 (N.D. Ill. 2006)(finding that plaintiff must allege absence of adequate remedy at law and "(1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature.").

As discussed above, the plaintiffs' state law claims either

28

fail to state a cause of action or are preempted by the Copyright
Act.  As a result, the claim for accounting in connection with the
noncopyrightable work is moot.   See Johnson v. Nextel
Communications, Inc., No. 07 Civ. 8473, 2009 WL 928131, at *10 n.11
(S.D.N.Y. March 31, 2009); North American Knitting Mills, Inc. v.
International Women's Apparel, Inc., No. 99 Civ. 4643, 2000 WL
1290608, at *5 (S.D.N.Y. Sept. 12, 2000).

The plaintiffs also assert the claim for accounting in
connection to the unauthorized use of copyrightable work.  However,
accounting claims based primarily on copyright infringement do not
satisfy the "extra element" test and are preempted.  See Weber v.
Geffen Records, Inc., 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999);
Arden v. Columbia Pictures Industries, Inc., 908 F. Supp. 1248,
1264 (S.D.N.Y. 1995).

D. Lanham Act Claim

The plaintiffs assert that the defendants' use of the "Marvel"
designation on the Ghost Rider products misled the public as to the
products' origin, amounting to false advertising.  (Compl., ¶¶
217—218).  The defendants counter that the Lanham Act claim should
be dismissed for failure to state a claim.  (Def. Reply Memo. at
21—25).

The Lanham Act provides in relevant part:

(a)(1) Any person who, on or in connection with any goods
or services, or any container for goods, uses in commerce
any word, term, name, symbol, or device, or any
combination thereof, or any false designation of origin,

false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125.

Actions arising under subsection (A), commonly known as reverse passing off claims, proscribe misrepresentations about who manufactured the product in question. See Dastar Corp., 539 U.S. at 28-30. It does not, however, cover misrepresentations about the author of an idea, concept, or communication embodied in those goods. Id. at 37. Here, the plaintiffs' potential claim under subsection (A) is asserting precisely the misrepresentation of ideas embodied in the Ghost Rider products. Thus, Dastar bars the claim under subsection (A).

The plaintiffs attempt to circumvent Dastar's holding by characterizing the defendants' misrepresentation as false advertising, which the Act prohibits under subsection (B). However, the holding of Dastar extends to claims arising under

subsection (B).   See Antidote International Films, Inc. v. Bloomsbury Publishing, PLC, 467 F. Supp. 2d 394, 400 (S.D.N.Y. 2006).  In Antidote, the court reasoned that "the holding in Dastar that the word 'origin' in § 43(a)(1)(A) refers to producers, rather than authors, necessarily implies that the words 'nature, characteristics, [and] qualities' in §43(a)(1)(B) cannot be read to mean authorship."  Id.  Because misrepresentation of authorship lies at the heart of this action, the plaintiffs' Lanham Act claim is barred by Dastar.

Conclusion

For the reasons set forth above, I recommend that the defendants' motion be granted, and the plaintiffs' state law and Lanham Act claims be dismissed.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Barbara S. Jones, Room 1920, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          June 26, 2009

Copies mailed this date to:

Leonard F. Lesser, Esq.
Simon-Lesser, PC
420 Lexington Avenue
New York, NY 10170

Charles S. Kramer, Esq.
Joseph D. Schneider, Esq.
Eric W. Evans, Esq.
Daniel L. Bloom, Esq.
Riezman-Berger, P.C.
7700 Bonhomme Avenue
7th Floor
St. Louis, IL 63105

Dawn K. O'Leary, Esq.
J. Thomas Long, Esq.
Eric Evans, Esq.
Roth, Evans & Lading P.C.
2421 Corporate Centre Drive, Suite 200
Granite City, IL 62040

Steven T. Catlett, Esq.
Paul Hastings Janofsky & Walker LLP
191 North Wacker Drive 30th Floor
Chicago, IL 60606

David Fleischer, Esq.
Jodi A. Kleinick, Esq.
Paul Hastings Janofsky & Walker LLP
75 East 55th Street

32