```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
GARY FRIEDRICH ENTERPRISES, LLC.   :
and GARY FRIEDRICH,                 :
                                    :
             Plaintiffs,            :     08 Civ. 01533 (BSJ) (JCF)
                                    :
       -against-                    :         MEMORANDUM
                                    :         AND  ORDER
                                    :
MARVEL ENTERPRISES, INC., MARVEL    :
ENTERTAINMENT, INC., MARVEL         :
STUDIOS, INC., MARVEL CHARACTERS,   :
INC., HASBRO, INC., TAKE-TWO        :
INTERACTIVE, COLUMBIA TRI-STAR      :
MOTION PICTURE GROUP, COLUMBIA      :
PICTURES INDUSTRIES, INC., CRYSTAL  :
SKY PICTURES, RELATIVITY MEDIA LLC, :
MICHAEL DELUCA PRODUCTIONS, INC.,   :
SONY PICTURES ENTERTAINMENT, INC.   :
and SONY CORPORATION OF AMERICA,    :
                                    :
             Defendants.            :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Plaintiffs Gary Friedrich Enterprises, LLC ("GFE") and its principal, Gary Friedrich, bring this action under the Copyright Act, 17 U.S.C. § 101 et seq.,[1] against the defendants, alleging that in producing the movie "Ghost Rider," they misappropriated characters and story elements owned by the plaintiffs.  The defendants now move for an order directing the plaintiffs to file

---

[1] On May 3, 2010, the Honorable Barbara S. Jones, U.S.D.J., adopted my recommendation that the plaintiffs' claims under the Lanham Act, 15 U.S.C. § 1051 et seq., and state law be dismissed. Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc., ___ F. Supp. 2d ___, No. 08 Civ. 1533, 2010 WL 1789714, at *1-4 (S.D.N.Y. May 3, 2010).

a bond for costs and attorneys' fees in the amount of $10,000.[2]
For the reasons set forth below, the motion is denied.

<u>Background</u>[3]

A.   <u>Facts</u>

Mr. Friedrich, who resides in Arnold, Missouri, claims to have created the Ghost Rider story and characters. (Declaration of Gary Friedrich dated June 14, 2010 ("Friedrich Decl."), attached as Exh. C to Affirmation of Joseph D. Schneider dated June 17, 2010 ("Schneider Aff."), ¶ 2). Mr. Friedrich wrote the first Ghost Rider comic in 1972, and Magazine Management, the predecessor to Marvel Enterprises ("Marvel"), published it as "Marvel Spotlight" Volume Number 5 (the "Spotlight Work"). (Complaint ("Compl."), ¶ 61; Friedrich Decl., ¶ 2). Mr. Friedrich was the author of the work, but Magazine Management retained the copyright by agreement. (Compl., ¶ 63).

Mr. Friedrich claims that the copyright on the Spotlight Work expired on December 31, 2000, at which point the rights to the work and all of its characters reverted to him. (Compl. ¶¶ 70, 73). He also asserts that the copyrights for subsequent Ghost Rider works that he wrote likewise transferred to him "by operation of law" on a rolling basis. (Compl., ¶ 74).

----

[2] The defendants originally requested a bond in the amount of at least $50,000, but they later reduced the amount that they sought. (Reply Memorandum of Law in Further Support of Defendants' Motion to Require Plaintiffs to Post Bond ("Def. Reply") at 1).

[3] The factual background and procedural history of the case are set forth in more detail in my Report and Recommendation, which is attached to Judge Jones' decision, <u>Gary Friedrich Enterprises</u>, 2010 WL 1789714, at *5-7.

On February 16, 2007, defendant Sony Corporation of America released the film "Ghost Rider." (Compl., ¶ 120). Around this time, defendants Hasbro, Inc. and Take-Two Interactive produced and sold Ghost Rider merchandise. (Compl., ¶¶ 156—57). The film and related merchandise credited Marvel, not Mr. Friedrich, as the creator of Ghost Rider. (Compl., ¶¶ 204, 211, 217).

In February 2007, Mr. Friedrich applied to the United States Copyright Office to register his copyright. (Compl., ¶ 78). The Copyright Office confirmed him as the author of the Spotlight Work and holder of its copyright, and registered the copyright in Mr. Friedrich's name. (Compl., ¶ 79). Mr. Friedrich then created GFE, an Illinois limited liability company, and assigned his copyrights to the company. (Copyright Assignment and Intellectual Property Assignment dated March 29, 2007, attached as Exh. B to Schneider Aff.).

