UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------

GARY FRIEDRICH ENTERPRISES, LLC, *et al.*,

                     Plaintiffs,

     -against-

MARVEL ENTERPRISES, ET AL.,

                     Defendants.

08-CV-01533 (BSJ)(JEF)

---------------------------------------------

## FIRST AMENDED COMPLAINT

    Plaintiff, Gary Friedrich Enterprises, LLC and Gary Friedrich (hereafter together referred to as "Friedrich" or "Plaintiffs"), hereby assert this First Amended Complaint against the Defendants named herein for multiple violations of the Federal Copyright Act and state law. In support of this action, Plaintiffs state as follows:

### JOHNNY BLAZE/GHOST RIDER

    1.    Johnny Blaze is a motorcycle riding stunt man. By day, taciturn and reserved with an outwardly tough demeanor, he hides the loss felt from the death of his father, Barton Blaze, at an early age, the affection he feels for Roxanne, the love of his life, his guilt over his inability to save the life of Crash Simpson, the only father he'd ever known, and a heart of unparalleled concern for those around him.

    2.    Each evening, in a painful transmutation, Johnny Blaze transforms into the Ghost Rider, a violent creature with a flaming skull, dressed in black leather, fire surrounding him and hurling from his fingertips. The Ghost Rider is propelled by evil to roam the earth by motorcycle

bringing fire and fear to the world, yet somehow is able to bend the curse that transforms him and to use his evil-sourced powers to battle evil and to defend good while in his fiery state.

## THE ORIGIN STORY

3.     Johnny Blaze (hereafter sometimes referred to as "Blaze" or "Johnny Blaze/Ghost Rider") originally was a man by both day and night.  Then, however, he promised the devil his soul in exchange for a promise to cure Crash Simpson, his adoptive father, from an incurable illness.  The devil kept his word and cured the man, but then caused Crash to die in another fashion before attempting to claim Blaze's soul as agreed.

4.      Since that time, betrayed and anguished, Blaze fights off the devil's efforts to claim his soul, his resistance finding strength in Blaze's altruistic motive in seeking the devil's bargain in the first instance, the love and purity in Blaze's heart and his noble spirit.

5.     The strength of Johnny Blaze's soul allows him to continue his life as before, by day.  At night, however when evil's power rises, he finds himself transformed into the fiery Ghost Rider and forced towards evil as the devil's hold on his soul increases.

6.     Yet even at night, Blaze's purity of purpose and love in his soul is soon able to fight against the devil's influence that transforms and drives him.  Drawing on this inner, instinctive strength, the Ghost Rider learns to bend the curse and to use his fiery skulled night time persona to defend good and fight evil.

### The Theft of Ghost Rider

7.     Johnny Blaze/Ghost Rider is a fictional character originally conceived, created and authored by Plaintiff Gary Friedrich more than 35 years ago.

8.     Plaintiff Gary Friedrich also conceived, created and authored the unique story of how and why Blaze sells his soul to the devil and becomes the tormented fiery-skulled

motorcycle riding anti-hero with superpowers, and the surrounding background (hereafter referred to as the "Origin Story") and conceived the other principal characters of the Origin Story, Barton Blaze, Roxanne Simpson, and Crash Simpson, more than 35 years ago.

9.      There is no dispute that Plaintiff Gary Friedrich created Johnny Blaze/Ghost Rider and the Origin Story and its characters.

10.     Yet, in and before 2007, encouraged, spearheaded and joined by the Marvel companies, a group of major entertainment industry players including Defendants Sony, Hasbro, and the below named Downstream Infringers joined together to use, copy, exploit and profit from the Plaintiffs' Characters and Origin Story without any authorization or compensation. They have sold, promoted, and marketed a full length feature film, action figures, video games, and various products based on, featuring, copying, and utilizing the Ghost Rider and related characters and the Origin Story, all without any authorization of Plaintiffs.

11.     In taking the actions complained of herein, the Defendants, in concert with each other and others, have converted and improperly profited from the rights of the Plaintiffs, and in doing so, have infringed and improperly profited from Plaintiffs' copyrights, resulting in damages to the Plaintiffs as more fully described below.

### Parties, Jurisdiction, and Venue

12.     Johnny Blaze/Ghost Rider is a fictional superhero of a type previously unknown -- an antihero who is able to fight off the evil which seeks to claim him and to use his evil-sourced abilities to perform heroic deeds for mankind during nighttimes of personal torment.

13.     Plaintiff Gary Friedrich Enterprises LLC is an Illinois Limited Liability Company authorized to do business in Illinois, doing business in Illinois with its principal place of business in the Southern District of Illinois. Gary Friedrich Enterprises LLC was formed by Plaintiff Gary Friedrich for the purposes of marketing, promoting, capitalizing on and otherwise

exploiting his copyrights and other state law intellectual property, including the intellectual property rights here in issue.

14.     Plaintiff Gary Friedrich Enterprises LLC received by assignment from Plaintiff Gary Friedrich and now has the exclusive right to own and control, *inter alia*, all claims asserted herein, and all, right, title and authority to market, sell, license, assign control and capitalize the copyrights referenced herein, Gary Friedrich's own name and persona and the public recognition, attendant thereto, the name, persona, and public recognition of Johnny Blaze/Ghost Rider and the other characters Friedrich has created, and Friedrich's other statutory and common law rights, within this District and elsewhere around the world.

15.     Plaintiff Gary Friedrich is an individual, who created Johnny Blaze/Ghost Rider, the Origin Story, and other related characters. Gary Friedrich acknowledges the assignment of the claims asserted herein and of all of his rights in such characters, Origin Story and Spotlight Work copyright discussed more fully below to Gary Friedrich Enterprises, L.L.C., and joins in this action individually solely to preserve any rights that may for some reason be found to be outside of that assignment or that he may be found to have if such assignment is found for any reason to be ineffective or void.

16.     Upon information and belief, Marvel Enterprises, Inc., (hereinafter "Marvel Enterprises") is or was a Delaware corporation with its principal place of business in the state of New York, which transacts and conducts business within Missouri and Illinois, and claims to do business in New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, New York with the intent that they have such effect.

17.    Upon information and belief, Marvel Entertainment, Inc., (hereinafter "Marvel Entertainment") is or was a Delaware corporation with its principal place of business in the state of New York, which transacts and conducts business within Missouri and Illinois, and claims to do business in New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, and New York with the intent that they have such effect.

18.    Upon information and belief, in 2005, Marvel Enterprises merged with Marvel Entertainment and as a result, all prior acts and omissions of Marvel Enterprises became the acts and omissions of Marvel Entertainment.

19.    Upon information and belief, Marvel Characters, Inc., (hereinafter "Marvel Characters") is a Delaware corporation that is or was wholly owned by Marvel Entertainment, and claims to have its principal place of business in the state of New York, and which transacts and conducts business within Missouri and Illinois, and claims to do business in New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, and New York with the intent that they have such effect.

20.    Upon information and belief, Marvel Studios, Inc. (hereinafter "Marvel Studios"), is or was a Delaware corporation that is wholly owned by Marvel Entertainment, has its principal place of business in the state of California, and which transacts and conducts business within Missouri and Illinois, and claims to do business in New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, and New York with the intent that they have such effect.

21.     Upon information and belief, Marvel Publishing, Inc., (hereinafter "Marvel Publishing") is a Delaware corporation that is or was wholly owned by Marvel Entertainment, and claims to have its principal place of business in the state of New York, and which transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, and New York with the intent that they have such effect.

22.     Upon information and belief, Marvel International Character Holdings, Inc (hereinafter "Marvel International") is a Delaware corporation that is or was wholly owned by Marvel Entertainment, and has its principal place of business in the state of New York, and which transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, and New York with the intent that they have such effect.

23.     Upon information and belief, MVL International C.V., a Netherlands limited partnership, was created on or about April 1, 2008, and was assigned by Marvel Characters, Inc substantially all of Marvel Characters, Inc.'s intellectual property license agreements, including those license agreements related to Ghost Rider Merchandise, and transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, and New York with the intent that they have such effect.

24.     Upon information and belief, Marvel Characters B.V., located at 2240 Palm Beach Lakes Boulevard, Suite 101, West Palm Beach, Florida, and created on or about April 1, 2008, is a limited liability Netherlands company, and was assigned by MVL International C.V.

all of MVL International C.V.'s intellectual property license agreements, including those license agreements related to Ghost Rider Merchandise.

25.     Upon information and belief, from April 1, 2008 forward, B.V. has been and continues to be the purported licensor for intellectual property licensing concerning Ghost Rider Merchandise, and transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and took the actions hereinafter described which had effect within Missouri, Illinois, and New York with the intent that they have such effect.

26.     Upon information and belief, The Walt Disney Company ("Disney") is a Delaware corporation, with its principal place of business in the state of California, and which transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, and New York with the intent that they have such effect.

27.     Through actions which culminated on or about August 31, 2009, Disney set out to acquire, take control of, and merge with Marvel Entertainment Inc and did so by forming an instrumentality of Disney called Marvel Entertainment, LLC,  purportedly a single member LLC owned, controlled, and operated exclusively by Disney, and by then causing Marvel Entertainment LLC to enter into a merger with Marvel Entertainment for the interest, profit and benefit of Disney, and in order to allow Disney to acquire all assets of Marvel Entertainment as well as other related Marvel entities and subsidiaries.

28.     Upon information and belief any and all consideration paid or given by Disney to acquire and succeed to Marvel Entertainment was paid or given to shareholders of Marvel Entertainment or its subsidiaries and  was paid by or on behalf of Disney, and the result of the transaction was the merger of Marvel Entertainment into Marvel Entertainment LLC.

29.    Upon information and belief, Marvel Entertainment merged into Marvel Entertainment LLC on or about August 28, 2009 and as a result all the prior acts, omissions and liabilities of Marvel Entertainment became the acts, omissions and liabilities of Marvel Entertainment LLC as of that date, and all companies owned by Marvel Entertainment became owned by Marvel Entertainment LLC as of that date.

30.    Marvel Entertainment LLC is a mere alter ego or instrumentality of Disney.

31.    Upon information and belief, Disney, Marvel Entertainment LLC, Marvel Entertainment, Marvel Enterprises, Marvel Characters, MVL International C.V., Marvel Characters B.V., Marvel Publishing, Marvel International, and Marvel Studios, Inc. are predecessors in interest, successors in interest, and/or instrumentalities, alter egos, agents and/or representatives of each other and/or act to further the joint interests of each other.

32.    The actions of Disney, Marvel LLC, Marvel Entertainment, Marvel Enterprises, Marvel Characters, MVL International C.V., Marvel Characters B.V., Marvel Publishing, Marvel International, and Marvel Studios relevant to this action were taken by each of such entities (or by their predecessors in interest) on behalf of themselves (or for predecessors in interest) and for each other, and as agents and/or instrumentalities of each other (or each other's predecessors in interest) and pursuant to a joint venture and common design.

