```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
GARY FRIEDRICH ENTERPRISES, LLC    :   08 Civ. 1533 (BSJ) (JCF)
and GARY FRIEDRICH,                :
                                   :        MEMORANDUM
            Plaintiffs,            :        AND ORDER
                                   :
    -against-                      :
                                   :
                                   :
MARVEL ENTERPRISES, INC., et al.,  :
                                   :
            Defendants.            :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

This is a copyright infringement action in which Gary Friedrich Enterprises, LLC and its principal, Gary Friedrich, allege that the defendants misappropriated characters and story elements developed by Mr. Friedrich when they created and distributed the movie "Ghost Rider" and related merchandise. The plaintiffs have moved by letter for an order reopening the deposition of a third-party witness, Roy Thomas, a former employee of defendant Marvel Entertainment, LLC (sued here as Marvel Enterprises, Inc.) ("Marvel"), at Marvel's expense. For the reasons set forth below, the motion is denied.

Background

The plaintiffs allege that Mr. Friedrich "conceived, developed, created, articulated, particularized, authored and brought to life" the comic book character known as Ghost Rider, his alter ego Johnny Blaze, and the character and story elements that formed the basis for the original Ghost Rider comic book (the "Spotlight Work") and subsequent series of comic books authored by

1

Mr. Friedrich and published by Magazine Management, the former owner of Marvel Comics. (First Amended Complaint ("Compl."), ¶¶ 65-67, 91, 94; Transcript of Deposition of Roy Thomas dated April 12-13, 2011 ("Thomas Dep.") at 15). The plaintiffs claim that, in 1971, Mr. Friedrich conceived of all of the elements of the Ghost Rider series independently and for his own profit, and then initiated a meeting in which he persuaded Magazine Management to publish comic books based on this idea. (Compl., ¶¶ 82-84). The plaintiffs concede that Magazine Management owned the copyright for the Spotlight Work for the first twenty-eight years following its publication, but argue that, after that period, the copyright "reverted to the author of the work," Gary Friedrich. (Compl., ¶¶ 95-98). Marvel argues, in contrast, that "Friedrich and several other individuals engaged by MMC made creative contributions to" the Spotlight Work and that it was a "work[] made for hire" for which Marvel has been and continues to be the exclusive copyright holder. (Counterclaims, ¶¶ 14-15).

Roy Thomas was employed by Marvel Comics from 1965 to 1980, working as a writer, editor, and, for some time, editor-in-chief. (Thomas Dep. at 15, 176-86). Mr. Thomas is also a longtime friend of Mr. Friedrich and was responsible for helping Mr. Friedrich to get a job at Marvel Comics in 1966. (Thomas Dep. at 12, 29-32, 137). Mr. Thomas participated in the creation of the Spotlight Work and thus his testimony is highly relevant to resolving the factual dispute at the heart of this action. (Thomas Dep. at 46-50, 55-57, 63-66, 69-70, 87-98). Mr. Thomas was deposed in

2

connection with this case on April 12 and 13, 2011; at his deposition, he was asked several questions regarding his interactions with the attorneys representing Marvel, which those lawyers directed him not to answer on the ground that the substance of the communications are protected by the attorney-client privilege. (Thomas Dep. at 100-11, 126-28, 151-56).

