UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY FRIEDRICH ENTERPRISES, LLC, et al.,

                    Plaintiffs,                      08-CV-01533 (BSJ)(JEF)

          -against-

MARVEL ENTERPRISES, et al.,

                    Defendants.

## PLAINTIFFS' AND COUNTERCLAIM-DEFENDANTS' MEMORANDUM IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

SIMON LESSER PC            ROTH, EVANS & LADING       RIEZMAN BERGER, P.C.
420 Lexington Avenue       2421 Corporate Centre Drive 7700 Bonhomme, 7th Floor
New York, NY 10170         Suite 200                  St. Louis, Missouri 63105
t:212.599.5455             Granite City, IL  62040     t:314.727.0101
f:212.599.5459             t:618.931.5000             f:314.727.6458

                    Attorneys for Plaintiffs Gary Friedrich
                     Enterprises, LLC and Gary Friedrich

00332389- 6 24435-002

## TABLE OF CONTENTS

PAGE

I.    Defendants' Use of Unsupported Facts and Attempt to Confuse . . . . . . . . . . . . . . . . . . 1

II.   Defendants' Motion for Defensive Summary Judgment Fails as a Matter of Law in Any
      Event . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Plaintiffs' Copyright Infringement Claims Were Timely Brought . . . . . . . . . . . . 3

      B.    Plaintiffs' Alternative Claims for Profits Distribution Were Timely Brought . . 12

      C.    Plaintiffs Claims are Not Barred by Laches or Equitable Estoppel . . . . . . . . . . 14

      D.    Estoppel Does Not Bar Plaintiffs Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      E.    The 1978 Agreement Does Not Make the Works in Issue "Works for Hire" . . . 21

      F.    Friedrich was the Sole Author of the Works and is Thus Sole Owner of the
            Renewal Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**PAGES**

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. N.Y. 2000)   1

*Merchant v. Levy*, 92 F.3d 51, 57 (2d Cir. N.Y. 1996)   3, 13

*Stone v. Williams*, 970 F.2d 1043, 1047-1048 (2d Cir. N.Y. 1992)   3, 5

*Tolliver v. McCants*, 2009 U.S. Dist. LEXIS 25233 (S.D.N.Y. Mar. 25, 2009)   3

*Minder Music, Ltd. v. Mellow Smoke Music Co.*, 1999 U.S. Dist. LEXIS 16001
(S.D.N.Y. Oct. 13, 1999)   4

*Ortiz v. Guitian Bros. Music Inc.*, 2008 U.S. Dist. LEXIS 75455, 2-4
(S.D.N.Y. Sept. 24, 2008)   4, 7

*Kwan v. Schlein*, 634 F.3d 224, 227-228 (2d Cir. N.Y. 2011)   4

*Mason v. Jamie Music Publ'g Co.*, 658 F. Supp. 2d 571, 587-88
(S.D.N.Y. 2009)   5,15,16,18,19

*Carell v. Shubert Org.*, 104 F. Supp. 2d 236, 249 (S.D.N.Y. 2000)   5

*Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F. Supp. 2d 329, 337
(S.D.N.Y. 1998)   6,10,19,20

*Brand v RMM*, 2011 U.S. Dist. LEXIS 42599 (S.D.N.Y. Apr. 18,2011)   7, 8

*Rico Records Distribs., Inc. v. lthier,* 2005 U.S. Dist. LEXIS 19483
(S.D.N.Y. Sept. 8, 2005)   7,8

*Warren Freedenfeld Assocs. v. McTigue*, 531 F.3d 38, 44-45 (1st Cir. Mass. 2008)   9

*McIntyre v. United States*, 367 F.3d 38, 52 (1st Cir. 2004)   9

*World Wide Video, LLC v. Pagola*, 2009 U.S. Dist. LEXIS 100999, 9-13
(D. Mass. June 24, 2009)   11

*Big E. Entm't, Inc. v. Zomba Enters.*, 453 F. Supp. 2d 788, 794 (S.D.N.Y. 2006)   13

*Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235, 247 (S.D.N.Y. 2004)    13

*Oneida County v. Oneida Indian Nation of N.Y.*, 479 U.S. 226, 244-45, N.16 (1985)    14

*Ivani Contracting Group v. City of New York*, 103 F.3d 257, 260 (2d Cir. 1997)    14

*U.S. v. Mack*, 295 U.S. 480, 489 (1935)    14

*Hermès Int'l v. Lederer De Paris Fifth Avenue, Inc.*, 219 F.3d 104, 107 (2d Cir.2000)    14

*Price v. Fox Entertainment Group, Inc.*, No. 05 Civ 5259, 2007 WL 241387
at *2 & n. 32 (S.D.N.Y. January 26, 2007)    14

*Legislator 1357 Ltd., v. MGM,* 452 F. Supp. 2d 382, 392-393 (S.D.N.Y. 2006)    14

*Saenger Org., Inc. V. Nationwide Ins. Licensing Assoc., Inc.*, 119 F.3d 55, 66
(1st Cir. 1997)    14

*Eyal R.D. Corp v. Jewelex New York, Ltd.*, 576 F. Supp. 2d 626, 644 (S.D.N.Y. 2008)    15

*Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 643-44 9S.D.N.Y. 2000)    15

*P.C. Films Corp. V. MGM/UA Home Video Inc.*, 138 F.3d 453, 456-57 (2nd Cir. 1998)    16

*Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 747 (S.D.N.Y. 2011)    18

*Pavlica v. Behr*, 397 F. Supp. 2d 519 (S.D.N.Y. 2005)    19
*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F.Supp. 531, 535
(S.D.N.Y.1977), aff'd, 592 F.2d 651 (2d Cir.1978)    19

*Clark v. Hudson Bay Music*, Inc., No. 94 Civ. 6796, 1995 WL 600570, at 7-8
(S.D.N.Y. Oct. 12, 1995)    21

*Gorbaty v Kelly* 2003 U.S. Dist. LEXIS 12272 (S.D.N.Y. July 16, 2003)    22

*Rossiter v. Vogel,* 134 F.2d 908, 912 (2d Cir. 1943)    23

*Andor Group, Inc., v. Benninghoff*, 219 A.D.2d 573, 631 N.Y.S.2d 79
(NY AD 2d Dept.1995)    23

*Sablosky v. Gordon Co.*, 73 N.Y.2d 133, 139, 535 N.E.2d 643 (NY 1989)    23

*Matter of Ball*, 665 N.Y.S.2d 444, 447 (N.Y.A.D. 3 Dept.1997)    23

*Southco, Inc. v. Kanebridge Corp.*, 258 F.3d 148, 151 (3d Cir. Pa. 2001)                 24

*M.S.R. Imports, Inc. v. R.E. Greenspan Co.,* 1983 U.S. Dist. LEXIS 17397,
19-20 (E.D. Pa. Apr. 27, 1983)                                                            25

