UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY FRIEDRICH ENTERPRISES LLC et al.,

           Plaintiffs,

  -against-

MARVEL ENTERPRISES, INC. et al.,

           Defendants.

08-cv-01533 (BSJ)(JCF)

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
(212) 659-7300

PAUL HASTINGS LLP
75 East 55th Street
New York, NY 10022-3205
(212) 318-6000

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.    THE UNDISPUTED RECORD EVIDENCE ESTABLISHES THAT PLAINTIFFS' COPYRIGHT CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ................................................................................................................ 2

II.    EVEN IF PLAINTIFFS RETAINED RENEWAL TERM COPYRIGHT RIGHTS, THOSE CLAIMS ARE TIME-BARRED .......................................................... 5

    A.    Plaintiffs Were on Notice of Marvel's Renewal Term Exploitations .................... 5

    B.    Friedrich Admitted That He Was Aware of the Allegedly Infringing Ghost Rider Movie More Than Three Years Before Filing This Time-Barred Suit ........ 7

III.    FRIEDRICH WAS AT MOST A CO-OWNER OF THE WORKS' COPYRIGHT ........ 8

IV.    LACHES AND EQUITABLE ESTOPPEL ...................................................................... 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abadin v. Marvel Entm't, Inc.*, No. 09 Civ. 0715(PAC), 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010) ............................................................................................................... 10

*Apfel v. Prudential-Bache Secs. Inc.*, 81 N.Y.2d 470 (1993) .......................................................... 4

*Brand v. RMM*, No. 10 Civ. 0287(AJP), 2011 U.S. Dist. LEXIS 42599 (S.D.N.Y. Apr. 18, 2011) ............................................................................................................... 6, 8

*Buttry v. Gen. Signal Corp.*, 68 F.3d 1488 (2d Cir. 1995) ............................................................. 5

*Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236 (S.D.N.Y. 2000) ............................................... 6

*Dewan v. Blue Man Group Ltd. P'ship*, 73 F. Supp. 2d 382 (S.D.N.Y. 1999) .............................. 6

*Escribano v. Greater Hartford Acad. of the Arts*, No. 09-4553-cv, 2011 U.S. App. LEXIS 18754 (2d Cir. Sept. 9, 2011) ...................................................................................... 8

*Eyal R.D. Corp. v. Jewelex N.Y., Ltd.*, 576 F. Supp. 2d 626 (S.D.N.Y. 2008) .............................. 9

*Haas v. Leo Feist, Inc.*, 234 F. 105 (S.D.N.Y. 1916) ................................................................... 10

*Ivani Contracting Corp. v. City of New York*, 103 F.3d 257 (2d Cir. 1997) ............................... 10

*Kwan v. Schlein*, 634 F.3d 224 (2d Cir. 2011) .............................................................................. 6

*Legislator 1357 Ltd. v. Metro-Goldwyn-Mayer, Inc.*, 452 F. Supp. 2d 382 (S.D.N.Y. 2006) ................................................................................................................................. 10

*Mason v. Jamie Music Publ'g Co.*, 658 F. Supp. 2d 571 (S.D.N.Y. 2009) ................................... 8

*Minder Music Ltd. v. Mellow Smoke Music Co.*, No. 98 Civ. 4496(AGS), 1999 U.S. Dist. LEXIS 16001 (S.D.N.Y. Oct. 14, 1999) ................................................................... 9

*Newsome v. Brown*, 209 F. App'x 11 (2d Cir. 2006) .................................................................... 9

*Ortiz v. Guitian Bros. Music Inc.*, No. 07 Civ. 3897, 2008 U.S. Dist. LEXIS 75455 (S.D.N.Y. Sept. 29, 2008) ................................................................................................ 6, 8

*P.C. Films Corp. v. MGM/UA Home Video Inc.*, 138 F.3d 453 (2d Cir. 1998) ............................ 3

*Price v. Fox Entm't Group, Inc.*, No. 05 Civ. 5259(SAS), 2007 WL 241387 (S.D.N.Y. Jan. 26, 2007) ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

*Sablosky v. Gordon Co., Inc.*, 73 N.Y.2d 133 (1989) ......................................................................4

*Siegel v. Nat'l Periodical Publ'ns, Inc.*, 508 F.2d 909 (2d Cir. 1974) ............................................3

*Yardley v. Houghton Mifflin Co., Inc.*, 25 F. Supp. 361 (S.D.N.Y. 1938) ......................................8