B.  Procedural History

The plaintiffs filed their Complaint on April 4, 2007, in the United States District Court for the Southern District of Illinois. On September 26, 2007, upon the defendants' motion, the Honorable William D. Stiehl, U.S.D.J., ordered that the action be transferred to the Southern District of New York. The plaintiffs then twice requested that the case be transferred instead to the United States District Court for the Eastern District of Missouri. These requests were denied. Relying on representations made by the plaintiffs in connection with these motions, the defendants now seek an order pursuant to Rule 54.2 of the Local Rules of the

3

United States District Courts for the Southern and Eastern
Districts of New York ("Rule 54.2") directing the plaintiffs to
file a bond for costs and attorneys' fees in the amount of $10,000.

Discussion

    A.   Local Rule 54.2

Rule 54.2 provides that "[t]he court, on motion or on its own
initiative, may order any party to file an original bond for costs
or additional security for costs in such an amount and so
conditioned as it may designate."  In the event that a party fails
to post bond as directed, "the court may make such orders in regard
to noncompliance as are just, and among others the following: an
order striking out pleadings or staying further proceedings until
the bond is filed or dismissing the action or rendering a judgment
by default against the non-complying party."  Rule 54.2.  "The
primary purpose of the rule is to ensure that the prevailing party
will be able to collect the costs and fees owed to it in situations
where the other party is unlikely or unwilling to pay." Kensington
International Ltd. v. Republic of Congo, No. 03 Civ. 4578, 2005 WL
646086, at *1 (S.D.N.Y. March 21, 2005).  Furthermore, under Rule
54.2, security for costs may include security for attorneys' fees
when a prevailing party is potentially entitled to those fees by
statute. Bressler v. Liebman, No. 96 Civ. 9310, 1997 WL 466553, at
*6 (S.D.N.Y. Aug. 14, 1997); Beverly Hills Design Studio (N.Y.)
Inc. v. Morris, 126 F.R.D. 33, 36-37 (S.D.N.Y 1989).

> While there are no set guidelines for applying Rule 54.2,
> courts generally consider the following factors in
> determining whether to require a party to file a bond []
> pursuant to the rule: (1) the financial condition and

4

ability to pay of the party who would post the bond; (2)
whether that party is a non-resident or foreign
corporation; (3) the merits of the underlying claims; (4)
the extent and scope of discovery; (5) the legal costs
expected to be incurred; and (6) compliance with past
court orders.

RLS Associates, LLC v. United Bank of Kuwait PLC, No. 01 Civ. 1290,
2005 WL 578917, at *1 (S.D.N.Y. March 11, 2005) (internal quotation
marks omitted); accord Sea Trade Co. v. FleetBoston Financial
Corp., No. 03 Civ. 10254, 2008 WL 161239, at *1 (S.D.N.Y. Jan. 15,
2008).  I will address each of these factors in turn.

    B.   Ability to Pay

    The crux of the defendants' argument is that due to the
plaintiffs' financial situation, the defendants "risk that they
will be unable to recover their costs in the likely event of their
success on the merits."  (Defendants' Memorandum of Law in Support
of Motion to Require Plaintiffs to Post Bond ("Def. Memo.") at 4).
The defendants base their concern on statements made in the
plaintiffs' submissions in connection with the transfer motions.
In those documents, the plaintiffs stated that they "have very
limited means and cannot afford the expense of litigating in a
forum that would require travel;" that Mr. Friedrich is "a full-
time night time courier, which is a low income job;" and that Mr.
Friedrich has "very limited financial resources and significant
debts" such that litigating the case in New York would be
"devastating to him financially, and will have negative
consequences for his family and his occupation."  (Def. Memo. at 3-
4 (quoting Plaintiffs' Memorandum in Opposition to Defendants'
Motion to Dismiss or to Transfer Venue at 13-14; Affidavit of Gary

Friedrich dated July 17, 2007 ("Friedrich Aff."), ¶¶ 3, 4; Plaintiffs' Memorandum of Law in Support of Their Motion to Transfer This Action to the Eastern District of Missouri at 24)). The plaintiffs further commented that "GFE does not have the financial or physical resources to travel and litigate in a forum that is not close to its offices." (Def. Memo. at 3-4 (quoting Friedrich Aff., ¶ 16)).

"[C]ourts have held that 'a party's apparent financial inability to pay prospective costs is sufficient in and of itself to justify an order requiring the posting of a cost bond under Rule 54.2.'" Sea Trade Co. v. FleetBoston Financial Corp., No. 03 Civ. 10254, 2008 WL 161239, at *2 (S.D.N.Y. Jan. 15, 2008) (quoting RLS Associates, LLC v. United Bank of Kuwait PLC, 464 F. Supp. 2d 206, 221 (S.D.N.Y. 2006)). Yet if it is ever appropriate to rely solely on this single factor, it must only be in the most compelling circumstances, lest the courthouse doors be routinely closed on impecunious litigants.