33.    Hereinafter, Disney, Marvel Entertainment LLC, Marvel Entertainment, Marvel Enterprises, Marvel Characters, MVL International C.V., Marvel Characters B.V., Marvel Publishing, Marvel International, and Marvel Studios shall be jointly and collectively referred to as "Marvel" or the "Marvel Defendants."

34.    Upon information and belief, Hasbro, Inc., (hereinafter, "Hasbro") is a Rhode Island corporation with its principal place of business in Pawtucket, Rhode Island, has a

registered agent in the State of Illinois, transacts and conducts business within Missouri and Illinois, and claims to conduct business in New York, and the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, New York, and the Southern District of New York with the intent that they have such effect.

35.     Upon information and belief, Take-Two Interactive Software, Inc., (hereinafter "Take-Two"), is a Delaware corporation with its principal place of business in New York, and which transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, New York, and the Southern District of New York with the intent that they have such effect.

36.     Upon information and belief, Majesco Sales Inc d/b/a Majesco Entertainment Company (hereinafter "Majesco") is a Delaware corporation with its principal place of business in New York, and which transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, New York, and the Southern District of New York with the intent that they have such effect.

37.     Upon information and belief, 2K Games (hereinafter "2K Games") is a Delaware corporation, with its principal place of business located at 10 Hamilton Landing, Novato, California, 94949, and which is a wholly-owned subsidiary of Take-Two, transacts and conducts business within Missouri and Illinois, and claims to do business in New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, New York, and the Southern District of New York with the intent that they have such effect.

38.     Upon information and belief, Majesco originally obtained a license for rights to a video game at issue from Marvel, but then assigned its rights and interest to 2K Games.

39.     Upon information and belief, Climax Group, Inc., (hereinafter "Climax Group") a California corporation (currently suspended under California law) with its current place of business located in New Hampshire, is a video game development company responsible for the design and development of the video game pursuant to a Development Agreement with Majesco, and was paid certain fees by 2K Games for the development of a video game.

40.     Upon information and belief, Take-Two International S.A. (hereinafter "Take-Two International") is a Switzerland based corporation that is a subsidiary of Take-Two Interactive and transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, New York, and the Southern District of New York with the intent that they have such effect.

41.     Upon information and belief, Take-Two, Majesco, 2K Games, Climax Group, and Take-Two International are instrumentalities, agents and representatives of each other and the actions and inactions of each of Take-Two, Majesco, 2K Games, Climax Group, and Take-Two International relevant to this action were taken by each such entity on behalf of themselves and on behalf of each other and as agents, instrumentalities of each other and pursuant to a joint venture and common design.

42.     Hereafter, Take-Two, Majesco, 2K Games, Climax Group, and Take-Two International shall be referred to collectively as the Ghost Rider Video Game Defendants.

43.     Upon information and belief, Activision Blizzard, Inc., (f/k/a Activision, Inc.) is a Delaware corporation with a principal place of business in Santa Monica, California, and that

transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, New York, and the Southern District of New York with the intent that they have such effect.

44.     Upon information and belief, Raven Software is a subsidiary of Activision Blizzard, Inc., with a principal place of business in Madison, Wisconsin, and that transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, New York, and the Southern District of New York with the intent that they have such effect.

45.     Upon information and belief, Activision Blizzard, Inc. and Raven Software are instrumentalities, agents, alter egos, and/or and representatives of each other and the actions and inactions of each other and the actions of Activision Blizzard Inc. and Raven Software relevant to this action were taken by each such entity on behalf of themselves and on behalf of each other and as agents, alter egos, and/or instrumentalities of each other and/or pursuant to a joint venture and common design.

46.     Activision Blizzard Inc and Raven Software shall be referred to collectively as the Alliance Game Defendants.

47.     Upon information and belief, Defendants 3 Day Blinds, A & A Global Industries, ABDO Publishing, Adorable Kids, Art.com Inc., Artimonde Trading Inc., Asgard Press, AST Sportswear Inc, Becker and Mayer! LLC, Berkshire Fashions, Best Brands Consumer Products Inc., Biodome, Bowen Designs, Brown Shoes, Buster Brown & Co.,  Buy Rite Designs,  Calego International,  C& D Visionary,  Clicks Worldwide, Corbis Corporation,

Comic Images, Conopco Inc dba Unilever and Unilever Canada Inc., CSS Industries; DCL

Motion Pictures LLC, Courage Brands Inc., DCL Motion Pictures, LLC, Desperate Enterprises,

Inc, Diamond Select Toys and Collectibles LLC, Doris Kindersly Ltd, Every Picture Tells a

Story, Fantasy Flight Games, Funline Merchandise, Gamer Graphics, Gelaskins, Gentle Giant

Ltd., Graphic Imaging, Hands-On Mobile America Inc., Hewlett Packard, Hot Topic, Inc.,

Hugh, Lauter, Levin and Associates, Jago Corp. Asia Limited, JAKKS Pacific Inc., Jasman

Asia Ltd., Jay Franco & Sons Inc., JPI Acquisition Group dba Disguise Inc., Johnny Blaze

Sportswear, K2, Inc., Kellytoy (USA), Klutz, Kotobukiya, KHQ Investment LLC, KDT USA,

KSM Superhero Ltd, K S M Enterprises Inc., LaserMach Inc., Leap Year Publishing, LF USA

Inc., Lowrider Technology Group Inc., Mad Engine Inc., Maisto International Inc., Master

Replicas Inc., Mattel Inc., Mattel Europa, Mattel Asia Pacifica, Mattel Overseas, Meredith

Corporation, MCA Inc.; MGA Entertainment, Inc., Mforma Americas Inc., MForma Holdings,

Ltd., Medicom, Mighty Fine, Inc., Mob Town, Monogram International, MZ Berger and

Company, NECA Inc., The National Entertainment Collectibles Association, Inc., NMTC dba

Matco Tools, Inc., NR2B Research, Inc., NTD Apparel, Nubytech, Photo File, Inc., Planetwide

Games, Pop Culture Graphics, Inc., Rand International, Raven Software, RC2 Corporation,

Rittenhouse Archive Ltd., Sara Lee Corporation Scholastic, Inc. dba Klutz, Screenlife LLC,

Sega Corporation, Sega of America Inc., Sideshow Collectibles, Inc., Sota Toys LLC, Spencer

Reed Accessories Ltd., Spin Master Ltd., Swicherz LLC, THQ Inc., Stretch-O-Rama, Inc., Street

Flyers, TM International dba Saavi and VSI, Toy Island Manufacturing Company, Ltd., Toy

Things, Trends International LLC, Tri-Coastal Design, Tupperware Brands Corporation,

Ultimate Licensing Group LLC, Union Underwear Company, Inc d/b/a Fruit of the Loom,

Universal City, Universal Designs, Ltd., The Upper Deck Company, US Nutrition Inc.,

Vetement Adorable Too, Walgreen Company, WagerLogic Limited, Wear Me Apparel LLC, Wear Me Apparel Corp., What Kids Want, Inc., What Kids Want International, Wilton Industries Inc., Wilton Brands, Inc., Wiz Kids LLC, Yellowman LLC, York Wallcoverings, Inc., Zazzle, Inc., Zizzle Holding Limited (hereafter the "Paragraph 47 Defendants") are all entities which have copied, utilized, profited from, reproduced, prepared derivative works, distributed, displayed and/or used the copyrighted materials and state law property rights identified herein relating to the Characters and the Origin Story, from or after January 1, 2000, and did so under a claim of both themselves and Marvel that Marvel had the right and authority to license or otherwise authorize them to do so.

48.     Hereinafter, Hasbro, Ghost Rider Video Game Defendants, Alliance Game Defendants, and the Paragraph 47 Defendants, shall be referred to jointly and collectively as the "Downstream Infringers".

49.     Upon information and belief, Sony Corporation of America, (hereinafter referred to as "Sony Corporation") is a New York corporation with its principal place of business in New York, and which transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, New York, and the Southern District of New York with the intent that they have such effect.

50.     Upon information and belief, Sony Pictures Entertainment, Inc., (hereinafter referred to as "Sony Pictures") is owned by Sony Corporation, is a Delaware corporation with its principal place of business in Culver City, California, has a registered agent in the State of Illinois, and which transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described

which had effect within Missouri, Illinois, New York, and the Southern District of New York with the intent that they have such effect.

51.    Upon information and belief, Columbia Tri-Star Motion Picture Group (hereafter referred to as "Columbia Tri-Star") is managed, controlled or otherwise owned by Sony Pictures, and owns, manages or controls or is otherwise a parent company of Columbia Pictures Industries, Inc., and which transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, New York, and the Southern District of New York with the intent that they have such effect.

52.    Upon information and belief, Columbia Pictures Industries, Inc., (hereafter referred to as "Columbia Pictures") is owned by Sony Corporation and/or Sony Pictures, is a Delaware corporation with its principal place of business in Culver City, California, has a registered agent in the State of Illinois, and which transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, New York, and the Southern District of New York with the intent that they have such effect.

53.    Upon information and belief, Sony Picture Home Entertainment, Inc (formerly known as Columbia TriStar Home Video, Inc.) (hereinafter "Sony Home Entertainment"), an indirect subsidiary of Sony Pictures Entertainment, is a Delaware corporation with its principal place of business located in Culver City, California, transacts and conducts business within Missouri, Illinois, and New York, including the Southern District of New York, and which took the actions hereinafter described which had effect within Missouri, Illinois, New York, and the Southern District of New York with the intent that they have such effect.

{00311124- 1 24435-002 }                    14

54. Upon information and belief, Sony Pictures, Columbia Tri-Star, Sony Corporation, Sony Home Entertainment, and Columbia Pictures are instrumentalities, agents and representatives of Sony Pictures and/or each other and the actions and inactions of each of Sony Pictures, Columbia Tri-Star, Sony Corporation, Sony Home Entertainment, and Columbia Pictures relevant to this action were taken by each such entity on behalf of themselves and on behalf of each and as agents, instrumentalities of each other and pursuant to a joint venture and common design.

55. Hereinafter, Sony Pictures, Columbia Tri-Star, Sony Corporation, Sony Home Entertainment, and Columbia Pictures shall be referred to jointly and collectively as "Sony."

56. Upon information and belief, Crystal Sky, LLC, (hereinafter "Crystal Sky"), is a California corporation with its principal place of business in Los Angeles, California, and transacts and conducts business within the state of Illinois and the Southern District of Illinois and took the actions hereinafter described which had effect within the Southern District of Illinois with the intent that they have such effect.

57. Upon information and belief, Michael De Luca Productions, Inc., (hereinafter "De Luca"), is a California corporation with its principal place of business in Beverly Hills, California, and does transact or conduct business within the state of Illinois and the Southern District of Illinois and which took the actions hereinafter described which had effect within the Southern District of Iliinois with the intent that they have such effect.