Discussion

The plaintiffs contend that Marvel improperly asserted the attorney-client privilege with respect to some of Mr. Thomas's responses to their questions and that they should be permitted to inquire into the substance of the communications between Mr. Thomas and counsel for Marvel. (Letter of Charles S. Kramer dated April 15, 2011) ("Kramer Letter") at 7). In particular, the plaintiffs contend, first, that the attorney-client privilege as it is applied to former employees of the defendant corporations does not protect the communications between counsel and Mr. Thomas (Kramer Letter at 3-6); and, second, that Marvel may not assert this privilege in any event because it has not established that it is the successor corporation to the companies with which Mr. Thomas had an employer-employee relationship (Kramer Letter at 6-7). Marvel argues, in response, that counsel is representing Mr. Thomas personally in connection with his deposition in this case and that the attorney-client privilege therefore protects their communications with him irrespective of Marvel's ability to assert any privilege. (Letter of Jodi A. Kleinick dated May 6, 2011 ("Kleinick Letter") at 2, 4-5). In the alternative, they contend that Marvel is indeed the

3

legal successor to Mr. Thomas's employer and therefore is entitled to assert the privilege with respect to its counsel's conversations with him; that these conversations are within the category of former employee conversations immune from discovery under the attorney-client privilege; and that, to the extent they are not, they are protected by the work product doctrine. (Letter of David Fleischer dated April 20, 2011 ("Fleischer Letter") at 2-3; Kleinick Letter at 3-5).

    A.   <u>Attorney-Client Privilege and Work Product Doctrine</u>

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981). By facilitating "'full and frank communication between attorneys and their clients,'" the attorney-client privilege lays the foundation for effective representation. <u>United States v. Zolin</u>, 491 U.S. 554, 562 (1989) (quoting <u>Upjohn</u>, 449 U.S. at 389). The attorney-client privilege protects from disclosure communications among clients and counsel made for the purpose of obtaining legal advice, provided that the communications were intended to be kept confidential and the privilege has not been waived.[1]  <u>See</u> <u>United States v.</u>

---

[1] The Federal Rules of Evidence typically control civil actions in federal court, regardless of subject matter jurisdiction, although where state law supplies the rule of decision, state law determines the existence and scope of the attorney-client privilege. Fed. R. Evid. 501; <u>accord</u> <u>Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.</u>, 215 F.R.D. 466, 470 (S.D.N.Y. 2003); <u>Shamis v. Ambassador Factors Corp.</u>, 34 F. Supp. 2d 879, 892 (S.D.N.Y. 1999). Federal law always controls application of the attorney work product doctrine. See Fed. R. Civ. P. 26(b)(3); <u>Tompkins v. R.J. Reynolds Tobacco Co.</u>, 92 F. Supp. 2d 70, 75 (N.D.N.Y. 2000). Here, the only claims remaining in the case

International Brotherhood of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997); Amnesty International USA v. CIA, 728 F. Supp. 2d 479, 518-19 (S.D.N.Y. 2010).  The burden of establishing each of the elements of the privilege rests on the party asserting it.  See In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003); Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F. Supp. 2d 548, 563 (S.D.N.Y. 2008).

It is beyond question that corporations as well as individuals are entitled to assert the privilege.  See Upjohn, 449 U.S. at 386; Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 348 (1985).  As the Supreme Court has observed, however,

> [t]he administration of the attorney-client privilege in the case of corporations . . . presents special problems. As an inanimate entity, a corporation must act through its agents.  A corporation cannot speak directly to its lawyers.  Similarly, it cannot directly waive the privilege when disclosure is in its best interest.  Each of these actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation.

Weintraub, 471 U.S. at 348.  Thus, for a solvent corporation, corporate management, acting through its officers and directors, has the authority to exercise the privilege, a power that must be exercised consistently with management's fiduciary duties.  Id. at 348-49.

"The work product doctrine 'is intended to preserve a zone of

---

arise under the federal Copyright and Lanham Acts.  (Compl; Counterclaims; Report and Recommendation dated June 26, 2009 at 31; Order dated May 3, 2009; Report and Recommendation dated May 4, 2011 at 1).  Therefore, federal common law governs the application of both the attorney-client privilege and the work product doctrine.

privacy in which a lawyer can prepare and develop legal theories and strategy "with an eye toward litigation," free from unnecessary intrusion by his adversaries.'" William A. Gross Construction Associates, Inc. v. American Manufacturers Mutual Insurance Co., 262 F.R.D. 354, 359 (S.D.N.Y. 2009) (quoting United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998)). To warrant protection, a document or communication must have been prepared in anticipation of litigation by or for a party, or by his representative. Gulf Islands Leasing, Inc., 215 F.R.D. at 474. As with the attorney-client privilege, the plaintiff bears the "heavy burden" of establishing the applicability of the work product doctrine. In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007).