Plaintiffs Gary Friedrich ("Friedrich") and Gary Friedrich Enterprises LLC ("GFE") hereby respond to the motion of certain Defendants[1] (hereafter "Defendants") seeking "defensive" summary judgment on Plaintiffs' Amended Complaint as follows:

## I.    DEFENDANTS' USE OF UNSUPPORTED FACTS AND ATTEMPT TO CONFUSE

Defendants' Memorandum in support of their Motion for Summary Judgment begins with a "Preliminary Statement" which is not based on facts of record and is inaccurate and, in most instances, irrelevant. Defendants' 56.1 Statement also contains several "statements", also referred to in their Memorandum, which are not supported by the record and/or are irrelevant. Such unsupported citations do not present cognizable "facts" or contradict the true facts of record. See *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. N.Y. 2000) (unsupported allegations do not create a material issue of fact). Plaintiffs response to Defendants 56.1 Statement addresses these issues, but some egregious examples are:

a) Defendants' use of the term "Marvel" to refer to an unspecific, unknown number of separate companies renders most statements inaccurate and is no accident. Defendants know these companies were and are separate legal entities, even if one bought intellectual property rights from another, and that the distinction between them is legally significant. See e.g., pg 24infra.

b) Defendants similarly lump purported "licensees" of "Marvel" together with its "Marvel" companies, in a similar effort to hide significant distinctions and to confuse the Court.

---

[1] The motion is brought by Marvel Entertainment, LLC, Marvel Entertainment, Inc., Marvel Enterprises, Inc. ("Marvel Enterprises"), Marvel Studios, Inc., Marvel Characters, Inc. ("Marvel Characters"), Marvel Characters B.V., Marvel Worldwide, Inc., Marvel Publishing, Inc., Marvel International Character Holdings, LLC a/k/a Marvel International Holdings, Inc., MVL International C.V., Hasbro, Inc., Take-Two Interactive Software, Inc., Columbia Pictures Industries, Inc., Columbia Tri-Star Motion Picture Group ("Columbia"), Crystal Sky LLC ("Crystal Sky"), Relativity Media, LLC, Michael De Luca Productions, Inc., and Sony Pictures Entertainment Inc.

c) Defendants state in Motion papers that the Ghost Rider character created by Friedrich and featured in Spotlight 5 was related to a different character created in the 1950's, without support, and despite the fact that the evidence actually shows Defendants themselves acknowledged the lack of connection on several occasions pre-litigation.  See Plaintiffs Rule 56.1  Additional Statement of Material Fact ("Supp. 56.1 Stat.") ¶¶ 112-113.

d) Defendants' claim Friedrich saw a video game in 2001 without advising the Court that Friedrich's deposition testimony made clear the time frame was a mistake and he was describing a video game that did not even exist until 2007, and without advising the Court that Friedrich corrected the 2001 misstatement in his errata sheet.

e) Defendants rely upon a 1978 document between Cadence Industries and Friedrich, drafted by Cadence, despite knowledge of its irrelevance, because, *inter alia*, the work here in issue was not created with or for Cadence Industries, was not a contribution to a collective work named "Marvel Comics Group," was created 6 years prior to the date of the agreement, and there was no consideration for the document. *See* pg. 21-25, infra.

f) Defendants attempt to claim the dispute in issue dates back to 1972, despite knowing that the renewal term copyrights here in issue did not exist until January 1, 2001 and that any infringements of "initial term" copyrights prior to that date are wholly irrelevant to this action.

g) Finally, Defendants point to media reports of various third parties' supposed "interest" or "intent" to make an infringing movie starting in the 1980's, and that Friedrich learned of one such interest or intent in 2004, attempting to confuse "intent" with infringement, despite knowing that none of those movies even began filming until one was actually made beginning in 2005.

00332389- 6 24435-002                                                2

## II.   DEFENDANTS' MOTION FOR DEFENSIVE SUMMARY JUDGMENT FAILS AS A MATTER OF LAW IN ANY EVENT

### A.   Plaintiffs' Copyright Infringement Claims Were Timely Brought

Copyright infringement claims are subject to a three year statute of limitations. 17 U.S.C. § 507(b). However, each exploitation of a work presents a separate claim. As a result, claims for infringements within the three year period may be brought, even when claims for infringements outside the three year period may be barred. *Merchant v. Levy*, 92 F.3d 51, 57 (2d Cir. N.Y. 1996). In the instant case, there is no dispute that all, or most, of the claims asserted by Plaintiffs pertain to exploitations of the works in issue within the three year period before the case was filed (or thereafter). See Kramer Decl., Ex. 13 Amended Complaint. Accordingly, the statute of limitations does not bar this action *in toto* and the defense fails, as a matter of law.[2]

Faced with this reality, Defendants attempt to argue that this case is not an infringement case but an "ownership case." Defendants do so because the analysis for declarations as to copyright ownership is different from that for an infringement action. Whereas each infringement is a separate claim, which accrues separately, the issue of ownership arises only once, and declaration of ownership claims must be brought within three years of that one-time accrual. See e.g., *Stone v. Williams*, 970 F.2d 1043, 1047-1048 (2d Cir. N.Y. 1992). Defendants cite to cases which have applied an ownership analysis to complaints seeking damages for infringement upon a finding that the "gravamen of the case" was actually ownership, See e.g., *Tolliver v. McCants*, 2009 U.S. Dist.

---

[2] The question of whether any of the particular recoveries sought by Plaintiffs lay outside the three year period is a question of damages for the second phase of the case under the Court's bifurcation orders. Kramer Decl., Ex. 10, 12; Kramer Supp. Decl., Ex. 55, Docket No. 99.

LEXIS 25233 (S.D.N.Y. Mar. 25, 2009); *Minder Music, Ltd. v. Mellow Smoke Music Co.*, 1999 U.S.

Dist. LEXIS 16001 (S.D.N.Y. Oct. 13, 1999), and ask this court to do the same.

As discussed below, Defendants' argument fails because this action was brought within three

years of the date upon which an ownership claim would have accrued, and thus would not be barred

in any event.  However, the claim that an ownership analysis should even be applied to this

infringement action fails, because the gravamen here is not ownership, but infringement.

For the gravamen of Plaintiffs' case to be ownership, Plaintiffs must principally be contesting

Defendants' claim of ownership of the copyrights in issue.  In the cases cited by Defendants,

Defendants had registered copyrights under which they were exploiting the subject copyrighted

works, but plaintiffs argued they were the actual owners of the copyrights, challenging the existing

registrations and seeking infringement damages.  See e.g. *Minder Music, Ltd.,* 1999 U.S. Dist.

LEXIS at *1-3; *Ortiz v. Guitian Bros. Music Inc.*, 2008 U.S. Dist. LEXIS 75455, 2-4 (S.D.N.Y. Sept.