**STATUTES**

17 U.S.C. § 304(a)(1)(B)(ii) ..............................................................................................................3

17 U.S.C. § 304(a)(2)(A)(ii) ..............................................................................................................3

17 U.S.C. § 410(c) ............................................................................................................................8

17 U.S.C. § 507(b) ............................................................................................................................7

**PRELIMINARY STATEMENT**

Defendants' opening brief established the untimeliness of this lawsuit. Plaintiffs waited until 2007 to commence a copyright infringement action concerning a Work that was created some 35 years earlier and that has been conspicuously and continuously exploited by Marvel[1] as its copyright owner ever since. Plaintiffs' opposition attempts to bypass this multi-decade record of inaction by the convenient, but unsupportable, assertion that they in fact ceded Marvel's ownership in the challenged copyrights during their initial, 28-year copyright term (hence assertedly rendering their knowledge of Marvel's extensive exploitation during that period legally irrelevant), but that they purportedly retained copyright ownership to the Work and characters therein for the copyright renewal term, which began on January 1, 2001.

The uncontested factual record belies this legal construct. Even putting to one side the overwhelming evidence that the Work was, consistent with Marvel's established practices in general and in relation to all of its other dealings with Friedrich, work made for hire, having the legal effect of reposing in Marvel complete and perpetual copyright ownership including during the renewal term, Plaintiffs' core premise is undermined by the 1978 Agreement executed by Friedrich. The unequivocal language of that agreement establishes Marvel's ownership of the copyright in the Work "forever" – *i.e.*, during its initial and renewal terms. Plaintiffs' scattershot effort to run from the terms and implications of that agreement are unavailing.

Even taken at face value, Plaintiffs' fallacious premise as to their having retained copyright rights during the Work's renewal term does not provide them an escape hatch from the present dismissal of their claims. The claims so predicated are still time-barred in light of the

---

[1] Capitalized terms in this reply memorandum shall have the meanings ascribed to them in Defendants' opening memorandum. Although Plaintiffs complain about the collective definition of Marvel, they never explain why they believe it is misleading or somehow imprecise, nor do they explain what confusion allegedly results from its use or how it impacts this motion.

undisputed record evidence that Plaintiffs were on notice as to Marvel's exploitation of the Work during the renewal term for a period of more than three years prior to the commencement of this action. No amount of obfuscation on Plaintiffs' part as to the fact of such notice alters this reality. Nor are Plaintiffs saved by the unsupportable and quite extraordinary assertion that, notwithstanding Plaintiffs having sat silently for more than three decades while Marvel invested in and exploited the Work in various media, through and including the renewal term, the statute of limitations on their claims should not be construed to have begun to run until Friedrich belatedly came forward, in 2004, with a copyright ownership claim that, unsurprisingly, was rejected outright by Marvel. To hold otherwise would be to sanction the very lay-in-wait strategy Friedrich deployed against Marvel, in derogation of all notions of equity.

Plaintiffs are no more successful in their attempt to refute the alternative ground for dismissal on this motion – that the undisputed factual record demonstrates at the very least that Marvel is co-owner of the disputed copyrights, thereby eliminating any possibility of a viable infringement claim against it. Contrary to all precedent, Plaintiffs lamely contend that the significant contributions, among others, of artist Mike Ploog in creation of the Work fail to meet the minimal standards of originality under copyright law. This core defect in Plaintiffs' case alone warrants its dismissal.

## ARGUMENT

### I. THE UNDISPUTED RECORD EVIDENCE ESTABLISHES THAT PLAINTIFFS' COPYRIGHT CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiffs' effort to avert dismissal of their case on the basis that their copyright claims did not arise until the renewal term of the Work, and that such ownership claim has been preserved, fails on the undisputed evidence. We note initially, as more fully set forth in Defendants' prior briefs, that the overwhelming evidence shows that the Work, and the

characters therein, were created at Marvel's instance and expense, and therefore constituted a work made for hire.  *See* 56.1 Stmt. ¶¶ 10-15; Defs. Mem. at 18-22; Defendants' Memorandum of Law in Opposition to Plaintiffs' Summary Judgment Motion ("Defs. Opp. Mem.") at 19-22. As the owner of the Work's copyright under the work-for-hire doctrine, Marvel was "entitled to a renewal and extension of the copyright in such work for the further term of 67 years," when the initial term expired on December 31, 2000, without the need to file a renewal registration.  17 U.S.C. § 304(a)(1)(B)(ii); 17 U.S.C. § 304(a)(2)(A)(ii); *see also* Defs. Opp. Mem. at 22-23.