Indeed, the cases cited by the defendants present extreme sets of facts. In Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 251-52 (2d Cir. 1987), for example, the Second Circuit affirmed the district court's decision to order a bond where the plaintiff was a debtor in a bankruptcy proceeding and had admitted that it had no liquid assets. Likewise, in Sea Trade Co., the court found that two factors "weigh[ed] heavily in favor of requiring Plaintiffs to post a bond": first, both of the plaintiffs were foreign corporations; and second, neither appeared to have the

ability to pay, since one was a shell corporation and the other's only asset was located abroad and was subject to a lien. 2008 WL 161239, at *2. Similarly, a bond was found appropriate in RLS Associates, LLC v. United Bank of Kuwait PLC, No. 01 Civ. 1290, 2005 WL 578917, at *1-2, *4 (S.D.N.Y. March 11, 2005), after plaintiff's counsel admitted that the plaintiff would be incapable of paying an award of attorneys' fees and costs and an investigation determined that the plaintiff lacked assets. In Beverly Hills Design Studio (N.Y.) Inc. v. Morris, 126 F.R.D. 33, 36 (S.D.N.Y. 1989), the court awarded a bond because the plaintiffs admitted that they may not have the resources to post a bond, and they had failed to identify only assets that could be used to satisfy an award of costs. In addition, the defendants represented (1) that the plaintiffs owed one defendant over $175,000, (2) that the plaintiffs had written a check that had bounced, (3) that their attorneys' and accountants had reported that the plaintiffs were experiencing financial troubles, and (4) that they had moved their business headquarters frequently in the preceding years. Finally, in Oilex A.G. v. Mitsui & Co. (U.S.A.), 669 F. Supp. 85, 88 (S.D.N.Y. 1987), the court found that the posting of a bond was warranted because the defendant would "need extensive discovery to defend itself in the action," including trips to and from foreign countries that would likely involve the retention of foreign lawyers and the translation of documents, and because it appeared that the plaintiff had "no assets or [was] out of business."

　　While these cases show that there is no set formula for

determining when a plaintiff's financial situation is sufficiently dire to require the posting of a bond, it is clear that the defendants have not made such a showing here.  The statements of the plaintiffs that the defendants invoke were offered in the context of motions to transfer and provide slim support for the proposition that the plaintiffs will be incapable of paying an award against them, should that be necessary.  In their submissions regarding the transfer motions, the plaintiffs' focus was on the potentially heavy costs of litigation in another forum, which could require immediate lump-sum payments of attorneys' fees and travel expenses.  Their concern about their ability to expend the money to meet these costs does not mean that they will be unable ultimately to satisfy a court judgment, even over time.  As the defendants note, Mr. Friedrich is currently employed.  And, as the defendants further observe, the plaintiffs do appear to have the financial means to "engag[e] a multistate legal team consisting of three law firms" who have litigated the case "vigorously."  (Def. Memo. at 4).  Therefore, if the plaintiffs' lack of resources weighs in favor of ordering a bond, it does so only minimally.

C.   Non-Residents

The second factor -- whether the party is a non-resident or foreign corporation -- typically weighs in favor of the party requesting a bond when the other party is a foreign entity.  See, e.g., Beautiful Jewellers Private Ltd. v. Tiffany & Co., No. 06 Civ. 3085, 2008 WL 2876508, at *3 (S.D.N.Y. July 21, 2008) (defendant's "foreign status and lack of United States assets

8

consequently [] support[] the posting of a bond"); <u>Sea Trade</u>, 2008 WL 161239, at *2 ("Plaintiffs' status as foreign corporations counsels in favor of requiring them to post a bond as security for costs."); <u>Kensington International</u>, 2005 WL 646086, at *2 (defendant "is a foreign entity that claims to have virtually no attachable assets in the United States and appears to be endeavoring to make itself judgment-proof in this country").  By contrast, the plaintiffs here are residents of the United States and have also shown no sign of trying to evade a judgment.

The defendants stress that neither plaintiff is a resident of New York.  (Def. Reply at 5).  They assert that because "Friedrich is a resident of Missouri and GFE is an Illinois limited liability company, . . . [e]nforcing any award of costs or attorneys' fees [] will almost certainly require post-judgment proceedings in Missouri . . . . " (Def. Reply at 5-6).  However, the fact that recovering such an award from the plaintiffs might be inconvenient for the defendants does not mean that a bond must be posted.  As the defendants essentially concede, there is no question that the plaintiffs would be subject to the jurisdiction of the federal court system should a judgment against them be entered; thus, any award by this Court would be enforceable wherever the plaintiffs are located.  Therefore, this factor weighs against the posting of a bond.