58. Upon information and belief, Relativity Media, LLC., (hereinafter "Relativity Media,") is a California limited liability corporation with its principal place of business in West Hollywood, California, and transacts or otherwise conducts business within the state of Illinois

and the Southern District of Illinois and took the actions hereinafter described which had effect within the Southern District of Illinois with the intent that they have such effect.

59. Upon information and belief, Crystal Sky, De Luca, and Relative Media, along with Sony, took the actions set forth herein on behalf of themselves, each other, and as the agents, and instrumentalities of each other and pursuant to a joint venture and common design.

60. Hereinafter, Sony, Marvel Defendants, Crystal Sky, De Luca and Relativity Media shall be jointly and collectively referred to as the "Movie Defendants."

61. The Movie Defendants have promoted, advertised, solicited business, and, in fact, conducted and transacted business and sales in Missouri, Illinois and New York by causing a motion picture to be licensed, promoted, sold, transferred, and displayed throughout said states as well as the Southern District of New York.

62. This Court has federal jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 for claims arising under the Copyright Act, 17 U.S.C. §§ 101, et seq.

63. This Court has personal jurisdiction over each of the several Defendants in that each is transacting or otherwise conducting business throughout the States of Illinois, Missouri, and New York, and specifically, in the Southern District of New York, that each of the torts and wrongful acts were taken in or had their effect felt in the Southern District of New York and because they can be found here. By further reason, each of the Defendant's unlawful acts alleged herein were taken with the knowledge and intent that said acts would have an effect on the Plaintiffs and the public in the States of Illinois, Missouri and New York, and within the Southern District of New York.

64. Venue is proper in this District pursuant to 28 U.S.C. §1391(a), (b), and (c) and 28 U.S.C. § 1400(a).

## FRIEDRICH'S CREATION AND OWNERSHIP OF THE CHARACTERS

65.     Plaintiff Gary Friedrich conceived, developed, created, articulated, particularized, authored and brought to life Johnny Blaze/Ghost Rider out of his own creativity and endeavor and at his own instance and expense.

66.     Plaintiff Gary Friedrich also conceived, developed, created, articulated, particularized, and authored and brought to life the Origin Story out of his own creativity, endeavor, and at his own instance and expense.

67.     Plaintiff Gary Friedrich also conceived, developed, created, articulated, particularized, and authored and brought to life the Roxanne Simpson Character, the Barton Blaze Character, and the Crash Simpson Character (hereafter, along with Johnny Blaze/Ghost Rider referred to together as the "Friedrich Characters" or "Characters") out of his own creativity, endeavor, and at his own instance and expense.

68.     Plaintiff Gary Friedrich created and authored the Blaze persona and the Origin Story as a commercial, profit-making endeavor, intending to use the same for his own commercial and economic gain.

69.     Plaintiff Gary Friedrich made his intent to utilize the Characters, their personas and Origin Story for economic and commercial gain known throughout the creation process and at least as early as 1968.

70.     Plaintiff Gary Friedrich also set out to engender public recognition of the Johnny Blaze/Ghost Rider character and the related Characters and personas and of himself as the creator of the Characters and Origin story and as a comic book industry figure.

71.     Under the express language of the statutory scheme, federal copyright law does not extend to protect a fictional character in the abstract, outside of any particular storyline or work, since the character was and is an idea and concept and federal copyright law specifically

does not extend to, cover, or preempt laws dealing with the protection of ideas and concepts. Characters are thus protected under state law as a form of intangible property, if they are sufficiently novel, concrete, and detailed.

72.    Recently, however, notwithstanding the express language of the copyright statute to the contrary, in an effort to protect authors of characters, several federal courts have extended copyright protection to cover the characters contained within a copyrighted work so that a copyright over a work prevents the copying or use of the characters from it in completely different works, as well as in true copies.

73.    As set forth below, Plaintiff Gary Friedrich is the author and Gary Friedrich Enterprises is the owner and holder of the copyright over the Spotlight Work, the work which first introduced his Johnny Blaze/Ghost Rider character and related Characters, and of the copyrights covering several following comic books featuring such Characters, and thus enjoys any and all copyright protection that may exist for such Characters.

74.    However, the Blaze/Ghost Rider character and persona and the related Characters created by Gary Friedrich for the Origin Story were each, novel, original, and concrete characters and each of such Characters were fully defined, detailed, articulated, particularized, existing and complete prior to the thought of the creation of the Spotlight Work or his authorship of the Spotlight Work.

75.    Plaintiff Gary Friedrich Enterprises, as assignee from Gary Friedrich, thus also owns such Characters as protectable property interests under state law property rights and property law for all purposes, if the same are not copyrightable, and for any reasons, purposes and uses not addressed by copyright law and/or to the extent copyright law does not apply.

76. The Origin Story was also original, novel and concrete and contained defined, articulated, particularized and detailed plot points, characters, events, occurrences, motivation.

77. Gary Friedrich Enterprises thus also owns the Origin Story line as protectable property interests under state law property rights and property law for all purposes, if the same are not copyrightable, and for any reasons, purposes and uses not addressed by copyright law and/or to the extent copyright law does not apply.

78. Friedrich is and has been the owner of all right and title to the Johnny Blaze/Ghost Rider character under state law since Gary Friedrich created it.

79. Friedrich is and has also been the owner of all right and title to the other Characters under state law since Gary Friedrich created them.

80. Friedrich is and has been the owner of the storyline expressed in the Origin Story under state law since Gary Friedrich created it.

81. As noted below, Friedrich also owns and holds any and all copyrights covering such Characters.

## CREATING A COPYRIGHTED WORK STARRING JOHNNY BLAZE/GHOST RIDER

82. In 1971, as part of his efforts to yield monetary and economic gain from, and to engender public recognition of the Characters, personas, and Origin Story he had created and to increase and profit from his own public recognition, Plaintiff Gary Friedrich set out at his own instance to create, author and cause a comic book to be published and distributed featuring Johnny Blaze/Ghost Rider and the related Characters and story which he had conceived, authored and created in full and complete form.

83. To do so, in a meeting specifically initiated and requested by Gary Friedrich and arranged for the purpose of discussing the possible publication of the comic book characters and

storyline previously developed by him, Gary Friedrich outlined to the people who ran the comic book section of a company called Magazine Management, in confidence, the details of his previously created Characters and personas and the details of the Origin Story that he had previously developed, and proposed that he author a comic book featuring those Characters and telling the Origin Story, which Magazine Management would print and distribute.

84.     Magazine Management, through Stan Lee, agreed to the terms of his offer.

85.     Thereafter, Plaintiff Gary Friedrich authored the proposed comic book. Gary Friedrich utilized his existing Origin Story plot line and his existing Johnny Blaze/Ghost Rider character and the other Characters he had previously developed, writing the dialogue to convert the Origin Story into comic book format, and directing and specifying and approving how the Ghost Rider and other Characters he had previously developed would be drawn by the illustrator to ensure that they did not vary from his previously created and designed Characters.

86.     Magazine Management published the comic book work Gary Friedrich authored in 1972, as "Marvel Spotlight" Volume No 5, (the "Spotlight Work").

87.     Gary Friedrich was the motivating force behind the Spotlight Work and was the "author" of the Spotlight Work for copyright purposes and, to the degree copyrightable, was the author of all characters set forth therein for copyright purposes as well[1].

88.     Magazine Management, however, was the proprietor and holder of the copyright on the Spotlight Work for the first copyright term and it was thus published bearing the Magazine Management copyright notice. A copy of the Spotlight Work is attached hereto and incorporated herein by reference as Exhibit 1.

---

[1] Friedrich does not believe that the contributions of the illustrator rise to the level of co-authorship under copyright law and that Friedrich remains the sole author of the Spotlight Work. However, if for any reason those or other contributions were to be found to create co-authorship, Friedrich would still be, at a minimum, a joint owner of the entire Spotlight Work.

89.     The character of Johnny Blaze/Ghost Rider and other principal characters in the Spotlight Work were not changed or modified from Gary Friedrich's preexisting Characters or from the preexisting Origin Story.

90.     Other than being adapted to comic book format, the Characters in the Spotlight Work were and are identical to the Johnny Blaze/Ghost Rider persona and other Characters which were originally authored and created by Gary Friedrich at his own instance and expense years before approaching Magazine Management, and the illustrations reflected the Characters look and design previously created by Gary Friedrich and the storyline told through Gary Friedrich's dialogue for the Spotlight Work is the Origin Story that had been previously created by Friedrich.

91.     In total or large part, the description and revelation of the Johnny Blaze/Ghost Rider character was the essence of the Spotlight Work and the eleven comic books authored by Gary Friedrich which followed.

92.     The Spotlight Work is the first publication that contained Johnny Blaze/Ghost Rider.

93.     The Spotlight Work is the first publication that contained the Origin Story.

94.     Plaintiff Gary Friedrich thereafter authored several additional comic books continuing the adventures of the Johnny Blaze/Ghost Rider and related Characters and personas he had created, which were also published by Magazine Management. Each of these works was a derivative of and based on the Spotlight Work and the characters in the Spotlight and continued the Origin Story.

95.     As a matter of law, the original term for the Copyright for the Spotlight Work lasted 28 years; it thus commenced on or about April 1972 and expired on December 31, 2000.

96.     Although Magazine Management held the copyright on the Spotlight Work for that initial copyright term it never registered the same with the Copyright Office.

97.     As a result of the enactment of the Copyright Act of 1976, as a matter of law, at the expiration of the then subsisting 28-year copyright term the Copyright for the Spotlight Work and for all the characters contained therein reverted to the author of the work, Plaintiff Gary Friedrich.

98.     Accordingly, by operation of law, as of January 1, 2001, Gary Friedrich was the owner of the copyright on the Spotlight Work and, to the degree copyrightable, all of the characters set forth therein, as well as being the owner of the rights to the characters and story line under state law.

99.     Similarly, although Magazine Management held the copyrights for the subsequent works that Friedrich authored and that carried on the Origin Story, upon the expiration of the initial terms of those additional works, they also renewed in the name of, and ownership transferred by operation of law to Plaintiff Gary Friedrich.

100.    Nonetheless, without any compensation to and without any agreement, consent, or participation of Plaintiff Gary Friedrich, the Defendants, in late 2006 or early 2007, wrongfully embarked upon a high profile campaign, arrangement, joint venture and conspiracy to exploit, copy, use, utilized and profit from Plaintiffs' copyrights, the Johnny Blaze character and persona, the Origin Story, and the related characters and personas created by Plaintiff, in various endeavors, including but not limited to, the use of the same in movie theater presentations and promotions, commercials, action figure toys, video games, clothing and novels.

## COUNT I -- COPYRIGHT INFRINGEMENT UNDER 17 USC § 106, et seq. AGAINST MARVEL DEFENDANTS

Plaintiffs, for their Claim of Copyright Infringement under 17 U.S.C. 106, et seq. against the Marvel Defendants, state as follows:

101.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 100 of this First Amended Complaint as if fully set forth herein.