B. Ownership of the Privilege

1. Individual Representation

As an initial matter, counsel for Marvel argue that the attorney-client privilege plainly protects their communications with Mr. Thomas because they were representing him at the deposition, and would be "providing legal advice" to him. (Kleinick Letter at 2, 4). However, Mr. Thomas admittedly has not paid for this representation. (Thomas Dep. at 104). In situations such as this where a former employee is represented by counsel for a defendant corporation for the purpose of testifying at a deposition at no cost to him, courts have not treated the former employee as having an independent right to the privilege, even where that employee believes that he is being represented by that

6

counsel. See, e.g., Wade Williams Distribution, Inc. v. American Broadcasting Companies, Inc., No. 00 Civ. 5002, 2004 WL 1487702, at *1 & n.2 (S.D.N.Y. June 30, 2004) ("The mere volunteered representation by corporate counsel of a former employee should not be allowed to shield information which there is no independent basis for including within the attorney-client privilege."); see also Gioe v. AT & T Inc., No. 09 CV 4545, 2010 WL 3780701, at *1-2 & n.1 (E.D.N.Y. Sept. 20, 2010) (applying only corporate defendant's attorney-client privilege although "counsel for Defendant also represents the former employee, at least for purposes of his deposition," and citing Wade Williams Distribution, 2004 WL 1487702, at *2); Price v. Porter Novelli, Inc., No. 07 Civ. 5869, 2008 WL 2388709, at *1-2 (S.D.N.Y. June 11, 2008). Therefore, to the extent that counsel's communications with Mr. Thomas are protected by the attorney-client privilege, that privilege belongs to Marvel.

### 2. Corporate Successors

The plaintiffs contend that, to the extent Marvel argues that communications between counsel for Marvel and Mr. Thomas are privileged because Mr. Thomas is a "former employee," Marvel does not have "the right to assert any privilege belonging to Mr. Thomas'[s] prior employer" because it has not met its burden of establishing that the privilege remained intact as Marvel's predecessor companies merged or were reorganized in bankruptcy. (Kramer Letter at 2; Letter of Charles S. Kramer dated April 29, 2011 at 2).

7

"When ownership of a corporation changes hands, whether the attorney-client relationship transfers as well to the new owners turns on the practical consequences rather than the formalities of the particular transaction." Tekni-Plex, Inc. v. Meyner and Landis, 89 N.Y.2d 123, 133, 651 N.Y.S.2d 954, 959 (1996); accord Orbit One Communications, Inc. v. Numerex Corp., 255 F.R.D. 98, 104 (S.D.N.Y. 2008); Postorivo v. AG Paintball Holdings, Inc., Nos. 2991, 3111, 2008 WL 343856, at *5 (Del. Ch. Feb. 7, 2008); see also Del. Code Ann., tit. 8, § 259. This rules applies for mergers, see Bass Public Ltd. v. Promus Cos., 868 F. Supp. 615, 620 (S.D.N.Y. 1994), as well as for bankruptcy reorganizations, see In re Flag Telecom Holdings, Ltd., Nos. 02 Civ. 3400, 04 Civ. 1019, 2009 WL 5245734, at *7 (S.D.N.Y. Jan. 14, 2009); see also Weintraub, 471 U.S. at 354-55. "As a practical matter, the predecessor company lives on when its business operations are continued, notwithstanding the technical legal changes effected by the acquisition and merger." Orbit One Communications, Inc., 255 F.R.D. at 104 (citing Tekni-Plex, Inc., 89 N.Y.2d at 134, 651 N.Y.S.2d at 960). "'[W]here efforts are made to run the pre-existing business entity and manage its affairs, successor management stands in the shoes of prior management and controls the attorney-client privilege with respect to matters concerning the company's operations.'" Id. (quoting Tekni-Plex, Inc., 89 N.Y.2d at 133, 651 N.Y.S.2d at 959); see also In re Flag Telecom Holdings, Ltd., 2009 WL 5245734, at *7-10 (holding that, where bankruptcy reorganization created successor entity and litigation trust,