24, 2008); *Kwan v. Schlein*, 634 F.3d 224, 227-228 (2d Cir. N.Y. 2011).  Thus, plaintiffs first had

to contest and set aside the copyright ownership of the respective defendants, which were

presumptively valid.  Thus, the gravamen of the cases relied upon – the first obstacle that had to be

overcome – was contesting defendants' existing registrations – i.e. ownership. Id.; *(see Ortiz,* cited

by Defendants, holding that gravamen of claim is ownership where Defendant has in fact filed a prior

registration.) In the instant case, however, no copyright registration was ever applied for, or granted

to, any Defendant or any alleged predecessor of Defendants with respect to Spotlight 5 – not for the

initial term, and not for the crucial renewal term here in issue – until three years AFTER Friedrich

applied for and was granted such registration.  Friedrich received the sole registration and then

assigned that registration to GFE in an assignment agreement also recorded with the Copyright

Office.  When Plaintiffs filed this suit, they were the sole registered owners of the renewal copyright

in issue, and were the only owners of any copyright registrations ever issued with respect to Spotlight

5.  Their registration satisfied the first element of their infringement claim – ownership of the

copyright, and Plaintiffs' did not have to overcome a registered claim of Defendants to ownership

before attacking Defendants' exploitation of the work.  This case is thus distinguishable from those

cited by Defendants and the gravamen  remains infringement, not ownership.  This distinction was

implicitly noted by this court in *Mason v. Jamie Music Publ'g Co.*, 658 F. Supp. 2d 571, 587-88

(S.D.N.Y. 2009) (holding Plaintiff holding copyright renewal registration had no need  to bring

declaratory action to establish her copyright ownership before suing).  Where, as here, the plaintiff

doesn't have to bring an action to declare ownership due to its possession of the sole registration

granted for the work, the gravamen of the claim filed is one for infringement.[3]  The statute of

limitations analysis for INFRINGEMENT applies to this action, and any claims within three years

of the filing date are actionable. Defendants' attempt to re-categorize this case fails.

However, even if the court were to apply Defendants' wished for "ownership" analysis, the

result would not change.  As noted, an ownership claim accrues when a plaintiff knows, or a

reasonably diligent plaintiff would have inquired and then discovered, that the defendant in the case

in issue had taken actions or made statements inconsistent with plaintiffs ownership of the copyrights

in issue. *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992); *Kwan,* 634 F.3d at 228. "An

express assertion of sole authorship or ownership" by a defendant causes the action to accrue. *Id.*;

*Carell v. Shubert Org.*, 104 F. Supp. 2d 236, 249 (S.D.N.Y. 2000) (court finding plaintiff was on

---

[3] The Court has bifurcated this case for administrative convenience and ruled that the issues to be decided
in the first segment are solely those relating to ownership of the renewal copyrights.  See Kramer Decl., Ex. 10, 12;
Kramer Supp. Decl., Ex. 55.  However, that administrative act does not alter the nature of Plaintiffs' claims.

notice when the defendant made a clear assertion of ownership and repudiation of plaintiff's claims to both sole and co-ownership in responses to letters from the plaintiff).

This case involves the renewal copyrights over the works which were granted to Friedrich by operation of law in 2001. Thus, the question for an "ownership claim" analysis, if one were to be undertaken, would be when Plaintiffs' knew, or a reasonably diligent plaintiff would have inquired into and discovered that, Marvel Characters[4] claimed ownership of the renewal term copyrights in a manner inconsistent with the Plaintiffs' rights. The evidence establishes that the first time Marvel Characters even arguably made an "express repudiation" of Friedrich's rights was when it filed its Answer to Plaintiffs suit in 2010. Since this was well after the initiation of suit, there is obviously no bar to this action.

Further, the only prior "express repudiation" of Friedrich's renewal rights by any Defendant was made by Marvel Enterprises in June of 2004. Kramer Decl., Ex. 33. Since Defendants acknowledge Marvel Enterprises is not the copyright owner, however, that repudiation is irrelevant as a matter of law. *Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998)(copyright owner need not sue every person that infringes his copyright; possible infringement by persons other than the defendant now claiming inconsistent ownership rights cannot be deemed to put Plaintiff on notice that such current defendant claimed inconsistent ownership rights). However, even assuming that repudiation were deemed material because of the relationship between Marvel Enterprises and Marvel Characters, the instant action would still be timely filed. The express repudiation by Marvel Enterprises occurred when it, through counsel, sent a letter to

---

[4]All Defendants appear to acknowledge no other Defendant owns the renewal term copyrights in issue, and Marvel Characters claims to be the source of their rights. See Kramer Decl., Ex. 11, Counterclaim, Doc. No. 48.

Friedrich's then-counsel dated June 17, 2004. Kramer Decl., Ex. 33. This case was filed on April 4, 2007, within three years of the date of the letter and the date received. The defense still fails.

Failing to show the express repudiation necessary to support their "defense", Defendants attempt to show Friedrich "should reasonably have been" on notice of Marvel Characters' inconsistent ownership claims at some earlier date. The undisputed facts do not support that contention either, however.

First, Defendants argument fails because they base their entire premise on a misreading of the case law. Defendants rely on *Brand v RMM*, 2011 U.S. Dist. LEXIS 42599 (S.D.N.Y. Apr. 18,2011), *Rico Records Distribs., Inc. v. lthier*, 2005 U.S. Dist. LEXIS 19483 (S.D.N.Y. Sept. 8, 2005), *and Orvitz*. However, each of those cases involved a case in which the Plaintiff was contesting use of a work during the work's initial term and had not previously licensed or assigned away the rights for that term. The "revert back after prior grant" aspect of the renewal rights in issue in this case presents a totally different scenario. Here, Plaintiff agreed works would be published under Magazine Management's copyright notice during the initial term, so publication of such works would **not** put him on notice of any adverse position. Further, this case does not involve any claim relating to initial term rights anyway, and no action could be adverse to future rights which Plaintiff did not even have yet. Further *Brand* and *Orvitz* discuss the "knew or should have known" standard, but do NOT hold that the claims there asserted were barred under the "should have known" standard, but rather because of ACTUAL NOTICE outside the statutory period. See e.g. *Orvitz* at *11, 16 ("Orvitz does not dispute Universal's contention that he was on notice no later than February 2004 and date to bar claim[5]. In fact, *Brand* is eerily on point with this case. In that case, it was argued that

---

[5]Further, the key aspect of the "known use" referenced in *Orvitz* was the prior filing of Defendants' certificate of registration – not done here. Id.