But there is another, independent basis for dismissing Plaintiffs' claims that is ripe for determination on this motion: Friedrich assigned any conceivable copyright interest he may have had in relation to the Work to Marvel "forever."  The 1978 Agreement (discussed at p. 17 of Defs. Mem.) in the alternative confirmed that the Work was made for hire or that, by assignment, Friedrich "expressly grant[ed] to MARVEL forever all rights of any kind and nature" to his work.  Bard Decl. Ex. 27.  As noted, to the extent a work-made-for-hire, Marvel secured renewal term rights as a matter of law.  To the extent that the copyright rights were assigned, the law is clear that assignment language of the type used here encompassed rights in the renewal term.  *See, e.g., P.C. Films Corp. v. MGM/UA Home Video Inc.,* 138 F.3d 453, 457 (2d Cir. 1998).  (words such as "forever," "hereafter" or "perpetually" convey renewal rights); *Siegel v. Nat'l Periodical Publ'ns, Inc.,* 508 F.2d 909, 913-14 (2d Cir. 1974) (words "forever" and "hereafter" embraced renewal term).

Plaintiffs try to avoid the clear import of the 1978 Agreement through a tortured interpretation of certain of its wording intended to convince the Court that it somehow did not encompass the Work.  *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Pls. Opp.") at 21-23.  But by its terms, the 1978 Agreement applies to

"any and all [of Friedrich's] work, writing, art work material or services," Bard Decl. Ex. 27, and there is no exemption or carve-out for Ghost Rider. Plaintiffs' efforts to establish an exclusion for the Work (which they claim was created for Magazine Management Co.) from the 1978 Agreement (which they allege pertains solely to works created for Cadence Industries) fail. For one thing, the parties to the 1978 Agreement are Friedrich and "MARVEL" – defined therein as the Marvel Comics Group, a division of Cadence Industries.[2] *See id*. For another, if Plaintiffs were correct that the 1978 Agreement was intended to apply only to Friedrich's works for Cadence, the agreement would have used the defined term "MARVEL" to so state - but it does not. Rather, the 1978 Agreement expressly states that it applies to work Friedrich created or performed "for the Marvel Comics Group." *Id.* Given that the copyright notice on the Work states "Copyright © 1972 by Magazine Management Co., Inc. *Marvel Comics Group*," (emphasis added) and the words "MARVEL COMICS GROUP" appear prominently on the Work's cover, *see* Bard Decl. Ex. 2 (emphasis added), it is specious for Plaintiffs to contend that the Work is not within the ambit of works covered by the 1978 Agreement.[3]

---

[2] The 1978 Agreement states that "MARVEL is in the business of publishing comic and other magazines known as the Marvel Comics Group," Bard Decl. Ex. 27, and Friedrich acknowledged at his deposition that "Marvel Comics Group" referred to Magazine Management *and* Cadence. Bard Decl. Ex. 2; Reply Declaration of Walter Eliot Bard ("Bard Reply Decl.") Ex. 99, (Friedrich Dep. 31:9-19).

[3] Plaintiffs' argument that the 1978 Agreement is a contract of adhesion or lacks consideration is unavailing. *See Apfel v. Prudential-Bache Secs. Inc.*, 81 N.Y.2d 470, 476 (1993) ("Absent fraud or unconscionability, the adequacy of consideration is not a proper subject for judicial scrutiny."); *Sablosky v. Gordon Co., Inc*., 73 N.Y.2d 133, 138-39 (1989) (provision that was a condition of employment did not constitute the high pressure tactics required for a contract of adhesion). Friedrich admitted that he did not work for Marvel after 1978 (the basis for Plaintiffs' argument that the 1978 Agreement lacks consideration) because: "In 1978 my alcoholism got completely out of control . . . . I wound up running around the country with another friend of mine who was a truck driver . . . and I spent most of 1978 riding around the country in a truck with him." Bard Reply Decl. Ex. 99 (Friedrich Dep. 44:3-13).

## II.  EVEN IF PLAINTIFFS RETAINED RENEWAL TERM COPYRIGHT RIGHTS, THOSE CLAIMS ARE TIME-BARRED

Even assuming for purposes of this motion that Plaintiffs had retained renewal rights concerning the Work (which Marvel disputes), their April 2007 suit is still time-barred.