D.   <u>Merits of the Underlying Case</u>

The parties hotly dispute the merits of the plaintiffs' case. The plaintiffs claim that Mr. Friedrich was the creator of Ghost

Rider and related characters, while the defendants argue that these works "were created at the instance and expense of Marvel's predecessor in interest and constitute works made for hire within the meaning of the copyright law," thus depriving the plaintiffs of any ownership interest in the copyright. (Def. Memo. at 2). When it is not clear which party will prevail, this factor does not weigh heavily in the analysis. See Mohamed v. Rajoub, No. 05 Civ. 8335, 2008 WL 194746, at *4 (S.D.N.Y. Jan. 17, 2008).

Moreover, whether the plaintiffs' case is meritorious is not the only relevant question. The defendants seek the posting of a bond as security for costs and attorneys' fees under the Copyright Act, which are not automatically awarded to every victorious defendant but rather are within the court's discretion to grant. See 17 U.S.C. § 505. In deciding whether such an award is warranted, "district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." Bryant v. Media Right Productions, Inc., 603 F.3d 135, 144 (2d Cir. 2010); see also Beverly Hills Design Studio, 126 F.R.D. at 37 ("When the plaintiff's claims are objectively without arguable merit, [] a prevailing defendant may recover attorney's fees under Section 505."). Therefore, even if the defendants in this case ultimately prevail, they would face the additional hurdle of demonstrating that the plaintiffs' claims were "frivolous" or "objectively unreasonable" in order to obtain an award of fees. The

10

defendants have yet to show that they will be able to meet this standard.  Accordingly, this factor does not favor either side.

    E.   <u>Extent and Scope of Discovery</u>

Because discovery has yet to begin in earnest in this case, evaluating the fourth and fifth relevant factors requires speculation.  The plaintiffs contend that discovery will be no "more extensive than is typical for a common law breach of contract claim."  (Plaintiffs' Memorandum in Opposition to Defendants' Motion for Bond for Costs and Attorney's Fees at 12).  The defendants do not explicitly contest this point, but rather contend that they will incur "at least several hundred thousand dollars" in additional attorneys' fees and expenses once discovery begins. (Def. Memo. at 7; Def. Reply at 6).  The defendants, however, fail to provide support for their assertion, and, in fact, at a recent pretrial conference, the parties represented that they expected discovery to be rather straightforward.  Unlike in other cases in which bonds were awarded, the defendants have not suggested that the plaintiffs will hinder their ability to gather discovery.  <u>Cf.</u> <u>Kensington International</u>, 2005 WL 646086, at *2 (finding that fourth and fifth factors favor imposing a bond because defendant "has resisted discovery, continues to obstruct the progress of the lawsuit and otherwise multiplies [plaintiff's] fees"); <u>Baker v.</u> <u>Urban Outfitters</u>, No. 01 Civ. 5440, 2004 WL 2546805, at *2 (S.D.N.Y. Nov. 10, 2004) (detailing plaintiff's "contumacious and disruptive conduct during the discovery process").

Additionally, the parties have recently agreed to conduct

separate trials, the first regarding particular issues of liability
and the second, if necessary, addressing damages. (Order dated
Aug. 3, 2010 ("Aug. 2010 Order") at 1-2). They have further agreed
only to conduct discovery related to issues to be tried during the
first trial and to stay further discovery until those issues are
resolved. (Aug. 2010 Order at 2). Discovery therefore has been
streamlined and will be less burdensome. Accordingly, these
factors support the denial of a bond.

       F.    The Plaintiffs' Compliance with Prior Court Orders

       The plaintiffs have complied with all court orders to date,
and the defendants have not indicated otherwise. Therefore, the
sixth factor does not weigh in favor of the posting of a bond.

Conclusion

       None of the relevant factors strongly favors the posting of a
bond, and some weigh against it. The defendants' motion to require
the plaintiffs to post bond is therefore denied.

                         SO ORDERED.

                         James C. Francis IV
                         JAMES C. FRANCIS IV
                         UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       September 1, 2010

Copies mailed this date to:

Leonard F. Lesser, Esq.
Simon-Lesser, PC
420 Lexington Avenue
New York, New York 10170

                              12

Charles S. Kramer, Esq.
Joseph D. Schneider, Esq.
Eric W. Evans, Esq.
Daniel L. Bloom, Esq.
Riezman-Berger, P.C.
7700 Bonhomme Avenue
7th Floor
St. Louis, IL 63105

Dawn K. O'Leary, Esq.
J. Thomas Long, Esq.
Eric Evans, Esq.
Roth, Evans & Lading P.C.
2421 Corporate Centre Drive, Suite 200
Granite City, IL 62040

Steven T. Catlett, Esq.
Paul Hastings Janofsky & Walker LLP
191 North Wacker Drive 30th Floor
Chicago, IL 60606

David Fleischer, Esq.
Jodi A. Kleinick, Esq.
Paul Hastings Janofsky & Walker LLP
75 East 55th Street
New York, New York 10022