102.    As a result of the renewal of the copyright in Gary Friedrich's name and his resulting status as the copyright holder of the Spotlight Work, Gary Friedrich enjoyed as of the year 2001 the exclusive rights and privileges in and to the copyright covering the Spotlight Work and all the protected material contained therein, including, but not limited to, the Origin Story, all storylines and plots, all script, and all characters, including Johnny Blaze/Ghost Rider.

103.    In February 2007, Plaintiff Gary Friedrich, as the holder of the renewal in the Copyright on the Spotlight Work, applied to the United States Copyright Office to register said copyright.

104.    After analyzing and reviewing the application, the United States Copyright Office confirmed Friedrich as the author of the Spotlight Work and as the holder of the Copyright covering the entire Spotlight Work and registered such Copyright in his name.  See Certificate of Registration, attached hereto and incorporated herein as Exhibit 2.

105.    The Spotlight Work constitutes a registered work pursuant to the terms of the United States Copyright Act, with Registration Number RE 929-199.

106.    Plaintiff Friedrich is the sole author and Plaintiff Gary Friedrich Enterprises LLC is the current proprietor of all rights, title, and interest in and to the copyright for the work contained therein including, but not limited to, all storylines and plots, all script, and all images

and depictions of all characters, including Johnny Blaze/Ghost Rider, and the other Characters introduced and contained in the Spotlight Work.

107.   Nonetheless, beginning at least as early as 2006, the Marvel Defendants have directly, vicariously and contributorily infringed Plaintiffs' copyrights and have induced the other Defendants into infringing Plaintiffs' copyrights in such work.

108.   Notwithstanding the rights of Plaintiff Gary Friedrich, and without any authorization or permission, upon information and belief, Marvel has prepared derivative works and/or copied all or constituent elements of the Spotlight Work that are original and protected by copyright and/or induced, aided, assisted and cooperated with others who have done so.

109.   Upon information and belief, Marvel has violated Plaintiffs' rights under the Copyright Act by, among other things,

   a.   approaching others, including the other Defendants named herein, and contending that Marvel owned the rights to Spotlight Work and/or the characters and/or Origin Story contained therein;

   b.   approaching others, including the other Defendants named herein, and contending that Marvel had the right or authority to allow or license others to utilize or copy the Spotlight Work and/or the Origin Story or characters contained therein;

   c.   suggesting that the characters and story contained within the Spotlight Work would be suitable for copying into a feature film, action figures, video games, toys, household items, and other products and projects;

   d.   convincing such other Defendants and others to create such derivative works and copies of and utilizing the Spotlight Work, the characters or Origin Story contained therein or copies thereof;

e.    agreeing to indemnify and/or hold such Defendants and others harmless from liability if they were to produce works utilizing the Spotlight Work, any characters or Origin Story set forth therein, or any copies thereof;

f.    working with the other Defendants and others on such projects and products;

g.    claiming the ability and authority to license or exploit Plaintiffs' copyrights to them; and /or

h.    falsely affixing or instructing others to affix a copyright notice to various products, works, advertisements, promotions and publications claiming Marvel enjoyed copyright ownership of Plaintiffs' characters including Johnny Blaze/Ghost Rider and/or the Spotlight Work.

110.    Marvel had access to the Spotlight Work and each of the works and products which Marvel purported to authorize, license, contribute to, assist in, and/or allow other Defendants to produce, market and sell each bear substantial similarity to works protected under the copyright for the Spotlight Work.

111.    The actions and inactions of Marvel set forth in this Amended Complaint are violations of the exclusive rights of the Plaintiffs to license, use, reproduce copies and/or derivative works, and the purported licensing, use, distribution, performance and display of elements of the copyrighted work to the commercial advantage of Marvel as set forth herein is in violation of the Copyright Act, 17 U.S.C. 106, et seq.

112.    Plaintiffs have complied in all respects with the Copyright Act and with all of the laws of the United States governing copyright.

113.   Marvel Defendants have directly infringed Plaintiffs' copyrighted work in violation of 17 U.S.C. § 106, et seq.

114.   The Marvel Defendants are each liable as contributory infringers for, and for inducing, the acts of the direct, vicarious, and contributory infringement of the Licensee Defendants and the Movie Defendants and others who Marvel has encouraged, induced or purported to license to use Plaintiffs' copyrighted material, as set out herein, in that Marvel with knowledge of the infringing activity, induced, caused, or materially contributed to such aforementioned infringing conduct.

115.   Defendant Marvel is liable as a contributory infringer for, and for inducing the acts of infringement of all other persons they encouraged or purported to license to use the Spotlight Work, the Johnny Blaze/Ghost Rider character, the Friedrich Characters, and/or the Origin Story and any purported licensees thereof, some known and some possibly unknown, who or which copied constituent elements of the Spotlight Work and/or characters that are original and protected by copyright and which created works which bear substantial similarity to works protected under the copyright for the Spotlight Work, in that Marvel with knowledge of the aforesaid infringing activity, induced, caused, or materially contributed to the aforementioned infringing conduct.

116.   The direct, contributory, and vicarious infringement by Marvel of Plaintiffs' copyrights and Marvel's inducement of others to infringe Plaintiffs' copyrights has been willful and intentional.

117.   Marvel knowingly and willingly purported to license, reproduce, display, distribute and utilize for purposes of trade and promotion unauthorized copies or derivative versions of the Spotlight Work and its copyrighted elements.

118.   Marvel has received substantial profits and benefits attributable to and in connection with the unauthorized licensing, reproduction, display, distribution, and utilization for purposes of trade and promotion of derivative versions of the Spotlight Work and the copyrighted elements therein, and all benefits should be disgorged by the Defendant Marvel and paid to the Plaintiffs.

119.   All of the acts complained of herein were done without Plaintiffs permission, license, authorization or consent.

120.   As a result acts of Marvel alleged herein, Plaintiffs have suffered and are suffering substantial damages, including damages to goodwill and reputation, diversion of trade, loss of profits, and a dilution of the value of the Plaintiffs' rights, all of which are not yet fully ascertainable.

121.   The Marvel Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, Plaintiff's respectfully requests the Court enter judgment in their favor and against the Marvel Defendants, determine that none of the Marvel Defendants had any right, title or authority to use or purport to authorize or license others to use the Spotlight Work copyright, enjoining the Marvel Defendants and all those acting in concert with them from taking any further actions to purport to use or license the copyright covering the Spotlight Work or any characters contained therein, and awarding Friedrich :

      a.   actual damages as proven at trial for copyright infringement pursuant to 17 USC § 504 (a) (1) and (b).

b.     an amount equal to all profits, income, receipts, or other benefit derived by the Marvel Defendants (including but not limited to all license fees, royalties or other amounts) and/or by any and all persons or entities for whose infringement Marvel is vicariously or contributorily responsible or which Marvel induced into infringing activity, which were derived from the performance, reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereinafter devised, that improperly or unlawfully infringe Plaintiffs' copyright pursuant to 17 USC § 504 (a)(1) and (b).

c.     for punitive damages in an amount sufficient to punish and deter this defendant and others from the indicated and similar conduct in the future.

d.     attorneys' fees as available under the Copyright Act, 17 USC §§ 505.

e.     for costs and interest pursuant to the Copyright Act, 17 USC § 505.

f.     for other and further relief as this Court deems just and proper.

## COUNT II -- COPYRIGHT INFRINGEMENT UNDER 17 USC § 106, et seq. ARISING FROM UNAUTHORIZED CREATION AND PROFITTING FROM THE GHOST RIDER FILM (MOVIE DEFENDANTS AND MARVEL DEFENDANTS)

Plaintiffs for their claims of Copyright Infringement under 17 U.S.C. 106, et seq. against the Movie Defendants and Marvel Defendants, state as follows:

122.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 121 of this First Amended Complaint as if fully set forth herein.

123.     Notwithstanding the rights of Plaintiffs and without any authorization or permission, the Marvel Defendants and Movie Defendants have copied constituent elements of the Spotlight Work that are original and protected by copyright by creating, producing, distributing and marketing a feature length film containing such elements and the Johnny

Blaze/Ghost Rider, Roxanne, Crash Simpson and other characters. The Marvel Defendants and Movie Defendants had access to the Spotlight Work and each Defendant's works and products as set forth below bear substantial similarity to works protected under the copyright for the Spotlight Work.

124.   The Marvel Defendants and Movie Defendants, individually and in concert with one another, produced and published a movie entitled Ghost Rider (the "Ghost Rider Movie") which was released and distributed nationally and internationally on or after February 16, 2007 and which, upon information and belief, has been or shall be released to pay per view television, cable and/or satellite television networks, and on DVD and other home viewable medium.

125.   The Ghost Rider Movie incorporates and copies substantial and legally protectible elements of the Spotlight Work, the characters from the Spotlight Work including Johnny Blaze/Ghost Rider, Roxanne and Crash Simpson, and the Origin Story.

126.   The illegal copying by the Marvel Defendants and Movie Defendants as set out in this Count are violations of the exclusive rights of Plaintiffs as the sole copyright holder and the use of elements of the copyrighted work to the commercial advantage of the Marvel Defendants and the Movie Defendants as set out herein is in violation of the Copyright Act, 17 U.S.C. 106, et seq.

127.   Plaintiffs have complied in all respects with the Copyright Act and with all of the laws of the United States governing copyright.

128.   The Marvel Defendants and Movie Defendants have directly infringed Plaintiff's copyrighted work in violation of 17 USC § 106, et seq.

129.   Further, Defendant Sony is vicariously liable under the doctrine of respondeat superior for the acts of infringement of their agents, contractors and employees who or which

copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work, including but not limited to certain actors, producers, directors, screenwriters, and agents, contractors or employees who prepared, designed, performed or staged special effects scenery, acting, make up, set designs, computer or animated scenery, motorcycle or machinery, costumes or other infringing components incorporated into the Ghost Rider Movie.

130.    Defendant Sony is vicariously liable for the acts of infringement of its agents, contractors and employees who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work, including but not limited to certain actors, producers, directors, screenwriters, and agents, contractors or employees who prepared, designed, performed or staged special effects scenery, acting, make up, set designs, computer or animated scenery, motorcycle or machinery, costumes or other infringing components incorporated into the Ghost Rider Movie. Defendant Sony possessed the right and ability to supervise the aforesaid infringing conduct and Defendant Sony had an obvious and direct financial interest in the exploitation of the copyrighted materials.

131.    Defendant Sony is liable as a contributory infringer for the acts of infringement of its agents, contractors and employees, who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work and/or is liable for the acts of infringement of others who Sony induced to undertake such acts and who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work, including

but not limited to certain actors, producers, directors, screenwriters, and agents, contractors or employees who prepared, designed, performed or staged special effects scenery, acting, make up, set designs, computer or animated scenery, motorcycle or machinery, costumes or other infringing components incorporated into the Ghost Rider Movie, and/or advertising agencies or promoters, promotions of the Ghost Rider Movie and/or companies engaged in cross marketing or promotions in conjunction with the release of the Ghost Rider Movie.