8

attorney-client privilege transferred to litigation trust based on "practical consideration of the consequences of such a transfer"); Bass Public Ltd., 868 F. Supp. at 620 ("'[A] surviving corporation following a merger possesses all of the privileges of the pre-merger companies . . . includ[ing] the privileges the subsidiary company holds at the time the sale is completed.'" (second and third alterations in original) (quoting Rayman v. American Charter Federal Savings & Loan Association, 150 F.R.D. 634, 638 (D. Neb. 1993))); In re I Successor Corp., 321 B.R. 640, 653 n.4 (Bankr. S.D.N.Y. 2005) ("Examining the 'practical consequences' of a transaction . . . [means] examining as a practical matter what claims or liabilities passed from or remained with the seller pursuant to the transaction to determine whether the attorney-client privilege was important to the transferee and/or the trustee."); Postorivo, 2008 WL 343856, at *5 ("[A]s a practical matter, the business operations of NPS continue under the management of KEE Action. Consequently, . . . KEE Action stands in the shoes of the former NPS management and holds the attorney-client privilege that NPS formerly held, including pre-[acquisition] representation."); cf. American International Specialty Lines Insurance Co. v. NWI-I, Inc., 240 F.R.D. 401, 406 (N.D. Ill. 2007) ("[W]e see no reason to deviate from the well-established principle that the right to assert or waive a corporation's attorney-client privilege is an incident of control of the corporation.").

Marvel has submitted evidence establishing that, through a

series of mergers and one bankruptcy reorganization, control of Magazine Management Company, Mr. Thomas's former employer, passed to Marvel Entertainment Group, Inc.; then to Toy Biz, Inc.; then to Marvel Enterprises, Inc.; then to Marvel Entertainment, Inc.; then to Marvel Entertainment, LLC.  (Fleischer Letter at 2-3 & Exhs. A-F).  "[N]otwithstanding the technical legal changes effected" by Marvel's prolific reorganization and renaming, the "business operations" of Marvel have continued, and, as a result, Marvel Entertainment, LLC "controls the attorney-client privilege with respect to matters concerning the company's operations." Orbit One Communications, Inc., 255 F.R.D. at 104.  At the time of Mr. Thomas's employment, the business of Marvel -- which was owned by Magazine Management -- was creating comic books.  (Thomas Dep. at 14-18, 228-29).  That continues to be part of Marvel's business, and indeed, those historic and continuing business operations are the subject of this case.  (Thomas Dep. at 146-49, 190-91).  Thus, as a practical matter, it is proper for the attorney-client privilege, as it relates to former employees involved in producing comic books, to remain vested in Marvel Entertainment, LLC. Communications between counsel for Marvel and Mr. Thomas are therefore privileged to the full extent that communications between counsel for a corporation and former employees of that corporation are privileged.

    C.    Former Employees

"Virtually all courts hold that communications between company counsel and former company employees are privileged if they concern

10

information obtained during the course of employment." Export-Import Bank of the United States v. Asia Pulp & Paper Co., 232 F.R.D. 103, 112 (S.D.N.Y. 2005); accord Gioe, 2010 WL 3780701, at *1; Surles v. Air France, No. 00 Civ. 5004, 2001 WL 815522, at *6 (S.D.N.Y. July 19, 2001) ("The vast majority of federal cases hold that communications between company counsel and former company employees are protected by the attorney-client privilege if they are focused on exploring what the former employee knows as a result of his prior employment about the circumstances giving rise to the lawsuit."), aff'd, 2001 WL 1142231 (S.D.N.Y. Sept. 27, 2001).