prior publications of the work over which the ownership was in dispute should have put the claimant on notice, but the Court ultimately based its holding on a finding that the statutory period began later when the plaintiffs "then-attorney...contacted...[the alleged infringer] about Brand's copyright claim." *Brand,* * 16.  In this case, the evidence establishes Friedrich similarly had no actual knowledge of any prior publications, but his then-attorney, Aaronson, contacted Sony and received the express statement that Marvel Enterprises rejected his ownership claim at that point – but this lawsuit, unlike *Brand,* was filed within three years of that date.  Under Defendants own express authority, the action is not barred even under the ownership standard.  Further, Defendants' theory misleads the court as to the copyright that was the subject of the infringement/ownership claims in the cases they cite.  In each case cited by Defendants, the court held the gravamen of the case was who owned the copyright over "Work A", and ultimately found the Plaintiff knew or should have known of Defendants claim of ownership of the copyright covering such Work more than three years before the Plaintiff claimed ownership and claimed the creation of "Work B" infringed the Work A copyright.  In each case, "Work A" was either the work Plaintiff claimed to have created, or was an exact reprint of the same."  In this case, however, "Work A" is Spotlight 5, or more precisely the renewal term copyright over Spotlight 5.  Yet, Defendants argument does NOT claim, and they cannot claim, they printed, reprinted or republished Spotlight 5 at any time after the renewal rights vested in Friedrich in 2001 until 2005, or that Friedrich had or should have had knowledge of any such prior reprinting.  Knowledge of such "other works" would raise questions only with respect to claims to ownership of copyrights originating with such other works, and are irrelevant to the question of Spotlight 5 or its renewal rights.  See e.g., *Rico Records,* at *6 (recognizing that ownership claims for works created within three years of the suit – i.e. after May 3, 2002 in that case

– were not barred by knowledge of disputed ownership of prior works because they were different works). For Defendants' argument to even be applicable here, they would have to show they published or republished Spotlight 5 after January 2001 when the renewal term grant occurred, when Friedrich's assignment or license of the initial term rights no longer gave them the right to do so, and prior to April of 2004, and that a reasonable plaintiff would have known they did so. They did not do so.

However, even if a finding that a reasonable plaintiff should have known the Defendant claimed ownership rights to other works than the one in issue mattered, Defendants' motion still fails. For a plaintiff to be charged with inquiry notice, he must possess "information fairly suggesting some reason to investigate whether he may have suffered an injury at the hands of a putative infringer." *Warren Freedenfeld Assocs. v. McTigue*, 531 F.3d 38, 44-45 (1st Cir. Mass. 2008). Inquiry notice must be triggered by an event or events that actually come to the attention of the aggrieved party. See e.g. *McIntyre v. United States*, 367 F.3d 38, 52 (1st Cir. 2004). As stated in *McTigue*, "where there is smoke there is fire; but smoke, or something tantamount to it, is necessary...." *Warren Freedenfeld Assocs.,* at 44-45.

None of the materials or actions of others alleged by Defendants actually came to Friedrich's attention, and none would have caused a reasonable person to inquire as to Marvel Characters position with respect to renewal copyrights in anyway. First, allegations by Defendants that exploitation of the works prior to 2001 should have put Friedrich on notice are nonsensical. Friedrich obtained the subject renewal copyrights on January 1, 2001, and knew he had granted Magazine Management the rights to the prior initial term. Thus, even if he had learned of pre-2001 acts, they would not have caused a reasonable plaintiff to worry about renewal rights which did not

yet exist.  Further, the matters pointed to by Defendants are acts by third parties, not Marvel Characters.  Defendants thus claim that acts by third parties, prior to Plaintiffs even obtaining their renewal term rights here in issue,  should have put Friedrich on notice of a later claim of inconsistent ownership by Marvel Characters.  The argument that third parties' actions can impute notice, which has been called "notice by transitivity" has been expressly rejected in the laches context (*see Paramount*, supra) and is similarly unavailing in this context.  Further, actions before the rights in issue existed, cannot as a matter of law  affect the limitations period in which to assert such rights.

Defendants only point to some scattered activity occurring after the vesting of the renewal rights in Friedrich in 2001, which they also claim "should have" put Friedrich on inquiry notice even though he did not know of it.  Again, however, they rely on supposed actions by persons other than Marvel Characters.  For example, Defendants claim that toys featuring the Ghost Rider Character were marketed at various, unspecified times, between 2001 and 2006 by "Toy Biz" which purported at the time to be a division of Marvel Enterprises (not Marvel Characters.) Def. 56.1 Stat. ¶¶ 49-50. However, even if such actions by Toy Biz  were deemed to be relevant to ownership claims by Marvel Characters because of its relationship to Marvel Enterprises, the evidence establishes Friedrich was not aware of any such toys, and there is no evidence presented that the toys were ever sold or distributed in any type of manner that would have caused a reasonable plaintiff to learn that Marvel Characters was contesting Friedrich's renewal rights at any time prior to June of 2004. Indeed, Marvel's corporate representative admits he is not sure if the toys were ever made.  Supp. 56.1 Stat. ¶ 85.  Similarly, Defendants also discuss company internal annual reports and media reports of potential movies.  However, Marvel's corporate representative admits many announced, potential movies are never made (Supp. 56.1 Stat. ¶ 86), and in any event, principal photography on

the only Ghost Rider movie that was actually made did not commence until February 14, 2005.[6]

Further, many of the press releases do not indicate which if any characters were actually involved.

E.g. Def. 56.1 Statm. of Facts, Ex. 53, 77, 87.  Defendants also present evidence of snippets of

statements buried within SEC filings for companies in which Plaintiffs had no ownership stake or

interest and which Plaintiffs never received.  Supp. 56.1 Stat. ¶ 124-125.  A reasonable plaintiff

would not review such documents.  See e.g. *World Wide Video, LLC v. Pagola*, 2009 U.S. Dist.

LEXIS 100999, 9-13 (D. Mass. June 24, 2009) (unreasonable to require a plaintiff to search tens of

thousands of databases to determine if someone is infringing; there is no requirement of an owner

to engage in a herculean effort to avoid forfeiting rights; searching copyright office is sufficient.)

Here, there was no copyright registration claiming ownership to Spotlight 5 until Plaintiffs filed their

renewal registration.  Further, Defendants claim that Friedrich saw a Ghost Rider video game prior

to 2004, but such claim is NOT supported by the evidence.  Supp. 56.1 Stat. ¶ 89-91.  The only

Ghost Rider video game appeared in 2007; Defendants admit the other video games contained only

"cameo" appearances by Ghost Rider which would not be known unless the game was played and

a certain skill level acquired, and thus no reasonable person would have known the games contained

Ghost Rider characters.  Def. Stat. Facts,  ¶ 52.  Friedrich admitted seeing the Ghost Rider video

games in Wal-Mart, which was not released until 2007.  Supp. 56.1 Stat. ¶ 89-91. Since 2001, the

only specific toys cited to by Defendants are four toys related to Ghost Rider in the 2003 and 2004

"Toy Biz" catalogs, with a copyright of Marvel Enterprises.  Def. 56.1 Statm. of Facts, ¶ 50.  No

---

[6] Bard Declaration, ¶ 21.  In addition to Defendants beginning to film the movie after receiving notice of Friedrich's claims, the producer was still unclear and what entities even had movie rights changed pursuant to Defendant's "press releases." See e.g., Def. 56.1 Statm. of Facts, Ex. 77 (5/28/03 Dimension Films); 85(10/10/2003-Salerno drafting script instead of final writer, Mark Steven Johnson); Ex. 88 (3/3/2004 Sony involved); Ex. 89 (3/11/2004-Columbia Pictures).