### A.  Plaintiffs Were on Notice of Marvel's Renewal Term Exploitations

The Work's renewal copyright term began on January 1, 2001, and it is clear from the record evidence that Plaintiffs had notice for more than three years thereafter of Marvel's continuous exploitation of the Work during that renewal term, yet Plaintiffs stood by and did nothing.[4]  Plaintiffs' belated filing of this action on April 4, 2007 was more than three years after all of the following:

- Marvel's publication of a comic book series, *Ghost Rider*, Vol. 3, Nos. 1-6, featuring the Ghost Rider character, with cover dates from August 2001 through January 2002. *See* 56.1 Stmt. ¶ 41.

- Marvel's publication of reprints of the Work such as *Ghost Rider: Highway to Hell I* (2001).  *Id.* ¶ 39.

- Various Marvel licensees offering for sale and selling an assortment of Ghost Rider merchandise, including Ghost Rider action figures, Ghost Rider Dodge Concept die cast vehicles, Ghost Rider Mini Busts, Ghost Rider play sets, multiple Ghost Rider motorcycles and stunt bikes, Ghost Rider dolls, a Ghost Rider model kit and a Ghost Rider mini pinball machine in 2002 and 2003.  *Id.* ¶ 50; Bard Reply Decl. ¶¶ 7-8; Reply Declaration of Jesse Falcon ¶¶ 3-7.

- Marvel's licensing of the rights to various third parties to manufacture and sell numerous categories of Ghost Rider merchandise between 2001 and 2003, including

---

[4] Plaintiffs' efforts to create fact issues either by (i) submitting a declaration in which Friedrich contradicts his sworn deposition testimony that he knew Marvel was publishing Ghost Rider stories between 2000 and 2007 and did not lodge any complaint with Marvel (Bard Reply Decl. Ex. 99, Friedrich Dep. 91:12-21; 247:21-25]; or (2) by using the errata sheet to substantively change Friedrich's deposition testimony that he saw a Ghost Rider videogame at Walmart in 2001, 56.1 Stmt ¶ 53, should be rejected. *See Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995) ("a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.").  Even were the Court to accept Friedrich's contradictory declaration testimony, no genuine issue of material fact is raised given all of Friedrich's other concessions as to his knowledge of Marvel's exploitation of the Work.

- figurines, gifts and collectibles, stationery and paper goods, post cards, card games, calendars, clothing and accessories.  *See* 56.1 Stmt. ¶ 54.

- The assignment of the motion picture rights for the Work from Marvel licensee Crystal Sky to Columbia pictures on April 26, 2002, a deal that was widely reported in the press, particularly when movie stars such as Johnny Depp and Nicholas Cage were rumored to be considering the lead role as Ghost Rider.  *Id.* ¶¶ 62-63.

It is undisputed that Marvel did not pay Friedrich any royalties for any of these uses – not for the new comic books or for the merchandising.  *See id*. ¶¶ 22-23.   This non-payment of royalties alone is sufficient to trigger the running of the statute of limitations.  *See Brand v. RMM*, No. 10 Civ. 0287(AJP), 2011 U.S. Dist. LEXIS 42599, at *12-13 (S.D.N.Y. Apr. 18, 2011) ("exploiting the work for years without paying royalties to plaintiff will trigger the accrual of the statute of limitations"); *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 249 (S.D.N.Y. 2000) ("non-payment of royalties should have put [plaintiff] on notice" of her copyright ownership claims); *Dewan v. Blue Man Group Ltd. P'ship*, 73 F. Supp. 2d 382, 387 (S.D.N.Y. 1999) (non-payment of royalties was "ample reason to know a lawsuit was necessary").

Accordingly, even assuming for purposes of this motion that the statute of limitations on Plaintiffs' claims did not begin to run prior to the renewal term, it was triggered no later than 2001, when Marvel published and sold *Ghost Rider*, Vol. 3, Nos. 1-6 and reprints of the Work but paid no royalties to Friedrich.   *See* 56.1 Stmt. ¶¶ 39, 41; *see also Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011);   *Ortiz v. Guitian Bros. Music Inc.*, No. 07 Civ. 3897, 2008 U.S. Dist. LEXIS 75455 at *8-9 (S.D.N.Y. Sept. 29, 2008).   As a result, if Friedrich had any claim to ownership of the Work's renewal term, it was incumbent on him to bring it within three years after it accrued, *i.e.*, not later than sometime during 2004, and he failed by more than three years to do so.