132.    Defendant Sony with knowledge of the infringing activity, induced, caused, or materially contributed to the aforementioned infringing conduct.

133.    The Movie Defendants are vicariously liable under the doctrine of respondeat superior for the acts of infringement of their agents, contractors and employees who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work, including but not limited to certain actors, producers, directors, screenwriters, and agents, contractors or employees who prepared, designed, performed or staged special effects scenery, acting, make up, set designs, computer or animated scenery, motorcycle or machinery, costumes or other infringing components incorporated into the Ghost Rider Movie.

134.    The Movie Defendants are vicariously liable for the acts of infringement of their agents, contractors and employees who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work, including but not limited to certain actors, producers, directors, screenwriters, and agents, contractors or employees who prepared, designed, performed or staged special effects scenery, acting, make up, set designs, computer or animated scenery, motorcycle or machinery, costumes or other infringing components

incorporated into the Ghost Rider Movie. The Movie Defendants possessed the right and ability to supervise the aforesaid infringing conduct and the Movie Defendants had an obvious and direct financial interest in the exploitation of the copyrighted materials.

135.   The Movie Defendants are liable as contributory infringers for the acts of infringement of their agents, contractors and employees, who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work and/or is liable for the acts of infringement of others who Sony induced to undertake such acts and who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work, including but not limited to certain actors, producers, directors, screenwriters, and agents, contractors or employees who prepared, designed, performed or staged special effects scenery, acting, make up, set designs, computer or animated scenery, motorcycle or machinery, costumes or other infringing components incorporated into the Ghost Rider Movie, and/or advertising agencies or promoters, promotions of the Ghost Rider Movie and/or companies engaged in cross marketing or promotions in conjunction with the release of the Ghost Rider Movie.

136.   The Movie Defendants acted with knowledge of the infringing activity and induced, caused, or materially contributed to the aforementioned infringing conduct.

137.   The infringements by the Marvel Defendants and Movie Defendants of Plaintiffs' copyrights were undertaken in concert and as part of a joint venture or otherwise on behalf of one another so that each Defendant is jointly and severally responsible for the acts of each other.

138.    The infringements of the Marvel Defendants and Movie Defendants have been willful, intentional and in total disregard of and with indifference to Plaintiffs' rights by knowingly and willingly licensing, reproducing, displaying, distributing and utilizing for purposes of trade and promotion unauthorized copies or derivative versions of the Spotlight Work and its copyrighted elements.

139.    The Marvel Defendants and Movie Defendants have received substantial profits and benefits attributable to and in connection with the unauthorized licensing, reproduction, display, distribution, and utilization for purposes of trade and promotion of derivative versions of the Spotlight Work and the copyrighted elements therein, and all benefits should be disgorged by said Defendants and paid to the Plaintiffs.

140.    All of the acts complained of herein were done without Plaintiffs' permission, license, authorization or consent.

141.    As a result of the acts of the Movie Defendants and Marvel Defendants alleged herein, Plaintiffs have suffered and are suffering substantial damages, including damages to their goodwill and reputation, diversion of trade, loss of profits, and a dilution of the value of the Plaintiffs' rights, all of which are not yet fully ascertainable.

142.    Each of the Movie Defendants and Marvel Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment in their favor and against the Movie Defendants and Marvel Defendants, jointly and severally, and award Plaintiffs

a.    actual damages as proven at trial for copyright infringement pursuant to 17 USC § 504 (a) (1) and (b);

b.    an amount equal to all profits, income, receipts, or other benefit derived by each Defendant (including but not limited to all license fees, royalties or other amounts) and/or any and all persons or entities for whose infringement each Defendant is vicariously or contributorily responsible or which said Defendant induced into infringing activity, which were derived from the performance, reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereinafter devised, that improperly or unlawfully infringe Plaintiffs' copyright pursuant to 17 USC § 504 (a)(1) and (b);

c.    for punitive damages in an amount sufficient to deter this defendant from the indicated and similar conduct in the future;

d.    attorneys' fees as available under the Copyright Act, 17 USC §§ 505;

e.    for costs and interest pursuant to the Copyright Act, 17 USC § 505;

f.    for other and further relief as this Court deems just and proper.

**COUNT III -- COPYRIGHT INFRINGEMENT UNDER 17 USC § 106, et seq.
AGAINST THE DOWNSTREAM INFRINGERS AND THE MARVEL DEFENDANTS**

Plaintiffs for their claim of Copyright Infringement under 17 U.S.C. 106, et seq. against the Downstream Infringers and the Marvel Defendants, state as follows:

143.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 142 of this First Amended Complaint as if fully set forth herein.

144.    As the copyright holder of the Spotlight Work, Plaintiffs have the exclusive rights and privileges in and to the copyright covering the Spotlight Work, including to the extent the

same are copyrightable, the characters and story introduced, and all the protected material contained therein.

145.    Plaintiff Friedrich is the sole author and Plaintiff Gary Friedrich Enterprises LLC is the current proprietor of all rights, title, and interest in and to the copyright for the work contained therein including, but not limited to, all storylines and plots, all script, and all images and depictions of all characters, including Johnny Blaze/Ghost Rider, and the other characters introduced and contained in the Spotlight Work.

146.    Notwithstanding the rights of Plaintiffs, and without any authorization or permission, upon information and belief, the Downstream Infringers have copied constituent elements of the Spotlight Work that are original and protected by copyright. The Downstream Infringers had access to the Spotlight Work and each of said Defendants' works and products as set out below bear substantial similarity to works protected under the copyright for the Spotlight Work.

147.    Each of the Downstream Infringers sold, distributed, developed, integrated, or utilized elements of the Spotlight Work for various products, projects or services.

148.    Each of the Downstream Infringers has sold and distributed toys and other products which incorporate and copy substantial and legally protectable elements of the Spotlight Work.

149.    The illegal copying by the Downstream Infringers as set out in this Count are violations of the exclusive rights of Friedrich as the sole copyright holder and the use of elements of the copyrighted work to the commercial advantage of the Downstream Infringers as set out herein is in violation of the Copyright Act, 17 U.S.C. 106.

150.    With respect to the Spotlight Work, Plaintiffs have complied in all respects with the Copyright Act and with all of the laws of the United States governing copyright.

151.    Downstream Infringers have directly infringed Plaintiffs' copyrighted work in violation of 17 USC § 106, et seq.

152.    Through their claims to have the ability to authorize, license or otherwise permit the Downstream Infringers to violate the copyrights of Plaintiffs and other actions taken in furtherance of the actions and efforts of the Downstream Infringers, the Marvel Defendants are vicariously, contributorily and secondarily liable for the infringement of the Downstream Infringers.

153.    The Downstream Infringers are also liable as contributory, vicarious, and secondary infringers for the acts of infringement of their respective other licensees and sub-licensees, who or which copied constituent elements of the Spotlight Work that are original and protected by copyright and which bear substantial similarity to works protected under the copyright for the Spotlight Work in that each of these Defendants with knowledge of the aforesaid infringing activity, induced, caused, or materially contributed to the aforementioned infringing conduct.

154.    The infringement by the Downstream Infringers of Plaintiffs' copyright, and the Marvel Defendants' role therein, has been willful, intentional and in total disregard of and with indifference to Plaintiffs' rights by knowingly and willingly licensing, reproducing, displaying, distributing and utilizing for purposes of trade and promotion unauthorized copies or derivative versions of the Spotlight Work and its copyrighted elements.

155.    The Downstream Infringers have received substantial profits and benefits attributable to and in connection with the unauthorized licensing, reproduction, display,

distribution, and utilization for purposes of trade and promotion of derivative versions of the Spotlight Work and the copyrighted elements therein, and all benefits should be disgorged by the Defendants and paid to the Plaintiffs.

156. All of the acts complained of herein were done without Plaintiffs' permission, license, authorization or consent.

157. As a result of the acts of the Downstream Infringers and the Marvel Defendants alleged herein, Plaintiffs have suffered and are suffering substantial damages to Plaintiffs' goodwill and reputation, diversion of trade, loss of profits, and a dilution of the value of the Plaintiffs' rights, all of which are not yet fully ascertainable.

158. On information and belief, the Downstream Infringers have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with gross negligence as to indicate a wanton disregard of the rights of the Plaintiffs.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment in their favor and against the Marvel Defendants and Downstream Infringers, enjoin such Defendants and all acting in concert with them from continuing their infringing activities, and award Plaintiffs:

a.    actual damages as proven at trial for copyright infringement pursuant to 17 USC § 504 (a) (1) and (b);

b.    an amount equal to all profits, income, receipts, or other benefit derived by each of the Downstream Infringers (including but not limited to all license fees, royalties or other amounts) and/or any and all persons or entities for whose infringement each of the Downstream Infringers is vicariously or contributorily responsible or which the Downstream Infringers induced into infringing activity, which were derived from the performance, reproduction, copying, display, promotion, distribution or sale of products

and services, or other media, either now known or hereinafter devised, that improperly or unlawfully infringes Plaintiffs' copyright pursuant to 17 USC § 504 (a)(1) and (b);

      c.      for punitive damages in an amount sufficient to deter this defendant and others from the indicated and similar conduct in the future;

      d.      attorneys' fees as available under the Copyright Act, 17 USC §§ 505;

      e.      for costs and interest pursuant to the Copyright Act, 17 USC § 505;

      f.      for other and further relief as this Court deems just and proper.

## COUNT IV – NEGLIGENCE (MARVEL DEFENDANTS)[2]

159.    Plaintiffs' reallege and incorporate by reference paragraphs 1 through 158 of this First Amended Complaint as if fully set forth herein.

160.    The Marvel Defendants are in the business of, *inter alia*, capitalizing on, licensing, and authorizing others to utilize intellectual property, the rights to which one or more of the Marvel Defendants received from others.

161.    As such, the Marvel Defendants owed a duty to the holders, authors, and owners of intellectual property, including copyright holders, character owners and work creators such as and including Plaintiff Gary Friedrich, to exercise reasonable care in determining whether or not the Marvel Defendants had or have the lawful right to authorize others to utilize the intellectual property of such holders, authors and owners.

---

[2] Plaintiffs recognize that the following Lanham Act and state law claims have been dismissed by this Court over the objection of the Plaintiffs. The Plaintiffs believe that each of these claims is proper and with due respect to the prior ruling of the Court hereby reassert Counts IV through XXIII to prevent any claim of abandonment or waiver of these claims and to preserve all appellate and related rights, and to assert the right to recover for the same from the Defendants being added pursuant to this First Amended Complaint.

162.   The Marvel Defendants failed to exercise such reasonable care prior to asserting to the other Defendants and other third parties that they purportedly had the right, authority and ability to authorize such Defendants and others to utilize the intellectual property rights of Plaintiff Gary Friedrich and prior to purporting to authorize them to do so.