> Where the corporate employee is a former employee, communications (1) which occurred during employment remain privileged; (2) of whose "nature and purpose" was for the corporation's counsel to learn facts related to a legal action that the former employee was aware of as a result of his or her employment, are privileged regardless of when they occurred; and (3) between a corporation's counsel "and a former employee whom counsel does not represent, which bear on or otherwise potentially affect the witness' testimony" are not privileged.

Nicholls v. Philips Semiconductor Manufacturing, No. 07 Civ. 6789, 2009 WL 2277869, at *2 (S.D.N.Y. July 27, 2009) (quoting Peralta v. Cedant Corp., 190 F.R.D. 38, 41-42 (D. Conn. 1999)). However, this final, third category creates "a very narrow exception." Export-Import Bank of the United States, 232 F.R.D. at 112. Nonetheless, "'opposing counsel has the right to ask about matters that may have affected or changed the witness's testimony.'" Wade Williams Distribution, 2004 WL 1487702, at *1 (quoting Peralta, 190 F.R.D. at 41); see also Gioe, 2010 WL 3780701, at *2 ("[A]ny communication between counsel and [the former employee], occurring

11

after [his] employment . . . that goes beyond [his] knowledge of the circumstances [at issue], and beyond [his] activities within the course of [] employment . . . is not protected by the attorney-client privilege.").

Although there are some aspects of attorney communications with former employees that are carved out of the attorney-client privilege, many of these communications are nevertheless protected under the aegis of the work product doctrine. See Gioe, 2010 WL 3780701, at *3 (holding that "to the extent that communications between Defense counsel and [the former employee] are specifically counsel's conclusions or opinions, they may be covered by work product protection" but noting that this does not necessarily preclude questions regarding other non-privileged communication); Nicholls, 2009 WL 2277869, at *2 ("Moreover, communications between a corporation's counsel and former employee which are counsel's 'legal conclusions or legal opinions that reveal [the corporation's] legal strategy' may be protected by the work-product doctrine." (alteration in original) (quoting Peralta, 190 F.R.D. at 42)); Export-Import Bank of the United States, 232 F.R.D. at 112 ("Pre-deposition conversations may also be work product; to the extent [the plaintiff]'s attorneys communicated their legal opinions and theories of the case, their conversations are immune from discovery."); Surles, 2001 WL 815522, at *6 ("Additionally, any information beyond the underlying facts of this case that [] might [be] unearth[ed] by questioning [the former employee] about his conversations with [the employer]'s counsel would likely expose

12

defense counsel's thought processes which are entitled to protection under the work product doctrine."). To the extent that a meeting between a former employee and his former employer's counsel is held "to discuss the matters concerning which he subsequently testified at his deposition," it is "obvious that the discussions at the meeting come within the broad purview of the work-product doctrine. Disclosure of statements made or questions posed . . . at the meeting could tend to reveal [counsel's] thoughts about or analysis of the issues posed by this litigation." In re Gulf Oil/Cities Service Tender Offer Litigation, Nos. 82 Civ. 5253, 87 Civ. 8982, 1990 WL 108352, at *3 (S.D.N.Y. July 20, 1990).

    Here, Mr. Thomas's communications with Marvel's counsel in preparation for his deposition is protected by Marvel's attorney-client privilege. Mr. Thomas is a former employee of Marvel, and he was deposed in order to provide information about the origin of the Spotlight Work -- "information obtained during the course of [his] employment." Export-Import Bank of the United States, 232 F.R.D. at 112. Indeed, his deposition was dominated by questions regarding the business practices at Marvel while he was employed there and the circumstances surrounding the creation of the Spotlight Work. Counsel for Marvel have represented that their communications with Mr. Thomas covered only facts within the scope of Mr. Thomas's former employment. (Kleinick Letter at 1, 4).[2]

---

[2] The plaintiffs' arguments at times appear to misapprehend this standard, contending that "[p]re-deposition communications between counsel for a corporate party and a non-party former employee are not protected by the attorney client privilege to the extent such communications concern matters not originally protected

13

Additionally, to the extent that Marvel's counsel communicated with Mr. Thomas in order to prepare him for deposition, any inquiry into "statements made or questions posed" that may reveal counsel's legal analysis is barred by the work product doctrine. In re Gulf Oil/Cities Service Tender Offer Litigation, 1990 WL 108352, at *3.