11

evidence is presented that those toys were ever sold, marketed, or distributed in a manner that Friedrich or a reasonably person would have been apprised of the toys, let alone that they should have been prior to April 2004. Only 6 comic books related to the characters at issue were published after January 1, 2001, and there is no evidence that those were published by Marvel Characters or widely distributed. Def. 56.1 Statm. of Facts, ¶ 41. Friedrich did not know of these limited books at the time. Supp. 56.1 Stat. ¶ 128. The evidence establishes Friedrich was unaware of any toys, video games, or related merchandise exploiting the Spotlight 5 work or the Ghost Rider Characters until, at the earliest, sometime in late 2006 or early 2007. Supp. 56.1 Stat. ¶ 87.

Finally, the communication between Friedrich's attorney and Marvel Enterprises in 2004 establishes that nothing that occurred prior to that date actually indicated to anyone that Defendants were expressly repudiating Friedrich's renewal term ownership rights, because they had not yet done so. Marvel Enterprises' initial response to the 2004 letter from Friedrich's counsel was to seek information and to investigate the question of Friedrich's rights. Kramer Decl., Ex. 40. Thus, as of the time of the inquiry, the evidence shows that Marvel Enterprises had not formulated a final, formal position on Friedrich's renewal rights as of that date, despite isolated public displays Defendants claim existed. There was no express repudiation of Friedrich's rights prior to June 2004, at the earliest, making Plaintiffs' infringement claims timely, even under the inappropriate "ownership case" analysis.

**B.     Plaintiffs' Alternative Claims for Profits Distribution Were Timely Brought**

Plaintiff's alternative claims for a share of profits set forth in fn. 1 and Count V of their First Amended Complaint seek their shares of profits gained by Defendants in the event Plaintiffs are

found to be co-owners of renewal term rights[7]. Plaintiffs claims seek only such profits earned within or after three years of the date of filing, and the statute of limitations does not bar that relief. However, once again, even if an "ownership" analysis were applied, they would still not be barred. The same three year "ownership claims" limitations period discussed above applies to co-ownership claims. *Merchant*, 92 F.3d at 56; *Big E. Entm't, Inc. v. Zomba Enters.*, 453 F. Supp. 2d 788, 794 (S.D.N.Y. 2006). However, the injury does not occur until one co-owner asserts exclusive rights to the detriment of the other. *Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235, 247 (S.D.N.Y. 2004). For the same reasons as set forth above, the first plain and express repudiation of co-ownership by any entity occurred in on June 17, 2004 when Marvel Enterprises expressly contended Friedrich was not an author and had no ownership rights (which, as noted above, is only probative if the Court equates that expression to one by Marvel Characters), and Defendants references to pre-2001 actions, actions by other persons, or scattered actions post-2001 relating to other works, of which Friedrich had no knowledge or reason to know do not change that result. In addition, however, in the joint ownership context, Defendants' arguments fail for the additional reason that the exploitations by others noted by Defendants were not inconsistent with a claim of co-ownership. The acts, if known, could have been viewed as either naked infringement, or as an assertion of co-ownership. Finally, in the very motion to which this Memorandum responds, Defendants claim, alternatively, Plaintiffs are co-owners of the renewal rights – showing that even as of that date they have not unequivocally rejected that claim. Plaintiffs' alternative claims for relief are thus also timely, even under the improper "ownership" analysis.

---

[7]A claim raised by Defendants, and a possibility recognized but discounted by Plaintiffs. See Plaintiffs Memorandum in Support of Motion For Summary Judgment. Doc. No. 312, October 17, 2011.

**C.    Plaintiffs Claims are Not Barred by Laches or Equitable Estoppel**

Defendants next assert Plaintiffs' claims are barred by laches. Laches is an equitable defense, which is only available to defend against equitable claims. *Oneida County v. Oneida Indian Nation of N.Y.*, 479 U.S. 226, 244-45, N.16 (1985). The courts in this District are split on whether a laches defense is available in a copyright action and the Second Circuit has yet to rule specifically on the issue.[8] However, the cases holding laches applicable trace their lineage to a time when there was no express federal statute of limitations. Since there is an express statute, Second Circuit precedent does exist which provides that laches is NOT available in a copyright suit. See *Ivani Contracting Group v. City of New York*, 103 F.3d 257, 260 (2d Cir. 1997); *U.S. v. Mack*, 295 U.S. 480, 489 (1935)(laches not available where express limitation statute exists). The Defense thus fails as a matter of law, but even if laches were available as a defense, the doctrine would not bar this case.

First, Plaintiffs do not seek any equitable remedies in this action. Even if laches were available to defeat equitable claims in the copyright context, it would be unavailable here.[9]

Second, laches requires the party asserting it to have clean hands, a burden Defendants cannot meet. *Hermès Int'l v. Lederer De Paris Fifth Avenue, Inc.*, 219 F.3d 104, 107 (2d Cir.2000). Both Defendants and their purported predecessors in interest failed to register any copyright.[10] Magazine Management did not register the copyright to Spotlight 5 when originally published or thereafter.

---

[8]See, Docket No. 180, Order 6/21/11, footnote 1, *citing, Price v. Fox Entertainment Group, Inc.*, No. 05 Civ. 5259, 2007 WL 241387 at *2 & n. 32 (S.D.N.Y. January 26, 2007) and *Legislator 1357 Ltd., v. MGM,* 452 F. Supp. 2d 382, 392-393 (S.D.N.Y. 2006).

[9] A more complete discussion of why a latches defense is not applicable can by found in Plaintiffs' Memorandum of Law in Support of Its Motion for Summary Judgment, Docket No. 312, pg. 25.

[10] "A copyright registration certificate issued by and filed with the Copyright Office thus serves to put the world on constructive notice as to the ownership of the copyright and the facts stated in the registration certificate." *Mason v. Jamie Music Publishing Co.*, 658 F. Supp. 2d 571, 588 (S.D.N.Y. 2009), *citing, Saenger Org., Inc. V. Nationwide Ins. Licensing Assoc., Inc.*, 119 F.3d 55, 66 (1st Cir. 1997).

In 2003, Defendants were reminded of the non-registered status of the copyright in a letter from Columbia Pictures.  Kramer Decl., Ex. 30.  In response, Carol Platt, the Director of  Intellectual Property & Publishing Rights for Marvel Enterprises, acknowledged it was the Company's policy to register the copyright to the first edition of a comic series to which it owned the copyright. Kramer Supp. Decl., Ex. 54.  This would have included Spotlight 5 as the first Ghost Rider comic book, if they believed they still had the right to file a registration.[11]  Yet, neither it, nor Marvel Characters, took any step to register the copyright for the then-expired initial term, or for the existing renewal term when alerted by Columbia.  None of Defendants attempted to register the renewal copyright to Spotlight 5 until three years <u>after</u> this litigation had been initiated.  An attempt to register the initial term or renewal term copyrights would have required Defendants to put on file their claimed basis for their ownership – a step they avoided despite their own acknowledged policies requiring them to do so.  Having never put their claim on record, Defendants cannot now claim that they were harmed for an alleged delay by Plaintiffs in asserting Plaintiffs' claims.