### B. Friedrich Admitted That He Was Aware of the Allegedly Infringing Ghost Rider Movie More Than Three Years Before Filing This Time-Barred Suit

Plaintiffs assert that the statute of limitations period on their claims did not begin to run until June 2004, when Defendants supposedly "expressly repudiated" Plaintiffs' ownership claim in a letter to Friedrich's attorney. This effort fails on the law, facts, and equities. First, it is absurd for Plaintiffs, who sat on their hands for the entire initial copyright term and for six years after the renewal term began, to blame Marvel for their own failure to act. It is self-evident that Marvel had no legal duty to acknowledge, let alone expressly repudiate, claims that had never theretofore been asserted. Nor did Marvel have a duty to sue Friedrich to clarify that Marvel was entitled to the rights it was openly and notoriously exercising for decades.

Second, even focusing on the motion picture exploitation concerning which Friedrich finally surfaced with his claim, Friedrich admitted he was aware that the Work would be used in a feature film by late 2003 or early 2004. 56.1 Stmt. ¶¶ 67, 73.[5] Consequently, at the very least, Friedrich had actual knowledge that Marvel was allegedly infringing his purported rights during the renewal term in late 2003 or early 2004, such that the statute of limitations had expired before Plaintiffs filed this suit on April 4, 2007. *See* 17 U.S.C. § 507(b).

Plaintiffs cannot save their stale claim by recasting it as an infringement claim, allegedly triggered when Friedrich claims to have learned about the Ghost Rider movie. As set forth more fully in Defendants' opening brief, "[w]here, as here, a plaintiff's copyright ownership is not conceded . . . copyright ownership, and not infringement, is the gravamen of the plaintiff's claim

---

[5] Friedrich was likely aware of the impending Ghost Rider movie well before late 2003 or early 2004 given the publicity surrounding the movie beginning in 2000. Indeed, Friedrich is quoted as saying with respect to Ghost Rider in an interview conducted on January 25, 2001 that "I threatened on more than one occasion that if Marvel gets in the position where they are gonna make a movie or make a lot of money off of it, I'm gonna sue . . . ." Kramer Decl. Ex. 14. (CBA Interview) (ECF No. 308); Pls. 56.1 Stmt. ¶ 135 (ECF No. 311). This statement plainly shows Friedrich's awareness in 2001 that Marvel did not recognize his unasserted ownership claim.

to which the statute of limitations is applied." *Ortiz*, 2008 U.S. Dist. LEXIS 75455 at *6-7; Defs. Mem. at 12-13.[6] In addition, Friedrich's renewal registration is legally irrelevant because filing a renewal certificate in the name of a party other than the one in which the rights vest is ineffective. *See Mason v. Jamie Music Publ'g Co.*, 658 F. Supp. 2d 571, 585 (S.D.N.Y 2009) (Jones, J.) (if author assigns "the expectancy in the renewal rights to an assignee prior to the renewal term, the renewal in the author's name would not alter the status of the parties"); *Yardley v. Houghton Mifflin Co., Inc.*, 25 F. Supp. 361, 363 (S.D.N.Y. 1938) (renewal attempt by plaintiff who did not have the right to do so was "wholly void and of no effect"). Moreover, Plaintiffs should not be heard to argue that the United States Copyright Office reached any conclusion about Friedrich's supposed ownership rights after he misleadingly told the Copyright Office that he did not know artist Mike Ploog's address, even though he was in contact with Ploog via email. *See* Defs. Counter 56.1 Stmt. ¶ 129 (ECF No. 317); Bard Reply Decl. Ex. 100.

### III. FRIEDRICH WAS AT MOST A CO-OWNER OF THE WORKS' COPYRIGHT

As set forth in Defendants' opening brief and not seriously contested in Plaintiffs' opposition, the undisputed record facts demonstrate that at most, Friedrich was a co-owner of the copyright in the Work as a joint work. *See* Defs.' Mem. at 18-22; *Escribano v. Greater Hartford Acad. of the Arts*, No. 09-4553-cv, 2011 U.S. App. LEXIS 18754, at *2 (2d Cir. Sept. 9, 2011) (party opposing summary judgment "must come forward with specific facts showing that there is a genuine issue of material fact for trial" and "[c]onclusory allegations, conjecture,