163.   As a result of the Marvel Defendants violations of this duty of care, Plaintiffs have suffered damages in that their intellectual property rights have been utilized by others under an apparent claim of right when no such right existed, the value of such intellectual property rights has been diminished, Plaintiffs have failed to receive a reasonable royalty for the use of intellectual property, and in other matters and respects which shall be proven at trial.

WHEREFORE, Plaintiff's requests the Court enter judgment in their favor and against the Marvel Defendants, jointly and severally, and award Plaintiffs actual damages as determined at trial, together with the costs and attorney's fees incurred in connection herewith, and such other and further relief as justice may require.

### COUNT V -- ACCOUNTING (MARVEL DEFENDANTS)

Plaintiffs for their Demand for an accounting against the Marvel Defendants, state as follows:

164.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 163 of this First Amended Complaint as if fully set forth herein.

165.   The Marvel Defendants, upon information and belief, have purported to have authority to license or otherwise authorize others to utilize, copy or otherwise profit from the Johnny Blaze/Ghost Rider character and the other "Friedrich Characters," the Origin Story and/or the Spotlight Work, in exchange for the payment to one or more of the Marvel Defendants of payments or other benefits.

{00311124- 1 24435-002 }                                    39

166.    The Marvel Defendants had no right to authorize others to utilize, copy or otherwise profit from the Friedrich Characters, the Origin Story or the Spotlight Work, or to receive payments or benefits in exchange therefore.

167.    Plaintiffs have no ability to determine the complete list of parties to whom the Marvel Defendants have purported to grant such authorization or the amounts which Marvel Defendants have or will receive in conjunction therewith absent a full accounting.

168.    Plaintiff Friedrich Enterprises is the sole owner of the Spotlight Work copyright. However, in the alternative, should any of the Marvel Defendants claim and somehow establish themselves as joint owners, and were somehow able to claim and establish a right to license others to use the copyright without Plaintiffs' permission, Plaintiffs would still be entitled to an accounting of half the monies received by the Marvel Defendants from such activity and to all the monies received from any purported licensing not based on the copyrighted work.

WHEREFORE, Plaintiffs request the Court to enter judgment in their favor and against all Marvel Defendants and to order each of the Marvel Defendants to provide a full accounting of any and all monies received or to be received from or in connection with the Origin Story, the Spotlight Work, and/or the Friedrich Characters, to determine Plaintiffs' fair share thereof, and to award such amount to the Plaintiffs, along with their costs and attorneys fees and such other relief as justice may require.

## COUNT VI – WASTE (MARVEL DEFENDANTS)

Plaintiffs for their claim for waste against the Marvel Defendants, states as follows:

169.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this First Amended Complaint as if fully set forth herein.

170.   The Marvel Defendants have failed to properly utilize and capitalize on the Spotlight Work, the Origin Story, and the Characters contained therein.

171.   In its attempt to capitalize on the Spotlight Work, the Marvel Defendants have damaged the worth and value of the Work and the Copyright covering it, and failed to take reasonable steps to promote, protect, and achieve greater benefits, fees, and results, and has accepted less than a reasonable royalty under the circumstances from persons to whom the Marvel Defendants purported to license that copyright.

172.   As a result, Friedrich has been harmed in the underutilization and improper use of his property interests and the failure to gain greater fees and royalties from its use, and in that he will be unable to earn as much from the same in the future.

173.   The Marvel Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against the Marvel Defendants for all harm incurred as a result of the waste of their property rights and interests in the Spotlight Work and their property rights contained therein, including, without limitation, all sales, income and profit earned by Defendants thereon, all pre and post judgment interest obtained therein, all costs incurred as a result of this action, for punitive damages in an amount sufficient to punish and deter this defendant and others from the indicated and similar conduct in the future, economic harm and damages in failing to properly utilize the works, and all other remedies this Court deems just and proper.

## COUNT VII -- TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS EXPECTANCY (MARVEL DEFENDANTS)

Plaintiffs, for their claim for tortious interference with prospective business expectancy against the Marvel Defendants, state as follows:

174.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 173 of this First Amended Complaint as if fully set forth herein.

175.    Friedrich, as the author, creator, and owner of the Origin Story, the Friedrich Characters, the Spotlight Work copyright, and/or all elements in the Spotlight Work, and as author and scripter for the first twelve issues featuring Johnny Blaze/Ghost Rider and the copyrights thereon, had a reasonable expectancy of entering into valid business relationships with third parties to obtain business, goodwill, and other pecuniary interests associated with the use of his property interests and the Spotlight Work.

176.    The Marvel Defendants knew or had reason to know that Friedrich would be entitled to and would have received substantial financial payment and business relationships from third parties on account of their ownership of the Characters and story of Johnny Blaze/Ghost Rider.

177.    The Marvel Defendants purposefully and intentionally interfered with Plaintiffs' business and economic expectancy from ripening into a valid business relationship by taking the wrongful actions and inactions set forth above.

178.    Plaintiffs have been harmed through the loss of business, including the loss of reasonable royalties, profits, revenues, and creative control over derivative works and other projects, resulting from the purposeful and intentional acts of the Defendants.

179.    The Marvel Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against the Marvel Defendants for all harm incurred as a result of the wrongful interference with the business expectancy of the Plaintiffs, including, without limitation, all sales, income and profit earned by the Defendants thereon, for punitive damages in an amount sufficient to punish and deter this Marvel Defendants and others from the indicated and similar conduct in the future, all pre and post judgment interest obtained therein, all costs incurred as a result of this action and all other remedies that this Court deems just and proper.

## COUNT VIII – STATE LAW MISAPPROPRIATION OF CHARACTERS AND OF RIGHT TO CONTROL USE OF SAME (ALL DOWNSTREAM INFRINGERS)

Plaintiffs for their claim for misappropriation of the Johnny Blaze/Ghost Rider persona and related Characters directed at each of the Downstream Infringers state as follows:

180.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 179 of this Complaint as if fully set forth herein.

181.    As stated previously, Plaintiff Friedrich created and has owned the Friedrich Characters and the rights to control the use of the same, under state law

182.    The idea of such personae for fictional characters was not free and available to all, but rather was kept with Friedrich as he outlined and developed the ideas on his own over a period of years.

183.    Whenever Friedrich discussed or disclosed the Friedrich Characters, he did so in trust and confidence and with the understanding that he was not abandoning his claims to ownership of the same or contributing the same to the public, but was rather developing the same and intending to use the same for his own commercial and proprietary purposes.

184.   Ultimately, when Friedrich disclosed the Friedrich Characters for the purposes of creating a work that would be distributed to the pubic, he still disclosed the same under confidence, in a fiduciary and/or confidential relationship with Magazine Management and did so for the limited purpose of creating the Spotlight Work and subsequent comics continuing the Origin Story.

185.   The disclosure of Johnny Blaze/Ghost Rider was done by Friedrich on his own fruition and done under no obligation or compulsion to.

186.   At all times relevant hereto, the Downstream Infringers were aware that the ideas and originality of the Characters were not in the public domain and that Friedrich had disclosed the Characters and Origin Story to Magazine Management in a manner intended to preserve such Characters and Origin Story and to prevent it from going into the public domain.

187.   At no time were any of the Defendants herein granted the right by Friedrich to utilize the Characters for any purpose.

188.   At all times relevant to this Complaint, the Characters were specific, novel, original and unique in absolute terms, and constituted a property interest pursuant to state law.

189.   Each of the Downstream Infringers have, without right, authority or permission, each created, marketed, sold and profited from various products that utilize, capitalize, copy, promote, and benefit from the Characters, and which are not  based, on, copied from, or derivative from any copyrighted work or storyline.

190.   By taking the actions set forth in this Complaint, the Downstream Infringers have each improperly appropriated the benefits of the Friedrich Characters, the originality contained within such Characters, and Plaintiffs' right to control the use thereof to themselves, without the consent or authority of the Plaintiffs.

{00311124- 1 24435-002 }                                44

191.    Such Defendants wrongful misappropriation has caused Defendants to each improperly profit and caused the Plaintiffs' harm

192.    The Downstream Infringers have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs' demand judgment against each of the Downstream Infringers for all harm incurred as a result of each Defendant's wrongful misappropriation of the originality of the Plaintiffs' property interests in the Friedrich Characters, including the failure to receive a reasonable royalty for the use of the same, together with pre and post judgment interest, for punitive damages in an amount sufficient to punish and deter this defendant and others from the indicated and similar conduct in the future, attorneys fees, all costs incurred as a result of this action and all other relief this Court deems just and proper.

## COUNT IX – NEGLIGENCE (ALL DEFENDANTS)

Plaintiffs, for their claim of negligence against all Defendants, states as follows:

193.    The allegations of Paragraphs 1 through Paragraph 192 of this First Amended Complaint are incorporated herein by reference the same as if fully set forth herein.

194.    Defendants are each in the business of creating products or offering services based in whole or in part on the creative innovations, creations and works of others, including copyrights, state law property rights and other intellectual property of others.

195.    In conjunction with such business, each of such Defendants owes the true creators and owners of such rights and intellectual property a duty to reasonably investigate any claim of

a third person purporting to offer the rights to exploit any such items or intellectual property to insure that such third person actually has the authority to license, transfer or assign the rights involved.

196.    In the instant case, each Defendant violated and breached such duty by failure to take reasonable steps to determine whether or not the Marvel Defendants actually had the right, ability and authority to authorize such Defendants to exploit, utilize, copy and profit from the characters, origins, story, and Spotlight Work of Plaintiffs.

197.    As a result of Defendants violations and breach of their duties to Friedrich, Friedrich has been damaged in that their intellectual property rights have been utilized by others under an apparent claim of right when no such right existed, the value of such intellectual property rights have been diminished, Plaintiffs have failed to receive a reasonable royalty for the use of their intellectual property, and in other matters and respects which shall be proven at trial.

WHEREFORE, Plaintiffs request the Court enter judgment in their favor and against the Defendants, jointly and severally, and award Plaintiffs actual damages as determined at trial, together with the costs and attorney's fees incurred in connection herewith, and such other and further relief as justice may require.

## COUNT X – MISAPPROPRIATION OF JOHNNY BLAZE/GHOST RIDER PERSONAS AND RELATED CHARACTERS AND ORIGIN STORY AND RIGHT TO CONTROL USE OF SAME

Plaintiffs, for their claim for misappropriation of the Johnny Blaze/Ghost Rider persona and related characters and the Origin Story directed at all Defendants, state as follows:

198.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 197 of this First Amended Complaint as if fully set forth herein.

199.   As stated previously, Gary Friedrich created and one of the Plaintiffs has owned the Friedrich Characters and the rights to control the use of the same, under state law.

200.   The idea of such personas for fictional characters was not free and available to all, but rather was kept with Friedrich as he outlined and developed the ideas on his own over a period of years.

201.   Whenever Friedrich discussed or disclosed the Characters, he did so in trust and confidence and with the understanding that Plaintiffs were not abandoning his claims to ownership of the same or contributing the same to the public, but was rather developing the same and intending to use the same for his own commercial and proprietary purposes.