The plaintiffs have not suggested, either at deposition or in their letter briefs, any questions they might wish to ask that would fall within the very narrow field of topics not covered by the attorney-client privilege or the work product doctrine. Indeed, most of the questions they asked regarding attorney-client communications were extremely broad. (Thomas Dep. at 105, 107, 109, 152-53, 155). The only questions the plaintiffs suggest that pertained to communications regarding matters outside the scope of Mr. Thomas's employment relate to previous accounts Mr. Thomas had given of the creation of the work at issue here. (Kramer Letter at 5; Thomas Dep. at 83-86, 99-104). Concerning as they do the same basic facts that are within the scope of Mr. Thomas's former employment, responses to these questions are also protected by the

---

while the employee was still working for the employer." (Kramer Letter at 7). However, it is not only communications with counsel that took place during the employment that are covered, but all communications with counsel about that employment, regardless of whether those communications take place following the employee's termination. See Peralta, 190 F.R.D. at 41 ("[I]f the nature and purpose of [counsel]'s communications with [the former employee] was to learn facts related to [the underlying case] that [the former employee] was aware of as a result of her employment, such communications are also privileged, whenever they occurred."). Thus, any discussion between Mr. Thomas and counsel for Marvel about Mr. Thomas's work for Marvel -- including his role in and memory of the creation of the Ghost Rider character, story, and comic books -- is privileged under this standard.

14

privilege. Furthermore, to the extent that these questions were limited only to whether Mr. Thomas had "spoken to anybody at any current or former Marvel company with respect to any statements that [he had] made or been quoted as having made with respect to [the Spotlight Work] in the last five years," he appears already to have answered the question. (Thomas Dep. at 103-04).

In ruling under Rule 30(a)(2)(B) of the Federal Rules of Civil Procedure whether to allow further examination of a person already deposed, courts are guided by the standards set forth in Rule 26(b)(2), which requires, among other things, that the court limit discovery where "the party seeking discovery has had ample opportunity to obtain the information" or "the burden or expense of the proposed discovery outweighs its likely benefit." The attorney-client privilege was properly asserted in this case. Moreover, the plaintiffs have had ample opportunity to probe whether Mr. Thomas's deposition testimony was improperly influenced by Marvel. (Thomas Dep. at 86, 101-12, 120-28, 131, 133, 140-54, 160-62, 192-96). The expense and burden of a reconvened deposition are not justified by the very limited nature of the information regarding Mr. Thomas's communications with Marvel's counsel that plaintiffs might properly discover.

<u>Conclusion</u>

For the reasons set forth above, the plaintiffs' motion for an order reconvening the deposition of Roy Thomas at the defendant's expense is denied.

15

SO ORDERED.

*[signature]*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          May 20, 2011

Copies mailed this date to:

Leonard F. Lesser, Esq.
Simon-Lesser PC
420 Lexington Avenue
New York, New York 10170

Charles S. Kramer, Esq.
Joseph D. Schneider, Esq.
Daniel Bloom, Esq.
Nelson L. Mitten, Esq.
Riezman Berger P.C.
7700 Bonhomme Avenue
7th Floor
St. Louis, IL 63105

Dawn K. O'Leary, Esq.
Eric W. Evans, Esq.
Roth, Evans & Landing
2421 Corporate Centre Drive, Suite 200
Granite City, IL 62040

David Fleischer, Esq.
Sara Jacobson, Esq.
Haynes and Boone, LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112

Jodi A. Kleinick, Esq.
Paul Hastings Janofsky & Walker LLP
75 East 55th Street
New York, New York 10022