Third, Defendants' do not and cannot establish the necessary elements for a laches defense. The essential elements of a laches defense "are unreasonable delay by a plaintiff and resulting harm to the defendant," *Eyal R.D. Corp v. Jewelex New York, Ltd.*, 576 F. Supp. 2d 626, 644 (S.D.N.Y. 2008).  "Mere delay is not, in and of itself, sufficient to bar a claim.....the focus is on the reasonableness of the delay rather than on the number of years that have elapsed." *Mason*, at 587, citing, *Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 643-44 9S.D.N.Y. 2000).

Friedrich obtained the rights to the renewal term copyright on January 1,  2001 and works or acts relating to the prior, separate, initial term are irrelevant, because "the renewal period is not

---

[11]Defendants' corporate representative also testified to this policy in his deposition. Supp. 56.1 Stat. ¶ 93-94.

merely an extension of the original copyright term but a 'new estate.....clear of all rights, interests or licenses granted under the original copyright.'" *Mason* at 585 (S.D.N.Y. 2009), *citing, P.C. Films Corp. V. MGM/UA Home Video Inc.*, 138 F.3d 453, 456-57 (2nd Cir. 1998). With respect to Plaintiffs assertion of the 2001 renewal rights, Friedrich took steps upon his first learning of any efforts that appeared to infringe his rights.  Friedrich had no knowledge of any actions until 2004, when he learned through an unconfirmed media report that someone intended to exploit his work to make a movie.  Supp. 56.1 Stat. ¶ 95.  In response, Friedrich immediately sought legal counsel and, upon being retained, Friedrich's attorney began corresponding with Defendants' attorneys to determine if a movie was, in fact, being made and, if so, what Defendants position was vis a vis Friedrich's rights.  Plaint. 56.1 Statm. of Facts, ¶ 140.  In response, Friedrich's attorney first received a letter from Marvel Enterprises promising to investigate the matter.  Kramer Decl., Ex. 40.  Subsequent correspondence asked for more information and claimed the Marvel Defendants would investigate the claim further. Id.  It was only on June 17, 2004, that Marvel Enterprises stated a "final" and firm position rejecting Friedrich's claim. Id. Ex. 33.  At that point, although he was not aware of any actual infringement of his rights at that time,[12] Friedrich began the task of attempting to find legal counsel to pursue his rights on terms he could afford.  Friedrich located and retained current counsel, still unaware of any actual infringement of his renewal term rights.  Current counsel immediately and continuously investigated the merits of the claim and after determining them to be proper, registered Friedrich's renewal copyright and the assignment to GFE, and filed suit.  Given that the definition of "delay" includes an intent component,[13] it is questionable whether there is even any delay in this

---

[12]As noted above, the movie that was reported was not a sure thing at the time, and didn't begin filming until February 14, 2005. *Supra*, n. 6.

[13]Pursuant to Black's Law Dictionary, delay means "to retard; obstruct; put off; postpone; defer; procrastinate; hinder; impose obstacles.  Black's Law Dictionary, Special Deluxe 5th Edition, 1989.

case. However, recognizing that laches requires <u>unreasonable</u> delay definitively dooms the defense, even if it is cognizable in the copyright context.

Focusing on the reasonableness of Friedrich's actions, reveals there is no fault to find. Upon learning of a possible movie (which was only in contemplation, not production, let alone distribution[14]), Friedrich immediately sought out and retained counsel. Counsel then attempted to determine the basis for Sony Picture's belief that it could make such a movie. Once the matter was turned over by Sony to Marvel Enterprises and that company rejected Friedrich's claims in June 2004, Friedrich immediately wanted to pursue his rights to prevent the movie and began a search for a firm that would represent him against large, well funded corporations such as the Marvel Defendants, on a contingency basis. He eventually found his present attorneys who continuously investigated the matter, registered his copyright to the renewal term, and the assignment to GFE and filed suit. Nothing in this string of events was unreasonable, as a matter of law.

In addition, as noted above, neither Defendants nor any of their purported predecessors (including Magazine Management) ever sought or received a registration of the copyright for Spotlight 5, and did not seek a registration of the renewal copyright over such work until three years after Plaintiffs secured their renewal registration and this case was well underway. At the time of this suit, Plaintiffs were the sole holders of the copyright registration. This Court has previously recognized the holder of the sole copyright registration does not need to act to have its ownership rights declared, and an infringement action is not barred by laches under such circumstances:

> M2ason's timely 1993 copyright renewal registration proclaimed her copyright ownership in the Composition. ["A copyright registration certificate in the Copyright Office provides constructive notice as to the ownership of the copyright and the facts stated in the registration

---

[14]As noted previously, principal photography did not even begin until February 14, 2005 after various rights changed hands.

certificate." The Court finds that Mason had no reason to bring a declaratory action to establish her copyright ownership and therefore Defendants cannot establish the unreasonableness prong of laches.

*Mason* at 587-88 (S.D.N.Y. 2009)(internal cites omitted). There was no unreasonable delay and the defense fails as a matter of law.

Defendants' attempt to satisfy the second prong of the laches defense, harm from delay, is equally unconvincing. Defendant claim three types of harm: 1) the memory of witnesses has faded, 2) they no longer have checks from 1972 which had "legends" on the back, and 3) Defendants have suffered harm by expending great sums of money exploiting Spotlight #5. Def. Memo. Pg. 15. No such "harm" is established by the record.

Defendants fail to identify even a single witness who is unavailable or whose memory has so degraded in the last six (6) years that they are effectively unavailable. The Marvel-related Defendants' corporate representative testified he was unable to think of even a single witness who would have been available in 2000, but was now unavailable. Supp. 56.1 Stat. ¶ 97-98. With respect to the "lost checks" with legends upon them, there is no evdience that Defendants were EVER in possession of such checks, of any retention policy for said checks, or what efforts were made to find any such checks. Further, in *Marvel v. Kirby,* it was established that such checks had been "not retained" without any regard to actions by these Plaintiffs, and moreover that they were not material to the issues here at bar. *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 747 (S.D.N.Y. 2011). Similarly, the Marvel-related Defendants' corporate representative testified that after being notified of Friedrich's ownership claim in 2004 Defendants took NO action to halt, slow or pause the production of any Ghost Rider related comic books, products, licensing agreements, movie, or video games. Supp. 56.1 Stat. ¶ 99. Sony and Columbia's representative designated to discuss what

actions Sony/Columbia would have taken if it knew of Friedrich's claim earlier admitted that did not

know if an earlier claim would have changed anything. Supp. 56.1 Stat. ¶ 100. In fact, after learning

of Friedrich's registration of the renewal copyright and even being sued, Defendants continued as

though nothing had changed, continuing to license Spotlight 5 related products Supp. 56.1 Stat. ¶

101. Sony/Columbia took no other actions other than to go forward and produce and distribute the

Ghost Rider movie (Supp. 56.1 Stat. ¶ 102), and then decide to go forward to produce a sequel.