---

[6] Plaintiffs' attempt to cast this case as sounding in infringement and not ownership because they obtained a copyright registration just prior to filing this action is legally baseless. Copyright registration is a statutory prerequisite to bringing any infringement suit, and carries with it no presumption of ownership if the registration is made more than five years after first publication of the work. 17 U.S.C. § 410(c). Moreover, Plaintiffs distort the facts of several cases in arguing that the gravamen of their claim is infringement, not ownership. *See* Pls. Opp. at pp. 5-9. For example, *Brand*, 2011 U.S. Dist. LEXIS 42599, at *10, involved an ownership claim and the cited discussion in *Mason*, 658 F. Supp. 2d at 585-588, was in the context of defendants' equitable estoppel and laches defenses.

and speculation . . . are insufficient"). Plaintiffs' contention that Friedrich, who admittedly did not draw any portion of any image that appeared in the Work, was the Work's sole author is spurious. *See* 56.1 Stmt. ¶¶ 10-14. Artist Ploog's contributions more than amply suffice to constitute copyrightable expression under governing law. *See* Defs. Opp. at 19-22. Plaintiffs' copyright infringement causes of action against Marvel and its licensees, therefore, should be dismissed. *See Newsome v. Brown*, 209 F. App'x 11, 12 (2d Cir. 2006) ("Because co-authors cannot be liable to one another for copyright infringement, [plaintiff] does not have a viable infringement claim . . . .").

## IV.   LACHES AND EQUITABLE ESTOPPEL

Plaintiffs are wrong that the defense of laches is inapplicable. Pls. Opp. at 14. Laches applies here because Plaintiffs seek equitable relief. *See* Amended Complaint [ECF No. 95-2] at ¶¶ 121, 158 (seeking order enjoining the Marvel Defendants from taking any further actions concerning the Work). Furthermore, notwithstanding dictum in the civil rights case relied on by Plaintiffs, courts have recognized that dismissing a copyright action based on laches "promotes the principles of repose integral to a properly functioning copyright market," *Minder Music Ltd. v. Mellow Smoke Music Co.*, No. 98 Civ. 4496(AGS), 1999 U.S. Dist. LEXIS 16001, at *7 (S.D.N.Y. Oct. 14, 1999), and numerous cases have held that the laches defense can bar copyright claims, particularly in circumstances where, as here, a plaintiff was on notice of his claim due to prior uses that spanned many years. *See, e.g.*, *Eyal R.D. Corp. v. Jewelex N.Y., Ltd.*, 576 F. Supp. 2d 626, 644 (S.D.N.Y. 2008); *Price v. Fox Entm't Group, Inc.*, No. 05 Civ. 5259(SAS), 2007 WL 241387, at *2-3 (S.D.N.Y. Jan. 26, 2007); *Legislator 1357 Ltd. v. Metro-Goldwyn-Mayer, Inc.*, 452 F. Supp. 2d 382, 392-93 (S.D.N.Y. 2006) (collecting cases); *cf. Ivani Contracting Corp. v. City of New York,* 103 F.3d 257 (2d Cir. 1997).

Finally, Defendants are entitled to summary judgment based on estoppel because Friedrich failed to state a claim of ownership for more than three decades – including after the renewal term began – while Marvel continuously and openly used and invested in the Work. *Abadin v. Marvel Entm't, Inc.*, No. 09 Civ. 0715(PAC), 2010 WL 1257519, at *6 n.5 (S.D.N.Y. Mar. 31, 2010) (finding actual knowledge where defendants' conduct "was neither secret nor clandestine; but rather open and notorious"). As Judge Hand observed:

> It must be obvious to every one familiar with equitable principles that it is inequitable for the owner of a copyright, with full notice of an intended infringement, to stand inactive while the proposed infringer spends large sums of money in its exploitation, and to intervene only when his speculation has proved a success. Delay under such circumstances allows the owner to speculate without risk with the other's money; he cannot possibly lose, and he may win.

*Haas v. Leo Feist, Inc*., 234 F. 105, 108 (S.D.N.Y. 1916) (Hand, J.).

## CONCLUSION

Defendants' motion for summary judgment dismissing Plaintiffs' amended complaint should be granted and Plaintiffs' cross motion for summary judgment should be denied.

Dated: New York, New York
November 14, 2011

|  |  |
|---|---|
|  | HAYNES AND BOONE, LLP |
| PAUL HASTINGS LLP | By: s/  David Fleischer |
| Jodi A. Kleinick | David Fleischer |
| 75 East 55th Street | Sarah Jacobson |
| New York, NY 10022-3205 | 30 Rockefeller Plaza, 26th Floor |
| (212) 318-6000 | New York, NY 10112 |
|  | (212) 659-7300 |
|  | david.fleischer@haynesboone.com |
|  | *Attorneys for Defendants* |