202.   Friedrich also created and Plaintiffs or one of them have owned the rights to the Origin Story since Friedrich created the same, and kept said rights as he outlined and developed the idea as his own and did not make any part free or available to all, and only discussed the same with others in trust and confidence and with the understanding that Plaintiffs were not abandoning his claim of ownership or contributing the same to the public but was rather developing the same for use for commercial and proprietary purposes.

203.   Ultimately, when Friedrich disclosed the Characters and Origin Story for the purposes of creating a work that would be distributed to the pubic, he still disclosed the same under confidence, in a fiduciary and/or confidential relationship with Magazine Management and did so for the limited purpose of creating the Spotlight Work and subsequent comic books.

204.   The disclosure of Johnny Blaze/Ghost Rider was done by Friedrich on his own fruition and done under no obligation or compulsion.

205.   At all times relevant hereto, Defendants were aware that the ideas and originality of the Characters were not in the public domain and that Friedrich had disclosed the Characters

and Origin Story to Magazine Management in a manner intended to preserve such Characters and Origin Story and to prevent it from going into the public domain.

206.    At no time were any of the Defendants herein granted the right by either Plaintiff to utilize the Characters or Origin Story for any purpose.

207.    At all times relevant to this Complaint, the Characters and the Origin Story were specific, novel, original and unique in absolute terms, and were never commercially available and constituted a property interest pursuant to state law.

208.    The Defendants herein have wrongfully and without permission utilized the idea and originality of the Friedrich Characters in manners and ways that are not based on any copyrighted depiction of them and which exist outside of any storyline or other reduction to tangible form.

209.    By taking the actions set forth in this Complaint, the Defendants have improperly appropriated the benefits of the Friedrich Characters and Origin Story, the originality contained within such Characters and Origin Story and Plaintiffs right to control the use thereof to themselves, without the consent or authority of Plaintiffs.

210.    Defendants' wrongful misappropriation has caused Defendants to each improperly profit and has caused the Plaintiffs harm.

211.    Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, the Plaintiffs demand judgment against Defendants for all harm incurred as a result of such Defendant's wrongful misappropriation of the originality of the Plaintiffs property interests in the characters of the Origin Story and

{00311124- 1 24435-002 }                    48

Friedrich Characters and the disgorgement of the amounts received by the Marvel Defendants from any and all sales, income and profit earned in conjunction with any use of the Origin Story or Characters including any licensing fees obtained by Defendants Marvel, together with pre and post judgment interest, for punitive damages in an amount sufficient to deter these Defendants and others from the indicated and similar conduct in the future, attorneys fees, all costs incurred as a result of this action and all other relief this Court deems just and proper

## COUNT XI -- UNAUTHORIZED USE OF PUBLIC RECOGNITION/PUBLICITY OF THE JOHNNY BLAZE/GHOST RIDER AND RELATED CHARACTERS PERSONAS

Plaintiffs for their claim of unauthorized use of public recognition and publicity of the Johnny Blaze/Ghost Rider and related Characters against all Defendants, states as follows:

212.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through Paragraph 211 of this First Amended Complaint as if fully stated herein.

213.    The Defendants have used the personas and identities of the Friedrich Characters and the public's recognition of them.

214.    Such use was without consent.

215.    Such use was made with intent to obtain a commercial advantage.

216.    Defendants' actions have caused Plaintiffs to lose the benefits of Friedrich's work in creating a publicly recognizable persona and have resulted in pecuniary loss to Plaintiffs and in an unjust pecuniary gain to Defendants.

217.    The Defendants acted knowingly, willfully and with evil motive or reckless disregard in the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request the Court to enter judgment in their favor and award damages against all Defendants, jointly and severally, award punitive damages in an amount sufficient to deter these Defendants and others from the indicated and similar conduct in the future and such other relief as the Court deems just and proper.

### COUNT XII -- CONVERSION

Plaintiffs, and for their claim for conversion against the Marvel Defendants, states as follows:

218.    Friedrich realleges and incorporates by reference paragraphs 1 through 217 of this First Amended Complaint as if fully set forth herein.

219.    At all times relevant to this Complaint, the Plaintiffs were, have been, and are the rightful owner of the copyright on the Spotlight Work, and of the Origin Story and the Friedrich Characters.

220.    The Marvel Defendants wrongfully, intentionally, and improperly exercised dominion and control over the originality and novelty of Friedrich's property interests (and the Spotlight Work, and the property interest contained therein), and has converted the same for its own benefit, promotion, use, sale, and profit.

221.    Demand was and is hereby made that the Marvel Defendants cease the exercise of such dominion and control, but such Demand was useless and ignored.

222.    The Marvel Defendants took the aforementioned actions and inactions with evil motive and/or reckless indifference to the rights of the Plaintiffs, and willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with

such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against the Marvel Defendants for all harm incurred as a result of the conversion of the originality of the Plaintiffs' Spotlight Work, the Origin Story and the Friedrich Characters, the disgorgement of all sales, income and profit earned by the Defendants, costs, and attorneys fees, punitive damages sufficient to punish and deter these Defendants and others from similar conduct, pre and post judgment interest obtained therein and all other remedies that this Court deems just and proper.

## COUNT XIII -- TRESPASS TO CHATTELS

Plaintiffs, for their claim for trespass to chattels against the Marvel Defendants, state as follows:

223. Plaintiffs reallege and incorporate by reference paragraphs 1 through 222 of this First Amended Complaint as if fully set forth herein.

224. Marvel intentionally invaded the exclusive possession of Friedrich in using or interfering with the possession of the property rights and interests of Friedrich, including the Spotlight Work, the Origin Story and the Friedrich Characters.

225. Plaintiffs have protectible interests in the possession of their property rights and interests.

226. Plaintiffs have been damaged and caused harm as a result.

227. The Marvel Defendants took the aforementioned actions and inactions with evil motive and/or reckless indifference to the rights of others and willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against Defendant Marvel for all damages incurred as a result of the trespass to Plaintiffs property interests, including the Spotlight Work, the Origin Story and the Friedrich Characters, including the disgorgement of all sales, income and profit earned by the Defendants, costs, and attorneys fees, punitive damages sufficient to punish and defer these Defendants from similar conduct and pre and post judgment interest obtained therein and all other remedies that this Court deems just and proper.

## COUNT XIV -- VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT / ILLINOIS COMMON LAW UNFAIR COMPETITION

Plaintiffs for their claims of Violations of the Illinois Uniform Deceptive Trade Practices Act against all Defendants, state as follows:

228.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 227 of this First Amended Complaint as if fully set forth herein.

229.   The actions by the Movie Defendants in trade and commerce in portraying, promoting, or otherwise disseminating the Ghost Rider Movie based on the Spotlight Work has caused confusion or misunderstanding as to whether or not Friedrich is the source of, or has otherwise sponsored or approved of the use of his characters and story therein, and thus each has made misleading or untruthful statements for the purpose of commercial advertising or promoting a party's goods, services or commercial activities and misrepresented the nature and origin of Johnny Blaze/Ghost Rider.

230.   The actions by the Marvel Defendants and Downstream Infringers in trade and commerce in portraying, promoting, or otherwise disseminating products and goods based on the Spotlight Work has caused confusion or misunderstanding as to whether or not Friedrich is the

source of, or has otherwise sponsored or approved of the use of his characters and story therein and thus each has made misleading or untruthful statements for the purpose of commercial advertising or promoting a party's goods, services or commercial activities and misrepresented the nature and origin of Johnny Blaze/Ghost Rider.

231.   Defendants' actions constitute unfair competition and deceptive trade practices proscribed by the laws of the State of Illinois, specifically § 815 ILCS 510/ et seq.

232.   The deceptive conduct by the Defendants has caused and will continue to cause a likelihood of confusion or misunderstanding as to the affiliation or association of Friedrich and disparage the business and goodwill of the Plaintiffs by providing consumers with false and misleading information.

233.   As a result of Defendants' acts of unfair competition as alleged above, Plaintiffs will suffer and has suffered a loss of business, profits, goodwill, and reputation in amounts that are yet unascertained, and Defendants are liable to Plaintiffs for costs and attorney fees, in addition to all injunctive relief pursuant to law.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against the Defendants as a result of their deceptive practices and relief for all harm incurred as a result of the wrongful misappropriation and use of the Plaintiffs' Spotlight Work and property interests, and demand costs and attorneys fees, and any other relief this Court deems just and proper.

## COUNT XV -- VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 et seq.

Plaintiffs for their claims of violations of the Illinois Consumer Fraud and Deceptive Business Practices Act against Defendants Hasbro, Sony, Marvel, the Movie Defendants and Take-Two, state as follows:

234.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 233 of this First Amended Complaint as if fully set forth herein.

235.    The acts and conduct of the Defendants as alleged in this Complaint constitute unfair competition as defined by 815 ILCS 505/, et seq.

236.    The acts, practices, and conduct of the Defendants as stated herein, constitute unfair and deceptive business practices and consumer fraud in violation of 815 ILCS 505/1 et seq., in that said acts and practices were committed in the course of trade and commerce and led the public to conclude based upon the portrayal, advertisements, offerings, distribution, marketing, promotions, and dissemination of the copyrighted elements of the Spotlight Work, that said acts were sponsored, authorized, or otherwise consented to by Friedrich, to the damage and harm of the Plaintiffs.

237.    In portraying, releasing, advertising, and promoting the Ghost Rider Movie and associated merchandise and goods, the Defendants deceived the public into believing that it owned the story and characters to Friedrich's work.  Defendants intentionally and falsely represented that they owned the rights, title and interest to the Spotlight Work and all elements contained therein, all to the detriment and shock of the Plaintiff Gary Friedrich.

238.    Marvel and the other Defendants misrepresented, concealed, and omitted material facts to the public as to the actual creator and owner of the Spotlight Work and whether or not Friedrich tacitly approved or otherwise consented to the movie version of his story and characters.

239.    As a proximate result of the acts, practices, and conduct of the Defendants, Friedrich has been and will likely continue to be damaged and harmed by a loss to his business

expectancy, good-will, and reputation, whereas the Defendants have obtained an illegal gain of profits.

240.   Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, the Plaintiffs demand judgment against Defendants Hasbro, Sony, Marvel, the Movie Defendants, and Take-Two for all harm incurred as a result of the deceptive practices and wrongful misappropriation of the originality and novelty of the property interest of the Plaintiff, including, without limitation, all sales, income and profit earned by the Defendants thereon, all pre and post judgment interest obtained therein, punitive damages in an amount to punish and deter Defendants and others from similar conduct, all costs incurred as a result of this action and all other relief this Court deems just and proper.