Supp. 56.1 Stat. ¶ 103. In short, Defendants have failed to demonstrate any harm or prejudice

resulting from Plaintiffs alleged delay in filing suit. Rather, as in *Mason*, Defendants made

substantial profits throughout the initial term, and continued to improperly make such profits during

the renewal term, even after being clearly aware of Plaintiffs' claims. Cf. *Mason*, supra. As such,

Defendants have also failed to satisfy the second prong necessary to establish a laches defense. Thus,

for each of the separate and distinct reasons noted, the laches defense fails.

### D.    Estoppel Does Not Bar Plaintiffs Claims

Defendants further claim estoppel bars Plaintiffs claims. To prove estoppel, Defendants bear

the burden of proving, among other things, Friedrich had **actual knowledge** of the infringing

activities, and took actions intending to induce Defendants to continue in their improper ways.[15]

However, where, as here, a plaintiff contacts the eventual defendants a short time after becoming

aware of the infringement on which the suit was based, there can be no estoppel. *Paramount*, at 337-

38. As discussed above, the first notice Friedrich had that any of Defendants were actually infringing

---

[15] "To establish a claim of estoppel, defendants must show that "[plaintiff] had knowledge of defendant's infringing conduct, and either intended that his own conduct be relied upon or acted so ... [Defendants] ha[d] a right to believe it was so intended. Additionally, the defendant must be ignorant of the true facts and must rely on plaintiff's conduct to his detriment." *Pavlica v. Behr*, 397 F. Supp. 2d 519 (S.D.N.Y. 2005) quoting *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F.Supp. 531, 535 (S.D.N.Y.1977), aff'd, 592 F.2d 651 (2d Cir.1978).

upon his renewal rights to Spotlight 5 was in 2007, and the first knowledge of any possible intent to do so was in 2004.

Defendants have tried to cloud the issue, by raising a number of irrelevant statements, announcements and activities. The problem with these claims is many fold. First, again as discussed above in the statutes of limitations and laches sections, Friedrich was not aware of any of them and actual knowledge is required for estoppel. Second, many of things Defendants base their claim for estoppel on, happened before 2001, the year in which the renewal right came into existence. Third, speculation about a possible movie is not an infringement, **making** a movie is infringement. Defendants themselves have admitted the difference between announcements of the possibility of making a movie and actual production of one. They note that talk of movies about Ghost Rider began in the 1980's, but no production deal was made until 2005. Supp. 56.1 Stat. ¶ 121. Fourth, Defendants lump a bunch of different companies and their activities together, pretending they are somehow all one. They claim that actions of companies that they claim to have licensed (but which purported licenses they do not, and cannot, claim were known to Friedrich) somehow should have put Plaintiffs on notice of what they or other purported licensees would later claim or do. However, such reliance on the actions of other companies as the basis for an estoppel defense have been expressly rejected by the Courts. See *e.g., Paramount Pictures*. The issue is not Plaintiffs knowledge or what some licensee did, or said, but rather, what Defendants did, or said. Finally, Defendants have no evidence Plaintiffs desired, intended or induced Defendants to infringe their renewal term copyright. There is no basis in law for an estoppel defense.

### E.   The 1978 Agreement Does Not Make the Works in Issue "Works for Hire"

Defendants also claim that a purported 1978 contract between Gary Friedrich and Cadence Industries Corporation ("Cadence") establishes that the works here in issue were done by Friedrich "for hire" for Magazine Management.  However, the document asserted by Defendants clearly and unambiguously does NOT apply to or cover the works here in issue[16].

The agreement asserted by Defendants is between Cadence and Friedrich and provides, at best, that  Friedrich agreed that any work  he had performed for Cadence for a specified collective work had been done as "work for hire" and that any work he would perform in the future for Cadence for that collective work would be "work for hire."  Bard Decl., Ex. 27.  The contract does not even mention any work done at Friedrich's instance and request in conjunction with Magazine Management or even any work done by Friedrich for Magazine Management.

The contract uses a defined term, "MARVEL" to refer to "Marvel Comics Group, a division of Cadence Industries Corporation." Id.  It then states::

> In consideration of MARVEL's commission and ordering from SUPPLIER written material or artwork and paying therefor, SUPPLIER acknowledges, agrees and confirms that any and all work, writing, art work material or services (the "Work") which have been or are in the future created, prepared or performed by SUPPLIER for the Marvel Comics Group have been and will be specially ordered or commissioned for use as a contribution to a collective work and that as such Work was and is expressly agreed to be considered a work for hire."  Id.

The undisputed facts establish, however, that Spotlight 5 was not created for Cadence or any division thereof, but was created pursuant to an agreement with Magazine Management.  See Plaintiffs 56.1 Stat. of Facts, ¶¶ 61-68.  The agreement is irrelevant.[17]  Spotlight 5  was  not "created,

---

[16]In addition, if any ambiguity is found to exist in the document, such ambiguity in a writer's contract with a publisher is construed against the publisher. *Mason*, 658 F.Supp.2d at 585, *citing Clark v. Hudson Bay Music*, Inc., No. 94 Civ. 6796, 1995 WL 600570, at 7-8 (S.D.N.Y. Oct. 12, 1995).

[17]Even if Magazine Management assigned its rights to Spotlight #5 to Cadence, as Defendants claim, that would not change the fact that Friedrich's work on the project was done for himself at his initiation, and was not work "created, prepared or performed for Cadence Industries."

prepared or performed for" Cadence. Further, the agreement also specifies that whereas "MARVEL" is used to denote a division of Cadence Industries called Marvel Comics Group, when the term "Marvel Comics Group" itself is later used (rather than "MARVEL"), the term is used to refer to "the collective work known as the Marvel Comics Group," not to a division of a company. Bard Decl., Ex. 27, ¶ 2. Again, however, the actions and efforts of Friedrich in issue in this case were not created, prepared or performed for a collective work called the Marvel Comics Group, but rather as an independent project which was ultimately published as part of the Spotlight series. At no point were the works here in issue part of a collective work known as the "Marvel Comics Group."

The plain language of the contract establishes that the contract does not apply to Spotlight 5 or the Characters within it, and is irrelevant to this action. See *also Gorbaty v Kelly* 2003 U.S. Dist. LEXIS 12272 (S.D.N.Y. July 16, 2003) (contract referring to specific collective work, irrelevant to issues relating to other projects).

Further, Marvel's corporate representative admits after reading the agreement that the intent of the agreement was to protect works prepared for Cadence <u>after</u> changes in the copyright law which occurred in 1976. Supp. 56.1 Stat. ¶ 104. That is also what Friedrich's understanding was at the time he was presented the document by Cadence. Supp. 56.1 Stat. ¶ 105, 113.