### COUNT XVI -- VIOLATIONS OF THE LANHAM ACT, 15 U.S.C. 1125, FOR FALSE ADVERTISING, FALSE ENDORSEMENT AND/OR UNFAIR COMPETITION AGAINST THE MOVIE DEFENDANTS, THE DOWNSTREAM INFRINGERS AND THE MARVEL DEFENDANTS

Plaintiffs, for their claims of violations of the Lanham Act under 15 U.S.C. 1125 against the Movie Defendants, the Downstream Infringers, and the Marvel Defendants, state as follows:

241.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 240 of this First Amended Complaint as if fully set forth herein.

242.   In pertinent part, 15 U.S.C. 1125 §43(a) provides as follows:

(a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. See 15 U.S.C. § 1125, §43.

243.     The Movie Defendants, Downstream Infringers and Marvel Defendants intentionally, wilfully, knowingly and wrongfully, are using, advertising and selling the originality of their products by claiming their products were and are produced solely by themselves and those listed on their products or packaging materials and/or are based on the "Marvel Comics" and by thus falsely designating the originality as their own and the products as solely their own.

244.     By so doing, such Defendants are causing mistake, confusion and deception as to the true origin of such products and the originality of such products, and have falsely and deceptively advertised and promoted such products.

245.     Such Defendants have also intentionally, willfully, knowingly and wrongfully advertised, distributed and promoted elements and characters of the Origin Story, Spotlight Work, and the Characters including without limitation the ideas, concepts, themes, text and plot contained therein, and derivatives thereof, without the consent, express or implied, permission, or authorization of the Plaintiffs and as such, have misrepresented the nature, characteristics and qualities of Friedrich's activities, goods and commercial activities.

246.     On information and belief, consumers have been confused as to the origins of the Defendants' products which have been falsely attributed to be solely the works of Defendants.

247.    Plaintiffs have been and will continue to be injured as a result of the false advertisements made by said Defendants, and their agents and representatives, in the loss of sales, profits, royalties, lost expectancies, and revenues they were and are otherwise entitled to, and by the loss of goodwill that is associated with his property interests.

WHEREFORE, Plaintiffs request the Court enter judgment in their favor and against the Defendants and make an award to Plaintiffs:

a.    For actual damages pursuant to 15 U.S.C. 1117 (a) (2).

b.    For an accounting of all profits, income, receipts, or other benefit derived by Defendants pursuant to 15 U.S.C. 1117 (a) (1).

c.    For a reasonable royalty,

d.    Treble damages and an amount to be determined by this Court to be just under 15 U.S.C. 1117 (a) (3).

e.    Attorneys' fees as available under 15 U.S.C. 1117 (a) (3).

f.    For costs as available under 15 U.S.C. 1117 (a) (3).

g.    For other and further relief as this Court deems just and proper.

## COUNT XVII -- CIVIL CONSPIRACY

Plaintiffs for their claim for civil conspiracy directed at all Defendants state as follows:

248.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 247 of this First Amended Complaint as if fully set forth herein.

249.    Each of the Defendants, on its own motive, knowingly and voluntarily participated in a common scheme to use the Spotlight Work, the Friedrich Characters and/or the Origin Story and/or the originality contained therein, to which each knew was owned by Friedrich, for their own commercial advantage by engaging in the wrongdoing noted above and

{00311124-1 24435-002 }                            57

in timing their improper activities in such a manner as to cross market and benefit from the similar wrongdoings of the other Defendants.

250.    Each performed overt acts in furtherance of said agreement to illegally utilize, sell, and unlawfully distribute and transfer various products and merchandise which contained copyrightable elements of the Spotlight Work and infringed upon the state rights property rights in the Friedrich Characters and Origin Story.

251.    That said unlawful activity has caused monetary and economic harm to Friedrich.

252.    Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, the Plaintiffs request the Court enter judgment in their favor and against Defendants, jointly and severally, and award Plaintiffs their actual damages, including a reasonable lost royalty, for such loss and/or an amount equal to the profits, revenues and sales wrongfully earned by defendants, pre and post judgment interest costs incurred as a result of this action, punitive damages, attorneys fees, and everything else this Court deems just and proper.

## COUNT XVIII -- IMPOSITION OF A CONSTRUCTIVE TRUST

Plaintiffs for their demand for the imposition of a constructive trust against all Defendants state as follows:

253.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 252 of this First Amended Complaint as if fully set forth herein.

254.    Defendants, by reason of the allegations stated herein, have engaged in deceptive, fraudulent, and illegal conduct whereby Defendants are retaining profits from the sales of items

based on the copyrighted materials in the Spotlight Work and/or the state law protected Friedrich Characters and Origin Story.

255.    Defendants had no authority to undertake the action that lead to such profits and Plaintiffs were the sole persons entitled to earn such profits.

256.    By virtue of their acts, Defendants hold illegal profits as constructive trustees for the benefit of the Plaintiffs.

257.    Plaintiffs are not currently aware of where the Defendants are depositing said illegal profits obtained from the Defendants wrongful acts against the Plaintiffs and the public.

258.    Friedrich is entitled to the immediate possession of said illegal profits.

WHEREFORE, for the foregoing reasons, the Plaintiffs demands judgment against Defendants for all harm incurred as a result of the infringement and wrongful misappropriation of the originality of the Plaintiffs Spotlight Work including, without limitation, all sales, income and profit earned by the Defendants thereon, all pre and post judgment interest obtained therein, all costs incurred as a result of this action, and all other remedies this Court deems just and proper.

## COUNT XIX – UNJUST ENRICHMENT

Plaintiffs, and for their claim for unjust enrichment against the Marvel Defendants, state as follows:

259.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 258 of this First Amended Complaint as if fully set forth herein.

260.    As a result of the foregoing actions and inactions of the Marvel Defendants, Marvel Defendants has been improperly benefited and Plaintiffs have suffered detriment.

261.    Under the circumstances it would be unjust for Marvel Defendants to retain the benefits of their illegal, improper and unauthorized use of the property rights of Plaintiffs.

262.    Defendants have unjustly received financial payments, and the benefits of goodwill, notoriety and publicity associated with the property rights of the Plaintiff to the detriment of the Plaintiffs.

WHEREFORE, for the foregoing reasons, the Plaintiffs demand judgment against the Marvel Defendants for all harm incurred as a result of the wrongful misappropriation of the originality and novelty of the property interest of the Plaintiff, and the benefit conferred to the Marvel Defendants to the detriment of the Plaintiff, including, without limitation, all sales, income and profit earned by the Marvel Defendants thereon, all pre and post judgment interest obtained therein, all costs incurred as a result of this action and all other remedies this Court deems just and proper.

## COUNT XX – TORTIOUS INTERFERENCE WITH RIGHT OF PUBLICITY

Plaintiffs, for their claim of Tortious Interference with Right of Publicity against all Defendants, state as follows:

263.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 262 of this First Amended Complaint as if fully set forth herein.

264.    All Defendants herein knew or should have known that, as the creator of Johnny Blaze/Ghost Rider and other comic characters and the writer of many other comic book series, Plaintiff Friedrich has an established identity and persona with a commercial and pecuniary value in demand in comics books circles, and elsewhere.

265.   Defendants knew that promotion and advertisement of Plaintiff Friedrich's creation of Ghost Rider in conjunction with the products, film, and other ventures of Defendants, and utilizing and capitalizing on the Friedrich Characters, the Origin Story and/or the Spotlight Work, would significantly the value of Friedrich's endorsements and the pecuniary value of his persona and identity for commercial purposes.

266.   Defendants nonetheless intentionally and wrongfully took the above noted wrongful and unauthorized acts, made products without Plaintiffs' participation or approval, failed and refused to credit or acknowledge Friedrich's association with Ghost Rider and took efforts to distance Plaintiffs from Ghost Rider products in the minds of the public.

267.   Defendants did so with the intent and/or foreseeable effect of interfering with Plaintiffs' reasonable expectations that the value of the public recognition of Friedrich and his right of publicity would increase as the result of the release of a theatrical film based on the Spotlight Work and/or the creation of other products based on the Spotlight Work or the Friedrich Characters or Origin Story, and that Friedrich's worth as a speaker, author, and endorser would have dramatically increased

268.   As a result of the Defendants actions and inactions, Plaintiffs have been harmed, including damages to Friedrich's goodwill and reputation, diversion of trade, loss of profits, and a dilution of the value of the Plaintiffs' rights.

269.   Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against all Defendants for all harm incurred as a result of the tortious interference with the right of publicity

of the Plaintiffs, including, without limitation, all sales, income and profit earned by the Defendants thereon, all pre and post judgment interest obtained therein, damages for the loss of revenues to the Plaintiffs, punitive damages in an amount to punish and deter Defendants and others from similar conduct, all costs incurred as a result of this action and all other remedies that this Court deems just and proper.

## COUNT XXI -- ACCOUNTING (ALL DEFENDANTS)

Plaintiffs, for their Demand for an accounting against the Defendants, state as follows:

270.    Plaintiffs' reallege and incorporate by reference paragraphs 1 through 269 of this First Amended Complaint as if fully set forth herein.

271.    The Defendants, upon information and belief, have purported to have a right to utilize, copy or otherwise profit from the Johnny Blaze/Ghost Rider character and the other "Friedrich Characters," the Origin Story and/or the Spotlight Work.

272.    Each Defendant had no right to utilize, copy or otherwise profit from the Friedrich Characters, the Origin Story or the Spotlight Work, or to receive payments or benefits in exchange therefore.

273.    Plaintiff Friedrich Enterprises, LLC, has no ability to determine what amounts have been received or will be received in conjunction therewith absent a full accounting.

WHEREFORE, Plaintiffs request the Court to enter judgment in their favor and against all Defendants and to order each of the said Defendants to provide a full accounting of any and all monies received or to be received from or in connection with the Origin Story, the Spotlight Work, and/or the Friedrich Characters, to determine Plaintiffs fair share thereof, and to award such amount to the Plaintiffs, along with their costs and attorneys fees and such other relief as justice may require.

## DEMAND FOR A TRIAL BY JURY.

Plaintiffs hereby respectfully request a trial by jury for all claims and issues raised in his Complaint that may be entitled to a jury trial.

ROTH EVANS, P.C.

By: _____
Eric W. Evans
Dawn O'Leary
2421 Corporate Centre Dr., Ste. 200
Granite City, IL 62040
618/931-5000

RIEZMAN BERGER, P.C.

Charles S. Kramer
Joseph D. Schneider
7700 Bonhomme, 7th Floor
St. Louis, MO 63105
314/727-0101

SIMON LESSER, P.C.

Leonard F. Lesser
420 Lexington Avenue
New York, NY 10170
212/599-5459

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the above First Amended Complaint was served upon the attorneys of record by enclosing same in an envelope addressed to such persons at the address listed below with postage prepaid and by depositing said envelope in a U.S. Post Office Mail box in Granite City, Illinois on this 25th day of March, 2011:

David Fleischer
Sarah Jacobson
Haynes and Boone LLP
30 Rockefeller Plaza
26th Floor
New York, New York 10112

Jodi A. Kleinick
Paul Hastings Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022

64