Moreover, the agreement is not enforceable in any event, due to a lack of consideration, a lack of specificity regarding material terms, and the fact that it was a contract of adhesion.

The document asserted by Defendants specifically provided that the agreements of Friedrich contained therein, if any, were given "in consideration of Marvel's commissioning and ordering from Supplier written material or art work and paying therefor." Bard Decl., Ex. 27. However, it is undisputed that Cadence Industries never commissioned or ordered any work from Friedrich at the

time or after the signing of the agreement and thus never paid him for any such work.  Supp. 56.1 Stat., ¶¶ 110-11. As matter of law, a promise given as consideration must have "real value" or the contract is not enforceable.  *Rossiter v. Vogel,* 134 F.2d 908, 912 (2d Cir. 1943). Furthermore, the contract lacks sufficient specificity to be enforceable.  Under New York law, before a party may secure redress for the breach of an agreement, the promise made by the offending party must be sufficiently certain and specific so that the parties' intentions are ascertainable. Any agreement which leaves material terms of a proposed contract for future negotiations is unenforceable. *Andor Group, Inc., v. Benninghoff*, 219 A.D.2d 573, 631 N.Y.S.2d 79 (NY AD 2d Dept.1995).  In this case, the contract at issue states that Friedrich agrees that work to be performed for Cadence is work for hire, in exchange for Cadence promising to commission additional work.  The contract does not state how much work Cadence will commission or when that work will be commissioned. It does not state how much Friedrich will be paid for such work. The terms of the agreement are so vague as to be unenforceable. Even if the work at issue in this case fell within the scope of the agreement (and it does not), and even if there had been consideration, it would still be unenforceable.

Finally, a contract which has been procured using high pressure tactics when there is inequality of bargaining power between the parties is a contract of adhesion under New York law and is not enforceable. *Sablosky v. Gordon Co.*, 73 N.Y.2d 133, 139, 535 N.E.2d 643 (NY 1989). If the party is prevented from reading the contract or if the party did not have the contract explained to him, a Court may find that it is a contract of adhesion. *Matter of Ball*, 665 N.Y.S.2d 444, 447 (N.Y.A.D. 3 Dept.1997).  Further, if a contract is imposed on a party as a condition of obtaining further work with no opportunity to negotiate, a Court may find it is a contract of adhesion. *Id.*

In this case, Friedrich was presented with the contract and told to sign it. Supp. 56.1 Stat. ¶ 106, 108, 113. Friedrich was visiting New York from Missouri when the contract was presented to him and had little time to review the contract. Supp. 56.1 Stat. ¶ 107, 112. The contract was not explained and he was not given an opportunity to ask questions. He had no ability to negotiate. The contract was "a take it or leave it" proposition which was presented without alteration to all of Cadence's employees and freelance artists and writers. Supp. 56.1 Stat. ¶ 108. Friedrich did not clearly understand the contract. Supp. 56.1 Stat. ¶ 109. Under these circumstances, the contract is a contract of adhesion which is not enforceable. For all of these reasons, the 1978 document proffered by Defendants is simply irrelevant to this action.

F.   **Friedrich was the Sole Author of the Works and is Thus Sole Owner of the Renewal Rights**

As set out in detail in Plaintiffs' Motion for Summary Judgment already filed in this action, Friedrich authored the Works here in issue within the meaning of the copyright law. In their Motion for Summary Judgment, Defendants have raised the argument that Friedrich was, at best, a joint author and thus is entitled to only joint ownership of the renewal copyrights. Plaintiffs acknowledge the work of the illustrator, Mike Ploog, but the evidence establishes Ploog merely transformed the preexisting word pictures of Friedrich into pictorial form, following Friedrich's express direction and instruction, and that as a matter of law Ploog's efforts did not rise to the level of "co-authorship". As a matter of law, copyright protection is available for "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). In order to satisfy the originality requirement, a work must have been "independently created by the author" and must possess "at least some minimal degree of creativity. *Southco, Inc. v. Kanebridge Corp.*, 258 F.3d 148, 151 (3d Cir. Pa. 2001). This is a two part standard and each part must be met. For Ploog's efforts to be the

basis for any joint author claim, thy had to be BOTH minimally creative AND independently created. In this case, Ploog copied the creations of Frederich into pictorial form, which does not meet the required standard. See *M.S.R. Imports, Inc. v. R.E. Greenspan Co.,* 1983 U.S. Dist. LEXIS 17397, 19-20 (E.D. Pa. Apr. 27, 1983). Friedrich was the sole author, a conclusion reached by the United States Copyright Office after investigating the issue.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment fails, as the claims asserted herein are not time barred by statute or equity, and are not precluded by the purported 1978 agreement. Further, as a matter of law, Friedrich was the sole author of Spotlight 5 and became sole owner of the renewal copyright from their initial vesting on January 1, 2001, pursuant to 17 U.S.C. § 304, until such time as he assigned them to Co-Plaintiff GFE in 2007[18] and this Court should hold as such. However, if the Court were for any reason to find a question of fact regarding whether Friedrich became merely a joint owner of the renewal rights, Plaintiffs respectfully suggest the Court should still enter its Order and Judgment declaring Friedrich was **an** author and **an** owner of the renewal copyrights and that such rights of Friedrich were transferred to GFE, and dictate that the first phase trial of this matter shall solely concern the question of whether GFE's ownership of the renewal term copyrights is "sole ownership" or "joint ownership."

---

[18]Kramer Decl., Ex. 27, Assignment from Friedrich to GFE.

Dated:  November 3, 2011                    Respectfully submitted,

                                            By:___/s/ Charles S. Kramer_____
                                            RIEZMAN BERGER, P.C.
                                            Charles S. Kramer, Esq.
                                            Joseph D. Schneider, Esq.
                                            7700 Bonhomme, 7th Floor
                                            St. Louis, Missouri 63105
                                            T:  314.727.0101
                                            F:  314.727.6458


                                            ROTH EVANS, P.C.
                                            Eric Evans, Esq.
                                            Dawn Kamadulski O'Leary, Esq.
                                            2421 Corporate Centre Drive
                                            Suite 200
                                            Granite City, IL  62040
                                            T:  618.931.5000
                                            F:  618.931.6474


                                            SIMON•LESSER PC
                                            Leonard F. Lesser, Esq.
                                            420 Lexington Avenue
                                            New York, New York 10170
                                            T:  212.599.5455
                                            F:  212.599.5459

                                            Attorneys for Plaintiffs Gary Friedrich
                                            Enterprises, LLC and Gary Friedrich


## CERTIFICATE OF SERVICE

I hereby certify that the above pleading was filed electronically with the Clerk of the Court using the CM/ECF system this 3rd day of November, 2011, which will send notification to all those entitled to receive such notice.


                                            _____/s/ Charles S. Kramer_____

26